Andre Y. Bates (SBN 178170) (aybates@dehengsv.com)
Steven A. Soloway (SBN 130774) (ssoloway@dehengsv.com)
Keliang (Clay) Zhu (SBN 305509) (czhu@dehengsv.com)
Yi Yao (SBN 292563) (yyao@dehengsv.com)
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-6702
F: 925-397-1976

*Attorneys for Plaintiffs*
*Zhuoer Chen, Mengcheng Yu,*
*Jiarong Ouyang, and Gexi Guo*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHUOER CHEN, an individual; MENGCHENG YU, an individual; JIARONG OUYANG, an individual; and GEXI GUO, an individual;<br><br>    Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement;<br><br>    Defendants. | Case No. 3:25-cv-03292-SI<br><br>**NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER; MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR NATIONWIDE TEMPORARY RESTRAINING ORDER**<br><br>Judge: Honorable Susan Illston<br>Date:<br>Time:<br>Courtroom: Room 1 |

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORDS:**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 65(b) and Northern District of California Local Rules 7-2 and 65-2, Plaintiffs Zhuoer Chen, Mengcheng Yu, Jiarong Quyang, and Gexi Guo hereby move this Court for a nationwide Temporary Restraining Order ("TRO") as follows:

1.    Directing Defendants to reinstate the SEVIS records and F-1 student status of Plaintiffs and all other affected F-1 students who have no record of criminal conviction and whose SEVIS records and F-1 visa status have been terminated or revoked since March 1, 2025; and

2.    Prohibiting Defendants from issuing future SEVIS terminations against F-1 international students without record of criminal conviction absent notice, individualized explanation, and an opportunity to respond.

Plaintiffs request a hearing on their motion on April 18, 2025, or as soon as this court is available, in light of the irreparable harm Plaintiffs and all other affected F-1 students without record of criminal conviction will face due to the unlawful termination of the SEVIS records. Without a prompt order from this Court, Plaintiffs and thousands of affected students will soon accrue "unlawful presence" under immigration law that will permanently jeopardize their status in this country and ability to obtain another visa.

This motion is based upon this Notice of Motion and Motion for Nationwide TRO, Declaration of Keliang (Clay) Zhu, Declarations of Yi Yao, Declaration of Jing Feng and Becky Fu Von Trapp, Declaration of Richard A. Boswell, Declaration of Zhuoer Chen, Declaration of Mengcheng Yu, Declaration of Jiarong Ouyang, and Declaration of Gexi Guo; the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for TRO, and the supporting exhibits; and the [Proposed] Order Granting TRO, all filed herewith; and all papers and pleadings on file in this action, and such other pleadings, oral argument and/or documentary evidence as may

1    come before the Court upon the hearing of this matter. Pursuant to Federal Rule of Civil

2    Procedure 65(b) and Norther District of California Local Rule 7-2 and 65-2, Plaintiffs

3    respectfully request that this Court issue the Proposed Order Granting TRO.

4         Counsel for Plaintiffs has provided notice to Defendants on April 15, 2025 and will

5    promptly send a copy of these files to Defendants on April 15, 2025 using overnight delivery.

6    *See* Decl. of Andre Y. Bates Regarding Not. Of Filing Appl. For Notionwide TRO, filed

7    concurrently.

8    Dated: April 15, 2025                    Respectfully submitted,

9                                             DEHENG LAW OFFICES PC

10   /s/ _____*Andre Y. Bates*_____
                                                 Andre Y. Bates

11                                           *Attorneys for Plaintiffs*
                                             *Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, and*
12                                           *Gexi Guo*

13

14

15

16

17

18

19

20

21

22

23

24

25

26   **NOT. OF MOT. AND MOT. FOR NATIONWIDE TRO**

1  Andre Y. Bates (SBN 178170) (aybates@dehengsv.com)
   Steven A. Soloway (SBN 130774) (ssoloway@dehengsv.com)
2  Keliang (Clay) Zhu (SBN 305509) (czhu@dehengsv.com)
   Yi Yao (SBN 292563) (yyao@dehengsv.com)
3  **DEHENG LAW OFFICES PC**
   7901 Stoneridge Drive, Suite 208
4  Pleasanton, CA 94588
   T: 925-399-6702
5  F: 925-397-1976

6  *Attorneys for Plaintiffs*
   *Zhuoer Chen, Mengcheng Yu,*
7  *Jiarong Ouyang, and Gexi Guo*

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  ZHUOER CHEN, an individual; MENGCHENG          Case No. 3:25-cv-03292-SI
    YU, an individual; JIARONG OUYANG, an
    individual; and GEXI GUO, an individual;

12                                                 **MEMORANDUM OF LAW IN**
            Plaintiffs,                            **SUPPORT OF PLAINTIFFS' MOTION**
13                                                 **FOR NATIONWIDE TEMPORARY**
    vs.                                            **RESTRAINING ORDER**
14
    KRISTI NOEM, in her official capacity as       Judge: Honorable Susan Illston
15  Secretary of the U.S. Department of Homeland   Date:
    Security; and TODD LYONS, in his official      Time:
16  capacity as Acting Director of U.S. Immigration Courtroom: Room 1
    and Customs Enforcement;
17
            Defendants.
18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 3

      A.    Mass Termination of SEVIS Records by Government Agencies is Unprecedented and Highly Unusual. ...................................................................... 3

      B.    The Four Plaintiffs Have No Record of Criminal Convictions, But Their SEVIS Records Were Terminated Without Notice or Any Due Process. ........................ 7

      C.    The Mass SEVIS Termination is Affecting Hundreds if Not Thousands of Similarly-situated International Students Across the Country. ...................................... 9

III.  LEGAL STANDARD ....................................................................................... 11

IV.   ARGUMENT ...................................................................................................... 11

      A.    Plaintiffs are Likely to Succeed on the Merits of Their Claims. ...................... 11

            i.    The Mass Terminations Violate the Fifth Amendment's Due Process Clause. ...... 12

            ii.   The Mass Terminations Violate the Administrative Procedure Act. ................ 13

            iii.  The Mass Terminations Violate the Equal Protection Clause. ........................ 15

      B.    Plaintiffs and Other Similarly Affected F-1 Students Will Suffer Irreparable Harm in the Absence of A Temporary Restraining Order. .................................... 16

      C.    Balance of Equities Weighs Strongly in Favor of A Temporary Restraining Order. ....... 18

      D.    A Temporary Restraining Order is in the Public Interest. .................................. 19

      E.    A Nationwide Temporary Restraining Order is the Appropriate Remedy. ................ 20

            i.    The APA Violation Supports A National Temporary Restraining Order ............ 20

            ii.   A Nationwide Temporary Restraining Order is Warranted as it is Tailored to Remedy a Specific Nationwide Harm. .......................................... 21

            iii.  A Nationwide Temporary Restraining Order is Necessary to Provide Complete Relief to Plaintiffs and Other F-1 Students. ........................................ 22

V.    NO SECURITY SHOULD BE REQUIRED ..................................................... 23

VI.   CONCLUSION .................................................................................................. 24

1

2

**TABLE OF AUTHORITIES**

3

**Cases - Federal**

4

*Adarand Constructors, Inc. v. Pena,*

515 U.S. 200 (1995) ................................................................................................ 16

*Babaria v. Blinken,*

87 F.4th 963, 976 (9th Cir. 2023) ........................................................................... 11

*Bernal v. Fainter,*

467 U.S. 216 (1984) ................................................................................................ 16

Bresgal v. Brock,

843 F.2d 1163 (9th Cir. 1987) ................................................................................ 23

*Bridges v. Wixon,*

326 U.S. 135 (1945) ................................................................................................ 17

*Choeum v. I.N.S.,*

129 F.3d 29 (1st Cir. 1997) ............................................................................... 2, 12

*City of Cleburne, Tex. v. Cleburne Living Ctr.,*

473 U.S. 432 (1985) ................................................................................................ 16

*City of Richmond v. J.A. Croson Co.,*

488 U.S. 469 (1989) ................................................................................................ 16

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.,*

No. 25-CV-2847-AMO, 2025 WL 973318 (N.D. Cal. Apr. 1, 2025) ............................... 19, 20

*Dist. of Columbia v. U.S. Dep't of Agric.,*

444 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................... 20

*E. Bay Sanctuary Covenant v. Trump,*

950 F.3d 1242 (9th Cir. 2020) ................................................................................ 21

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

*Earth Island Inst. v. Ruthenbeck*,

   490 F.3d 687 (9th Cir. 2007), *aff'd in part, rev'd in part sub nom.*...........................................21

*Fang v. Dir. United States Immigr. & Customs Enf't*,

   935 F.3d 172, 185 n.100 (3d Cir. 2019)..................................................... 4, 6, 13, 14

*Frankel v. Regents of Univ. of California*,

   744 F. Supp. 3d 1015 (C.D. Cal. 2024), *appeal dismissed*, No. 24-5003, 2024 WL 4803385

   (9th Cir. Aug. 26, 2024) ...........................................................................24

Harmon v. Thornburgh,

   878 F.2d 484 (D.C. Cir. 1989) ...................................................................21

*Hernandez-Lara v. Lyons*,

   10 F.4th 19 (1st Cir. 2021) ........................................................................12

*League of Women Voters of United States v. Newby*,

   838 F.3d 1 (D.C. Cir. 2016) ......................................................................20

*Liu v. DHS*,

   No. 1:25-cv-00133-LM (D.N.H. Apr. 7, 2025) ..................................................... 2, 22

*Liu v. Noem*,

   No. 1:25-cv-00716-JPH-TAB (S.D. Ind. Apr. 15, 2025).............................................22

*Matthews v. Eldridge*,

   424 U.S. 319 (1976) ...............................................................................2

*Nat. Res. Def. Council, Inc. v. EPA*,

   966 F.2d 1292 (9th Cir. 1992) ....................................................................21

Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump,

   No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025)..................................23

*NetChoice, LLC v. Bonta*,

**MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

692 F. Supp. 3d 924 (N.D. Cal. 2023), *aff'd in part, vacated in part*, 113 F.4th 1101 (9th Cir. 2024)..............................................................................................................................23, 24

*Pennsylvania v. President United States*,

  930 F.3d 543 (3rd Cir. 2019)......................................................................................... 20

*Regents of the Univ. of California v. DHS*,

  908 F.3d 476 (9th Cir. 2018), *aff'd in part sub nom. DHS v. Regents*, 140 S. Ct. 1891 (2020)15

*Texas v. United States*,

  787 F.3d 733 (5th Cir. 2015)......................................................................................... 23

*United States v. Carrillo-Lopez*,

  68 F.4th 1133 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 703 (2024) ........................................ 16

*United States v. Machic-Xiap*,

  552 F. Supp. 3d 1055 (D. Or. 2021)................................................................................ 16

*Washington v. Reno*,

  35 F.3d 1093 (6th Cir. 1994).......................................................................................... 20

*Weaver v. City of Montebello*,

  370 F. Supp. 3d 1130 (C.D. Cal. 2019)............................................................................ 24

*Zadvydas v. Davis*,

  533 U.S. 678 (2001)..................................................................................................... 12

**Statutes**

8 U.S.C. § 1182......................................................................................................... 4, 14

8 U.S.C. § 1201................................................................................................................ 5

8 U.S.C.§ 1101.................................................................................................................. 3

8 USC § 1227................................................................................................................ 5, 6

INA § 212 ........................................................................................................................ 4

**MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

INA § 237 ................................................................................................................ 6

**Other Authorities**

*Policy Brief: Immigr. Enf't Actions Against Int'l Students*, Am. Immigr. Lawyers Ass'n, (April 8, 2025), https://www.aila.org/library/policy-brief-immigration-enforcement-actions-against-international-students ................................................................................................. 7

Paula Wethington, *ACLU of Michigan sues Trump administration over international student visa revocation cases*, CBS NEWS (Apr. 11, 2025), https://www.cbsnews.com/detroit/news/aclu-michigan-lawsuit-international-student-visa-revocations/ ........................................................ 22

*Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION* (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation........... 5, 14

Policy Guidance 1004-04–Visa Revocations (Jun. 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf ................................. 5, 14

U.S. Department of Homeland Security, *Study in the States – SEVIS Help Hub*, https://studyinthestates.dhs.gov/sevis-help-hub .................................................................. 5, 14

**Regulations**

8 C.F.R. § 1003.18 ................................................................................................................ 5

8 C.F.R. § 214.1 ................................................................................................... 4, 14, 15

8 C.F.R. § 214.2 ............................................................................................... 3, 4, 15, 22

8 C.F.R. § 214.3 ................................................................................................................ 3

**MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

1    **I.**     **<u>INTRODUCTION</u>**

2        On day one, the current federal administration announced that it would carry out a

3    sweeping deportation and removal campaign to target large numbers of immigrants across the

4    country. In recent weeks, we have learned that hundreds of individuals—including at least a U.S.

5    citizen and many lawful permanent residents—have been abruptly detained and flown, without

6    warning or due process, to one of the most notorious prisons in Latin America based on alleged

7    gang affiliations. Even more alarming is the revelation of a parallel, lesser-known operation. This

8    covert operation, unless immediately halted by a court order, bypasses essential legal protections

9    guaranteed under federal law and effectively forces hundreds—potentially thousands—of people

10   to immediately self-deport with no opportunity to be heard.

11       Plaintiffs Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, and Gexi Guo are accomplished

12   international students who have lawfully pursued advanced degrees in the United States under F-

13   1 student visa status and who have been swept up in Defendants' unconstitutional operation.

14       In March 2025, the U.S. Department of Homeland Security ("DHS"), through U.S.

15   Immigration and Customs Enforcement ("ICE"), initiated an unprecedented wave of Student and

16   Exchange Visitor Information System ("SEVIS") terminations against hundreds if not thousands

17   of international students with F-1 visas across the country, including Plaintiffs herein. SEVIS is

18   a web-based system used by DHS to track and monitor information about nonimmigrant students

19   and exchange visitors in the United States.

20       Termination of the SEVIS records of Plaintiffs and other affected international students

21   results in irreparable harm and causes a nationwide impact, as the affected students are required

22   to leave the country immediately. They must abruptly suspend their studies (one of the Plaintiffs

23   is a month away from graduation), end housing arrangements or leases, lose employment

24   authorization, face virtually insurmountable bars when re-entering the U.S. if they depart, and if

25   they have any dependents, their status is also terminated.

-1-                                    CASE NO. 3:25-cv-03292-SI

26                            **M<small>EM</small>. <small>OF</small> L<small>AW IN</small> S<small>UPP</small>. <small>OF</small> P<small>LS</small>.' M<small>OT</small>. <small>FOR</small> N<small>ATIONWIDE</small> TRO**

The mass terminations were arbitrary, capricious, and contrary to law. They were issued without notice, hearing, or legal justification, violating the most basic principles of fairness and due process. People who are facing deportation enjoy much greater procedural rights than these students. The mass terminations were issued in violation of the Administrative Procedure Act ("APA"), the Due Process and Equal Protection Clauses of Fifth Amendment to the U.S. Constitution, and longstanding agency policy.

At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard."); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such process was provided here with respect to the termination of student status, warranting relief under Plaintiffs' Complaint. The United States Constitution also prohibits the United States from "invidiously discriminating between individuals or groups," such as aliens as DHS and ICE have done in this case.

The arbitrary nature and legal infirmity of Defendants' actions have already led at least one federal court to issue emergency relief. In *Liu v. DHS*, No. 1:25-cv-00133-LM (D.N.H. Apr. 7, 2025), the court issued a Temporary Restraining Order halting the SEVIS termination of a Chinese doctoral student at Dartmouth College. A true and correct copy is attached as Exhibit 1. The court found the termination occurred without notice, individualized review, or lawful justification, and likely violated both the APA and the Fifth Amendment. Ex. 1 at 3. The present case involves materially identical facts and legal violations, reinforcing the need for immediate relief.

Plaintiffs seek a nationwide Temporary Restraining Order (i) directing Defendants to reinstate the SEVIS records and F-1 student status of Plaintiffs and all other F-1 students who have no record of criminal conviction and whose SEVIS records and F-1 visa status have been

**MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

terminated or revoked since March 1, 2025; and (ii) prohibiting Defendants from issuing future SEVIS terminations against F-1 international students without record of criminal conviction absent notice, individualized explanation, and an opportunity to respond.

Such a nationwide order is necessary and appropriate because the mass termination of Plaintiffs' and other students' SEVIS records results in imminent and irreparable harm and causes a nationwide impact including, without limitation, potential immigration detention and deportation and the inability to continue their education and lives in this country.

## II.    BACKGROUND

### A.    Mass Termination of SEVIS Records by Government Agencies is Unprecedented and Highly Unusual.

A nonimmigrant visa controls a noncitizen's admission into the United States, not their continued stay. Congress established a statutory basis for student visas under 8 U.S.C.§ 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status (D/S) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

Students who complete that course of study are entitled to apply for Optional Practical Training ("OPT"), which, if approved, allows them to remain for an additional year (and in cases of STEM degrees up to three years) working in their field of study.

SEVIS is a centralized database maintained by the Student and Exchange Visitor Program ("SEVP") within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with terms of their status. Under 8 C.F.R. § 214.3 (g)(2), Designated School Officials ("DSOs") must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations. Termination

1   of SEVIS registration can only be done on one of the outlined grounds, one of which is a student's

2   failure to maintain status.

3       DHS regulations distinguish between two separate ways a student may become "out of

4   status": (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of

5   status." The first category, failure to maintain status, involves circumstances where a student

6   voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example

7   by failing to maintain a full course of study, engaging in unauthorized employment, or other

8   violations of their status requirements under 8 C.F.R. § 214.2 (f). In addition, 8 C.F.R. §§ 214.1

9   (e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder

10  "constitutes a failure to maintain status," such as engaging in unauthorized employment,

11  providing false information to DHS, or being convicted of a crime of violence with a potential

12  sentence of more than a year. No Plaintiff in this action falls within any of these subsections.

13      With respect to the crime of violence category, 8 C.F.R. § 214.1 (g) sets forth that a

14  nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year

15  imprisonment may be imposed (regardless of whether such sentence is in fact imposed)

16  constitutes a failure to maintain status . . ." Minor misdemeanor offenses do not meet this

17  threshold for termination based on criminal history. No Plaintiff falls under this subsection.

18      The second category, termination of status by DHS, can occur only under the limited

19  circumstances set forth in 8 C.F.R. § 214.1 (d), which only permits DHS to terminate status when:

20  (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is

21  revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3)

22  DHS publishes a notification in the Federal Register identifying national security, diplomatic, or

23  public safety reasons for termination. DHS cannot otherwise unilaterally terminate nonimmigrant

24  status. *See Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir.

25  2019). An arrest or a traffic citation is not a basis for termination of SEVIS per DHS's own

-4-                                    CASE NO. 3:25-cv-03292-SI

26  **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

1  regulations. *See* U.S. Department of Homeland Security, *Study in the States – SEVIS Help Hub*,

2  https://studyinthestates.dhs.gov/sevis-help-hub. And, DHS has not published a Federal Register

3  notification related to any of the students whose SEVIS registration it has terminated. No Plaintiff

4  is covered by any of these termination subsections.

5      Accordingly, the revocation of a visa does not constitute failure to maintain status and

6  cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival

7  to the United States, then a student may not enter, and the SEVIS record is terminated. However,

8  the SEVIS record may not be terminated because of a visa revocation after a student has been

9  admitted into the United States, because the student is permitted to continue the authorized course

10  of study. ICE Policy Guidance 1004-04–Visa Revocations (Jun. 7, 2010), available at

11  https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf. A true and correct copy is

12  attached as Exhibit 2.

13      ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for

14  termination of the student's SEVIS record." *Id.* Rather, if the visa is revoked, the student is

15  permitted to pursue their course of study in school, but upon departure, the SEVIS record is

16  terminated and the student must obtain a new visa from a consulate or embassy abroad before

17  returning to the United States. Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA

18  REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-

19  directive-2016-03-on-visa-revocation. A true and correct copy is attached as Exhibit 3.

20      While a visa revocation can be charged as a ground of deportability in removal

21  proceedings, deportability can be contested in such proceedings. *See* 8 USC § 1227(a)(1)(B); 8

22  U.S.C. § 1201(i) (allowing immigration court review of visa revocation). The immigration judge

23  may also even dismiss removal proceedings where a visa is revoked, so long as a student is able

24  to remain in valid status. 8 C.F.R. § 1003.18 (d)(ii)(B). Only when a final removal order is entered

25  is status lost. None of these Plaintiffs have been placed in removal proceedings.

-5-                          CASE NO. 3:25-cv-03292-SI

26  **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

1    A student who has not violated their F-1 status, even if their visa is revoked, cannot have

2    a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure

3    to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds),

4    or any deportability ground for that matter.

5    Because these consequences are immediate and irrevocable, and because SEVIS

6    terminations are not subject to review by an immigration judge, lawful and consistent

7    administration of SEVIS is essential to preserving due process and students' legal rights. Without

8    the SEVIS and F-1 status, students suffer immediate consequences such as facing ICE

9    investigations and are required to leave the country. *See* Decl. of Jing Feng and Becky Yu Von

10   Trapp in Supp. of Pls.' Mot. for TRO ("Feng and Von Trapp Decl."), filed concurrently, at ¶¶13-

11   14. This amounts to self-deportation. But in a real deportation proceeding, a person is entitled to

12   all the due process including a hearing before the immigration judge. There is also no

13   administrative appeal of a denial to reinstate F-1 status. The termination of a SEVIS record

14   constitutes final agency action for purposes of APA review. *Fang*, 935 F.3d at 185.

15   Sometime in March 2025, ICE began a sweeping and unexplained pattern of terminating

16   the SEVIS records of international students without notice, justification, or individualized

17   process and regardless of whether they had any adverse immigration or criminal history. These

18   terminations have affected hundreds if not thousands of students nationwide. University

19   officials were similarly left in the dark, reporting a surge in unexpected SEVIS terminations

20   without any prior warning from DHS or ICE. The scope and speed of this operation have

21   created widespread panic among students, many of whom remain in the United States unaware

22   that their legal status has been silently stripped from them. *See generally*, Decl. of Yi Yao in

23   Supp. of Pls.' Mot. for TRO ("Yao Decl."), filed concurrently.

24   It is unprecedented for the federal government to revoke F-1 visa and terminate the

25   SEVIS records of hundreds if not thousands of international students in a blanket manner without

26   **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

1   prior notice, individual investigation, or coordination with the DSOs of the academic institutions

2   involved. Terminations initiated directly by DHS or ICE, especially on a large scale, are

3   generally reserved for rare national security or fraud-related cases. ICE taking these steps is

4   highly unusual, as terminating SEVIS records is usually done by the university under specific

5   circumstances spelled out in the regulations (such as withdrawing from school), and the student

6   is expected to depart the U.S. immediately. *See* Feng and Von Trapp Decl., at ¶¶6, 9, 10 ("The

7   2025 SEVIS termination is a radical departure from precedents and customary practice"); Decl.

8   of Richard A. Boswell in Supp. of Pls.' Mot. for TRO ("Boswell Decl."), filed concurrently, at

9   ¶¶16-17 ("In my more than 45 years of practice and certainly since the institution of SEVIS I am

10  not aware of any comparable mass termination of status"); *see also*, *e.g.*, *Policy Brief: Immigr.*

11  *Enf't Actions Against Int'l Students*, Am. Immigr. Lawyers Ass'n (April 8, 2025),

12  https://www.aila.org/library/policy-brief-immigration-enforcement-actions-against-international-

13  students. A true and correct copy is attached as Exhibit 4.

14       **B.    The Four Plaintiffs Have No Record of Criminal Convictions, But Their
                 SEVIS Records Were Terminated Without Notice or Any Due Process.**

15

16       The plaintiffs in this case—Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, and Gexi

17  Guo—are all law-abiding students who have never been convicted of any crime, let alone one

18  implicating public safety or national security. They have maintained their F-1 status, complied

19  with the terms of their student visas, maintained academic standing, and contributed to their

20  schools and communities. Some have had previous contact with law enforcement resulting in

21  dismissed or expunged charges, while others have no record whatsoever. There is no legal or

22  factual basis for treating these students as threats to public safety or grounds for removal. ICE's

23  decision to terminate their SEVIS records is not only unlawful—it is unsupported by evidence,

24  process, or reason.

25       Plaintiff Zhuoer Chen will complete her Master of Architecture at UC Berkeley next

26  **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

month, in May 2025. On or about April 8, 2025, Ms. Chen received notice that her SEVIS record was terminated by DHS, with no prior warning or opportunity to contest the decision. No explanation or basis for the termination has been provided. The only known incident in her record is an arrest for an alleged physical altercation with her friend that resulted in no charges. *See* Decl. of Zhuoer Chen in Supp. of Pls.' Mot. for TRO ("Chen Decl."), filed concurrently, at ¶7.

Plaintiff Mengcheng Yu is pursuing a Master of Science in Educational Technology and Applied Learning Science at Carnegie Mellon University, and is expected to graduate in four months, August 2025. She has maintained continuous legal presence since first arriving in the U.S. as a high school student in 2010. In 2015, she unknowingly enrolled in the fake University of Northern New Jersey ("UNNJ"), but cooperated with federal agents and later completed a degree at NYU. She is a class member under the UNNJ settlement agreement, which bars the government from using her enrollment in UNNJ as grounds for denial of immigration benefits. She has no criminal record, not even an arrest. Nevertheless, her SEVIS record was abruptly terminated in April 2025 without any stated basis, and without any notice or opportunity for review. *See* Decl. of Mengcheng Yu in Supp. of Pls.' Mot. for TRO ("Yu Decl."), filed concurrently, at ¶4-5.

Plaintiff Mr. Jiarong Ouyang came to the United States in 2012 and earned both a Bachelor of Science in Computing Statistics and then a Master of Science in Applied Statistics from the University of California, Riverside. He is currently a Ph.D. candidate in Statistics at the University of Cincinnati, where he holds a GPA of 3.94 and is expected to graduate in April 2026. Mr. Ouyang was arrested for an alleged domestic dispute incident but was never convicted of a crime and the charges were dismissed. Mr. Ouyang's SEVIS record and F-1 student status were abruptly terminated in April 2025. According to the University of Cincinnati's international office, the termination was based on the previously dismissed arrest. Mr. Ouyang received no

1    prior notice, hearing, or opportunity to contest the decision. *See* Decl. of Jiarong Ouyang in

2    Supp. of Pls.' Mot. for TRO ("Ouyang Decl."), filed concurrently, at ¶6-7.

3        Plaintiff Gexi Guo has spent the last eight years in the United States building a life of

4    academic and professional development. He earned a Bachelor of Science from Pennsylvania

5    State University and subsequently completed his graduate studies at Columbia University

6    graduating with a 3.8 GPA. Mr. Guo was arrested in May 2024 for an alleged simple assault. The

7    charge was dismissed and fully expunged by court order in August 2024 pursuant to N.J.S.A.

8    2C:52-6. The expungement order explicitly directs all law enforcement and government agencies

9    to treat the incident as though it never occurred. Despite this, his SEVIS record was terminated

10   without notice or an opportunity to be heard, based on conduct that has been judicially expunged

11   and is legally deemed not to have occurred. *See* Decl. of Gexi Guo in Supp. of Pls.' Mot. for

12   TRO ("Guo Decl."), filed concurrently, at ¶5.

13       The sudden and unexplained SEVIS terminations have placed Plaintiffs' immigration

14   status, educations, careers, and the ability to care for their families and pets in immediate

15   jeopardy. They also face the grave risk of being deported and never being able to obtain another

16   proper visa to return to this country.

17       **C.**    **The Mass SEVIS Termination is Affecting Hundreds if Not Thousands of
      Similarly-situated International Students Across the Country.**

18

19       Plaintiffs are not alone with respect to this abrupt termination of student status. Numerous

20   foreign students in the United States were recently notified by their schools that their F-1 student

21   status was terminated for unspecified reasons. As set forth in Yao Decl. and the exhibits attached

22   thereto, there have been more than forty (40) separate media reports published in April 2025,

23   describing SEVIS terminations affecting students across various U.S. states and academic

24   institutions.

25       The earliest known public report of these terminations appeared on April 4, 2025, in

26

1    OurMidland and described how several international students at Central Michigan University had

2    their visa records unexpectedly terminated by the DHS without explanation or prior notice. Since

3    that time, multiple national and regional outlets — including The Wall Street Journal, New York

4    Times, Washington Post, USA Today, Associated Press, San Francisco Chronicle, Texas

5    Tribune, and Salt Lake Tribune — have reported similar incidents at institutions such as: Harvard

6    University; Stanford University; Columbia University;  Carnegie Mellon University; University

7    of Michigan; University of California, Berkeley; University of California, Los Angeles;

8    University of California, San Diego; University of California, Davis; Texas A&M University;

9    Arizona State University; University of Cincinnati, among others. *See generally*, Yao Decl.

10        According to these reports, hundreds of students have been affected. The stated or inferred

11    reasons vary widely and include: arrests that resulted in no charges or were later expunged; minor

12    traffic infractions; or no adverse record whatsoever. *Id.*

13        Most of the articles indicate that the universities themselves were unaware of the

14    impending terminations and received no advance communication from DHS or ICE. Affected

15    students reportedly received no individualized explanation or opportunity to contest the decision

16    before their legal status was revoked. *Id.* The mass terminations appear to follow no consistent

17    legal standard, affect students who have maintained lawful status, good academic standing, and

18    visa compliance, and reflect a pattern of action that is sudden, opaque, and nationwide in scope.

19    The lack of prior notice, individualized review, or stated rationale suggests that the mass

20    terminations are arbitrary, procedurally deficient, and not grounded in DHS's own rules or

21    guidance.

22        In the past weekend, Plaintiffs' counsel put out a public call seeking information from

23    other affected students. Within the span of about thirty hours, Plaintiffs' counsel received

24    messages from more than 50 students who described similar experiences. Among them, 36

25    provided sworn declarations to support a nationwide TRO. *See* Declaration of Keliang (Clay)

26    **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

1   Zhu in Support of Plaintiffs' Motion for Temporary Restrating Order ("Zhu Decl."), filed

2   concurrently.

3   These 36 declarations include students from 30 colleges and universities across the

4   country, namely: University of Southern California, San Diego State University, Santa Monica

5   College, Academy of Art University, Sofia University, Arizona State University, DePaul

6   University, University of Wisconsin-Madison, Purdue University, University of Tennessee,

7   Tennessee Wesleyan University, Vanderbilt University, University of Georgia, Georgia Institute

8   of Technology, Georgia State University, Emory University, University of Texas-Austin,

9   University of Texas-Dallas, Texas A&M University, Texas Tech University, University of Texas

10  Health Science Center at Houston, University of Florida, Columbia University, Clemson

11  University, University of Pennsylvania, John Hopkins University, University of Connecticut,

12  Savannah College of Art & Design, Emerson College, and Pratt College. *See id.* at ¶4.

13  Like the Plaintiffs, none of these 36 students has a criminal conviction, but in recent weeks

14  their SEVIS record was terminated abruptly without any warning or opportunity to be heard. *Id.*

15  at ¶6. It is clear that the Defendants have been conducting a nationwide campaign against

16  international students.

17  **III.   LEGAL STANDARD**

18  In *Babaria v. Blinken*, 87 F.4th 963, 976 (9th Cir. 2023), the Ninth Circuit outlined that to

19  obtain a preliminary injunction, a plaintiff must establish: (1) a likelihood of success on the

20  merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the

21  balance of equities favors the plaintiff, and (4) that an injunction is in the public interest. The

22  court also notes that the legal standards applicable to TROs and preliminary injunctions are

23  "substantially identical." *Id.* at 976.

24  **IV.   ARGUMENT**

25      **A.   Plaintiffs are Likely to Succeed on the Merits of Their Claims.**

-11-                                    CASE NO. 3:25-cv-03292-SI

26

1    Plaintiffs satisfy all of the requirements for issuance of a nationwide Temporary

2    Restraining Order in this case. Indeed, another federal district court last week issued a

3    Temporary Restraining Order halting the SEVIS termination of a Chinese doctoral student at

4    Dartmouth College based on materially identical fact pattern. *See* Exhibit 1. The court found the

5    SEVIS termination occurred without notice, individualized review, or lawful justification, and

6    likely violated both the APA and the Fifth Amendment. Exhibit 1 at 3.

7          **i.**    **The Mass Terminations Violate the Fifth Amendment's Due Process Clause.**

8

9    Defendants' mass termination of the F-1 student status straightforwardly violates the Fifth

10   Amendment's Due Process Clause. As admitted noncitizen students in the United States,

11   Plaintiffs are entitled to due process rights. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir.

12   2021) ("due process 'applies to all 'persons' within the United States, including aliens, whether

13   their presence here is lawful, unlawful, temporary, or permanent") (quoting *Zadvydas v. Davis*, 533

14   U.S. 678, 693 (2001)). The basic principle of a noncitizen's due process rights is "the right to

15   notice and the nature of the charges and a meaningful opportunity to be heard." *Choeum*, 129

16   F.3d 29, 38.

17   However, in this case, Defendants did not provide any notice to Plaintiffs about their

18   decision to terminate Plaintiffs' F-1 student status. Nor did Defendants comply with the

19   requirements of providing adequate explanation and a meaningful opportunity to respond. In

20   most cases, DHS provided no direct communication at all. Where explanations were given, they

21   were limited to vague codes such as "OTHERWISE FAILING TO MAINTAIN STATUS –

22   Individual identified in criminal records check and/or had their VISA revoked," with no details

23   or factual basis. Yu Decl. Ex. A; Ouyang Decl. Ex. A. This is plainly insufficient under

24   established due process standards. Plaintiffs have not committed any crime, and they have

25   maintained their student status. Chen Decl. at ¶7; Guo Decl. at ¶5; Yu Decl. at ¶5; Ouyang Decl.

-12-         CASE NO. 3:25-cv-03292-SI

26           **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

at ¶6. Thus, the criminal record check or failure to maintain student status could not serve as the basis for terminating his F-1 student status.

*Fang v. Dir. U.S. Immigration & Customs Enf't*, 935 F.3d 172 (3d Cir. 2019) was a class-action brought by F-1 students ensnared in the "University of Northern New Jersey" sting operation – a fake university set up by DHS to catch visa fraud brokers. *Id.* When the sham was revealed in 2016, ICE terminated the students' SEVIS records and F-1 visas on grounds of "fraudulent enrollment," instantly stripping them of lawful status. *Id.* at 177. The students argued that they were innocent victims as they were unaware the school was fake. They received no prior notice of the termination and no opportunity to contest the fraud allegations before losing their status. They argued that the government violated their Fifth Amendment due process rights by unilaterally terminating their status without notice or hearing. *Id.* The district court dismissed the case. *Id.* at 175. The Third Circuit reversed, holding that the lack of any pre-deprivation process raised serious due process concerns. Notably, the Third Circuit pointed out that DHS's own regulations strictly limit when F-1 status can be terminated under SEVIS – *e.g.*, revocation of a special waiver, a Congressional act, or a national security or public safety notice – and "fraudulent enrollment" is not an authorized ground for termination. *Id.* at 185 n.100. This underscored that the agency's action was not in accordance with law and bypassed normal procedural protections. *Id.* at 186.

Defendants' failure to provide notice, adequate explanations, and a meaningful opportunity to respond in this case is no different from what the students suffered in *Fang*. Thus the Plaintiffs' Due Process claim should prevail.

     ii.   **The Mass Terminations Violate the Administrative Procedure Act.**

As a preliminary matter, Defendants' termination of Plaintiffs' F-1 student status is a final agency action for which this Court has jurisdiction to review. *Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision-making

1    process, and is therefore a final order").  On the substantive issue, Defendants had no statutory or

2    regulatory authority to terminate Plaintiff's F-1 student status based simply on revocation of a

3    visa.

4          Critically, DHS's ability "to terminate an F-1 [student status] is limited by [8 C.F.R.] §

5    214.1 (d)." *Fang*, 935 F.3d at 185 n.100.  Under this regulation, DHS can terminate student status

6    *only* when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked;

7    (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS

8    publishes a notification in the Federal Register identifying national security, diplomatic, or

9    public safety reasons for termination.

10         The revocation of a visa does *not* constitute a failure to maintain status and cannot,

11   therefore, serve as a basis for termination of F-1 student status.  *See* Ex. 2.  If a visa is revoked

12   before the student's arrival in the United States, the student may not enter, and his SEVIS record

13   of F-1 student status is terminated.  *See* U.S. DEPARTMENT OF HOMELAND SECURITY, *Study in the*

14   *States – SEVIS Help Hub*. However, the SEVIS record of F-1 student status may not be terminated

15   as a result of visa revocation after a student has been admitted into the United States because *the*

16   *student is permitted to continue the authorized course of study*.  *See* Ex. 2.  DHS's own policy

17   guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the

18   student's SEVIS record."  *Id*.  Rather, if the visa is revoked, the student *is permitted to pursue his*

19   *course of study in school*, but upon departure, the SEVIS record of F-1 student status is terminated,

20   and the student must obtain a new visa from a consulate or embassy abroad before returning to the

21   United States.  *See* Ex. 3.

22         Moreover, Plaintiffs have all maintained their F-1 student status. Chen Decl. at ¶3; Guo

23   Decl. at ¶3; Yu Decl. at ¶3; Ouyang Decl. at ¶3. Under the regulation, students fail to maintain

24   their status when they do not comply with the regulatory requirement, such as failing to maintain

25   a full course of study, engaging in unauthorized employment, or other violations of their

-14-                              CASE NO. 3:25-cv-03292-SI

26

1  requirements under 8 C.F.R. § 214.2 (f).  In addition, 8 C.F.R. § 214.1 (e)-(g) outlines specific

2  circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in

3  unauthorized employment, providing false information to DHS, or being convicted of a crime of

4  violence with a potential sentence of more than a year, "constitute a failure to maintain status."

5  None of these violations occurred in any of the Plaintiffs' cases. Plaintiffs have not committed

6  any crime.  They have  not engaged in unauthorized employment.  Nor have they provided any

7  false information to DHS. Chen Decl. at ¶7; Guo Decl. at ¶5; Yu Decl. at ¶5; Ouyang Decl. at ¶6.

8       In *Regents of the Univ. of California v. DHS*, the 9th Circuit and Supreme Court held that

9  DHS violated the APA by failing to provide a reasoned explanation for ending DACA, affirming

10  APA requirements under 5 U.S.C. § 706(2)(A): agency actions cannot be "arbitrary, capricious,

11  an abuse of discretion, or otherwise not in accordance with law." *Regents of the Univ. of

12  California v. DHS*, 908 F.3d 476 (9th Cir. 2018), *aff'd in part sub nom. DHS v. Regents*, 140 S.

13  Ct. 1891 (2020).

14       Accordingly, Professor Rochard Boswell has observed that "[i]n my more than 45 years

15  of practice and certainly since the institution of SEVIS, I am not aware of any comparable mass

16  termination of status…the new practice of issuing terminations of student status without notice

17  deviates from well established procedures which provided for reinstatement of status… It is my

18  opinion that the issuance of these terminations on such a broad scale without notice is creating a

19  climate of fear with the purpose of getting some foreign students to 'self-deport' and save the

20  government from having to institute removal procedures". Boswell Decl. ¶¶16-18.

21       Because Defendants' unlawful and blanket termination of Plaintiffs' F-1 student status

22  was arbitrary, and capricious, and without any statutory or regulatory authority, Defendants'

23  termination should be set aside pursuant to 5 U.S.C. 706(2)(A), and otherwise not in accordance

24  with the law, including 8 C.F.R. § 214.1 (d).

25      **iii.**    **The Mass Terminations Violate the Equal Protection Clause.**

The mass terminations unconstitutionally target Plaintiffs, all of whom are from China and are Chinese nationals, which amounts to discrmination against them based upon national origin and race in violation of the Fifth Amendment to the U.S. Constitution.

The Supreme Court has determined that "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1139 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 703 (2024) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976)). Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment. *United States v. Machic-Xiap*, 552 F. Supp. 3d 1055, 1062 (D. Or. 2021).

In *Adarand Constructors, Inc. v. Pena*,  the Supreme Court noted that in *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989), a majority of the Court held that "any person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny," and held that "strict scrutiny is the proper standard for analysis of all racial classifications, whether imposed by a federal, state, or local actor." 515 U.S. 200, 202 (1995).

Strict scrutiny requires the government to show that its action is narrowly tailored to serve a compelling interest. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985); *Bernal v. Fainter*, 467 U.S. 216, 219-22 & n.5 (1984).. As the record shows, the vast majority of the affected students came from China and are Chinese, and the Defendants have yet to publish any sensible rationale for the sudden and mass SEVIS termination. Defendants cannot show that its singling out one group based on race and national origin is necessary to achieve a compelling government purpose under the strict scrutiny standard.

**B.**    **Plaintiffs and Other Similarly Affected F-1 Students Will Suffer Irreparable Harm in the Absence of A Temporary Restraining Order.**

Plaintiffs and other affected F-1 students will suffer irreparable injury if Defendants' termination determinations are not set aside and enjoined. They face possible detention and deportation because of the unlawful presence stemming from these terminations. *See* Decl. of Feng and Von Trapp, at ¶¶ 13-14. "Deportation is a drastic measure, often amounting to lifelong banishment or exile." *Hernandez-Lara*, 10 F.4th at 29 (internal quotations omitted). *See* Chen Decl. at ¶9 ("I deeply fear that the government will soon start deporting me and I will never be able to return to the States again."); Yu Decl. at ¶6 ("I am also frightened by the prospect that the government will soon arrest and deport me, which means that I may never get another visa to come back to this country again").

These terminations will also likely result in the accrual of out of status daily, which is a critical factor for future reinstatement of F-1 student status. *Fang*, 935 F.3d at 176 (noting that a student should not have been out of a valid F-1 student status for more than 5 months for a reinstatement application).

Finally, these terminations will result "in the loss 'of all that makes life worth living'" for Plaintiffs' and other affected students' academic studies and career trajectory. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945); *see also* Chen Decl. at ¶8 ("I am only a month away from graduating with a Master's degree in architecture…due to the SEVIS termination, I am compelled to halt my current professional undertakings, and my ongoing application for OPT is likely to be denied, depriving me of the invaluable opportunities to apply what I have learned and practiced over the years."); Yu Decl. at ¶6 ("I am just one semester away from completing my degree at Carnegie Mellon University, with graduation scheduled for August 2025. Leaving now would mean I cannot graduate, and all of my academic progress"); Ouyang Decl. at ¶8 ("The sudden termination of SEVIS has abruptly halted all my ongoing projects, cut off essential research funding, and now threaten to derail my entire career path. This overwhelming setback has not only deeply affected me but also placed my family in an incredibly difficult and uncertain situation"); Guo Decl. at ¶6

**MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

("Abrupt termination of these engagements would not only lead to contractual breaches and a sudden loss of income, but would also severely damage my professional reputation... Losing my F-1 status would render me ineligible for continued employment, deprive me of the hands-on experience that my academic program was designed to provide, and undermine the substantial investments I have made in my education and professional development. This situation has deeply disrupted every aspect of my life. I am now unable to plan or commit to basic obligations such as rent and utilities, uncertain whether I will be permitted to remain in my home. I have suffered from sleep disruption, difficulty concentrating, and ongoing emotional strain that has made it challenging to function in both personal and professional capacities. The sense of instability, helplessness, and fear brought on by this termination has left me emotionally depleted.")

The declarations from 36 other students also echo the same agony and fear, and the real possibility of squandering years of education. Such harm will be irreparable absent a court order.

### C.    Balance of Equities Weighs Strongly in Favor of A Temporary Restraining Order.

As evidenced by the slew of recent news articles and the declarations from dozens of students, the recent wave of F-1 student status terminations has a widespread impact on F-1 students at universities and colleges across the country, and exposes them to dire consequences. It is unprecedented for the federal government to unilaterally and simultaneously revoke F-1 visa and terminate the SEVIS records of hundreds of international students without prior notice, individual investigation, or coordination with the DSOs of the academic institutions involved. Decl. of Feng and Von Trapp, at ¶4.

As set forth above, Plaintiffs and similarly affected F-1 students will suffer immediate and irreparable harm in the absence of a national temporary restraining order. They face possible detention and deportation because of the unlawful presence stemming from these terminations. They will also likely result in the accrual of out of status daily, which is a critical factor for

1    future reinstatement of F-1 student status. Moreover, these terminations will result "in the loss

2    'of all that makes life worth living'" for Plaintiffs' and other affected students' academic studies

3    and career trajectory.

4         By contrast, Defendants have no substantial interest in terminating the F- 1 student status

5    of Plaintiffs or other affected F-1 students who have committed no crimes and who have

6    maintained their F–1 status as required. Defendants have no legitimate interest in enforcing these

7    unconstitutional and unlawful terminations or in exceeding Defendants' statutory and regulatory

8    authority by terminating the F-1 student status in a manner that is contrary to federal law.

9         In any event, granting a temporary restraining order would merely maintain the status quo

10   that has been in place for years of the students' studies in the United States. Thus, the balance of

11   equities strongly favors the issuance of a temporary restraining order.

12         **D.     A Temporary Restraining Order is in the Public Interest.**

13         Where the government is a party, courts merge the analysis of the final two
           *Winters* factors, the balance of equities and the public interest. *Drakes Bay Oyster*
14         *Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556
           U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009)). Courts "explore the
15         relative harms to applicant and respondent, as well as the interests of the public at
           large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S.
16         1301, 1305, 112 S.Ct. 1, 115 L.Ed.2d 1087 (1991) (internal quotation marks and
           citation omitted). The *Winters* factors may be evaluated on a sliding scale, such
17         that preliminary relief may be issued when the moving party demonstrates "that
           serious questions going to the merits were raised and the balance of hardships tips
18         sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d
           1127, 1134-35 (9th Cir. 2011) (citation omitted).
19   *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-CV-

20   2847-AMO, 2025 WL 973318, at *3 (N.D. Cal. Apr. 1, 2025).

21         Where, as here, the challenged governmental conduct deprives Plaintiffs of their rights

22   and is contrary to the rule of law, both factors – the balance of equities and the public interest -

23   weigh in Plaintiffs' favor. This is especially true here, where students are contributing to this

24   country and benefitting the public interest by lending their talents to their chosen fields. Chen

25   Decl. at ¶4; Guo Decl. at ¶4; Yu Decl. at ¶7; Ouyang Decl. at ¶4.

26

In contrast, Defendants cannot claim any public interest in proceeding with agency action that is unconstitutional and exceeds their statutory authority. To the contrary, "courts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.' *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted). "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). The Government fails to convince that it would suffer harm at this stage. *Cmty. Legal Servs. in E. Palo Alto,* 2025 WL 973318, at *3.

So too here, because the equities weigh strongly in favor of Plaintiffs, and because there is no public interest in the perpetuation of unlawful agency action, a temporary restraining order should issue.

**E.    A Nationwide Temporary Restraining Order is the Appropriate Remedy.**

   i.    **The APA Violation Supports A National Temporary Restraining. Order**

There is a robust jurisprudence supporting the issuance of nationwide restraining orders and injunctions, especially in immigration cases. Congress has provided vacatur as a standard remedy for APA violations. *See* 5 U.S.C. § 706(2) ("The reviewing court shall … hold unlawful and set aside agency action" that is outside any agency's authority, or "without observance of procedure required by law," among other things).

The Supreme Court has also recognized the principle that "courts invalidate – without qualification – unlawful administrative rules as a matter of course, leaving their predecessor in place until the agencies can take further action." *Pennsylvania v. President United States*, 930 F.3d 543, 575 (3rd Cir. 2019); *see also Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 48 (D.D.C. 2020) ("An often-cited statement of the same principle is Justice Blackmun's view, 'in dissent but apparently expressing the view of all nine justices,' that when a plaintiff 'prevails'

1   on a challenge under the APA to 'a rule of broad applicability,' 'the result is that the rule is

2   invalidated, not simply that the court forbids its application to a particular individual'") (internal

3   citation omitted) (emphasis added).

4       The Ninth Circuit has followed this principle. *See Earth Island Inst. v. Ruthenbeck*, 490

5   F.3d 687, 699 (9th Cir. 2007), *aff'd in part, rev'd in part sub nom.* ("the nationwide injunction …

6   is compelled by the text of the Administrative Procedure Act"); *see also E. Bay Sanctuary*

7   *Covenant v. Trump*, 950 F.3d 1242, 1283 (9th Cir. 2020) ("Singular equitable relief is

8   commonplace in APA cases, and is often necessary to provide the plaintiffs with complete

9   redress.") (internal quotation marks omitted).

10       In the public law context, recent caselaw suggests a more permissive approach toward

11   issuing nationwide injunctions when challenges to government actions rise under the APA. In

12   *Harmon v. Thornburgh*, the court explained "when a reviewing court determines that agency

13   regulations are unlawful, the ordinary result is that the rules are vacated – not that their

14   application the individual petitioners is proscribed." 878 F.2d 484, 495 n.21 (D.C. Cir. 1989).

15   The Ninth circuit agreed. *See Earth Island Inst.*, 490 F.3d 687, 699 (quoting 5 U.S.C. § 706

16   (2006) and citing *Nat. Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1304 (9th Cir. 1992)

17   (vacating a Clean Water Act rule)).

18       Here, a nationwide temporary restraining order is warranted both under the more

19   traditional "complete relief principle" and the more recent "ordinary result" principle.

20       **ii.**      **A Nationwide Temporary Restraining Order is Warranted as it is Tailored to Remedy a Specific Nationwide Harm.**

21

22       There is substantial evidence that international students across the United States are being

23   adversely affected by the unlawful termination of their SEVIS records. According to the 2023

24   SEVIS by the Numbers Report, the total number of SEVIS records for active F-1 and M-1

25   students was 1,503,649 in 2023; there were 160,627 pre-and post-completion OPT students with

-21-          CASE NO. 3:25-cv-03292-SI

26   **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

1    both an employment authorization documents ("EAD") and who reported working for an

2    employer in 2023; there were 7,417 total SEVP-certified schools in 2023, there are SEVP-

3    certified higher education and vocational schools throughout the United States and its territories

4    with active students. HOMELAND SECURITY INVESTIGATIONS, 2023 Sevis by the Numbers –

5    Annual Report on International Student Trends. A true and correct copy of the report is attached

6    hereto as Exhibit 5.

7         Numerous news articles have confirmed that this is a nationwide operation. *See* Yao

8    Decl. Four Plaintiffs came from 4 different schools in different states, and the 36 student

9    declarations covering 30 schools show that there is indeed a widespread campaign across the

10    nation.

11        Multiple lawsuits have been filed in several states. *See e.g.*, *Liu v. DHS*, No. 1:25-cv-

12    00133-LM (D.N.H. Apr. 7, 2025) (the court issued a Temporary Restraining Order halting the

13    SEVIS termination of a Chinese doctoral student at Dartmouth College); *Liu v. Noem*, No. 1:25-

14    cv-00716-JPH-TAB (S.D. Ind. Apr. 15, 2025) (a vertified complaint on behalf of seven Indiana

15    international students whose lawful status was abruptly terminated without explanation was filed

16    on April 15, 2025); *see also* Paula Wethington, *ACLU of Michigan sues Trump administration*

17    *over international student visa revocation cases*, CBS NEWS (Apr. 11, 2025),

18    https://www.cbsnews.com/detroit/news/aclu-michigan-lawsuit-international-student-visa-revocations/.

19         **iii.    A Nationwide Temporary Restraining Order is Necessary to Provide**
              **Complete Relief to Plaintiffs and Other F-1 Students.**
20

21        Because F-1 students can transfer to different SEVP-certified schools, provided that

22    specific rules outlined by the USCIS are met under 8 C.F.R. § 214.2 (f)(8), and because this case

23    implicates national immigration policy, a nationwide injunction is necessary. In *Bresgal v.*

24    *Brock*, the Ninth Circuit affirmed the nationwide scope of an injunction, even though it would

25    impact labor contractors who were not parties to the suit, including contractors located outside

-22-                    CASE NO. 3:25-cv-03292-SI

26    **MEM. OF LAW IN SUPP. OF PLS.' MOT. FOR NATIONWIDE TRO**

the Ninth Circuit. 843 F.2d 1163, 1171 (9th Cir. 1987). The Court concluded that a nationwide

scope was necessary to provide the plaintiffs complete relief because "[m]igrant laborers who are

parties to this suit may be involved with contractors whose operations are concentrated

elsewhere." *Id.*; *see also Texas v. United States*, 787 F.3d 733, 769 (5th Cir. 2015) (refusing to

narrow preliminary injunction of Deferred Action for Parents of Americans and Lawful

Permanent Residents ("DAPA") to Texas or the plaintiff states due to "a substantial likelihood

that a partial injunction would be ineffective because DAPA beneficiaries would be free to move

between states).

So too here. Because Plaintiffs may transfer to schools in other states, and because the

mass terminations already affect F-1 students at schools across the country, a nationwide

temporary restraining order is necessary and appropriate.

## V.    NO SECURITY SHOULD BE REQUIRED

> The Ninth Circuit has "recognized that Rule 65(c) invests the district court with
> discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*,
> 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted)
> (italics in original). Thus, the district court has discretion to dispense with the
> filing of a bond altogether, or to require only a nominal bond. *See id.* ("The
> district court may dispense with the filing of a bond when it concludes there is no
> realistic likelihood of harm to the defendant from enjoining his or her
> conduct.")[.]

*NetChoice, LLC v. Bonta*, 692 F. Supp. 3d 924, 965–66 (N.D. Cal. 2023), *aff'd in part, vacated

in part*, 113 F.4th 1101 (9th Cir. 2024).

In *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, the court set a nominal

bond of zero dollars in connection with the preliminary injunction sought by plaintiffs to protect

their First and Fifth Amendment rights. No. 1:25-CV-00333-ABA, 2025 WL 573764, at *30 (D.

Md. Feb. 21, 2025). The court determined that a bond of the size the government appeared to

seek would essentially forestall plaintiffs' access to judicial review. *Id.*

Courts have issued preliminary injunctions "without requiring security based on"

likelihood of success of prevailing on a First Amendment claim. *Frankel v. Regents of Univ. of California*, 744 F. Supp. 3d 1015, 1028 (C.D. Cal. 2024), *appeal dismissed*, No. 24-5003, 2024 WL 4803385 (9th Cir. Aug. 26, 2024) (citing *NetChoice*, 692 F. Supp. 3d 924 and *Weaver v. City of Montebello*, 370 F. Supp. 3d 1130, 1139 (C.D. Cal. 2019)).

The Court should not require security in this case based on the Plaintiffs' likelihood of success in prevailing on the claims and the fact that there is no realistic likelihood of harm to Defendants from enjoining their illegal conduct.

## VI.    CONCLUSION

In summation, the Court should issue a Nationwide Temporary Restraining Order (i) directing Defendants to reinstate the SEVIS records and F-1 student status of Plaintiffs and all other F-1 students who have no record of criminal conviction and whose SEVIS records and F-1 visa status have been terminated or revoked since March 1, 2025; and (ii) prohibiting Defendants from issuing future SEVIS terminations against F-1 international students without record of criminal conviction absent notice, individualized explanation, and an opportunity to respond.

Dated: April 15, 2025                    Respectfully submitted,

                                         DEHENG LAW OFFICES PC

                                         /s/     *Andre Y. Bates*
                                                  Andre Y. Bates

                                         *Attorneys for Plaintiffs*
                                         *Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, and Gexi Guo*