1  Andre Y. Bates (SBN 178170) (aybates@dehengsv.com)
2  Steven A. Soloway (SBN 130774) (ssoloway@dehengsv.com)
   Keliang (Clay) Zhu (SBN 305509) (czhu@dehengsv.com)
3  Yi Yao (SBN 292563) (yyao@dehengsv.com)
   **DEHENG LAW OFFICES PC**
4  7901 Stoneridge Drive, Suite 208
   Pleasanton, CA 94588
5  T: 925-399-6702
   F: 925-397-1976
6

7  *Attorneys for Plaintiffs*
   *Zhuoer Chen, Mengcheng Yu,*
8  *Jiarong Ouyang, and Gexi Guo*

9                 **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11

12 | ZHUOER CHEN, an individual; MENGCHENG | Case No. 3:25-cv-03292
   | YU, an individual; JIARONG OUYANG, an |
13 | individual; and GEXI GUO, an individual; |
   |                                          | **DECLARATION OF RICHARD A.**
14 |                 Plaintiffs,              | **BOSWELL IN SUPPORT OF**
   |                                          | **PLAINTIFFS' MOTION FOR**
15 | vs.                                      | **TEMPORARY RESTRAINING**
   |                                          | **ORDER**
16 |
17 | KRISTI NOEM, in her official capacity as |
   | Secretary of the U.S. Department of Homeland |
18 | Security; and TODD LYONS, in his official |
   | capacity as Acting Director of U.S. Immigration |
19 | and Customs Enforcement; |
20 |                 Defendants. |
21

22

23

24

25

26

27

28

I, Richard A. Boswell, declare as follows:

1. I am licensed as an attorney and admitted to practice in the District of Columbia as of January, 1979 and have maintained active status consistently since that time. I am also admitted to practice in the following federal circuit courts in the United States: D.C., Third, Fourth, Seventh and Ninth Circuits.

2. I have practiced immigration law since January, 1979. I directed an Immigration Law Clinic at the George Washington University where I also taught immigration law and directed the Trial Practice Program.

3. I am currently a Professor of Law at the University of California, College of Law in San Francisco (formerly known as the University of California, Hastings College of the Law and hereafter referred to as "UC Law San Francisco"). I have taught at the UC Law San Francisco since July, 1990 and I have been on the full-time faculty at this institution since 1991. I currently teach the following courses: immigration law, advanced immigration law seminar, the immigrant rights clinic and Spring Break Practicum in immigration law. This declaration is not made with the intention of reflecting the views or positions of the UC Law San Francisco.

4. I also taught immigration law, trial advocacy, and civil procedure at the University of Notre Dame Law School from 1986-1990. My curriculum vitae (CV) is attached for reference as Appendix A to this declaration. See also https://www.uclawsf.edu/bibliography/richard-boswell/

5. My scholarship has been focused more generally on immigration law and clinical legal education. A more complete list of my scholarly work appears in Exhibit A to this Declaration.

6. This declaration is focused on the nonimmigrant student visas. Nonimmigrant student visas are issued by US Consular officers overseas to persons who are able to prove that they have been admitted to an approved educational institution and are able to establish that they are not intending immigrants, have the financial resources to pay for their education and living expenses while they are in the U.S. and are not inadmissible to the U.S. under 8 U.S.C. § 1182(a). The requirements of the student visa are prescribed at 8 U.S.C. § 1101(a)(15)(F) and (J). These student visas are designated by their type, either for general study (F) or as part of an Exchange Visitor Program (J). Student visas can be issued for anyone coming to study and can include elementary, high school or higher education. Vocational students are covered under a separate part of the statute. Prior to the issuance of the visa the consular officer determines whether in addition to meeting the criteria for the visa they are not inadmissible for any reason described in 8 U.S.C. § 1182(a). Included as part of this process is that the US Consulate has concluded that the applicant does not appear in one of numerous databases operated by various governmental agencies.

7. Even if a person has been issued a student visa, their admission to the U.S. under that visa is not guaranteed for the visa is merely a document that allows the person to come to the U.S. at a designated port of entry to seek admission. The process of actual admission to the U.S. is described at 8 U.S.C. § 1225. A person who appears for admission must satisfy the Customs and Border Patrol Officer at the inspection point that they are both qualified for the visa which they are carrying and that there are no applicable grounds of inadmissibility under 8 U.S.C. § 1182(a).

8. Normally upon inspection and admission, a student is admitted and issued an Arrival Departure Record Form I-95 with the designation "D/S" for the duration of their status.

The designation signifies that the foreign student may remain in the country until they complete their course of study, a fact which is verified by a designated school (DSO). official." Following the conclusion of their studies, students are often eligible to remain and work for an additional period of one year under what is termed "practical training." See 8 C.F.R. § 214.2(f)(10).

9.  In terms of the number of affected foreign students, there have been two situations which could be described as comparable to what is now occurring with foreign students in the U.S. One was the period immediately following the taking of hostages at the US Embassy in Tehran, Iran following the fall of the government there in 1979.[1] The second was immediately following the bombing of the World Trade Center Towers, commonly known as "9/11/."

10. During the period of the Hostage Crisis, the Immigration and Naturalization Service[2] began the process of reviewing the status of foreign students to determine whether they were complying with the terms of their nonimmigrant visas. Those who were no longer in school or who violated their status were then placed in deportation proceedings.[3] This is the time period in which engaging in certain narrowly defined unlawful behavior became the basis for considering nonimmigrants to be out of status.[4]  During this same period the

---

[1] I will refer to this as the "Hostage Crisis."
[2] At the time the functions of interpreting the immigration laws were mostly divided between the US Immigration and Naturalization Service, a part of the Department of Justice and the Department of State. The reorganization of immigration functions was moved to the Departments of Homeland Security, and Justice following the 9/11 Attacks under the Department of Homeland Security Act.
[3] The law at the time had two distinct procedures for dealing with non-citizens in immigration process
[4] See False Information and Criminal Activity by Nonimmigrants, 44 Fed. Reg. 65,726 (1979).

regulations were further modified by changing the requirements for extension of status for certain Iranian students.[5]

11. A similar procedure was implemented following the attacks of 9/11 when the Attorney General implemented the National Security Entry Exit Registration System (NSEERS).[6] Under this program non-citizens (including students) of certain nationalities were called in and questioned. Those deemed national security risk or who were no longer in status were put into proceedings for removal.[7]

12. Following the Hostage Crisis the management of nonimmigrant students in the U.S. was changed, placing some level or monitoring responsibility on the sponsoring schools which were "hosting" students. Under this system, schools would report to immigration officials when students had completed their studies or other significant changes occurred. See *Proposed Revisions in Regulations Pertaining to Nonimmigrant Students and Schools Approved for Their Attendance*, 47 Fed. Reg. 23,463 (1982).

13. Any person admitted to the U.S. whether as a nonimmigrant or immigrant are subject to the immigration laws provisions governing classes of "deportable" persons. These are prescribed more generally at 8 U.S.C. § 1227. The one most relevant to this discussion is U.S.C. § 1127(a)(1)(C)(i) which provides that a nonimmigrant who has "failed to maintain" or "to comply with the conditions" of such status is subject to removal.

---

[5] See Requirements for Extension of Stay for Iranian Nonimmigrant Students, 45 Fed. Reg. 48,866, 48,867 (1980).

[6] See Statement of John Ashcroft Attorney General of the United States before the United States Senate Committee on Appropriations, Subcommittee on the Department of Commerce, Justice, and State, the Judiciary and Related Agencies (Feb. 26, 2002) available at https://perma.cc/CAW6-MUM8. [http://www.usdoj.gov/ag/testimony/2002/FY2003AG_WrittenStatement-Senate.htm (last visited April 13, 2025)]

[7] For a more detailed description of the NSEERS program see Kareem Shora, *National Security Entry Exit Registration System (NSEERS),* 9 CARDOZO PUB. POL'Y & ETHICS 73 (2003).

DECLARATION OF RICHARD A. BOSWELL

14. Generally, whether or not a student will be treated as maintaining their status is governed by their compliance with 8 C.F.R. §§ 214.1(e) - (g) and 214.2(f)(6). Unlike most other nonimmigrant visas, students are not admitted until a date certain but may remain for the "duration" of their status. The duration of their status is dependent in part on whether they are engaged in a full course of study, which can vary depending on whether they are engaged in primary, secondary, or post-secondary study at an approved institution. See 8 C.F.R. § 214.2(6)(A) - (H). Students may also engage in limited employment on or off-campus. The regulations further provide that under certain circumstances a student may fall below the minimum number of credit hours and in other situations may seek reinstatement of status where there has been a lapse in status.

15. The regulations further provide that a student will be considered to have failed to maintain their status where they have engaged in unauthorized employment, provided false information, defined as "willful failure to provide full and truthful information requested by DHS (regardless of whether or not the information requested was material)." 8 C.F.R. § 214.1(f). Another basis for considering a nonimmigrant student as failing to maintain status is for engaging in criminal activity, defined as a conviction for "crimes of *violence* and for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(g).

16. In my more than 45 years of practice and certainly since the institution of SEVIS I am not aware of any comparable mass termination of status. Indeed, in prior enforcement efforts the terminations only occurred after an individualized determination that the student was no longer in status or had engaged in sanctionable activity as prescribed under the applicable regulations.

17. Moreover, the new practice of issuing terminations of student status without notice deviates from well established procedures which provided for reinstatement of status. For example in some situations a student could seek reinstatement where the student had a terminated record and was seeking to transfer to another school.[8]

18. It is my opinion that the issuance of these terminations on such a broad scale without notice is creating a climate of fear with the purpose of getting some foreign students to "self-deport" and save the government from having to institute removal procedures.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed on April 13th, 2025 at San Francisco, California.

/s/____*Richard A, Boswell*____
Richard A. Boswell

---

[8] See USICE, DSO Guidance at Transfer Out Schools, https://perma.cc/E3DZ-HR9E, [https://www.ice.gov/sevis/f1-transfers (last visited April 13, 2025). See also USICE, SEVIS User Guide, https://perma.cc/QEC2-VCQR [https://studyinthestates.dhs.gov/sites/default/files/Reinstatement%20User%20Guide_0.pdf last visited April 13, 2025.

**DECLARATION OF RICHARD A. BOSWELL**

# EXHIBIT A

**Richard A. Boswell**
Professor of Law
University of California
College of the Law
200 McAllister Street, San Francisco, CA  94102
Tel: (415) 565-4633, Fax: (415) 565-4865
Internet: boswellr@uclawsf.edu

## EDUCATION

Juris Doctor Degree, February, 1979
The National Law Center, George Washington University
Washington, D.C.

Distinctions: <u>Staff Associate</u>, *Journal of International Law & Economics*

B.A., Urban Economics, 1975
Loyola-Marymount University
Los Angeles, California

Distinctions:  Student Body President

## TEACHING EXPERIENCE

7/91 - Present   *Professor of Law*
University of California,
College of the Law
(formerly UC Hastings)

Assoc. Dean for Global Programs (2012-16)

3/97 - 6/97     *Visiting Professor*
Leiden University
Leiden, Netherlands

8/95 - 5/96     *Visiting Professor of Law*
The American University
Washington College of Law

8/90 - 7/91     *Visiting Professor of Law*
University of California,
Hastings College of the Law

8/86 - 7/91     *Associate Professor of Law*
Notre Dame Law School

1/80 - 5/86     *Assistant Professor of Clinical Law, Director of the Trial Practice Program,*
*Director of the Immigration Clinic*
The George Washington University,
National Law Center

Richard A. Boswell
Page 2

## MAJOR PUBLICATIONS & CONSULTING

<u>Books</u>:

REFUGEE LAW AND POLICY: CASES AND MATERIALS (6th ed. 2025) (with Karen Musalo, Jennifer Moore, & Lindsay Harris) (forthcoming)

ESSENTIALS OF IMMIGRATION LAW (6th Ed. 2024)

*Learning and Teaching Immigration Law Through Experience: Law School Clinical Programs, in* TEACHING MIGRATION AND ASYLUM LAW: THEORY AND PRACTICE 8 (Richard Grimes et al., eds., Routledge 2021) (with Megan J. Ballard & Stacy Caplow).

IMMIGRATION AND NATIONALITY LAW: CASES AND MATERIALS (5th Ed. 2018)

REFUGEE LAW AND POLICY: CASES AND MATERIALS (5th ed. 2018) (with Karen Musalo, Jennifer Moore & Annie Daher)

IMMIGRATION AND NATIONALITY LAW: CASES AND MATERIALS (Supplements through 2024)

IMMIGRATION AND NATIONALITY LAW: SELECTED STATUTES, INTERNATIONAL AND OTHER MATERIALS (2001)

TEACHERS MANUAL FOR IMMIGRATION AND NATIONALITY LAW: CASES AND MATERIALS (Updated through 2024)

STUDENT AND TOURIST VISAS: HOW TO COME TO THE UNITED STATES (Nolo Press, 2001)

U.S. IMMIGRATION MADE EASY (Lawrence A. Kanter & Martha S. Siegel, 7th ed. /updated by Richard A. Boswell: Nolo Press, 2000)

HOW TO GET A GREEN CARD: LEGAL WAYS TO STAY IN THE U.S.A. (Loida Nicolas Lewis & Len T. Madlansacay , 4th ed. /updated by Richard A. Boswell, edited by Barbara Kate Repa & Spencer Sherman: Nolo Press, 1999)

CUADERNILLO DE EJERCICIOS PRACTICOS: CURSO DE PRUEBA Y SU ENSEÑANZA (1999)

REFUGEE LAW AND POLICY: CASES AND MATERIALS (3d ed. 2008) (with Karen Musalo and Jennifer Moore)

REFUGEE LAW: SELECTED STATUTES, REGULATIONS AND INTERNATIONAL MATERIALS (with Karen Musalo and Jennifer Moore, 2008)

EL CASO DE NICOLAS CRUZ: CASO HIPOTETICO DE DEFENSA Y GESTION EN JUICIO (Centro de Apoyo al Estado de Derecho, 1995)

EL CASO DE JUAN LARIOS GUZMAN: CASO HIPOTETICO DE DEFENSA Y GESTION EN JUICIO (with Karen Musalo: Guatemalan Exchange and Training Program, 1994)

ATTORNEYS DESK LIBRARY: IMMIGRATION LAW (1994)

IMMIGRATION AND NATIONALITY LAW: CASES AND MATERIALS (with G. Carrasco, 1992 & 1993-1999 Supps.)

TEACHERS MANUAL FOR IMMIGRATION AND NATIONALITY LAW: CASES AND MATERIALS (1992)

IMMIGRATION AND NATIONALITY LAW: CASES AND MATERIALS (with G. Carrasco, 1990, 1991 Supp.)

IMMIGRATION LITIGATION WORKSHOPS: SIMULATION CASE AND PROBLEMS (with R. Prinz: 1989)

IMMIGRATION LITIGATION WORKSHOPS: SIMULATION CASE AND PROBLEMS (with R. Prinz: 1988)

## Articles & Book Reviews:

*Making Immigration Law Respond to the Needs of Building U.S. Leadership in Artificial Intelligence*, 26 Bender's Immigr. Bull. 1733 (2021) (with Aditya Mohan).

*Book Review*, 67 J. Legal Educ. 1081 ( 2018) (reviewing RICHARD J. WILSON, THE GLOBAL EVOLUTION OF CLINICAL LEGAL EDUCATION: MORE THAN A METHOD (2017))

*Crafting an Amnesty with Traditional Tools: Registration and Cancellation*, 47 Harv. J. on Leg. 175 (2010)

Crafting True Immigration Reform, 35 Wm. Mitchell L. Rev. 7 (2008)

Racism and U.S. Immigration Law: Prospects for Reform After "9-11?", 7 J. Gender, Race, & Just. 315 (2003)

*Calamity of the Patriot*, NETWORK NEWS (National Network for Immigrant and Refugee Rights, 2002)

*Throwing Away the Key: Limitations on the Plenary Power Doctrine? A Review of FELIX MASUD-PILOTO, FROM WELCOMED EXILES TO ILLEGAL IMMIGRANTS: CUBAN MIGRATION TO THE U.S. 1959-1995 (1996, AND MARK S. HAMM, THE ABANDONED ONES (1995)*, 18 MICH. J. INT'L L. 689 (1997)

*Crossing the Racial Divide: Challenging Stereotypes About Black Jurors* 6 HASTINGS WOMEN'S L. J. 233 (1995)

Richard A. Boswell
Page 4

*Restrictions on Non-Citizens' Access to Public Benefits: Flawed Premise, Unnecessary Response*, 42 U.C.L.A. L. REV. 1475 (1995)

*Entry, Parole and the Fleuti Doctrine*, IMMIGRATION AND NATIONALITY LAW: 1993 ANNUAL SYMPOSIUM - ADVANCED TOPICS 479 (1993)

*Keeping the Practice in Clinical Education and Scholarship*, 43 HASTINGS L. J. 1187 (1992)

R. Boswell & J. Segal, *Deportation Procedures Under the Immigration and Nationality Act*, IMMIGRATION AND NATIONALITY LAW: 1990 ANNUAL SYMPOSIUM - FUNDAMENTALS 295 (1990)

*Reassessing What is a "Reasonable Fee" in Immigration Cases*, IMMIGRATION LAW & PROCEDURE REPORTER (Matthew Bender, 1989)

*Declaratory Review and the Immigration and Nationality Act*, IMMIGRATION AND NATIONALITY LAW: 42ND ANNIVERSARY SYMPOSIUM - ADVANCED TOPICS 527 (1988)

*Immigration Reform Amendments of 1986: Reform or Rehash?*, 14 J. LEGIS. 23 (1987)

*The 212(c) Controversy: An Analysis*, 4 FED. IMM. L. REP. No. 37 (September 2, 1986)

*Rethinking Exclusion: The Rights of Cuban Refugees Facing Indefinite Detention in the U.S.*, 17 VAND. J. TRANSNT'L L. 925 (1984)

*Local 25: A Union Sues on Behalf of Salvadoran Refugees*, 12 IMM. NEWSLETTER 7 (1983)

Consulting and Other Professional Activities:

*Special Master – CSS v. Napolitano, et. al.* (E.D. Ca.) see 268 F.Supp. 2d 1172
Jan. 2008 – present

   *Court a*ppointed Special Master by the U.S. District Court, W.D. Calif. to review appeals of class membership settled following remand by the Supreme Court in *Reno v. Catholic Social Services*, 509 U.S. 43 (1993) challenging adjudication of amnesty applications under the Immigration Reform and Control Act of 1986

*Teaching and Technical Assistance*, Ecole de Droit Catolique, Jeremie, Haiti, 1999 - present

      Teaching and providing assistance to a new law school in rural Haiti

*Consultant and Teaching*, Universidad Nacional Autónoma de Honduras, Tegucigalpa, Honduras, 2001 - 2004

*Consultant*, U.S. Agency for International Development, Rule of Law Project, West Bank and Gaza, 11/1999 - 9/2000

Working with law schools in Palestine (West Bank and Gaza) in restructuring their curriculum.  Project has been suspended due to political problems in the region.

*Consultant*, U.S. Agency for International Development, Centro de Apoyo al Sistema Judicial  (CREA), Guatemala City, Guatemala, 11/1995 - 6/1999

Preparing teaching materials and conducting training program for Guatemalan law professors, judges and lawyers on oral trial advocacy.  The project also involved working with the Law Faculty at the Universidad de San Carlos on revising their curriculum in light changes in the Guatemalan Penal Code.

*Consultant and Trainer*, U.S. Information Agency, Caracas, Venezuela, 8/96, 1/97

Prepared materials and conducted training in oral advocacy with judges and defense attorneys.

*Consultant and Trainer*, U.S. Agency for International Development, Bogota, Colombia, 7/99

Prepared materials and conducted training on oral advocacy with public defenders

*Director of Training and Faculty Member*, U.S./Guatemala Jurist Exchange and Training Program, 10/94

Prepared teaching materials and taught in Spanish in an intensive trial advocacy program for Guatemalan human rights lawyers and law students which included skills for client interviewing, direct and cross examination and expert testimony.

*Consultant*, U.S. Agency for International Development, American Legal Consortium (Central Asia Rule of Law Project), Almaty, Kazakhstan, **10/1994**

Provided advise to the U.S. Ambassador on issues relating to the Constitution of Tajikistan and parliamentary election laws of the Republic of Tajikistan.

*Faculty Member*, National Institute for Trial Advocacy, 1986-1991

CLINICAL LAW REVIEW — Co-Editor-in-Chief (1997 - 2004); Board of Editors (1993-97) (2004 – present)

*Contributing Editor*, IMMIGRATION LAW AND PROCEDURE REPORTER, Matthew Bender & Co. -  1988 – 1994

*Board of Editors*, FEDERAL IMMIGRATION LAW REPORTER, Washington Service

Richard A. Boswell
Page 6

Bureau, Inc. (A subsidiary of Commerce Clearing House), 1984 - 1988

*Consultant*, United States Information Agency,

Lectured at law schools in Spanish in the Republic of Panama to assist in the development of their clinical programs. Provided assistance to the Panamanian Bar Association, Supreme Court and Ministries of Justice and Labor to establish a legal services program for the indigent. 6/1982 - 7/1982

Lectured and conducted training program on trial advocacy and clinical legal education in the United States at the Universidad de San Carlos, in the Republic of Guatemala. 6/1995

Lectured at Danish Center for Human Rights, University of Copenhagen and Aarhus University on Immigration Policy in a Pluralistic Society. Copenhagen, Denmark and Aarhus. 1/1996

*Consultant*, NBC TV (Channel 4, Washington, D.C.), 6/1981 - 6/1982; Responsible for assuring that a nationally syndicated Spanish language program complied with applicable statutory and network broadcasting guidelines.

*Consultant*, Food and Drug Administration, National Consumer Action Awareness Project, 9/1981 - 9/1982

Lectured in Spanish on citizen access to the regulatory process of the FDA. These Lectures were conducted in Miami, Los Angeles, Baltimore and Buffalo.


**LAW REFORM**

May 1993  Testified before the U.S. Senate Subcommittee on Immigration and Refugee Policy on proposed legislation reforming border inspection procedures and asylum adjudication.

Oct. 1981  Testified before the U.S. Senate and House Subcommittees on Immigration and Refugee Policy on the Immigration Reform and Control Act (commonly known as the Simpson-Mazzoli bill).

Feb. 1982  Testified before the Maryland House of Delegates, Committee on Constitutional and Administrative Law. My testimony related to a policy of the Prince Georges County School Board of requiring children of undocumented aliens to pay tuition in order to attend public school.

**BAR MEMBERSHIPS, PROFESSIONAL ASSOCIATIONS AND GOVERNING BOARDS**

American Bar Association, (Chair) Skills Training Committee, Section on Legal Education and Admission to the Bar (1989-94, 2001 - 2004); Member of Law School Site Accreditation Inspection Teams: Univ. of Bridgeport, City University of New York at Queens College, University of the District of Columbia, Harvard University Law School, Law School University o Kentucky, School of Law, Loyola Law School of Chicago, and NOVA Southeastern.

President, Clinical Legal Education Association  (1994-95), Vice President (1993-94)

American Immigration Lawyers Association, Member, Board of Governors 1989-92; Chair, Litigation Training and Assistance Committee 1987 - 1990; Member, Committee on Professor's, Lawyers and Law Students and Publications Committee

Association of American Law Schools – Chair, Standing Committee on Clinical Legal Education (1991-93); Chair Planning Committee 2001 Workshop, Member, 1989; Member, President's Pro-bono Commission; Chair Section on Immigration Law (1992-93), Chair, Section on Litigation (1991).

Bar Association of the District of Columbia, Executive Council, Young Lawyers Section  1981-82

Admitted to Practice in the District of Columbia, U.S. District Court for the District of Columbia, and U.S. Court of Appeals for the D.C., Third, Fourth, Fifth and Ninth Circuits.

Advisory Board, Center for Gender & Refugee Studies, San Francisco, CA
Board of Directors, National Immigration Law Center, Los Angeles, CA
Board of Directors, Immigrant Legal Resource Center, San Francisco, CA