UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHUOER CHEN, et al., <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>KRISTI NOEM, et al., <br><br>　　　　Defendants. | Case No. 25-cv-03292-SI <br><br>**EX PARTE TEMPORARY RESTRAINING ORDER** <br><br>Re: Dkt. No. 7 |

　　　　The plaintiffs in this action are four international students present in the United States in what the government calls "F-1 status" for graduate studies or post-graduate practical training. Earlier this month, without any prior notice, they learned from their sponsoring universities that their records in the comprehensive federal database (the Student and Exchange Visitor Information System or "SEVIS") that monitors the activities of foreign students had been terminated by the government. While none of the four have any criminal convictions in the United States, the reason for termination entered into the system was that each had been "identified in criminal records check and/or has had their visa revoked." Without an active record in the government's system, they contend they cannot study, work, or remain in the country. Plaintiffs seek a temporary restraining order (TRO) restoring their status in the system and restoring the status of all similarly situated foreign students across the country who do not have a criminal conviction on their record.

　　　　The Court originally scheduled a hearing on plaintiffs' TRO motion for Monday, April 21, 2025. However, there are now at least five other cases that have been filed in this district by F-1 students. Case Nos. 4:25-cv-03140-JSW, 5:25-cv-03244-NW, 3:25-cv-03323-AGT, 5:25-cv-03383-SVK, 3:25-cv-03407-EMC. The lowest-numbered case has been assigned to Judge Jeffrey White. Under the Northern District's Civil Local Rules, Judge White is considering whether to

relate the cases; if deemed related, this case would be reassigned to him. *See* Civil L.R. 3-12. To give time for Judge White to hear from the parties and make his determination, this Court has delayed the TRO hearing until Thursday, April 24, 2025 at 11:00 a.m.

Withholding judgment on plaintiffs' claim for broader relief, the Court has determined that some interim protections for the named plaintiffs are necessary to preserve the status quo. In making this determination, the Court follows two other judges in this district that have granted F-1 student plaintiffs temporary relief. *See* 4:25-cv-03140-JSW, Dkt. No. 16; 5:25-cv-03244-NW, Dkt. No. 13.

## BACKGROUND

### I.  Factual Background

#### A.  Named Plaintiffs

Plaintiff Zhuoer Chen is a Chinese F-1 student seeking a master's degree in architecture from the University of California at Berkeley. Dkt. No. 7-5 ("Chen Decl.") ¶¶ 2-3. Chen is scheduled to present her final research and graduate in May 2025. *Id.* ¶¶ 3, 8. She has maintained lawful F-1 student status. *Id.* She was arrested in November 2022 for an alleged minor physical altercation with a friend, but has never been charged with a crime. *Id.* ¶ 7. On April 8, 2025, her university informed her that her SEVIS record had been terminated by the government. *Id.* ¶ 6. The termination reason was listed as "OTHER – Individual identified in criminal records check and/or has had their visa revoked." *Id.*, Ex. A. The university informed her that her pending optional practical training (OPT) request would likely be denied but could not confirm whether her visa had been officially revoked. *Id.*

Plaintiff Gexi Guo is a Chinese F-1 nonimmigrant currently in OPT in New York City. Dkt. No. 7-6 ("Guo Decl.") ¶ 2. He has been in the United States for eight years, earning a Bachelor of Science degree and a graduate degree. *Id.* ¶ 3. He has maintained lawful F-1 student status. *Id.* He was arrested once in May 2024 for an alleged simple assault, but the charge was dismissed and expunged by an August 2024 court order, which states that the incident "shall be deemed not to have occurred." *Id.* ¶ 5, Ex. A. Guo received a notice from his graduate university on April 8, 2025, that his SEVIS record had been terminated by the government. *Id.*, Ex. B. The listed termination reason

1  was "OTHER – Individual identified in criminal records check and/or has had their visa revoked."
2  *Id.*

3  Plaintiff Mengcheng Yu is a Chinese F-1 master's student at Carnegie Mellon University, set to graduate in August 2025. Dkt. No. 7-7 ("Yu Decl.") ¶¶ 2-3. She has lived in the United States since the age of 16. *Id.* ¶ 3. She has maintained lawful F-1 student status. *Id.* ¶ 3. She has no criminal record, including no arrests. *Id.* ¶ 5. In 2015, she unknowingly enrolled in a sham university set up by the federal government as a sting operation. *Id.* She was a member of a settlement agreement in that case where the government agreed not to use her enrollment as a reason to deny any immigration benefits. *Id.* On April 4, 2025, her SEVIS status changed to terminated, with the reason listed as "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked." *Id.*, Ex. A.

Plaintiff Jiarong Ouyang is a Chinese F-1 student pursuing a Ph.D. in statistics at the University of Cincinnati, scheduled to graduate in April 2026. Dkt. No. 7-8 ("Ouyang Decl.") ¶¶ 2-3. He lives in the U.S. with his wife and young sons. *Id.* ¶ 8. He has maintained lawful F-1 student status. *Id.* ¶ 3. In January 2019, he was arrested for an alleged domestic dispute, but the charges were formally dismissed. *Id.* ¶ 6. At the time, his visa was revoked as a result of his arrest, but he remained in lawful status. *Id.* He later switched to F-2 status then returned to F-1 with the government's approval. *Id.* In early April of this year he received a notice from his university that the government had terminated his SEVIS record with the reason, "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked." *Id.* ¶ 7, Ex. A.

In summary, none of the four named plaintiffs have been convicted of a crime and all attest that they have remained in lawful status. Without prior notice or opportunity to object, all four learned in early April 2025 that their SEVIS records had been terminated because they were identified in a criminal records check or had their visa revoked. Chen Decl. ¶ 6; Guo Decl. ¶ 5; Yu Decl. ¶ 4; Ouyang Decl. ¶ 7. All four have stated that the SEVIS termination has severely disrupted their studies, work, or family life and immediately compromised their ability to stay in the United States. Chen Decl. ¶ 8; Guo Decl. ¶ 6; Yu Decl. ¶ 6; Ouyang Decl. ¶ 8. All four expressed fear and

anxiety regarding their current status, including the possibility of immediate deportation by the government. Chen Decl. ¶ 9; Guo Decl. ¶ 6; Yu Decl. ¶ 6; Ouyang Decl. ¶ 8.

### B. Other Similarly Situated F-1 Students

Plaintiffs attach to their motion counsel's declaration that on April 12 and 13, 2025, they received messages from more than fifty students whose SEVIS records were terminated. Dkt. No. 7-4 ("Zhu Decl.") ¶ 3. Thirty-six students from thirty schools provided sworn declarations. *Id.* ¶¶ 3-4, Exs. A-JJ. Of these thirty-six, thirty-one are Chinese and all but two explicitly declare they have never been convicted of a crime.[1] *Id.*

Plaintiffs have also included for the Court's review more than forty news articles or posts that document SEVIS terminations for F-1 students around the country. Dkt. No. 7-3 ("Yao Decl.") ¶ 3, Exs. A-AW. The articles report that the students' universities were uninvolved with and unaware of the terminations. *Id.* ¶ 55. One report references 121 students in California who have seen their SEVIS record terminated; another reported that more than 525 visas have been revoked nationwide. *Id.*, Exs. U, AJ.

## II. Legal and Regulatory Framework

An individual "having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study" is considered a "nonimmigrant." 8 U.S.C. § 1101(a)(15)(F)(i). Federal regulations designate this classification of nonimmigrant student as "F-1," 8 C.F.R. § 214.1(a)(2), and provide guidelines for individuals who are granted F-1 status, 8 C.F.R. § 214.2(f). The status of F-1 nonimmigrant students is managed jointly by the federal government and universities through SEVIS, a database run by U.S. Immigration and Customs Enforcement (ICE). Dkt. No. 7-1, Ex. 4 ("AILA Brief") at 2; Dkt.

---

[1] The remaining two imply they have not been convicted but do not say so explicitly. Zhu Decl., Exs. J, CC.

No. 7-9 ("Feng and Fu Von Trapp Decl.") ¶ 5.

A nonimmigrant may fail to maintain their nonimmigrant status by accepting unauthorized employment, providing false information to the government, or receiving a "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(e)-(f). If a student fails to maintain status for any reason, schools must report this in SEVIS. 8 C.F.R. § 214.3(g)(2)(ii)(A). Nonimmigrants who fail to maintain their status in such a way are deportable. 8 U.S.C. § 1227(a)(1)(C)(i).

A nonimmigrant may also have their status terminated
> by the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

8 C.F.R. § 214.1(d). If an F-1 student loses their status, they may apply for reinstatement when "[t]he violation of status resulted from circumstances beyond the student's control" or "[t]he violation relates to a reduction in the student's course load that would have been within a [school official's] power to authorize, and that failure to approve reinstatement would result in extreme hardship to the student." 8 C.F.R. § 214.2(f)(16)(i)(F)(1)-(2). The government's decision whether to reinstate the student's status is discretionary and non-appealable. *Id.*, subd. (f)(16)(i)-(ii).

When the SEVIS record of an F-1 nonimmigrant is terminated, the student faces "serious consequences." Feng and Fu Von Trapp Decl. ¶ 15. The student "typically" loses nonimmigrant status and must plan to leave the country. *Id.* ¶ 13. Termination means the student loses all employment authorization, the student cannot re-enter the United States, ICE "may investigate to confirm the departure of the student," and any dependents on F-2 status also have their records terminated. *Id.*; *see* Department of Homeland Security, *Terminate a Student*, Study in the States, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student [https://perma.cc/796U-7BUY].

### III.     Procedural Background

Plaintiffs filed their complaint on Friday, April 11, 2025, and the case was assigned to this Court on Monday, April 14, 2025. Dkt. Nos. 1, 3. The complaint asserts that the termination of plaintiffs' SEVIS records violates the Administrative Procedure Act (APA) as well plaintiffs' due process and equal protection rights under the Fifth Amendment. Dkt. No. 1 ¶¶ 39-58. Plaintiffs' complaint seeks relief for themselves and "all similarly situated F-1 visa holders—who have not been convicted of any criminal offense, have maintained academic standing, and are otherwise in compliance with the terms of their visa." *Id.* at 13.

Plaintiffs filed a motion for a temporary restraining order (TRO) on Tuesday, April 15, 2025, and effectuated service on defendants that same day. Dkt. Nos. 7, 8. The motion requests that the Court issue a nationwide TRO

> (i) directing Defendants to reinstate the SEVIS records and F-1 student status of Plaintiffs and all other F-1 students who have no record of criminal conviction and whose SEVIS records and F-1 visa status have been terminated or revoked since March 1, 2025; and (ii) prohibiting Defendants from issuing future SEVIS terminations against F-1 international students without record of criminal conviction absent notice, individualized explanation, and an opportunity to respond.

Dkt. No. 7 ("Mot.") at 24. The government's opposition was due at 5:00 p.m. on Friday, April 18, 2025, but at the government's request the Court granted a stipulation extending the deadline to 9:00 p.m. the same day. Dkt. No. 16.

### LEGAL STANDARD

A party may seek a temporary restraining order to preserve the status quo and prevent irreparable harm until a preliminary injunction hearing may be held. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974)); Fed. R. Civ. P. 65(b). The standard for evaluating a TRO is "substantially identical" to the standard for evaluating injunctive relief. *Babaria v. Blinken,* 87 F.4th 963, 976 (9th Cir. 2023), *cert. denied sub nom. Babaria v. Jaddou*, 145 S. Ct. 160 (2024) (internal quotation marks and citations omitted).

1    "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). In order to obtain a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citations omitted). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Alternatively, under the "serious questions" test, the plaintiff may demonstrate "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the other two *Winter* factors are also met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal quotation marks and citation omitted). This formulation recognizes a sliding scale approach, where "a stronger showing of one element may offset a weaker showing of another." *Id.*, 1131, 1134-35.

**DISCUSSION**

The government has been provided notice of plaintiffs' motion but has not yet submitted its opposition. Accordingly, the Court considers this order to be a ruling on an emergency ex parte application for a temporary restraining order. While "very few circumstances" justify an ex parte TRO, the Court finds it appropriate at this stage to protect the named plaintiffs from further adverse actions until Judge White, or this Court if the case is not re-assigned, has an opportunity to consider the matter. *See Reno Air Racing Ass'n,* 452 F.3d at 1131.

Plaintiffs establish a likelihood of success as to the merits of their APA claim that defendants' actions to terminate their SEVIS record were arbitrary and capricious. The termination of a SEVIS record has been considered a "final agency action," reviewable by Courts under the APA. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 (3d Cir. 2019). There is no indication that the government has met its own regulatory requirements for the termination of a SEVIS record. *See* 8 C.F.R. § 214.1(d). Nor is there evidence that the plaintiffs have failed to maintain their F-1 status. While three of the four plaintiffs have been arrested, none

7

1  have any convictions on their record, let alone a conviction for a crime of violence with a term of
2  imprisonment that exceeds one year. *See id.*, subd. (g). The record does not indicate whether
3  plaintiffs' visas have been revoked, but plaintiffs put forward evidence that visa revocation does not
4  necessarily lead to termination of F-1 status. *See* Dkt. No. 7-1, Ex. 3; Dkt. No. 7-1, Ex. 2 at 3 ("Visa
5  revocation is not, in itself, a cause for termination of the student's SEVIS record."). Plaintiffs'
6  expert, an immigration attorney with forty-five years of experience in the field, declares that the
7  government has taken these actions to encourage "self-deport[ation]" and to "save the government
8  from having to institute removal procedures." Dkt. No. 7-10 ("Boswell Decl.") ¶ 18. Considering
9  this evidence, the Court finds that plaintiffs present a likelihood of success on, or at least raise
10 serious questions going to the merits of, their APA claim.

11 Plaintiffs have also shown a strong likelihood of irreparable harm in the absence of
12 immediate relief. Plaintiffs assert that defendants' actions put years of hard work and studies in
13 jeopardy. For example, plaintiff Ouyang's university informed him he must immediately stop work.
14 Ouyang Decl., Ex. A. Moreover, in their declarations, plaintiffs express concern about immediate
15 arrest and detention by ICE.[2] In other cases with similarly situated individuals, the government has
16 refused to provide assurances that the plaintiffs will not be arrested while their litigation proceeds.
17 *See*, *e.g.*, Case No. 5:25-cv-03244-NW (N.D. Cal.), Dkt. No. 10-1; Case No. 1:25-cv-00133-SE-
18 TSM (D. N.H.), Dkt. No. 8-1. In these circumstances, the Court is convinced that plaintiffs have
19 shown a likelihood of irreparable harm.

20 Finally, the final two *Winters* factors—merged together when the government is the
21 defendant—favor plaintiffs. The government would not suffer any lasting damage by refraining
22 from detaining plaintiffs, who have no record of criminal convictions and pose no safety threat to
23 their communities or the nation writ large, or from allowing plaintiffs to continue their studies or
24 work in the interim. The public interest is best served through a fair and thorough hearing of

---

[2] Plaintiff Chen is suffering "profound psychological distress." Chen Decl. ¶ 9. Plaintiff Guo has "suffered from sleep disruption, difficulty concentrating, and ongoing emotional strain . . . ." Guo Decl. ¶ 6. Plaintiff Yu is "frightened by the prospect that the government will soon arrest and deport [her]." Yu Decl. ¶ 6. Plaintiff Ouyang's family is "in an incredibly difficult and uncertain situation." Ouyang Decl. ¶ 8.

1 plaintiffs' claims, absent any distraction or confusion that would result should the government detain
2 any of the plaintiffs.

3 In summary, the Court finds that plaintiffs' APA claim merits immediate judicial
4 intervention, although the Court reserves judgment on broader relief.[3] A temporary restraining order
5 is a tool for courts to preserve the status quo. Here, there is no question that the status quo includes
6 keeping plaintiffs out of immigration detention and in continued studies and employment. The
7 Court notes that in a potentially related case in this district, the plaintiffs have been granted similar
8 relief. Case No. 5:25-cv-03244-NW, Dkt. No. 13.

9 While plaintiffs here request nationwide relief—and indeed include declarations from thirty-
10 six similarly situated individuals across the country—at this stage of the proceedings the Court
11 reserves judgment on whether nationwide relief may be appropriate. The Court limits this order to
12 the four named plaintiffs.

## CONCLUSION

Therefore, to prevent irreparable harm from a potentially arbitrary and capricious government action, the Court therefore ORDERS as follows:

> (1) Defendants are enjoined for fourteen days from arresting and incarcerating Plaintiffs Zhuoer Chen, Gexi Guo, Mengcheng Yu, and Jiarong Ouyang pending resolution of these proceedings; and
>
> (2) Defendants are enjoined for fourteen days from transferring Plaintiffs Zhuoer Chen, Gexi Guo, Mengcheng Yu, and Jiarong Ouyang outside the jurisdiction of this District pending the resolution of these proceedings; and
>
> (3) Defendants are enjoined for fourteen days from imposing any legal effect that otherwise may be caused by the termination of Plaintiffs' SEVIS statuses or the potential unlawful revocation of their F-1 visas.

The Court further ORDERS that the hearing regarding plaintiffs' TRO request to reinstate their SEVIS records be rescheduled for Thursday, April 24, 2025 at 11:00 a.m. in order to give

---

[3] Since plaintiffs' APA claim is sufficient to merit a TRO, the Court does not find it necessary to rule on plaintiffs' constitutional claims at this time.

9

Judge White time to determine whether to relate the cases. Plaintiffs may file a reply brief by 11:00 a.m. on Tuesday, April 22, 2025.

**IT IS SO ORDERED**.

Dated: April 18, 2025

SUSAN ILLSTON
United States District Judge