1  PATRICK D. ROBBINS (CABN 152288)
   Acting United States Attorney
2  PAMELA T. JOHANN (CABN 145558)
   Chief, Civil Division
3  ELIZABETH D. KURLAN (CABN 255869)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: 415-436-7200
6       Facsimile: 415-436-6748
        elizabeth.kurlan@usdoj.gov
7
   Attorneys for Defendants
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

12  ZHUOER CHEN, *et al.*,                    )  Case No. 3:25-cv-03292-SI
                                              )
13        Plaintiffs,                         )  **DEFENDANTS' OPPOSITION TO**
                                              )  **PLAINTIFFS'MOTION FOR TEMPORARY**
14     v.                                     )  **RESTRAINING ORDER**
                                              )
15  KRISTI NOEM, in her official capacity as  )
   Secretary of the U.S. Department of Homeland )
16  Security, *et al.*,                       )  The Honorable Susan Illston
                                              )
17        Defendants.                         )
                                              )

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPPOSITION TO TRO
3:25-CV-03292 SI

1    **I.    INTRODUCTION**

2         Plaintiffs are four international students enrolled at universities in the United States in F-1

3    nonimmigrant student status. Plaintiffs seek a temporary restraining order ("TRO") compelling the

4    United States Department of Homeland Security ("DHS") to change their record in a database known as

5    the Student Exchange Visitor Information System ("SEVIS"). The Court should deny this request

6    because it is procedurally and substantively improper. Congress mandated that DHS, through the United

7    States Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program

8    ("SEVP"), "develop and conduct a program" to collect certain information from approved institutions of

9    higher education in the United States with respect to foreign nationals seeking F-1 student status. *See* 8

10   U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established SEVIS. Consistent with its law

11   enforcement mission as it relates to foreign students, SEVP changed Plaintiffs' record in the SEVIS

12   database from "active" to "terminated." SEVP's ministerial action did not delete Plaintiffs from the

13   database or terminate their F-1 nonimmigrant student status. Moreover, at this time, ICE has not charged

14   any Plaintiff as being deportable.

15        Plaintiffs are unlikely to succeed on the merits of their claim. An emergency motion for a

16   temporary restraining order may only be used to maintain the status quo; it cannot be used to obtain the

17   ultimate relief Plaintiffs seek in this case, which is the alteration of their SEVIS record. In addition, the

18   premise of Plaintiffs' claim is incorrect—SEVIS does not control or necessarily even reflect whether a

19   student has lawful nonimmigrant status. Plaintiffs erroneously conflate their SEVIS record change to

20   reflect "terminated," with their immigration status, which is their legal classification in the United

21   States; these are two very different concepts and, as stated above, Plaintiffs' F-1 status remains

22   unchanged. Similarly, plaintiffs have not met their burden of demonstrating a likelihood of irreparable

23   harm or that a restraining order would serve the public interest. As a district court recently held in a case

24   presenting similar claims, "the balance of factors favors denying the motion [for TRO]" where [i]t is not

25   currently clear that Plaintiffs have lost F-1 status or that the SEVIS terminations carry independent

26   consequences." *Deore v. Secretary of the U.S. Dep't of Homeland Security*, No. 25-cv-11038, slip op., at

27   *16 (E.D. Mich. Apr. 17, 2025) (ECF No. 20); *see also Liu v. Noem*, No. 25-cv-716, slip op., at *1 (S.D.

28   Ind. Apr. 17, 2025) (ECF No. 24) (denying motion for TRO because plaintiffs had not established that

1    they would suffer irreparable harm when plaintiffs were not in removal proceedings). Plaintiffs do not

2    meet the standards for a TRO, let alone the higher standard they would need to meet for the mandatory

3    injunction they seek to alter the status quo. Accordingly, the Court should deny Plaintiffs' motion for a

4    TRO.

5    **II.    BACKGROUND**

6        **A.    The F-1 Nonimmigrant Student Status**

7        The Immigration and Nationality Act ("INA"), as amended, allows for the entry of a foreign

8    national who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the

9    United States temporarily and solely for the purpose of pursuing such a course of study. . . at an

10   established college, university, seminary, conservatory, academic high school, elementary school, or

11   other academic institution or in an accredited language training program in the United States." 8 U.S.C.

12   § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). As relevant here, to be admitted in F-1 status, an

13   applicant must present a Form I-20, issued by a certified school in the student's name; present

14   documentary evidence of financial support; and demonstrate he or she intends to attend the school

15   specified on the student's visa. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a nonimmigrant student

16   must "pursue a full course of study" or "engage in authorized practical training." *Id.* § 214.2(f)(5)(i).

17       Individuals admitted in F-1 status are permitted to remain in the United States for the duration of

18   status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time

19   during which an F-1 student is pursuing a full course of study at an educational institution certified by

20   SEVP for attendance by foreign students, or engaging in authorized practical training following

21   completion of studies." 8 C.F.R. § 214.2(f)(5). An F-1 student admitted for the duration of status who is

22   found to have violated his status (by, for example, dropping out of school) will not be considered to be

23   unlawfully present in the United States until either (1) the day after a request for another immigration

24   benefit is denied by U.S. Citizenship and Immigration Services ("USCIS"); or (2) during removal

25   proceedings, the day after an Immigration Judge enters an order that the foreign national violated his

26   nonimmigrant status. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance

27   Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the

28   Act," found online at:

1   https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited

2   Apr. 18, 2025); *see also* 8 C.F.R. § 239.3.

3       An international student may violate the terms of his or her F-1 nonimmigrant status in several

4   ways. First, if the international student violates any of the terms in the regulations governing

5   nonimmigrant students, they may lose their F-1 status. *See* 8 C.F.R. § 214.1(d) (addressing termination

6   of F-1 status); 8 C.F.R. § 214.2(f) (describing the requirements of maintaining nonimmigrant student

7   status); *see also* 8 U.S.C. § 1184(a)(1). For instance, if an "F-1 student [] is unable to complete the

8   educational program within the time listed on Form I–20" they are "considered out of status." 8 C.F.R. §

9   214.2(f)(7). And, if a nonimmigrant student fails to comply with the other regulations at 8 C.F.R. §

10  214.2(f), he or she may become inadmissible and "will depart from the United States." 8 U.S.C. §

11  1184(a)(1). If a student loses nonimmigrant student status, the student or the school may seek

12  reinstatement. *See* 8 C.F.R. § 214.2(f)(16).

13      Second, an "immediate" visa revocation may result in a student falling out of F-1 status. The

14  United States Department of State may revoke an F-1 visa "at any time, in [the Secretary of State's]

15  discretion." 8 U.S.C. § 1201(i); 22 C.F.R. § 41.122(a). A revocation may be immediate, prudential, or

16  provisional. *See* 22 C.F.R. §§ 41.122(b), 42.82. If the Department of State immediately revokes a visa,

17  the individual is removable under 8 U.S.C. § 1227(a)(1)(B). In contrast, a prudential revocation, or

18  revocation upon departure, does not have a corresponding ground of removability. *See* 9 Foreign Affairs

19  Manual ("FAM") 403.11-5(B), (U) (Prudential Revocations). Meanwhile, a "provisional revocation is

20  subject to reversal through internal procedures established by the Department of State." 22 C.F.R.

21  § 41.122(b).

22      **B.      SEVIS Records**

23      To enhance the integrity of the immigration system in the wake of the September 11, 2001,

24  terrorist attacks, Congress mandated that "[t]he [Secretary of Homeland Security], in consultation with

25  the Secretary of State and the Secretary of Education, . . develop and conduct a program to collect

26  [certain information] from approved institutions of higher education, other approved educational

27  institutions, and designated exchange visitor programs in the United States [certain information] with

28  respect to aliens who have the status, or are applying for the status, of nonimmigrants under

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                      3

1    subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). Under this

2    authority, DHS created SEVIS, "which is a web-based system" that DHS, through SEVP, "uses to

3    maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students

4    who come to the United States to attend those schools, U.S. Department of State-designated Exchange

5    Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See ICE, Student and*

6    *Exchange Visitor Information System*, found online at: https://www.ice.gov/sevis/overview (last visited

7    Apr. 18, 2025). Under 8 U.S.C. § 1372, Congress has provided DHS, through SEVP, with broad

8    authority to administer SEVIS. Inherent in that authority is SEVP's ability to maintain, update and

9    change SEVIS records as needed (*e.g.*, from "active to "terminated") to carry out the purposes of the

10   program. *See* Declaration of Andre Watson ("Watson Decl."), ¶¶ 3, 4. Notably, SEVP's termination of a

11   foreign national's record in SEVIS does not terminate that person's nonimmigrant status in the United

12   States. Watson Decl. ¶ 18. Moreover, the statute does not provide SEVP the authority to terminate a

13   foreign national's nonimmigrant status by terminating his SEVIS record. *Id.*

14        DHS updates SEVIS to reflect the status of international students within the Student and Visitor

15   Exchange Program. 8 U.S.C. § 1372; Watson Decl. ¶¶ 3–4. In addition, school officials are required to

16   update SEVIS with information about students in the program. *See* 8 C.F.R. § 214.3(g)(1).

17   **III.    RELEVANT FACTS**

18        Plaintiff Zhuoer Chen is a citizen and national of China, who was last admitted to the United

19   States as an F-1 nonimmigrant visa holder. Watson Dec. ¶ 7. Plaintiff Chen's information was run

20   against criminal databases and was a verified match to a criminal history record for an arrest on

21   November 27, 2022. *Id.* At that time, the disposition of the charge was unknown. *Id.* On April 7, 2025,

22   DHS received communications from the Department of State indicating that Plaintiff's visa was not

23   valid and requested termination of the SEVIS record. *Id.* ¶ 8. On April 8, 2025, SEVP amended

24   Plaintiff's SEVIS record by setting the record designation to "terminated." *Id.* ¶ 9.

25        Plaintiff Mengcheng Yu is a citizen and national of China, who was last admitted to the United

26   States as an F-1 nonimmigrant visa holder. Watson Dec. ¶ 10. Plaintiff Yu's information was run against

27   criminal databases and was a verified match to a criminal history record for an ICE encounter on

28   May 31, 2016. *Id.* On April 4, 2025, SEVP amended Plaintiff Yu's SEVIS record by setting the record

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                          4

1    designation to "terminated." Watson Dec. ¶ 11.

2        Plaintiff Jiarong Ouyang is a citizen and national of China, who was last admitted to the United

3    States as an F-1 nonimmigrant visa holder. Watson Dec. ¶ 12. Plaintiff Ouyang's information was run

4    against criminal databases and was a verified match to a criminal history record regarding an arrest on

5    January 4, 2019. *Id.* At that time, records show that the charge was dismissed. *Id.* On April 7, 2025,

6    DHS received communications from the Department of State indicating that Plaintiff Ouyang's visa was

7    not valid and requested termination of the SEVIS record. *Id.* ¶ 13. On April 8, 2025, SEVP amended

8    Plaintiff Ouyang's SEVIS record by setting the record designation to "terminated." *Id.* ¶ 14.

9        Plaintiff Gexi Guo is a citizen and national of China, who was last admitted to the United States

10   as an F-1 nonimmigrant visa holder. Watson Decl. ¶ 15. Plaintiff Guo's information was run against

11   criminal databases and was a verified match to a criminal history record relating to an arrest on May 19,

12   2024. *Id.* At that time, the disposition of the charge was unknown. *Id.* On April 8, 2025, SEVP amended

13   Plaintiff Guo's SEVIS record by setting the record designation to "terminated." *Id.* ¶ 16. On April 16,

14   2025, DHS received communications from the Department of State indicating that Plaintiff Guo's visa

15   was revoked. *Id.* ¶ 17.

16       On April 11, 2025, Plaintiffs filed a complaint in which they bring four claims for relief, alleging

17   that Defendants' termination of their records in the SEVIS system is a final agency action that violates

18   the Administrative Procedure Act ("APA"), and that Defendants violated the Due Process Clause of the

19   Fifth Amendment by terminating their F-1 student status under the SEVIS system without individualized

20   notice and an opportunity to respond. Dkt. No. 1 (Plaintiffs' Complaint) ¶¶ 39–58. In their complaint,

21   Plaintiffs request a Court order compelling DHS to restore their SEVIS records and "F-1 status." Dkt.

22   No. 1 at 13.

23       On April 15, 2025, Plaintiffs filed a motion for TRO. Dkt. No. 7 (Plaintiffs' Motion for TRO). In

24   their emergency motion, Plaintiffs seek the same relief as requested in their complaint but ask the Court

25   to issue it on an emergency interim basis not only for them but also for "all other affected F-1 students."

26   Dkt. No. 7 at 1.

27   **IV.    LEGAL STANDARD**

28       The standard for issuing a temporary restraining order and issuing a preliminary injunction are

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                        5

1    substantially identical. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

2    (9th Cir. 2001). Either is an "extraordinary remedy" that the Court should award only upon a clear

3    showing that the party is entitled to such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

4    (2008). Preliminary injunctions are "never awarded as of right." *Winter*, 555 U.S. at 24.

5         A plaintiff seeking preliminary injunctive relief must establish that: (1) they are likely to succeed

6    on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the

7    balance of equities tips in their favor; and (4) an injunction is in the public interest." *Garcia v. Google*,

8    Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20). Alternatively, plaintiff can show

9    that there are "'serious questions going to the merits' and the 'balance of hardships tips sharply towards'

10   [plaintiff], as long as the second and third *Winter* factors are [also] satisfied." *Disney Enters., Inc. v.*

11   *VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). "[P]laintiffs seeking a preliminary injunction face a

12   difficult task in proving that they are entitled to this extraordinary remedy." *Earth Island Inst. v.*

13   *Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). Plaintiffs' burden is aptly described as a "heavy" one. *Earth*

14   *Island Inst.*, 626 F.3d at 469.

15        The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties

16   until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094

17   (9th Cir. 2010). A preliminary injunction may not be used to obtain "a preliminary adjudication on the

18   merits," but only to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix*

19   *Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

20        Accordingly, where a plaintiff seeks mandatory injunctive relief—seeking to alter the status

21   quo—"courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th

22   Cir. 1994). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite*

23   and is particularly disfavored." *Stanley*, 13 F.3d at 1320 (internal quotations and alteration omitted). A

24   mandatory injunction "should not be issued unless the facts and law clearly favor the moving party."

25   *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctions "are not granted

26   unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Anderson*, 612

27   F.2d at 1115. A party seeking a mandatory injunction "must establish that the law and facts *clearly favor*

28   her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original).

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                          6

1    **V.    ARGUMENT**

2        **A.        Plaintiffs' Requested Relief for a Judgment on the Merits is Inappropriate.**

3        The Court should deny Plaintiffs' emergency motion because it seeks inappropriate relief at this

4    stage of the proceeding and because Plaintiffs cannot demonstrate their entitlement to the extraordinary

5    remedy of a temporary restraining order or preliminary injunction. The purpose of a TRO under Rule 65

6    is to preserve the status quo. *See Sierra On-Line, Inc*, 739 F.2d at 1422; *see also Lackey v. Stinnie*, 145

7    S. Ct. 659, 667 (2025) ("The purpose of a preliminary injunction is merely to preserve the relative

8    positions of the parties until a trial on the merits can be held and to balance the equities as the litigation

9    moves forward.") (quotation and citation omitted). As a matter of law, Plaintiffs are not entitled to what

10   amounts to a judgment on the merits at this preliminary stage. *See Mendez v. U.S. Immigration &*

11   *Customs Enforcement*, No. 23-cv-829-TLT, 2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (noting

12   that "judgment on the merits in the guise of preliminary relief is a highly inappropriate relief.")

13   (quotation omitted).

14       Here, Plaintiffs seek relief that is inappropriate on a motion for TRO. With respect to Plaintiffs'

15   request that the Court order DHS to reinstate their SEVIS record, Plaintiffs do not seek to maintain the

16   status quo but, instead, seek to alter it. Before Plaintiffs filed this suit, DHS had updated the SEVIS

17   system to terminate their status. Watson Decl. ¶¶ 7–17. DHS received information of criminal history

18   related to the Plaintiffs and, as a result, noted on each Plaintiff's SEVIS record "terminated." *Id.*

19   Additionally, the ultimate relief Plaintiffs seek is the reinstatement of their SEVIS record. *See* Dkt. No. 1

20   at 13. Accordingly, the status quo is that Plaintiffs' SEVIS record has been terminated and Plaintiffs'

21   request for an emergency order changing that status is inappropriate.

22       While Plaintiffs assert a challenge to SEVP's change to their SEVIS record, they also improperly

23   request relief relating to their F-1 nonimmigrant status. *See* Dkt. No. 1 at 13. Plaintiffs' SEVIS records

24   are not the same thing as their F-1 nonimmigrant status. *See Deore*, No. 25-cv-11038, slip op., at *6

25   (noting that, "according to Watson's declaration, a clerical change in SEVIS does not create a

26   termination of F-1 status"). As explained in the Watson declaration, changing a data entry field in a

27   SEVIS record to "terminated" (as opposed to initial, active, inactive, or completed) neither deletes the

28   SEVIS record nor terminates the foreign national's F-1 nonimmigrant status. Watson Decl. ¶¶ 4, 18.

1  SEVIS is a database to monitor and verify certain information about F, M, and J nonimmigrants

2  administered by SEVP. *Id.* ¶ 4. The applicable statute, 8 U.S.C. § 1372, does not provide SEVP with the

3  authority to terminate nonimmigrant status by changing a SEVIS record. *Id.* ¶ 18. Indeed, F-1

4  nonimmigrant status is held for duration of status (or "D/S") and can only be determined to have ended

5  in very specific set of circumstances. *See supra* Part II.A; USCIS Memorandum on May 6, 2009,

6  "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and

7  212(a)(9)(C)(i)(1) of the Act," found online at:

8  https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited

9  Apr. 18, 2025); 8 C.F.R. § 239.3.

10      Here, SEVP "has never claimed" that it terminated Plaintiffs' nonimmigrant status. Watson Decl.

11  ¶ 18. Moreover, as Plaintiffs concede, the Department of State's prudential revocation of the visas of

12  some Plaintiffs alone does not automatically revoke F-1 status. *See* Dkt. No. 7 at 5; *see also Deore*,

13  No. 25-cv-11038, slip op., at *7 (noting that prudential visa revocation "does not automatically revoke

14  "F-1 status"). This is because a visa, which is a travel document that allows an individual to enter the

15  United States, is not the same as immigration status, which is an individual's legal classification in the

16  United States. Therefore, Plaintiffs have not presented a valid case or controversy before the Court

17  regarding their nonimmigrant status. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 (1992).

      **B.**       **Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits.**

18

           **1.**      **Plaintiffs' Due Process claims fail because they do not have a property**

19                             **interest in a SEVIS record.**

20

21      Plaintiffs seek relief pursuant to the Due Process Clause and the APA but they are unlikely to

22  succeed under either theory. Plaintiffs assert that the "termination of the F-1 student status" violates the

23  Due Process Clause of the Fifth Amendment. Dkt. No. 7 at 12. But as indicated, SEVP changed

24  Plaintiffs' SEVIS records to "terminated" and did not terminate their nonimmigrant status. Watson Decl.

25  ¶ 18. Plaintiffs have no likelihood of success on the merits of their due process claim because courts

26  have held that there is no property interest in a SEVIS record.

27      In order to establish a procedural due process claim under the Fifth Amendment, "a plaintiff

28  must (1) 'identify a protected liberty or property interest,' and (2) 'allege that the defendants . . .

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                                  8

1   deprived [him] of that interest without constitutionally adequate process.'" *Air Sunshine, Inc. v. Carl*,

2   663 F.3d 27, 34 (1st Cir. 2011) (quotation omitted). Plaintiffs have not, and cannot, provide any

3   authority to establish a constitutionally protected interest in a SEVIS record. This is because the opposite

4   is true—courts have held that no such interest exists. *See, e.g., Yunsong Zhao v. Va. Polytechnic Inst. &*

5   *State Univ.*, 2018 WL 5018487, at \*6 (W.D. Va. Oct. 16, 2018) (holding that plaintiff did not have a

6   property interest in his SEVIS record that would implicate due process). Here, as in *Zhao*, Plaintiffs do

7   not have a constitutionally protected property interest in their SEVIS record. SEVIS is an administrative

8   processing tool that does not affect their lawful nonimmigrant status. *See Zhao*, 2018 WL 5018487, at

9   \*4–5. Accordingly, Plaintiffs fail to demonstrate a likelihood of success on the merits of their due

10  process claim.

11          **2.      Plaintiff's APA claims fail because another statute provides an adequate**
               **remedy, there is no final agency action, and the agency's action was not**
12             **arbitrary and capricious.**

13          The Court cannot hear Plaintiffs' challenge to the contents of their SEVIS records under the

14  APA because the APA's waiver of sovereign immunity does not extend to such a claim. Rather,

15  Congress established the Privacy Act of 1974 to address claims related to information held in

16  government databases. "The doctrine of sovereign immunity removes subject matter jurisdiction in

17  lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125

18  F.3d 965, 967 (6th Cir. 1997). "Although the APA provides a broad waiver of sovereign immunity,

19  codified at 5 U.S.C. § 702, the waiver is limited by . . . § 701(a)(1) [which] provides that Chapter 7 of

20  the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which 'statutes

21  preclude judicial review.'" *Id.*

22          Plaintiffs claim that DHS unlawfully changed the status of their SEVIS record to terminated and

23  that action was the result of a misapplication of agency regulations. Congress enacted the Privacy Act to

24  address squarely this type of grievance. *See* 5 U.S.C. § 552a(b). The Privacy Act addresses records held

25  in government databases. *Id.*

26          Here, the Privacy Act bars Plaintiffs' APA claim. The Privacy Act allows individuals to

27  challenge data contained in a government system of records in federal court and establishes a

28  comprehensive scheme for such claims. *See* 5 U.S.C. § 552a(g)(1). However, that statute prohibits most

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                              9

1    noncitizens from filing suit challenging records under the Privacy Act. *See* 5 U.S.C. §§ 552a(a)(2).

2    Therefore, Plaintiffs do not have a valid claim under the APA because the Privacy Act bars such claims.

3    *See* 5 U.S.C. §§ 701–704; As such, the United States has not waived sovereign immunity. *See* 5 U.S.C.

4    § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28

5    (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583

6    F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian

7    citizen, to assert a claim under the Privacy Act."). Moreover, the Court would lack jurisdiction over any

8    such a claim because Plaintiff has not exhausted their administrative remedies. *Williams v. Bezy*, 97 F.

9    App'x 573, 574 (6th Cir. 2004); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 40–41 (D.C. Cir. 1987).

10         Even if the Privacy Act does not preclude APA review of Plaintiffs' claims, they still fail to

11    assert a viable claim under the APA because SEVP's change to Plaintiffs' SEVIS records are not a final

12    agency action. A final agency action is required for APA review. 5 U.S.C. § 706. An action is "final"

13    when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is one "from

14    which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted).

15    A challenged action fails the first prong if it is "of a merely tentative or interlocutory nature" and does

16    not express an agency's "unequivocal position." *Holistic Candlers and Consumer's Ass'n v. FDA*, 664

17    F.3d 940, 943 (D.C. Cir. 2012) (citations omitted). A non-final action contemplates further

18    administrative consideration or modification prior to the agency's adjudication of rights or imposition of

19    obligations. *See id.* at 945.

20         SEVP's change to Plaintiffs' SEVIS records fails to meet both factors of the final agency action

21    test. First, the change does not mark the consummation of any decision-making process. SEVIS records

22    are "an electronic means to monitor and verify" certain information about a student nonimmigrant. *See*

23    Watson Decl. ¶ 4; 8 U.S.C. § 1372(c). And changing a SEVIS record to "terminated" does not terminate

24    a foreign national's nonimmigrant status in the United States. Watson Decl. ¶ 11. Thus, the SEVIS

25    record—indicating initial, active, inactive, completed or terminated—does not reflect the consummation

26    of any agency decision-making process regarding a student's nonimmigrant status.

27    Second, legal consequences do not flow from the mere changing of a SEVIS record to terminated. As

28    indicated, it does not terminate the student's nonimmigrant status or result in the revocation of a

1    nonimmigrant visa. Watson Decl. ¶ 18. Rather, it is a record keeping action conducted under DHS's

2    authority to collect information and maintain records under 8 U.S.C. § 1372. *See Zhao*, 2018 WL

3    5018487, at *6 (describing SEVIS record modification by school's DSO as "clerical duty performed as a

4    preliminary matter"); *see also Yerrapareddypeddireddy v. Albence*, No. 20-cv-1476, 2021 WL 5324894,

5    at *22 (D. Ariz. Nov. 16, 2021) (similar as to ICE's termination of a SEVIS record).

6          Plaintiffs rely on *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172,

7    182 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action under the

8    APA, but their reliance is misguided. In *Jie Fang*, the district court dismissed plaintiffs' APA claims

9    after finding that DHS's revocation of their nonimmigrant status was not final under the APA and that

10   the suit was not ripe because the students could challenge their revocation in immigration removal

11   proceedings. 935 F.3d at 177–78. On appeal, the Third Circuit reversed on both points and remanded for

12   further proceedings because it concluded that the regulation providing for reinstatement of F-1

13   nonimmigrant status (8 C.F.R. § 214.2(f)(16)) was not mandatory and that the regulatory appeal

14   procedure was not reviewable in immigration proceedings. *Jie Fang*, 935 F.3d at 177–78. *Jie Fang* is

15   not persuasive in this case. The issue in *Jie Fang* was not the termination of a SEVIS record; it was the

16   termination of lawful nonimmigrant status, which led to the agency placing the students in immigration

17   removal proceedings. *See Jie Fang*, 935 F.3d at 178–79.

18         If an action is reviewable under the APA, a court may set aside agency action that is "arbitrary,

19   capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under the

20   arbitrary or capricious standard, the party challenging the agency's action must show that the action had

21   no rational basis or that it involved a clear and prejudicial violation of applicable statutes or

22   regulations." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th

23   Cir. 2002) (quotations omitted).

24         Here, DHS's termination of Plaintiffs' SEVIS records was not arbitrary and capricious. SEVIS

25   records may be terminated for numerous reasons by DHS and by a university. *See supra* II.B. DHS

26   received information of criminal history related to the Plaintiffs and, as a result, noted on each Plaintiff's

27   SEVIS record "terminated." Watson Decl. ¶¶ 7–17. This is a valid reason for terminating a SEVIS

28   record. *See supra* II.B. Accordingly, Plaintiffs could not succeed on their APA claim based on the

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                    11

1    evidence in the record at this stage, even if the termination of their SEVIS record were reviewable under

2    the APA.

3    　　　Plaintiffs also allege that DHS lacks the authority to change a SEVIS record under 8 C.F.R.

4    § 214.1(d). Dkt. No. 7 at 14. They are incorrect. Part 214.1(d) relates to the termination of a foreign

5    national's nonimmigrant status—not his SEVIS record. *See* 8 C.F.R. § 214.1(d) ("the nonimmigrant

6    status of an alien shall be terminated by…"). And as SEVP has indicated, it "has never claimed that it

7    had terminated the Plaintiffs' nonimmigrant statuses." Watson Decl. ¶ 18. Moreover, Section 214.1(d)

8    provides three mandatory scenarios in which nonimmigrant status "shall" be terminated without review.

9    *See* 8 C.F.R. § 214.1(d). It does not, however, suggest that nonimmigrant status cannot be terminated for

10    other reasons. *See id.* The plain text of the regulation controls. *Textron Inc. v. Comm'r of Internal*

11    *Revenue*, 336 F.3d 26, 31 (1st Cir. 2003). Part 214.1(d) provides reasons for terminating nonimmigrant

12    status in addition to reasons provided elsewhere in the applicable statutory provisions and regulations.

13    *See*, *e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f). But here, Congress tasked DHS with the broad

14    authority to "develop and conduct a program" to record information about nonimmigrant students in an

15    electronic database. 8 U.S.C. § 1372(a)(1). DHS can update, change or modify the records for that

16    program because of its congressionally mandated authority to "conduct" the SEVIS program. *Id.*

17    　　　**C.　　　Plaintiffs Cannot Establish a Likelihood of Immediate Irreparable Harm.**

18    　　　"[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury

19    is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for

20    extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190,

21    204 (D.D.C. 2005) (quotation omitted). In addition, "the certain and immediate harm that a movant

22    alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Priv. Info. Ctr.*

23    *v. U.S. Dep't of Just.*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (quotation omitted). The movant must

24    "substantiate the claim that irreparable injury is likely to occur" and "provide proof . . . indicating that

25    the harm is certain to occur in the near future." *Wis. Gas Co v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir.

26    1995). That is because "issuing a preliminary injunction based only on a possibility of irreparable harm

27    is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary

28    remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                        12

1   Here, Plaintiffs have not demonstrated a likely irreparable injury. See *Liu*, No. 25-cv-716, slip

2   op., at *9 (concluding that "Plaintiffs have not demonstrated irreparable harm to warrant the

3   extraordinary exercise of judicial power required" to issue a TRO based on the SEVIS record alteration).

4   Plaintiffs first argue that a violation of their due process rights constitutes irreparable injury. However,

5   as described above, they have not plausibly alleged that their due process rights have been, or will be,

6   violated.

7   Second, Plaintiffs argue that they "face a risk of detention and deportation.. However, that harm

8   is not likely because DHS has not initiated removal proceedings against any of the Olaintiffs. Watson

9   Decl. ¶¶ 7–17). And, in any event, the mere risk of detention and removal is not sufficient to establish

10  irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("It is accordingly plain that the burden

11  of removal alone cannot constitute the requisite irreparable injury.")

12  Third, Plaintiffs argue that the interruption of their studies constitutes irreparable harm.

13  However, they offer no evidence regarding whether they sought reconsideration or reinstatement

14  through the proper procedures or whether they can transfer their credits to universities in their home

15  country or in other comparable countries, such as Canada, or in Europe. See 8 C.F.R. § 214.2(f)(16); 22

16  C.F.R. § 41.122(b). Therefore, they have not developed a sufficient record to establish that their injury is

17  not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 579.

18  **D.    The Balance of Harms and the Public Interest Weighs Against Relief.**

19  Granting a preliminary injunction would be contrary to the public interest. The balance of harms

20  and the public interest elements of the injunctive relief test merge when the government is the opposing

21  party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public

22  consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*,

23  456 U.S. 305, 312-13 (1982). Entry of a preliminary injunction would be contrary to the public interest

24  here.

25  Here, Plaintiffs have not met their burden of establishing that the balance of equities or the

26  public interest weigh in their favor. Plaintiffs' only argument on this point is that DHS allegedly

27  wrongfully terminated their SEVIS record. However, as noted above, Plaintiffs are incorrect on the

28  merits and, even if they were not, this allegation alone is not sufficient to demonstrate that the balance of

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                             13

1  equities or the public interest weighs in favor of a preliminary injunction in this case. *See Nken*, 556 U.S.

2  at 435–36.

3          **E.      If Injunctive Relief Is Granted, It Should Be Limited to The Named Plaintiffs.**

4          Plaintiffs' proposed order seeks the reinstatement of SEVIS records not only for Plaintiffs but

5  also for "all other affected F-1 students who have no record of criminal conviction and whose SEVIS

6  records and F-1 visa status have been terminated or revoked since March 1, 2025." Dkt. No. 7-11 at 2.

7  Plaintiffs have not met their burden of establishing that a nationwide temporary restraining order is

8  warranted. Under settled constitutional and equitable principles, the Court may not issue relief that is

9  broader than necessary to remedy actual harm shown by specific plaintiffs. *Gill v. Whitford*, 585 U.S.

10  48, 73 (2018). An injunction "must be tailored to redress the plaintiff's particular injury," *id.*, and

11  "injunctive relief should be no more burdensome to the defendant than necessary to provide complete

12  relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation

13  omitted); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018).

14          A broader scope is not necessary to provide Plaintiffs complete relief in this case. Although they

15  argue that "similarly situated students" will suffer irreparable harm, this is not a putative class action,

16  and Plaintiffs have made no showing that the harm suffered by *others* will cause irreparable harm to

17  *them*. Unlike other cases in which a nationwide injunction has been granted in this Circuit, a narrower,

18  plaintiff-specific remedy is both feasible and will provide complete relief. *Cf. E. Bay Sanctuary*

19  *Covenant v. Trump*, 354 F. Supp. 3d 1094, 1121 (N.D. Cal. 2018), *aff'd*, 950 F.3d 1242 (9th Cir. 2020),

20  *and aff'd sub nom. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021). Moreover, this

21  case challenges the exercise of agency discretion rather than a rule of universal applicability. Relief for

22  the four plaintiffs does not require programmatic relief but can be achieved by enjoining the agency's

23  actions with respect to those specific individuals. *Cf. Regents of the Univ. of California v. U.S. Dep't of*

24  *Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018), *rev'd in part, vacated in part sub nom. Dep't of*

25  *Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020). Finally,

26  as the Watson declaration establishes, the individual plaintiffs each present different facts that implicate

27  different agency considerations. Chen, for example, did not have a valid visa at the time of termination.

28  Watson Decl. ¶ 7.  CTLD was unable to ascertain the disposition of Guo's criminal arrest. *Id.* ¶ 15.

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                                14

1  Accordingly, neither the merits of the dispute nor the impact of the agency action is necessarily common

2  to all students. From a practical perspective, moreover, because CTLD cannot always determine the

3  disposition of a criminal arrest, it may not be possible for Defendants to determine on a case-by-case

4  basis whether the arrest resulted in criminal conviction. Party-specific relief, therefore, is both feasible

5  and appropriate in this case.

6       **F.**     **If Injunctive Relief Is Ordered the Court Should Require Plaintiffs To Post An Appropriate Bond.**

7

8       Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining

9  order only if the movant gives security in an amount that the court considers proper to pay the costs and

10  damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.

11  65(c). If the Court grants a TRO or preliminary injunctive relief, Defendants respectfully request that the

12  Court require Plaintiffs to post security during the pendency of the Court's Order in an amount that the

13  Court considers appropriate under Rule 65(c).

14  **VI.**     **CONCLUSION**

15       For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs'

16  motion for a TRO.

17

18  DATED:  April 18, 2025                Respectfully submitted,

19                                           PATRICK D. ROBBINS
            Acting United States Attorney

20

21                                           *s/ Elizabeth D. Kurlan*
            ELIZABETH D. KURLAN

22                                           Assistant United States Attorney

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO TRO
3:25-CV-3292 SI                      15