Andre Y. Bates (SBN 178170) (aybates@dehengsv.com)
Steven A. Soloway (SBN 130774) (ssoloway@dehengsv.com)
Keliang (Clay) Zhu (SBN 305509) (czhu@dehengsv.com)
Yi Yao (SBN 292563) (yyao@dehengsv.com)
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-6702
F: 925-397-1976

*Attorneys for Plaintiffs*
*Zhuoer Chen, Mengcheng Yu,*
*Jiarong Ouyang, and Gexi Guo*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHUOER CHEN, an individual; MENGCHENG YU, an individual; JIARONG OUYANG, an individual; and GEXI GUO, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement;<br><br>Defendants. | Case No. 3:25-cv-03292<br><br>**REPLY IN SUPPORT OF MOTION FOR NATIONWIDE TEMPORARY RESTRAINING ORDER** |

I.  **INTRODUCTION**

Defendants' opposition rests on two flawed premises: (1) that termination of a student's Student Exchange Visitor Information System ("SEVIS") record is a minor administrative update with no legal consequence; and (2) that Plaintiffs have failed to demonstrate either a statutory or constitutional violation or irreparable harm.

The declaration submitted by Defendants confirms that the SEVIS terminations were based on vague database matches and visa revocation communications—not individualized findings of grounds for any terminations. Plaintiffs were given neither notice, nor an explanation of how their SEVIS records were targeted, nor any opportunity to respond. That process—or lack thereof—violates well-established procedural protections and exceeds the narrow limits on agency-initiated SEVIS terminations under 8 C.F.R. § 214.1(d).

Termination of a SEVIS record has immediate and irreversible legal consequences including the loss of lawful presence, ineligibility for educational and work benefits, and the risk of long-term reentry bars. The United States Department of Homeland Security ("DHS") cannot characterize SEVIS termination as harmless while relying on it to cut off students' rights. Plaintiffs have shown a likelihood of success on their claims under the Administrative Procedure Act ("APA") and the Fifth Amendment. They face concrete immediate and irreparable harm, and seek narrowly tailored relief that is both manageable and essential to prevent recurring violations.

II. **ARGUMENT**

   A.   **SEVIS Termination Constitutes Final Agency Action.**

Defendants contend that the termination of a student's SEVIS record is not final agency action under the APA, arguing that it is merely a nonbinding data entry that does not directly affect Plaintiffs' legal status. Defendants' position is both legally and factually incorrect.

As the Third Circuit made clear in *Fang v. Director United States Immigration and Customs Enforcement*, 935 F.3d 172, 182–85 (3d Cir. 2019), the termination of a SEVIS record is not a clerical update—it is the consummation of DHS's decision-making process and has direct and immediate legal consequences. The court in *Fang* held that a change in SEVIS status from "Active" to "Terminated" was reviewable under the APA because it automatically rendered the student out of status, cut off immigration benefits and exposed the student to penalties. This conclusion aligns with the standard for finality established in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), which holds that agency action is final when it marks the end of the decision-making process and imposes legal consequences or obligations.

The government's attempt to recharacterize SEVIS termination as a preliminary, internal step also ignores its own procedures. Once a student's SEVIS record is terminated, schools are required to notify the student and DHS that the student is no longer maintaining status, and the student is immediately removed from lawful presence. This automatically triggers the accrual of unlawful presence, which can lead to three- or ten-year bars to reentry under 8 U.S.C. § 1182(a)(9)(B).

As a final point, the government suggests that SEVIS termination is not binding because students may later apply for reinstatement. But this misunderstands the finality analysis under *Bennett v. Spear*, which does not require that agency action be irrevocable—only that it marks the end of the agency's decision-making process and determines legal rights or obligations. *See Bennett*, 520 U.S. at 177-78. *Fang* reaffirmed that the need to seek discretionary reinstatement only underscores the finality of SEVIS termination, as it places the burden on the student to overcome the agency's prior action. *See Fang*, 935 F.3d at 182-83.

**B.      Plaintiffs Have a Protected Interest in F-1 Status and Were Denied Due Process.**

1    Defendants argue that Plaintiffs lack any constitutionally protected interest in their
2    SEVIS status, characterizing it as a mere administrative designation. But this argument
3    misrepresents both Plaintiffs' claim and the well-settled legal standard governing due process
4    rights for noncitizens lawfully present in the United States.

5    Plaintiffs do not assert a protected interest in the SEVIS database entry itself. They assert
6    a liberty and property interest in their F-1 student status, which permits them to reside in the
7    United States, pursue higher education, and engage in authorized practical training. This interest
8    is far from speculative. Courts have repeatedly held that noncitizens physically present in the
9    United States under color of law are entitled to the protections of the Due Process Clause. *See*
10   *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (holding that due process applies to noncitizens
11   physically present in the U.S. even if not admitted); *Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir.
12   1997) ("It is well established that the Fifth Amendment entitles aliens to due process of law in
13   deportation proceedings..."); *Yamataya v. Fisher*, 189 U.S. 86 (1903).

14   The government's assertion that SEVIS termination does not require due process because
15   students may later apply for reinstatement is similarly unavailing. The availability of post-
16   deprivation discretionary relief does not excuse the absence of pre-deprivation notice or the
17   opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Due process
18   requires an opportunity to present objections before the government deprives an individual of a
19   protected interest where the deprivation causes loss of lawful presence and education eligibility.

20   In addition, DHS's use of vague SEVIS termination codes such as "criminal records
21   check" or "visa revoked" provides no meaningful explanation or opportunity for students to
22   understand or rebut the basis for the action. This is particularly troubling given that none of the
23   Plaintiffs in this case have been convicted of any crime and have not done, or failed to do,
24   anything else that would justify termination under 8 C.F.R. § 214.1(d), and visa revocation is not

25

grounds for termination.[1] Such unexplained and generalized codes cannot satisfy the government's burden to provide adequate notice.

Fundamentally, the Due Process Clause prohibits the government from terminating a student's lawful presence, academic standing, and career opportunities without first giving notice and a meaningful opportunity to respond. Defendants' failure to provide even minimal procedural safeguards renders the SEVIS terminations constitutionally deficient.

### C.  SEVIS Termination Causes Immediate and Irreparable Harm.

Defendants argue that Plaintiffs face no irreparable harm because SEVIS termination does not itself initiate removal proceedings and because students have alternative remedies, such as applying for reinstatement or departing the country to reapply for a visa. This argument fundamentally misunderstands both the legal framework and the practical consequences that flow immediately from a SEVIS termination.

First, SEVIS termination is not a harmless administrative update—it is a legal determination that a student is no longer maintaining status. That determination has immediate consequences under federal law. Upon termination, a student's lawful presence ends, triggering the accrual of "unlawful presence" under 8 U.S.C. § 1182(a)(9)(B), which can result in three- or ten-year bars to reentry depending on the length of the violation. *See Fang*, 935 F.3d at 176. DHS itself has repeatedly advised that SEVIS termination constitutes a loss of status and that students who remain in the U.S. thereafter must depart immediately to avoid accruing unlawful presence and becoming subject to removal or long-term bars to reentry.

Second, the argument that students can simply apply for reinstatement or depart and return

---

[1] DHS's own policy guidance confirms this understanding. According to the United States Immigration and Customs Enforcement ("ICE") Policy Guidance 1004-04 (June 7, 2010), "Visa revocation is not, in itself, a cause for termination of the student's SEVIS record." SEVIS termination is a distinct and consequential action that may only occur under limited, defined circumstances. Defendants have offered no authority—statutory or regulatory—authorizing SEVIS termination based on a visa revocation alone.

is not a meaningful remedy. The reinstatement process is discretionary and uncertain, can take months to resolve, and provides no automatic protection from accruing unlawful presence or facing removal in the meantime. In addition, the process requires a terminated student to prove that the violation of status was due to circumstances beyond their control—despite having no opportunity to contest the termination in the first place. The government cannot assert the existence of a speculative post-deprivation process to avoid its obligation to prevent the harm in the first instance.

Third, Defendants ignore the real-life consequences faced by Plaintiffs and similarly situated students. The loss of SEVIS status often results in immediate suspension from school, revocation of university privileges (such as housing or stipend payments), and ineligibility for Optional Practical Training ("OPT"), which for many students is the bridge between education and long-term professional development. These are not hypothetical—they are ongoing harms attested to in the sworn declarations. Courts have long held that disruption to educational opportunities, employment eligibility, and lawful immigration status constitute irreparable harm. *See Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011); *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020).

Fourth, Defendants' opposition fails to recognize that for international students, immigration status is the foundation upon which every aspect of their lawful presence and future rests. The sudden and unexplained termination of that status, with no individualized notice and no opportunity to respond, produces harm that is not merely bureaucratic—it is life-altering. Plaintiffs face the risk of removal, academic failure, financial loss, and permanent exclusion from the United States, even though they have committed no violation and received no explanation.

The government's own cited declaration concedes that SEVIS termination prevents

students from continuing studies and may disqualify them from visa reissuance. That is the very definition of irreparable harm: injury that cannot be remedied by damages and will continue unless restrained. The temporary restraining order Plaintiffs seek is essential to halt the immediate cascade of consequences that result from SEVIS termination. Without relief, these students face permanent consequences.

### D. Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims.

Defendants argue that Plaintiffs' APA claims fail because SEVIS terminations are not "final agency actions" and because Plaintiffs have not demonstrated that DHS acted unlawfully. As explained above, however, SEVIS termination is indisputably a final agency action, and DHS acted contrary to law in terminating Plaintiffs' SEVIS records based on vague references to criminal background checks or visa revocations, without identifying any statutory or regulatory provision authorizing such terminations. Under the APA, courts must set aside agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

There was no lawful basis for the terminations. DHS's regulations distinguish between "failure to maintain status"—which must be reported by a Designated School Official ("DSO")—and "agency-initiated termination," which is only permissible under limited conditions. See 8 C.F.R. § 214.3(g)(2); 8 C.F.R. § 214.1(d). None of the Plaintiffs' DSOs reported them as failing to maintain status. There was also no basis for "agency-initiated termination." The applicable regulation—8 C.F.R. § 214.1(d)—limits the grounds on which DHS may terminate nonimmigrant status to narrowly defined situations, such as the revocation of a waiver or publication of a national security finding in the Federal Register. None of those situations apply here. DHS cites no authority that allows SEVIS termination merely because an unnamed background check revealed unspecified "concerns" or because a visa was revoked. To

the contrary, ICE Policy Guidance 1004-04 (June 7, 2010) confirms that visa revocation alone is not, in itself, a lawful basis for SEVIS termination.

The government also suggests that the APA does not apply because the terminations were discretionary. But the Supreme Court has made clear that even discretionary decisions are subject to judicial review when they are based on legally erroneous grounds or implemented without required procedures. *See Dep't of Com. v. N.Y.*, 588 U.S. 752, 771 (2019); *I.N.S. v. Yang*, 519 U.S. 26, 32 (1996). DHS cannot insulate itself from judicial review by asserting discretion while violating its own regulations and guidance.

Further, DHS's failure to provide individualized notice or explanation renders its actions arbitrary and capricious under basic APA standards. The agency has offered no evidence that it evaluated the circumstances of each Plaintiff individually or provided any opportunity for rebuttal or administrative remedy prior to termination. Courts have routinely held that the APA forbids such opaque and unexplained decision-making. See *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (requiring "reasoned basis" for agency action).

Finally, Plaintiffs' claims are not barred or preempted by the Privacy Act. That statute governs access to and correction of agency records—not the lawfulness of the agency's substantive decisions affecting legal rights. Plaintiffs are not seeking to correct information in SEVIS; they are challenging the agency's *use* of that information as the basis for termination, in violation of established procedures and substantive law.

In sum, Plaintiffs have demonstrated a strong likelihood of success on the merits. DHS acted without statutory or regulatory authority, violated its own internal guidance, failed to provide notice or individualized review, and used vague, unexplained codes that provided no meaningful basis for agency action to terminate lawful status without process and without an

opportunity to respond. The APA requires that such unlawful and procedurally defective actions be enjoined.

### E. The Watson Declaration Confirms Arbitrary, Unlawful Practice.

Defendants' supporting declaration (Dkt. 19-1) confirms that Plaintiffs' SEVIS terminations were based on alleged "matches" to criminal history databases, some involving dismissed charges or unknown dispositions. Yet nowhere does the declaration identify any adjudicated finding of guilt. Nor does it suggest that any individualized review was conducted before terminating Plaintiffs' SEVIS records.

Indeed, the Watson Declaration affirms that DHS acted solely on arrest data and visa revocation communications from the Department of State. This process fails to comply with the regulatory limits on agency-initiated SEVIS termination. See 8 C.F.R. §§ 214.1(d), 214.3(g)(2). SEVIS terminations must be grounded in clear statutory authority or specific status violations—not vague "criminal checks" untethered to any judicial or agency findings.

The declaration's assertion that SEVIS termination "does not terminate an individual's nonimmigrant status" (¶ 18) is not only legally incorrect, it is contradicted by the government's own actions. As set forth above, the termination of a SEVIS record has immediate legal consequences: it renders the student out of status, cuts off access to work authorization (such as OPT), and exposes the student to unlawful presence accrual and removal. As the Third Circuit explained in *Fang*, 935 F.3d at 182–85, SEVIS termination is a final agency action because it directly affects the student's immigration status and eligibility for benefits. DHS cannot simultaneously rely on SEVIS termination to trigger life-altering immigration consequences while disavowing any responsibility for its legal effect.

Far from rebutting Plaintiffs' claims, the Watson Declaration underscores the systemic, unexplained, and consequence-laden nature of the SEVIS termination practice at issue here.

These facts reinforce the need for nationwide injunctive relief.

### F. Nationwide Relief is Appropriate and Necessary.

Defendants argue that even if the Court finds a likelihood of success on the merits, any relief should be limited to the named Plaintiffs and not extended to similarly situated F-1 students across the country. Defendants' approach conflicts with well-established precedent under the APA, misapprehends the nature of the systemic harm at issue, and ignores the administrability and necessity of the requested relief.

First, when courts find an APA violation, they are empowered—and often required—to vacate unlawful agency action in its entirety, not merely as applied to individual plaintiffs. The Ninth Circuit has held that the APA authorizes nationwide relief where the challenged policy or practice is systemic and the relief sought is necessary to prevent recurring harm. See *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1283 (9th Cir. 2020) (affirming nationwide injunction where a narrower injunction would fail to protect similarly situated individuals); *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007) (vacating a regulation on a nationwide basis as required under the APA). The agency action here—the arbitrary and unsupported termination of SEVIS records of students nationwide—is precisely the type of unlawful policy that warrants such relief.

Second, nationwide relief is not only legally permissible—it is practically necessary to avoid inconsistent outcomes and the "whack-a-mole" problem that would result from piecemeal litigation. The government has engaged in a pattern of SEVIS terminations at dozens of universities based on vague and unsupported grounds, often referencing identical termination codes like "criminal records check" and "visa revoked," without individualized findings or procedural safeguards. Absent systemic relief, affected students would be forced to challenge terminations individually in every judicial district—an inefficient approach with the possibility

1  of inconsistent outcomes.

2  Defendants' suggestion that nationwide relief would be "unmanageable" is also
3  unfounded. Plaintiffs seek relief only for a clearly defined and administrable group: F-1 students
4  whose SEVIS records were terminated since March 1, 2025 and who have not been convicted of
5  any crime. This is not an amorphous or indeterminate class. Rather, it is an easily identifiable
6  subset of students whose status can be verified through SEVIS and institutional records, and
7  whose circumstances mirror those of the named Plaintiffs.

8  The government fails to offer any credible reason why students in identical legal and
9  factual positions should be treated differently depending solely on whether they were able to
10 secure representation and file suit first. Such an outcome would not only be inefficient—it would
11 be fundamentally unjust. The constitutional and statutory violations at issue here are not limited
12 to the four named Plaintiffs; they are systemic, and so must be the remedy.

13 **III.   CONCLUSION**

14 For the foregoing reasons, the Court should grant Plaintiffs' motion for a Nationwide
15 Temporary Restraining Order (i) directing Defendants to reinstate the SEVIS records and F-1
16 student status of Plaintiffs and all other F-1 students who have no record of criminal conviction
17 and whose SEVIS records and F-1 visa status have been terminated or revoked since March 1,
18 2025; and (ii) prohibiting Defendants from issuing future SEVIS terminations against F-1
19 international students without record of criminal conviction absent notice, individualized
20 explanation, and an opportunity to respond.

21 Dated: April 22, 2025                    Respectfully submitted,
                                            **DeHeng Law Offices PC**
22
                                            /s/   *Andre Y. Bates*
23                                                Andre Y. Bates
                                            *Attorneys for Plaintiffs*
24                                          *Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, and Gexi Guo*

25
                                            -10-                    CASE NO. 3:25-cv-03292
**Reply In Support of Motion for Nationwide TRO**