Marc Van Der Hout (CA Bar #80778)
Johnny Sinodis (California Bar # 290402)
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Fax: (415) 981-3003
Email: ndca@vblaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| John Doe, | Case Nos. 4:25-cv-03140-JSW |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION** |
| v. | |
| Donald J. TRUMP, in his official capacity, President of the United States of America, et al. | Request for Declaratory and Injunctive Relief |
| Defendants. | Judge: Hon. Jeffrey White<br>Hearing Date: May 13, 2025<br>Hearing Time: 9:00 a.m. |

| | |
|---|---|
| Zhuoer Chen, et al., | Case Nos. 4:25-cv-03292-JSW |
| Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION** |
| v. | |
| Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security, et al. | Request for Declaratory and Injunctive Relief |
| Defendants. | Judge: Hon. Jeffrey White<br>Hearing Date: May 13, 2025<br>Hearing Time: 9:00 a.m. |

*Doe v. Trump, et al.*, No. 4:25-cv-03140-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

| | |
|---|---|
| S.Y., et al., | Case Nos. 4:25-cv-03244-JSW |
|     Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION** |
|     v. | |
| Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security, et al. | <u>Request for Declaratory and Injunctive Relief</u> |
|     Defendants. | Judge: Hon. Jeffrey White<br>Hearing Date: May 13, 2025<br>Hearing Time: 9:00 a.m. |
| J.C., et al., | Case Nos. 4:25-cv-03502-JSW |
|     Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION** |
|     v. | |
| Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security, et al. | <u>Request for Declaratory and Injunctive Relief</u> |
|     Defendants. | Judge: Hon. Jeffrey White<br>Hearing Date: May 13, 2025<br>Hearing Time: 9:00 a.m. |
| Jungwon Kim, et al., | Case Nos. 4:25-cv-03383-JSW |
|     Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION** |
|     v. | |
| Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security, et al. | <u>Request for Declaratory and Injunctive Relief</u> |
|     Defendants. | Judge: Hon. Jeffrey White<br>Hearing Date: May 13, 2025<br>Hearing Time: 9:00 a.m. |

| | |
|---|---|
| 1    Shangshang Wang, et al., | Case Nos. 4:25-cv-03323-JSW |
| 2        Plaintiff, | **PLAINTIFFS'** |
| 3        v. | **SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY** |
| 4 | **INJUNCTION** |
| 5    Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland | |
| 6    Security, et al. | Request for Declaratory and Injunctive Relief |
| 7        Defendants. | |
| 8 | Judge: Hon. Jeffrey White Hearing Date: May 13, 2025 Hearing Time: 9:00 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 2

A.  Plaintiffs' claims are not moot. ............................................................................ 2

   1.    Defendants' voluntary cessation is expressly temporary. .............................. 3

   2.    Defendants' actions have not undone the harm they have already caused. ........... 5

B.  Plaintiffs clearly establish that they have suffered irreparable harm ....................... 6

C.  Plaintiffs and similarly situated individuals will continue to suffer irreparable harm absent lasting injunctive relief. ...................................................................................... 8

D.  The SEVIS terminations and interim reactivations constitute final agency actions. 13

E.  A nationwide preliminary injunction is appropriate. ............................................. 17

III. CONCLUSION. ...................................................................................................... 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Pages**

*Al Otro Lado, Inc. v. Nielsen*,

   327 F. Supp. 3d 1284 (S.D. Cal. 2018) ................................................................ 14

*Alaska Oil & Gas Ass'n v. Pritzker*,

   840 F.3d 671 (9th Cir. 2016) ............................................................................... 14

*Arizona Student Doe #1 v. Trump*,

   No. CV-25-00174-TUC-JGZ, 2025 WL 1192826 (D. Ariz. Apr. 24, 2025) ............ 6

*Bennett v. Spear*,

   520 U.S. 154, 117 S. Ct. 1154(1997) ................................................................... 14

*Boardman v. Pac. Seafood Grp.*,

   822 F.3d 1011 (9th Cir. 2016) ............................................................................. 18

*Califano v. Yamasaki*,

   442 U.S. 682 (1979) ............................................................................................ 18

*Chen v. Noem*,

   No. 25-CV-03292-SI, 2025 WL 1150697 (N.D. Cal. Apr. 18, 2025) ..................... 15

*City & Cty. of S.F. v. Trump*,

   897 F.3d 1225 (9th Cir. 2018) ......................................................................... 18, 19

*Ctr. for Biological Diversity v. Haaland*,

   58 F.4th 412 (9th Cir. 2023) ........................................................................... 14, 15

*Doe 1 v. Mayorkas*,

   530 F. Supp. 3d 893 (N.D. Cal. 2021) ................................................................. 15

*Doe v. Noem*,

   No. 2:25-CV-00633-DGE, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025) ........... 6

*Doe v. Noem*,

   No. 3:25-CV-00023, 2025 WL 1161386 (W.D. Va. Apr. 21, 2025) ........................ 6

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW

SUPPLEMENTAL BRIEF ISO MOTION FOR PI

*E. Bay Sanctuary Covenant v. Biden*,

   993 F.3d 640 (9th Cir. 2021) .......................................................................... 18

*East Bay Sanctuary Covenant v. Trump*,

   950 F.3d 1242 (9th Cir. 2020) ........................................................................ 19

*Encino Motorcars, LLC v. Navarro*,

   579 U.S. 211 (2016) ....................................................................................... 16

*FBI v. Fikre*,

   601 U.S. 234 (2024) .................................................................................. 3, 4, 5

*FCC v. Fox TV Stations, Inc.*,

   556 U.S. 502 (2009) .................................................................................. 16, 17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,

   528 U.S. 167 (2000) ......................................................................................... 3

*Garding v. Montana Dep't of Corr.*,

   105 F.4th 1247 (9th Cir. 2024) ........................................................................ 5

*Green v. City of Raleigh*,

   523 F.3d 293 (4th Cir. 2008) ........................................................................... 5

*Hawaii v. Trump*,

   878 F.3d 662 (9th Cir. 2017) ..................................................................... 18, 19

*Humane Soc'y of U.S. v. Locke*,

   626 F.3d 1040 (9th Cir. 2010) ..................................................................... 14, 16

*ILRC v. Wolf*,

   491 F. Supp. 3d 520 (N.D. Cal. 2020) ......................................................... 17, 18

*Jie Fang v. Dir. United States Immigr. & Customs Enf't*,

   935 F.3d 172 (3d Cir. 2019) ........................................................................ 14, 16

*Lamar Advertising of Penn, LLC v. Town of Orchard Park*,

   356 F.3d 365 (2d Cir. 2004) ............................................................................ 5

*Los Angeles Cnty. v. Davis*,

440 U.S. 625 (1979) .................................................................................................. 5

*Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871 (1990) .............................................................................................. 14

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,

145 F.3d 1399 (D.C. Cir. 1998) .......................................................................... 15

*Nat'l TPS All. v. Noem*,

No. 25-CV-01766-EMC, 2025 WL 957677 (N.D. Cal. Mar. 31, 2025) ............ 17, 18

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,

524 F.3d 917 (9th Cir. 2008) .............................................................................. 14

*Noem v. Garcia*,

604 U.S. ----, 2025 WL 1077101 (Apr. 10, 2025) ............................................... 4

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,

795 F.3d 956 (9th Cir. 2015) .............................................................................. 16

*Ozturk v. Trump*,

No. 25-CV-10695-DJC, 2025 WL 1009445, 2025 WL 1009445 (D. Mass. Apr. 4,

2025) ..................................................................................................................... 4

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,

908 F.3d 476 (9th Cir. 2018) .............................................................................. 19

*Rosebrock v. Mathis*,

745 F.3d 963 (9th Cir. 2014) ................................................................................ 5

*Smith v. Exec. Dir. of Indiana War Memorials Comm'n*,

742 F.3d 282 (7th Cir. 2014) ................................................................................ 5

*Texas v. Biden*,

646 F. Supp. 3d 753 (N.D. Tex. 2022) ............................................................... 18

*Washington v. Trump*,

847 F.3d 1151 (9th Cir. 2017) ............................................................................ 18

*Yang v. Noem*,

No. 25-CV-292-WMC, 2025 WL 1166521 (W.D. Wis. Apr. 22, 2025)....................................7

**Statutes**

5 U.S.C. § 553(e) ......................................................................................... 17

5 U.S.C. § 705.................................................................................. 17, 18, 19

5 U.S.C. § 706(2) ..................................................................................... 15, 16

5 U.S.C. § 706(2)(A)................................................................................. 14, 16

8 U.S.C. § 1255(c)(2)............................................................................. 7, 8, 9

8 U.S.C. § 1258(a) ...................................................................................... 7, 9

**Regulations**

8 C.F.R. § 214.1(d) ........................................................................................ 16

8 C.F.R. § 214.2(f)(1)-(2), (7)-(9)................................................................. 13

8 C.F.R. § 214.2(f)(10)(ii)(E) ....................................................................... 10

48 C.F.R. § 22.1800, 22.1802 .................................................................. 10, 11

**Other Authorities**

9 FAM 401.1 .................................................................................................... 9

I.    **INTRODUCTION**[1]

At the hearing on April 25, 2025, counsel for Defendants in the related cases represented to the Court that the U.S. Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE) was in the process of developing a new policy to remedy the wave of unlawful Student and Exchange Visitor Information System (SEVIS) terminations that have thrown the lives of international students and post-graduate workers across the country into turmoil for more than the past month. Later that day, Defendants submitted an update on this allegedly forthcoming new policy to the Court. (*Doe v. Trump*, Dkt. 47). That update provided no information whatsoever on what the allegedly forthcoming new ICE policy would be, whether it will address the numerous harms students and post-graduate workers have already suffered as a result of these unlawful terminations, and whether there will actually be any new policy at all. *Id.* ("ICE is developing a policy"). In fact, the update to the Court from Defendants foreshadowed that ICE intends to resume terminating SEVIS records as soon as this new policy is issued, and it provides no assurances that those future revocations will not be similarly unlawful. Defendants conceded that they "are unable to make any representations to the Court at this time regarding the content of the new framework, including whether it will contain a process for notice and opportunity to respond prior to termination of SEVIS records by ICE, or what that process would be." *Id*

Now, on the day this brief is filed, Defendants have submitted a two-page document that appears to serve as the policy alluded to by Defendants in this matter on April 25, 2025. (*Doe v. Trump*, Dkt. 51). The government has also submitted an email thread in a case pending before Judge Reyes in the District Court for the District of D.C., which appears to show that the U.S. Department of State directed DHS via an email sent on Wednesday, April 2, 2025, to terminate SEVIS records *en masse* without any individualized determinations. *See* Declaration of Johnny Sinodis at Exhibit (Exh.) A.

---

[1] For the Court's ease of review, Counsel for the Case Numbers listed on the caption page are filing the same pleading in response to the Court's Order for Supplemental Briefing in support of their motions for a preliminary injunction.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

The April 2 policy purports to give the Department of State unfettered discretion to revoke student visas and then instructs ICE to terminate the corresponding SEVIS record when they do. *Id*. The new policy submitted to the Court today shares the same basic intent of the April 2 policy—the termination of SEVIS records for students in violation of the regulations and without notice and an opportunity to be heard. But since—as explained in detail in the prior TRO Motions—the termination of a SEVIS record is distinct from the revocation of a Visa—Defendants' second "new" policy only serves to further highlight the necessity of this Court converting the temporary restraining orders into a nationwide preliminary injunction and/or issuing an order setting aside Defendants' unlawful policy on a nationwide basis.[2] The government's shifting position demands maintenance of the status quo ante from the time prior to when Defendants began their crusade against students, which on information and belief was on or around March 25, 2025.

Defendants' representations to the Court and the new policy only underscore the need for this Court to grant injunctive relief on a nationwide basis to prevent Plaintiffs from suffering further irreparable harm.

## II.    ARGUMENT

### A.  Plaintiffs' claims are not moot.

Reactivating Plaintiffs' SEVIS status does not moot this case for two reasons. First, not only does Defendants' barebones statement to this Court fail to establish that their unlawful conduct is not reasonably be expected to recur, it makes clear that Defendants plan on renewing their unlawful conduct, likely without any notice or process provided to Plaintiffs. *See Doe,* Dkt. 47. Indeed, Defendants have just announced it plans to do so immediately. *Doe*, Dkt. 51. Second, because Defendants' temporary reactivation of SEVIS status is not *nunc pro tunc* to the date of

---

[2] Because this new policy, Dkt. 51, was issued at the very last second, and introduced without argument at that, Plaintiffs have only had a short chance to consider and respond to the new policy. Plaintiffs reserve the right to address the policy in more detail in their reply. Plaintiffs also reserve the right to file a Rule 15(d) supplemental pleading—which may include adding Secretary Rubio as a new defendant—in response to this new development.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

unlawful termination, it does not completely undo the harms Defendants caused Plaintiffs through the unlawful agency action.

### 1. Defendants' voluntary cessation is expressly temporary.

Defendants' "voluntary cessation of a challenged practice" will moot a case only if they can show that their conduct cannot "reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Defendants' burden is "formidable." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Defendants must "prove no reasonable expectation remains that it will return to its old ways." *Id.* (cleaned up).

Defendants have failed to meet this burden here. Yes, Defendants have—for the time being—reactivated Plaintiffs' SEVIS records. But as Defendants explain in their April 22, 2025 Statement Regarding Reactivation of SEVIS Records (Dkt. 47 in *Doe v. Trump*), this is a temporary state of affairs. ICE has developed "a policy that will provide a framework for SEVIS record terminations." *Id.* at ¶ 1. Defendants' averment that Plaintiffs' SEVIS records will "remain Active" expressly *will* change once it implements the new policy. *Id.*; *see also id.* at ¶ 3 ("SEVIS records will remain active until ICE's new policy is implemented."). That policy was issued today and, as detailed in the introduction, does not appear to differ substantively from the old policy. *Doe,* Dkt 51.

It gets worse. Defendants are "unable to make any representations to the Court" about "the content of the new framework." *Id.* at ¶ 3. This includes "whether it will contain a process for notice and opportunity to respond prior to termination of SEVIS records by ICE." *Id.* at ¶ 4. The new policy, apparently issued yesterday and filed today with the Court, provides no further assurances.

This admission is chilling. The risk of irreparable harm once a SEVIS record is terminated is immense. Not only are the harms listed below in Sections I.B-C which already have occurred to Plaintiffs irreparable by this Court—for instance, this Court likely has no authority to order a third party to give Plaintiffs back their job, much less any backpay once they lose that job due to lack of work authorization—but Defendants have shown a willingness to almost simultaneously

terminate foreign students' statuses and detain them. *See Ozturk v. Trump*, No. 25-CV-10695-DJC, 2025 WL 1009445, at *1 (D. Mass. Apr. 4, 2025) ("[T]he following is undisputed: on March 25, 2025, at approximately 5:25 p.m. without prior notice of the revocation of her student visa or the grounds asserted for same, Ozturk, a graduate student in Child Study and Human Development at Tufts University, was approached and surrounded by six officers (several wearing masks and/or hoods), stripped of her cellphone and backpack, handcuffed, and taken into custody in an unmarked vehicle."); *see also* Dkt. 39 in *Doe v. Trump*, Ex. I (TRO issued in *Mohammed H. v. Trump, et al.*, No. 25-cv-01576-JWB-DTS, Dkt. 15 (D. Minn. Apr. 22, 2025)). And, indeed, Defendants have deported individuals—often to third countries, as Plaintiffs' previous SEVIS revocation notices themselves state, *see* Ex. H[3]—without any process whatsoever. *See Noem v. Garcia,* 604 U.S. ----, 2025 WL 1077101, at *1 (Apr. 10, 2025) (Government removed Garcia to a prison in El Salvador without any process at all despite an order from an Immigration Judge "expressly prohibiting Abrego Garcia's removal"). Thus, Defendants are expressly reserving the right to cause immeasurable harm (that the Court can enjoin today), without warning, notice, or any opportunity to be heard.

"In all cases," a defendant claiming mootness has the "burden to establish that it cannot reasonably be expected to resume *its* challenged conduct." *Fikre*, 601 U.S. at 243 (cleaned up). That is true "whether the suit happens to be new or long lingering, and whether the challenged conduct might recur immediately or later at some more propitious moment." *Id.* at 243. Here, like in *Fikre*, "[n]othing the government offers…satisfies that formidable standard." *Id.* If anything, Defendants' express commitment to resuming the challenged conduct establishes that the case is not moot.[4]

Defendants' assertions made at the TRO hearing that this case is moot because its new policy would be meaningfully different has not panned out. As *Fikre* explained, a case is only moot if the government clearly establishes that it is not likely to repeat its "challenged conduct."

---

[3] Declaration of Ami Hutchinson, *Doe v. Trump*, 25-cv-175 (D. Ariz. Apr. 16, 2025), at ¶ 8 ("Persons being deported may be sent to countries other than their countries of origin.").
[4] *See also* Dkt. 51 (alleged policy submitted by Defendants on the morning of April 30, 2025).

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

234 U.S. at 243. to the new policy, on its face, appears to allow (and indeed require) Defendants to repeat their challenged conduct.[5] And, as the Seventh Circuit explained, "[w]hen a challenged policy is repealed or amended mid-lawsuit—a recurring problem when injunctive relief is sought—the case is not moot if a substantially similar policy has been instituted or is likely to be instituted." *Smith v. Exec. Dir. of Indiana War Memorials Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014); *see also Green v. City of Raleigh,* 523 F.3d 293, 299–300 (4th Cir. 2008) (appeal not moot because amended policy was substantially similar to old policy); *see also Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("a policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot"). Defendants have not established that the policy would not "suffer from similar infirmities as it did at the outset." *Lamar Advertising of Penn, LLC v. Town of Orchard Park,* 356 F.3d 365, 378 (2d Cir. 2004). Accordingly, Defendants have failed to show that the issuance of the April 30, 2025 new policy moots the need for immediate injunctive relief.

>    2. **Defendants' actions have not undone the harm they have already caused.**

A claim is also not moot unless "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979). "If some relief can be granted, the case is not moot." *Garding v. Montana Dep't of Corr.*, 105 F.4th 1247, 1255 (9th Cir. 2024).

In the absence of relief, Plaintiffs will be vulnerable to further irreparable harm, which this Court can partially remedy through an order, that Defendants restore Plaintiffs' SEVIS status *nunc pro tunc* in addition to an order which includes remedying the other consequences of Defendants' unlawful actions. While Defendants suggested at the TRO hearing that they are unable to return

---

[5] *See* Dkt. 51. The two-page document, which did not comply with notice-and-comment, purports to give ICE authority to terminate SEVIS records for reasons that are not set forth in any statute or regulation. The two-page document also lacks any information regarding how a student or post graduate worker would receive notice and the opportunity to respond before their SEVIS record is terminated, and appear to show that DOS and DHS are working (or will work) in close concert to implement the terms therein.

1  Plaintiffs to the position they were in prior to the unlawful terminations of SEVIS records, they

2  have failed to offer any explanation or confirmation as to why that is so. To the extent there is no

3  place for such a *nunc pro tunc* annotation to a Plaintiffs' SEVIS record, Defendants can create one,

4  just as easily it was able to create a new category of reasoning for terminating SEVIS status in the

5  first instance. Dkt. 38 at 3 (citing that DHS's "website also includes what, as of April 9, 2025,

6  appears to be a new category for SEVP only terminations entitled 'Other.'"). A Court order to that

7  effect will give Plaintiffs the safe harbor of being able to answer government immigration

8  questions, such as "have you ever remained in the country without status," as "no" (when "yes"

9  would likely have catastrophic results) without later being at risk of having responded falsely.

10  Such relief remains meaningful and necessary to mitigate ongoing collateral consequences to

11  Plaintiffs.

12  **B.  Plaintiffs clearly establish that they have suffered irreparable harm**

13  As numerous district courts across the country—including this Court—have consistently

14  found, the unlawful SEVIS terminations have caused and are causing affected students and post-

15  graduate workers irreparable harm. *See, e.g.*, *Liu v. Noem, et al.*, No. 1:25-cv-00133, Dkt. 24

16  (Dist. N.H. Apr. 29, 2025) (granting a preliminary injunction enjoining all defendants from

17  terminating Ms. Liu's F-1 student status under SEVIS system, and requiring defendants to set

18  aside their determination that Ms. Lui's F-1 student status is terminated); *Doe v. Noem*, No. 3:25-

19  CV-00023, 2025 WL 1161386, at *6 (W.D. Va. Apr. 21, 2025) (termination of F-1 status and

20  SEVIS record preventing plaintiff from participating fully in his graduate program, which in turn

21  threatens his scholarship status and jeopardizes his academic and professional prospects is

22  irreparable harm); *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *7 (W.D.

23  Wash. Apr. 17, 2025) (plaintiff "faces the prospect of detention, removal proceedings, and

24  ultimately deportation because termination of his SEVIS record indicates that he is not

25  maintaining status in his program" and "may be accruing unlawful presence time, which acts as a

26  future bar to admission and reentry to the United States"); *Arizona Student Doe #1 v. Trump*, No.

27  CV-25-00174-TUC-JGZ, 2025 WL 1192826, at *7 (D. Ariz. Apr. 24, 2025) ("The Government

28

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

1    could not assure the Court that no enforcement action against Plaintiff is forthcoming. All the
2    Government could say is that Plaintiff has not been arrested or detained yet. ICE has terminated
3    hundreds or thousands of SEVIS records, and some of those students have been detained and
4    placed in removal proceedings. The Government's actions, with respect to Plaintiffs and F-1
5    students nationwide, show that the threat of unlawful detention and deportation to Plaintiff is
6    more than merely speculative."); *Yang v. Noem*, No. 25-CV-292-WMC, 2025 WL 1166521, at
7    *4 (W.D. Wis. Apr. 22, 2025) (the loss of timely academic progress alone is sufficient to
8    establish irreparable harm).

9         Defendants' unlawful terminations have already coerced numerous students and post-
10   graduate workers into abandoning their studies and leaving the United States, led other plaintiffs
11   to lose their current employment and/or job opportunities, and caused students to miss weeks of
12   school while living in hiding due to fear of being arrested. The continued uncertainty
13   surrounding what the SEVIS terminations meant for the students, a loss of status, prudential
14   revocations of visas and the immediate need to leave the United States and what ICE might do
15   next to throw Plaintiffs' lives into chaos without warning has caused Plaintiffs and similarly
16   situated individuals to experience high levels of stress and anxiety. Defendants have been unable
17   and unwilling to disclose the reason for the mass terminations and what immediate and long-term
18   consequences resulted from the agency action. Plaintiffs are unsure of what will happen to them,
19   and they fear the possibility of several consequences, including: the lack of ability to continue
20   their studies and/or Optional Practical Training ("OPT") employment connected with their
21   education; the inability to change status to another visa status, such as H-1B, due to the fact that
22   an applicant must still be in a valid visa status to change status, *see* 8 U.S.C. § 1258(a); the
23   denial of adjustment of status to permanent residency based on having been out of status for any
24   period of time, 8 U.S.C. § 1255(c)(2); the risk of arrest and incarceration by ICE; and the
25   prospect of ultimately being deported or otherwise having to leave the country without any

26
27
28

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

ability to return to their employment, careers, or communities.[6] Given that Plaintiffs and other similarly situated students have been forced to litigate these cases individually to try and prevent this cascade of harmful legal effects and consequences, affected individuals have had no choice but to expend the significant financial resources that are required to file individual actions to prevent these harms, assuming they can afford representation at all.

Neither Defendants' Friday statement regarding its new policy nor its filing of the new two-page policy since Friday provide any information at all on how these multiple, already existing, and ongoing harms will be remedied. *See Doe*, Dkt. 47, Dkt. 51. Indeed, the new policy does not address these harms in any way. *Id.* Thus, a preliminary injunction order is necessary to prevent Plaintiffs and other similarly situated individuals from suffering further irreparable harm stemming from the unlawful termination of their SEVIS records.

### C. Plaintiffs and similarly situated individuals will continue to suffer irreparable harm absent lasting injunctive relief.

In the absence of injunctive relief ensuring that the SEVIS records are restored *nunc pro tunc* to the date of unlawful termination and an order from this Court remedying the other already existing or likely to occur legal effects and consequences of the unlawful acts of Defendants, Plaintiffs will continue to suffer irreparable harm. And without a Court order, there is nothing to prevent Defendants from changing their position once again and resuming *en masse* terminations without any lawful basis.[7] Harms that students and post-graduate workers will suffer absent injunctive relief—if their SEVIS records are not restored *nunc pro tunc* or Defendants' unlawful actions (and the consequences of those actions) are not completely set aside, accompanied by an order that remedies all legal effects and consequences of the unlawful actions—include but are not limited to:

1. Plaintiffs and similarly situated individuals are at risk of government entities, including U.S. Citizenship and Immigration Services (USCIS), a Bureau of DHS, determining that

---

[6] *See also* supra n.2 (making clear that DHS claims to have the authority to initiate removal proceedings pursuant to the directives in the two-page document).

[7] *See, e.g.*, supra n.2.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

8

they failed to continuously maintain F-1 status during the period between when their SEVIS record was unlawfully terminated and when it was reactivated by ICE. This in turn would render them ineligible for a future change of status application or petition (e.g., change of status to an employment visa such as an H-1B, a common next step for international students who complete their education in the United States). 8 U.S.C. 1258(a). Although Defendants asserted at the hearing on April 25, 2025, that a SEVIS record does not impact an individual's ability to maintain status, they failed to state whether the reactivation of their SEVIS records will be *nunc pro tunc*; if it is not *nunc pro tunc*, the period of deactivation will prevent Plaintiffs from changing status passed on failure to maintain non-immigrant status. *See* Dkt. 39-1 at Exh. A (USCIS Notice of Intent to Deny).

2. Plaintiffs and similarly situated individuals may be required to report that they failed to maintain status on all future visa applications submitted with USCIS and/or the U.S. Department of State, a factor which may result in visa denial and prevent them from returning to the United States.[8] This risk is exacerbated by the fact that Defendants have consistently revoked the visas of the Plaintiffs, either prudentially or actually, and others whose SEVIS records were terminated. So these students will necessarily need to apply for new visas in order to reenter the United States. *See, e.g, S.Y., et al. v. Noem, et al.*, 5:25-cv-03244-JSW, Dkt 1-1 Exhibits C, H, and P; *J.C., et al. v. Noem, et al.*, 5:25-cv-03502_JSW, Dkt. 1-1 Exhibits E, I, L, BB, FF.

3. Plaintiffs and similarly situated individuals may face denials of applications to adjust status to lawful permanent residency submitted with USCIS due to a finding that they were out of status during the period when their SEVIS record was terminated. 8 U.S.C. §

---

[8] *See, e.g.*, 9 FAM 401.1-3(D)(c) (noting that consular officer "must assess the credibility of the applicant and the evidence submitted to determine qualifications under INA 101(a)(15). You must be satisfied that the applicant will engage in the activities authorized under the NIV classification and will abide by the conditions of that nonimmigrant classification and maintain lawful status" in order to approve a visa).

1255(c)(2); *See also* Dkt. 39-1 at Exh. A (USCIS Notice of Intent to Deny).

4. Plaintiffs and similarly situated individuals may be required to report that they failed to maintain status to prospective employers and on future immigration applications. This includes applications to change status to an employment-based visa—an application submitted with USCIS. Such reporting may result in denial of that benefit and prevent them from continuing to live and work in the United States. Even if USCIS, as part of DHS, determines that the SEVIS terminations do not prevent a change in status outright, nearly all immigration benefits in the United States are discretionary. USCIS may use the gap in SEVIS termination as a negative factor to deny benefits in the future.

5. Plaintiffs and similarly situated individuals who were unable to work during the period when their SEVIS was terminated accrued unemployment. F-1 visa holders on Optional Practical Training (OPT)  only have 90 cumulative days of unemployment before their SEVIS and status is terminated, while F-1 visa holders on STEM OPT only have 150 days of unemployment before their SEVIS record is terminated. 8 C.F.R. § 214.2(f)(10)(ii)(E). The period during which Plaintiffs' SEVIS was terminated may have caused or will cause some to exceed these maximum permissible periods of unemployment. Plaintiffs and similarly situated individuals who lost jobs as a result of the termination and are not rehired will continue to accrue days of unemployment unless and until they find another employer (within the proscribed period). Even if ICE reactivates all Plaintiffs' SEVIS records, Plaintiffs are therefore at risk of losing eligibility for OPT and having their SEVIS status terminated once again based solely on the downstream effects of the initial unlawful SEVIS termination.

6. Plaintiffs and similarly situated individuals with terminated SEVIS records on STEM OPT may only work for employers who use E-Verify. 48 C.F.R. § 22.1800, 22.1802. The terminated SEVIS record may trigger a "non-confirmation" in the E-Verify system when employers attempt to verify the student's employment authorized status. If an employer receives a final non-confirmation in E-Verify, the employer can terminate

employment without civil or criminal liability.[9] Even if a student's SEVIS record is reactivated, employers may need to re-verify the individual's Form I-9 and E-Verify record when they return to work. Given that ICE's April 26 assertedly new policy provides no information on how it will address retroactive effects of the SEVIS terminations, students and postgraduate workers may face non-confirmation notices when they return to work due to the gap in their SEVIS record.[10]

7. DHS's website "Study in the States" provides that, in order to receive a driver's license from the DMV, students must first speak with their designated school official (DSO).[11] The DSO must verify that the student's status is listed as "Active" in SEVIS. On information and belief, there is often a significant lag between when a student's SEVIS record is activated and when it appears in the Systematic Alien Verification for Entitlements (SAVE) system, which is used by Department of Motor Vehicles (DMV) offices to verify the immigration status of individuals, including international students, applying for a driver's license. ICE's April 26 new "policy" provides no information on how SAVE will function with the SEVIS termination gap present on a student's record, meaning students could be prevented from obtaining a driver's license. This in turn could impact their ability to attend classes or participate in related employment.

8. Plaintiffs and similarly situated individuals will also face potential retaliation and reputational harm if derogatory information regarding the termination of their SEVIS records is revealed to the public and third parties. This would prejudice their future ability to be hired or accepted into a school.

---

[9] E-Verify, 3.6 Final Nonconfirmation (June 6, 2024), https://www.e-verify.gov/e-verify-user-manual-30-case-results/36-final-nonconfirmation ("A case receives a Final Nonconfirmation case result when E-Verify cannot confirm an employee's employment eligibility…").

[10] Furthermore, the two-page document that the government filed in other cases and referred to as ICE's "policy" provides no information as to how it will remedy the legal effects and consequences of ICE's unlawful SEVIS record terminations. *See* supra n.2.

[11] "Students: Only the DMV Can Provide You with a Valid Driver's License," Study in the States, available at: https://studyinthestates.dhs.gov/2015/06/students-only-dmv-can-provide-you-valid-drivers-license.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

9.  Hate crimes against immigrants are surging while anti-immigrant messaging from the White House and DHS is widespread,[12] and the email that several plaintiffs received revoking their visas exacerbates the psychological harm that noncitizen students in the United States face as a result of that messaging. The email explains that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin."). *S.Y., et al. v. Noem*, et al., 5:25-cv-03244-JSW, Dkt 1-1 Exhibits C, H, and P; *J.C., et al. v. Noem*, et al., 5:25-cv-03502_JSW, Dkt. 1-1 Exhibits E, I, L, BB, FF; *see also Doe v. Noem*, 2:25-cv-01103-DAD-AC (E.D.C.A. Apr. 17, 2025), Dkt. 13 (Order Granting Plaintiff's Motions to Proceed Under Pseudonym, for a Protective Order and for Temporary Restraining Order).

10. ICE's  April 26, "new" policy provides no information on how it will remedy harms faced by students whose SEVIS records were terminated and who then had their visa revoked by the U.S. Department of State (DOS) solely as a result of the SEVIS termination. ICE has provided no plan to remedy the issue of visas that were revoked, either prudentially or actually, because of these unlawful terminations. *See, e.g, S.Y., et al. v. Noem, et al.*, 5:25-cv-03244-JSW, Dkt 1-1 Exhibits C, H, and P; *J.C., et al. v. Noem, et al.*, 5:25-cv-03502_JSW, Dkt. 1-1 Exhibits E, I, L, BB, FF.

11. Plaintiffs and similarly situated individuals who left the United States after being told to self-deport by DOS, and threatened with third-country deportation if they remained, also face irreparable harm that is not remedied by ICE's April 26 new policy. Those students are in danger of not being able to receive a newly issued Form I-20, Certificate of

---

[12] DHS, "DHS Announces Nationwide and International Ad Campaign Warning Illegal Aliens to Self-Deport and Stay Out" (Feb. 17, 2025), https://www.dhs.gov/news/2025/02/17/dhs-announces-ad-campaign-warning-illegal-aliens-self-deport-and-stay-out.

Eligibility for Nonimmigrant Student Status, and return to the United States to resume their studies or work. 8 C.F.R. § 214.2(f)(1)-(2), (7)-(9).

12. Plaintiffs and similarly situated individuals may have lost housing, meal plans, access to health care, stipends, and other benefits that depend on continued enrollment in SEVP and active SEVIS records. Defendants have provided no information on how ICE's April 26 new policy will address those material harms.

13. Plaintiffs and similarly situated individuals may have lost research grants, which also affects the institutions that rely on that research. The harm extends to individuals, schools, research institutions, and employers who have invested heavily in projects, research, and clinical studies.

14. Defendants can take away a school or institution's certification and access to SEVP if they are not in compliance with SEVIS rules or if they enroll or employ students who are not in status.[13] Due to the total absence of any information about how ICE's April 26 alleged new policy will be implemented, it is unclear if Defendants will decide to punish schools in the future who allowed students with unlawfully-terminated SEVIS records to attend school. Furthermore, Defendants have created chaos and fear among universities by terminating records without notice of changes in policy, process, or individualized determination regarding status.

Without an order to maintain the status quo to provide some measure of certainty, Defendants have indicated a willingness to resume SEVIS terminations once it develops a new policy. This will cause Plaintiffs and other similarly situated individuals to suffer the same irreparable harms this Court and more than 50 others have enjoined.

**D. The SEVIS terminations and interim reactivations constitute final agency actions.**

Defendants do not contest that the termination of a SEVIS record constitutes final agency action for purposes of APA review. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't,*

---

[13] *See, e.g.*, "Loss of SEVP Certification**,"** DHS Study in the States, available at: https://studyinthestates.dhs.gov/2014/12/loss-sevp-certification.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

13

935 F.3d 172, 182, 185 (3d Cir. 2019); *Doe v. Trump*, No. 25-cv-03140, Dkt. No. 47 ¶1. But they suggest that the policy upon which they have terminated thousands of SEVIS records contrary to the current statutory and regulatory scheme is not, in and of itself, final agency action, and therefore cannot itself be put aside under the APA.

Defendants' systematic termination of SEVIS records "mark[ed] the consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178, 117 S. Ct. 1154(1997) (internal quotation marks omitted); *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 925 (9th Cir. 2008). Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When an agency changes its policy or practices, even *sub silentio* as Defendants have done here, the failure to "provide a reasoned explanation" for the change is arbitrary and capricious. *Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 682 (9th Cir. 2016); *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1053 (9th Cir. 2010).

"An unwritten policy can still satisfy the APA's pragmatic final agency action requirement." *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1319 (S.D. Cal. 2018) (internal citations omitted). Defendants have now partially disclosed the policy that led to the mass terminations of SEVIS. The Department of State directed DHS to terminate SEVIS records for students in one fell swoop and without regard to the regulations governing SEVIS terminations.  DHS-ICE acted accordingly. Sinodis Decl. at Ex. A (Email Correspondence). The April 2 policy "appl[ies] some particular measure across the board" and therefore "can of course be challenged under the APA by a person adversely affected." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990). When a change in policy "directly affect[s] the obligations of regulated parties," that change constitutes final agency action. *Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 419 (9th Cir. 2023). The question of whether a policy change is final agency action is whether there are "legal consequences" from the policy change. *Id.* at 420; *see generally Doe 1 v. Mayorkas*, 530 F. Supp. 3d 893, 911-912 (N.D. Cal. 2021) (change in policy to "denying

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

[refugee] applications with a 'not clear' vetting result" final agency action, even in the absent of a written policy).

Both the April 2 and the latest April 26 change in ICE policy under SEVIS qualifies as final agency action. Individuals who previously did not have their SEVIS record subject to termination because they did not meet any of the statutory or regulatory requirements were and still are subject to termination without notice or any reasoned consideration. Rather than, for instance, requiring a crime of violence with a potential term of imprisonment that exceeds one year, Defendants are now terminating SEVIS standards based on simple arrests, even where formal charges were never filed. *See Chen v. Noem*, No. 25-CV-03292-SI, 2025 WL 1150697, at *5 (N.D. Cal. Apr. 18, 2025). The same will continue to be true in the absence of an order from the Court. *Doe*, Dkt 51. The change in policy is final agency action, and thus it can be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2); *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1410 (D.C. Cir. 1998) ("nationwide injunctions" are the "inevitable consequence" of the APA rule that unlawful actions must be held unlawful and set aside). And now, students will also be at risk of having their visas revoked by the Department of State without any reason, with ICE using that excuse also to terminate SEVIS records (a) without authority and (b) contrary to their own previously-issued guidance. *See* ICE Policy Number 1004-04 ("If a student is in the United States when the visa is revoked, the student may continue to pursue his or her course of study. However, the student must obtain a new visa before reentering the United States in F or M status.").

In these related cases, and those nationwide, Defendants have provided no reasoned explanation for (1) the initial round of SEVIS terminations, (2) the reactivations, and (3) the framework for a new policy other than students may be subject to the new policy.[14] Plaintiffs have shown each one of these final agency actions runs afoul of the APA.

First, Defendants lacked any statutory or regulatory authority to terminate Plaintiffs' SEVIS records. *See Jie Fang*, 935 F.3d at 182. Defendants initiated the termination of Plaintiffs'

---

[14] *See also supra* n.2.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

1   SEVIS records without acting in accordance with the notice requirements of 8 C.F.R. § 214.1(d).

2   The terminations were not made in accordance with law. 5 U.S.C. § 706(2)(A). This is made

3   clear by the internal DHS email, attached here at Exhibit A, wherein a Division Chief states the

4   agency should "[P]lease terminate all in SEVIS." Sinodis Decl. at Exh. A.

5       Second, Defendants' policy led to the termination of thousands of records without any

6   reasoned consideration or acknowledgment of a change in policy.[15] "Agencies are free to change

7   their existing policies as long as they provide a reasoned explanation for the change." *Encino*

8   *Motorcars, LLC v. Navarro*, 579 U.S. 211, 221(2016). However, "[a]n agency may not, for

9   example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the

10  books." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515-16 (2009); *see also Organized Vill. of*

11  *Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015). Defendants' systematic SEVIS

12  terminations represent the quintessential arbitrary and capricious action. *Id.* Defendants did not

13  disclose its policy change nor reveal any reasoned consideration for its actions. *Humane Soc'y of*

14  *U.S.*, 626 F.3d at 1053.

15      Third, the reactivations constitute a suspension of Defendants' challenged conduct

16  without any details other than it "will provide a framework for SEVIS record terminations." Dkt.

17  No. 47 ¶1 (in *Doe v. Trump*). The reactivations by fiat with an unsupported announcement of a

18  new policy (*id.*) is arbitrary and capricious because it was submitted in a filing to the Court and

19  indicated the reactivations of Plaintiffs SEVIS records will remain Active "until such a policy is

20  issued." *Id.* The Government filed its new policy today, but it provides no further details as it

21  applies to Plaintiffs and appears to simply reenact the old policies with assistance from the

22  Department of State. Defendants did not have lawful authority to terminate the SEVIS record to

23  begin with, and an assertedly new policy that alters the regulatory framework would necessarily

24  constitute arbitrary and capricious final agency action in the absence of undertaking formal

25  notice and comment rulemaking. 5 U.S.C. § 553(e).

26

27  ───────────────

    [15] *See also* supra n.2.

28  *Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW

    SUPPLEMENTAL BRIEF ISO MOTION FOR PI

    16

1       At a minimum, the transitory phase Defendants have placed Plaintiffs in proves too much

2   as it represents an acknowledgment that Defendants *sub silentio* departed from a prior policy to

3   terminate SEVIS records, reactivated SEVIS records after the initiation of lawsuits, and now at

4   the last second produced a new framework that equally subjects students and post graduate

5   workers to new terminations immediately upon enactment and without any individual

6   consideration and opportunity to be heard.[16] This type of whack-a-mole decision making and fly-

7   by-night manner of action whether considered individually, or in the aggregate, is arbitrary and

8   capricious. "A more detailed justification" for policy changes that contradict prior findings or

9   had engendered reliance interests is required. *Fox*, 556 U.S. at 515-16; *see ILRC v. Wolf*, 491 F.

10  Supp. 3d 520, 543 (N.D. Cal. 2020) (JSW) (enjoining USCIS's attempt to raise fees where, *inter*

11  *alia*, the agency did "not provide a persuasive explanation of why it is more likely that those with

12  legitimate claims for asylum are more likely to have $50 than those who do not; nor do they

13  supply data to support that proposition."). Therefore, Defendants have engaged in final agency

14  action that apply nationwide and violate the APA.

### E.  A nationwide preliminary injunction is appropriate.

16      This Court should enjoin Defendants' final agency actions nationwide as it represents the

17  only effective relief under the circumstances presented. Under 5 U.S.C. § 705, "the reviewing

18  court . . . may issue all necessary and appropriate process to postpone the effective date of an

19  agency action or to preserve status or rights pending conclusion of the review proceedings."

20  "The factors considered in determining whether to postpone pursuant to § 705 'substantially

21  overlap with the . . . factors for a preliminary injunction.'" *Nat'l TPS All. v. Noem*, No. 25-CV-

22  01766-EMC, 2025 WL 957677, at *20 (N.D. Cal. Mar. 31, 2025) (quoting *Immigrant Legal Res.*

23  *Ctr. v. Wolf*, 491 F. Supp. 3d 520, 529 (N.D. Cal. 2020) ("*ILRC*")). For timing purposes, "[t]he

24  'status quo' to be restored is 'the last peaceable uncontested status existing between the parties

25  before the dispute developed.'" *Id.* at *19 (quoting *Texas v. Biden*, 646 F. Supp. 3d 753, 771

26  (N.D. Tex. 2022), and citing *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir.

27

28

---

[16] In fact, that appears to be exactly what has now happened. *See supra* n.2.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

2016) (stating that "[t]he 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits,'" and "'[s]tatus quo ante litem' refers to 'the last uncontested status which preceded the pending controversy'")). Here, postponement under § 705, should maintain the *status quo* from the time prior to Defendants' unlawful SEVIS terminations, as this was the last peaceable uncontested status before the dispute developed. *Id.* Plaintiffs in *Zhuoer Chen*, 4: 25-cv-3292-JSW, appropriately seek postponement under § 705 without limitation to the individually named Plaintiffs. *Nat'l TPS All.*, No. 25-CV-01766-EMC, 2025 WL 957677, at *45. To effectively postpone the policy underlying the SEVIS terminations, § 705 plainly provides for this universal postponement of the agency action without limitation. *Id.*; *ILRC*, 491 F. Supp. 3d at 529-30 (enjoining immigration fee policy nationwide)

Where agency action is challenged as a violation of the APA, nationwide relief is commonplace. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680-81 (9th Cir. 2021) (in APA case, noting that there is "no general requirement that an injunction affect only the parties in suit" and, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed"). Indeed, "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). A nationwide injunction is warranted where, as here, it is "necessary to give Plaintiff a full expression of their rights'" and Defendants' actions apply to students nationwide. *City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018) (quoting *Hawaii v. Trump*, 878 F.3d 662, 701 (9th Cir. 2017), *rev'd on other grounds*, 585 U.S. 667(2018), and citing *Washington v. Trump*, 847 F.3d 1151, 1166-67 (9th Cir. 2017) (*per curiam*).

Defendants acted to terminate thousands of students across the country. Whatever policy decision was made, Defendants unleashed it on a nationwide basis.[17] It is only fitting that a preliminary injunction would be commensurate with Defendants' actions. *City & Cnty. Of San*

---

[17] And they now seem to be set on resuming their unlawful conduct via a new set of directives—which fit the requirement for "final agency action"—made public via a two-page document filed on today's date. Dkt. 51; *see also* supra n.2.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

*Francisco*, 897 F.3d at 1244 (indicating that, to support a nationwide injunction, record must be sufficiently developed on nationwide impact of challenged actions). Relief should reach the scope of the harm as "[d]ifferent interpretations of executive policy across circuit or state lines will needlessly complicate agency and individual action in response to the United States's changing immigration requirements. *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1283 (9th Cir. 2020). This is why the Ninth Circuit has "consistently recognized the authority of district courts to enjoin unlawful policies on a universal basis." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018). "A final principle is also relevant: the need for uniformity in immigration policy." *Id*; *Hawaii*, 878 F.3d at 701. Accordingly, and consistent with the text of 5 U.S.C. § 705, the Court should enjoin and/or set aside the new SEVIS policy.

**III. CONCLUSION.**

The Court should grant Plaintiffs' motion for a preliminary injunction and or issue an order setting aside the unlawful agency action and policy on a nationwide basis, or otherwise enjoin Defendants' SEVIS policies nationwide as requested in the manner set forth in Plaintiffs' TRO Motions.

Dated: April 30, 2025

Respectfully submitted,

/s/ Johnny Sinodis
Johnny Sinodis
Marc Van Der Hout
Zachary Nightingale

Attorneys for Plaintiff

Jesse M. Bless
MA Bar No. 660713
Bless Litigation LLC
6 Vineyard Lane,
Georgetown, MA 01833
781-704-3897
jesse@blesslitigation.com
Appearing *Pro Hac Vice* in cases 25-cv-03323-JSW & 25-cv-03383(JSW)

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI

(Related to 25-cv-3140)

Kristina David
CA Bar No. 346347
David Strashnoy Law, PC
1901 Avenue of the Stars, Suite 200
Los Angeles, CA 90067
818-646-7350
kristina@strashnoylaw.com
Attorneys for Plaintiffs in cases 25-cv-03323-JSW & 25-cv-03383(JSW)
(Related to 25-cv-3140)

Justin Sadowsky (pro hac vice)
DC Bar No. 977642
Chinese American Legal Defense Alliance
4250 N Fairfax Drive #600
Arlington, VA 22203
646-785-9154
justins@caldausa.org

Andre Y. Bates (SBN 178170)
(aybates@dehengsv.com)
Steven A. Soloway (SBN 130774)
(ssoloway@dehengsv.com)
Keliang (Clay) Zhu (SBN 305509)
(czhu@dehengsv.com)
Yi Yao (SBN 292563)
(yyao@dehengsv.com)
DEHENG LAW OFFICES PC
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-6702
F: 925-397-1976
Attorneys for Plaintiffs
Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, and Gexi Guo

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
SUPPLEMENTAL BRIEF ISO MOTION FOR PI