PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
ELIZABETH D. KURLAN (CABN 255869)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: 415-436-7200
    Facsimile: 415-436-6748
    elizabeth.kurlan@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>    Defendants. | Case No. 4:25-cv-03140-JSW<br><br>**DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: May 14, 2025<br>Time: 10:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br><br><br>The Honorable Jeffrey S. White |
| S.Y., *et al.*,<br><br>    Plaintiff,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, *et al*,<br><br>    Defendants. | Case No. 4:25-cv-3244-JSW |

| | |
|---|---|
| ZHOUER CHEN, *et al*. | Case No. 4: 25-cv-3292-JSW |
| Plaintiff, | |
| v. | |
| KRISTI NOEM, *et al*., | |
| Defendants. | |
| | |
| W.B. | Case No. 4:25-cv-3407-JSW |
| Plaintiff, | |
| v. | |
| KRISTI NOEM, *et al*., | |
| Defendants. | |
| | |
| J.C. *et al*., | Case No. 4:25-cv-3502-JSW |
| Plaintiffs, | |
| v. | |
| KRISTI NOEM, *et al*., | |
| Defendants. | |

DEFENDANTS' SUPPL. OPPOSITION TO PRELIMINARY INJUNCTION
4:25-cv-03140- JSW and related cases

## I. INTRODUCTION

All Plaintiffs in this action have their record in the Student and Exchange Visitor Information System ("SEVIS") set back to "active" by the Student and Exchange Visitor Program ("SEVP") within the United States Immigration and Customs Enforcement ("ICE"). *See* Declaration of Andre Watson, dated May 6, 2025 ("Watson Decl.") ¶ 5. The reactivation of each Plaintiff's SEVIS record is made retroactive to the date of its initial termination, such that there is no gap in the Plaintiff's SEVIS record. Watson Decl. ¶ 6. To the extent any Plaintiff is participating in Optional Practical Training ("OPT"), any authorization end date for OPT has been reset to the end date set forth in the Plaintiff's SEVIS record before its termination. *Id.* ¶ 8.

Plaintiffs are 23 international students who are enrolled at universities or employed pursuant to post-graduate training in the United States in F-1 nonimmigrant student status, who are challenging SEVP's previous revision of their records to "terminated" in the SEVIS database. To be clear, Plaintiffs have active SEVIS records and hold F-1 student status. Yet, Plaintiffs maintain that they are entitled to a preliminary injunction for the pendency of this lawsuit to maintain the "active" status of their records in the SEVIS database. Plaintiffs seeks to extend the Court's temporary restraining order ("TRO") barring Defendants from implementing any legal effects from the termination of a SEVIS record, including having ICE and SEVP make the records reactivation retroactive to the date of the initial termination in early April 2025. Plaintiffs also ask this Court to issue a broad variety of anomalous additional relief consisting of enjoining Defendants, on any grounds, from transferring them if they are federally detained, outside of the Northern District of California; the Court's grant of this request essentially immunizes Plaintiffs from any immigration law enforcement.

The Court should deny Plaintiffs' request for wide-ranging injunctive relief because it is unnecessary and unsupported by the evidence and case law.[1] [2] Plaintiffs' SEVIS records were reinstated by ICE as part of a generalized decision, independent of these lawsuits, to rapidly reactivate all the

---

[1] Defendants submit this supplemental opposition to Plaintiffs' request for a preliminary injunction in four related cases: *Doe*, *S.Y.*, *Chen*, *W.B.*, and *J.C.*

[2] The Court granted the parties' stipulation to dismiss in the related cases of *Shah v. Lyons*, No. 4:25-cv-3549 (Dkt. No. 29); *Bai v. Lyons*, No. 4:25-cv-3481 (Dkt. No. 38); *Qui v. Lyons*, No. 4:25-cv-3475 (Dkt. No. 42); *He v. Noem*, No. 4:25-cv-3480 (Dkt. No. 23); *Kim v. Noem*, No. 4:25-cv-3383 (Dkt. No. 37); and *Wang v. Noem*, No. 4:25-cv-3323 (Dkt. No. 33).

terminated SEVIS records. The agency publicly announced its decision on April 25, 2025, as widely reported in the press, and Defendants provided notice of that decision to the Court. The agency's reinstatement decision was followed by ICE's enactment of a SEVIS record policy on April 26, 2025. There is no evidence that Plaintiffs' SEVIS records will be terminated again as a result of the actions alleged in these lawsuits, much less that such termination is imminent and that it would inflict irreparable harm—since the agency has made clear that SEVIS record termination does not itself terminate F-1 status. Indeed, contrary to Plaintiffs' intimations, and despite the numerous cases filed on this subject, no evidence of any arrests based on such SEVIS record termination has been presented (as opposed to being based on separate grounds of removability, which would apply regardless of the SEVIS records status). There certainly is no evidence of any arrests following ICE's generalized reactivation of the affected SEVIS records.

Plaintiffs have no immediate, irreparable injury and they only allege speculative harm in the future. *See Badem v. Lyons*, No. 25-cv-1098, 2025 WL 1302026, at *2 (D.D.C. May 5, 2025) (holding that "the mere possibility that the government could again terminate plaintiffs' SEVIS records in the future is too speculative to warrant preliminary injunctive relief today"). Plaintiffs' SEVIS database records are active, and ICE will not, under the SEVIS policy announced April 26, 2025, re-terminate Plaintiffs' SEVIS records based solely on the National Crime and Information Center ("NCIC") record that led to the initial termination. Watson Decl. ¶ 6. Additionally, the termination and reactivation of a Plaintiff's SEVIS record by SEVP will not, in itself, have a negative impact on the adjudication of any benefit request by United States Citizenship and Immigration Services ("USCIS"). *See* Declaration of Michelle Young ("Young Decl.") ¶ 11.

Plaintiffs provide no evidence of an adverse adjudication by USCIS or by an immigration judge on their F-1 status. Plaintiffs' claim of potential, future injury related to their SEVIS records is exactly that—claims of future, speculative harm. Plaintiffs speculate that they may be prevented from making progress in their studies, but they have not shown that is the case given their active SEVIS records. Moreover, Plaintiffs' claim of injury by potential detention or deportation not only is speculative, but the Supreme Court has held that "the burden of removal alone cannot constitute the requisite irreparable injury" necessary for preliminary injunctive relief. *See*, e.g., *Nken v. Holder*, 556 U.S. 418, 435 (2009).

DEFENDANTS' SUPPL. OPPOSITION TO PRELIMINARY INJUNCTION
4:25-cv-3140 JSW and related cases                              2

1  As their ostensible basis for seeking extraordinary injunctive relief, Plaintiffs cite only to non-applicable cases in which foreign nationals have been arrested and detained under Section 237(a)(4)(c) of the Immigration and Nationality Act ("INA")—which authorizes the Secretary of State to determine that an individual is "deportable" if they have "reasonable grounds" to believe the individual would adversely affect U.S. foreign policy. However, Plaintiffs identify no such foreign policy issues here, nor any political speech. Nor have Plaintiffs sued the United States Department of State or its Secretary as defendants in this lawsuit.

In fact, Plaintiffs concede that termination of a SEVIS record is distinct from a visa revocation but then misconstrue ICE's April 26 SEVIS record policy as providing the Department of State with "unfetterered discretion" to revoke visas and ICE with the ability to again terminate SEVIS records based on the same reasons. *See* Dkt. No. 35 (Plaintiffs' Supplemental Brief) at 2. Plaintiffs' claim regarding the SEVIS record policy is meritless. As stated in the SEVIS record policy, "SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect" (rather than on departure), since an immediate revocation can serve as a basis of removability under 8 U.S.C. § 1227(a)(1)(B).[3] *See* Dkt. No. 51-1 (SEVIS Policy). Plaintiffs did not have their visas revoked with immediate effect. *See Badem*, 2025 WL 1302026, at *2 (noting that "it is not clear whether any plaintiff's visa revocation even falls into the category of actions that could lead to SEVIS termination: the policy emphasizes that a visa revocation must be "effective immediately" in order to form the basis for a termination, and no plaintiff has alleged receiving a revocation of that particular kind").

The deficiencies with Plaintiffs' request for injunctive relief are particularly severe because in Administrative Procedure Act ("APA") cases, vacatur is the standard remedy rather than an injunction, leaving the agency free to decide how it ought to proceed in light of the adverse ruling. 5 U.S.C. § 706(2)(A); *see also Se. Alaska Conserv. Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th

---

[3] Defendants discussed in their opposition, Dkt. No. 29 at 4, that the Department of State may revoke an F-1 visa "at any time, in [the Secretary of State's] discretion." 8 U.S.C. § 1201(i); 22 C.F.R. § 41.122(a). A revocation may be immediate, prudential, or provisional. *See* 22 C.F.R. §§ 41.122(b), 42.82. If the Department of State immediately revokes a visa, the individual is removable under 8 U.S.C. § 1227(a)(1)(B). In contrast, a prudential revocation, or revocation upon departure, does not have a corresponding ground of removability. *See* 9 Foreign Affairs Manual ("FAM") 403.11-5(B), (U) (Prudential Revocations). Meanwhile, a "provisional revocation is subject to reversal through internal procedures established by the Department of State." 22 C.F.R. § 41.122(b).

Cir. 2007), *rev'd on other grounds sub nom. Coeur Alaska v. Se. Alaska Conserv. Council*, 557 U.S. 261 (2009). Plaintiffs should not be provided by preliminary injunctive relief what they would not be entitled to if they ultimately prevailed on the merits of their claims—particularly when the agency already has reversed the challenged action, no less. Accordingly, for the reasons set forth in Defendants' opposition to Plaintiffs motion for TRO, *e.g.*, Dkt. No. 29, and as further detailed here, the Court should deny Plaintiffs' request for a preliminary injunction.

## II.     PROCEDURAL DEVELOPMENTS

### A.     Reinstatement of the SEVIS Record and the SEVIS Policy.

On April 25, 2025, Defendants publicly announced that ICE was reactivating the SEVIS records of international students whose SEVIS records were terminated in early April 2025. *See* Dkt. 47 (Defendants' Statement). This reactivation includes students that filed lawsuits as plaintiffs and students who did not file lawsuits—*i.e.*, ICE's reactivation of SEVIS records is independent of any particular civil litigation. Dkt. No. 47.

By broadcast message dated April 26, 2025, ICE distributed a policy regarding the termination of records in SEVIS. *See* Dkt. No. 51-1. Under the policy guidance, ICE provides a framework for when SEVP may terminate a foreign national's SEVIS record, including when there is objective evidence of a foreign national's failure to comply with the terms of nonimmigrant status, and explains how SEVIS terminations interact with visa revocations.[4] *Id.* As stated in the policy, ICE maintains the authority to terminate a SEVIS record for specific reasons, such as if a student fails to maintain his nonimmigrant status after the record is reactivated or engages in other unlawful activity that would render him removable from the United States under the INA. *Id.* The SEVIS policy also provides that, if the Department of State revokes a nonimmigrant visa with immediate effect, SEVP may terminate the nonimmigrant's SEVIS record based on that alone. *Id.* at 2 ("If State revokes a nonimmigrant effective

---

[4] As discussed *supra*, n.3, a prudential revocation of a visa differs from an immediate revocation. While an immediate revocation occurs only in certain specified circumstances, the Department of State retains discretion to prudentially revoke a visa if warranted, including "when it receives derogatory information directly from another U.S. Government agency[.]" 9 FAM 403.11-5(B). Prudential visa revocations are "made effective upon the subject's departure from the United States, when the subject is physically present in the United States at the time of revocation." State Dep't/AILA Liaison Committee Meeting, Agenda at 11 (Apr. 11, 2019), https://perma.cc/D4G6-8VSM (last visited May 6, 2025).

DEFENDANTS' SUPPL. OPPOSITION TO PRELIMINARY INJUNCTION
4:25-cv-3140 JSW and related cases                              4

1 immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with
2 immediate effect, as such, a revocation can serve as a basis for removability under INA § 237(a)(1)(B).
3 SEVP should not, however, terminate a nonimmigrant's SEVIS record on this basis until it has
4 confirmed that State has revoked the visa."). In contrast, a prudential visa revocation alone is an
5 insufficient basis for a SEVIS record termination.

### B. Plaintiffs

Plaintiffs are 23 international students who have their SEVIS records reverted back to "active" in the SEVIS database:

**John Doe:** Plaintiff's SEVIS record has been reactivated. Watson Decl. ¶ 5.

**S.Y.:** The five Plaintiffs S.Y., W.X., Z.D., H.G., and Y.W. all had their SEVIS records reactivated. Watson Decl. ¶ 5.

**Chen:** The four Plaintiffs Zhuoer Chen, Gexi Guo, Jiarong Ouyang, and Mengcheng Yu all had their SEVIS records reactivated. Watson Decl. ¶ 5.

**W.B.:** Plaintiff's SEVIS record has been reactivated. Watson Decl. ¶ 5.

**J.C.:** The twelve Plaintiffs J.C., Y.Z., W.W., V.A., T.W., L.Z., I.P., H.L., E.S., D.Y., A.O., and A.B. all had their SEVIS records reactivated. Watson Decl. ¶ 5.

Thus, all Plaintiffs have active SEVIS records and they all hold F-1 student status. ICE also maintains that the reactivation of each Plaintiff's SEVIS record is made retroactive to the date of its initial termination, such that there is no gap in the Plaintiff's SEVIS record. Watson Decl. ¶ 6. Further, under the SEVIS policy announced on April 26, 2025, ICE will not re-terminate Plaintiffs' SEVIS records based solely on the NCIC record that led to the initial termination. Watson Decl. ¶ 6.

### III. LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy" that the Court should award only upon a clear showing that the party is entitled to such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary injunctions are "never awarded as of right." *Winter*, 555 U.S. at 24. A plaintiff seeking preliminary injunctive relief must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Garcia v. Google*, Inc., 786

F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20). Alternatively, plaintiff can show that there are "'serious questions going to the merits' and the 'balance of hardships tips sharply towards' [plaintiff], as long as the second and third *Winter* factors are [also] satisfied." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). Plaintiff's burden is aptly described as a "heavy" one. *Earth Island Inst.*, 626 F.3d at 469.

The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). A preliminary injunction may not be used to obtain "a preliminary adjudication on the merits," but only to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Accordingly, where a plaintiff seeks mandatory injunctive relief—seeking to alter the status quo—"courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored." *Stanley*, 13 F.3d at 1320 (internal quotations and alteration omitted). A mandatory injunction "should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Anderson*, 612 F.2d at 1115.

IV.   ARGUMENT

   A.   **Plaintiffs Cannot Establish a Likelihood of Immediate Irreparable Harm.**

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors."

1  *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quotation omitted). A "possibility" of irreparable harm is insufficient; irreparable harm must be likely absent an injunction. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Plaintiffs fail to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief—a conclusion that a district court recently reached when considering similar facts and the recent developments in a SEVIS record termination case. *See Badam*, 2025 WL 1302026, at *2 ("In sum, the mere possibility that the government could again terminate plaintiffs' SEVIS records in the future is too speculative to warrant preliminary injunctive relief today[.]").[5] It is apparent from the current record before the Court, that Plaintiffs cannot meet their burden to demonstrate that "irreparable injury is likely in the absence of an injunction," *Winter*, 555 U.S. at 22 (2008), a required showing for the extraordinary emergency relief Plaintiffs seek here.

ICE has reactivated Plaintiffs' SEVIS records and a policy governs SEVIS record terminations. The agency confirms that its reactivation is retroactive to the date of initial termination so that there is no gap in Plaintiffs' records, including for purposes of OPT employment authorization. Watson Decl. ¶¶ 7–8. ICE also confirms that, under the SEVIS policy, it will not re-terminate Plaintiffs' SEVIS records based solely on the NCIC record that led to the initial termination. *Id.* ¶ 6. Plaintiffs point to nothing under the new policy indicating that their SEVIS records are likely to be terminated absent a preliminary injunction. Additionally, the termination and reactivation of a Plaintiff's SEVIS record by SEVP will not, in itself, have a negative impact on the adjudication of any benefit request by USCIS. *See* Young Decl. ¶ 11. Plaintiffs have the burden to demonstrate to obtain provisional injunctive relief, which they have not done here. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

Plaintiffs' claims of current harm are now stale and obsolete, and they offer nothing more than speculation in support of their claims of future harm. *See* Dkt. No. 35 at 8–13. This includes:

---

[5] Defendants herein do not argue that Plaintiffs are unlikely to succeed on the merits because the case is moot by virtue of ICE's new SEVIS policy. That said, Defendants likely may raise that issue in responding to the complaint.

DEFENDANTS' SUPPL. OPPOSITION TO PRELIMINARY INJUNCTION
4:25-cv-3140 JSW and related cases                   7

1. Plaintiffs' SEVIS records have been reactivated and ICE confirms that its reactivation is retroactive to the date of initial termination so that there is no gap in Plaintiffs' records, including for purposes of OPT employment authorization. Watson Decl. ¶¶ 5, 7–8. Additionally, USCIS confirms that the termination and reactivation of a Plaintiff's SEVIS record will not negatively impact the adjudication of any benefit request. *See* Young Decl. ¶ 11. Plaintiffs do not claim claim that USCIS has made a negative determination regarding their status based on the SEVIS record termination on any benefit application that Plaintiffs have or will file with USCIS.

2. Plaintiffs' claim that they "may" have to report a failure to maintain status with USCIS or the Department of State is inaccurate. As stated above, Plaintiffs' SEVIS records have been reactivated and made retroactive for all purposes, including for employment authorization or any benefits request filed with USCIS. Watson Decl. ¶¶ 5–8; Young Decl. ¶ 11.

3. Plaintiffs' claims relating a potential future revocation by the Department of State, who is not a party to this action, are speculative. None of the Plaintiffs had their visas revoked with immediate effect. *See Badem*, 2025 WL 1302026, at *2 (noting that "it is not clear whether any plaintiff's visa revocation even falls into the category of actions that could lead to SEVIS termination: the policy emphasizes that a visa revocation must be "effective immediately" in order to form the basis for a termination, and no plaintiff has alleged receiving a revocation of that particular kind").

In sum, Plaintiffs have failed to establish any irreparable harm. The Court should deny Plaintiffs' motion for preliminary injunction on this basis alone. *See Badem*, 2025 WL 1302026, at *2 (denying emergency relief in that case and related cases due to lack of irreparable harm).

**B.    A Preliminary Injunction Should Not Be Issued Because There is No Evidence that Plaintiffs Will Likely Be Arrested Based on SEVIS Record Termination.**

The TRO also prohibited the transfer of Plaintiffs, if federally detained, outside the jurisdiction of this District. This relief remains unrelated to SEVIS and certainly is not warranted following the reactivation of Plaintiffs' SEVIS records. To be clear, the Plaintiffs' F-1 status was never terminated by SEVIS record termination, and they are not subject to a threat of arrest and detention on that basis, Plaintiffs' speculations to the contrary notwithstanding.

Plaintiffs liken themselves to the completely different line of cases in which students have been

arrested, by the Department State action, for allegedly speaking about foreign policy issues. But Plaintiffs have not sued the Department of State. And Plaintiffs do not claim that they are speaking about political issues or fear potential repercussions on that basis. Plaintiffs cite to several cases of students being detained but those cases predate the SEVIS record terminations that is at issue in these SEVIS cases. Moreover, the actual charges for the removability and arrest in those cases are not relevant to the circumstances of Plaintiffs in these cases. There are many grounds for removability, and there are multiple ways to lose status. Simply having a SEVIS record terminated is not, by itself, one of them, since a SEVIS record and F-1 status are not the same thing. Accordingly, for purposes of injunctive relief, Plaintiffs cannot rely on likening themselves to arrests in political activity cases. Finally, and perhaps most importantly, Plaintiffs do not take into consideration ICE's decision to reactivate the SEVIS records, nor the new policy, and Plaintiffs cannot opine about an asserted threat of arrest or detention relative to the recent developments relating to the SEVIS records.

Indeed, despite the large numbers of SEVIS record cases that have been filed recently, there do not appear to be any reports of the students in question having been arrested and removed, whether TROs were issued in their case or not. And *a fortiori*, there is no such evidence of such arrests or detentions after the SEVIS records were reactivated by the generalized agency action. This extraordinary relief, if implemented past the TRO, would operate to bar immigration detention, on any ground whatsoever, for Plaintiffs. There is no basis for such a broad injunction order essentially immunizing Plaintiffs from the reach of federal immigration law. Plaintiffs seeks as preliminary injunctive relief what they could not get even if they ultimately prevailed on the claims in their complaint. That is indefensible as an injunction under the APA, especially when the challenged agency action at issue has already been reversed by agency decision.

### C.    Plaintiffs Are Not Entitled to a Nationwide Injunction.

Plaintiffs have not met their burden of establishing that a nationwide temporary restraining order is warranted. It is unclear why Plaintiffs are seeking a nationwide injunction given that ICE has reactivated the SEVIS records of students whose records were terminated based on the NCIC information. Moreover, Plaintiffs cannot seek to enjoin the new termination policy since that is not at issue here and Plaintiffs have not amended their complaint.

1    Moreover, the fact that many plaintiffs have dismissed their lawsuits (including the majority of
2 the related cases before this Court) shows that there cannot be an assumption of irreparable harm—or
3 any harm—on a nationwide basis. Nor is a nationwide injunction is needed to provide any affected
4 individuals full relief. Accordingly, a nationwide injunction is unnecessary for Plaintiffs to obtain the
5 relief they seek. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) (providing that an injunction "must be
6 tailored to redress the plaintiff's particular injury," and "injunctive relief should be no more burdensome
7 to the defendant than necessary to provide complete relief to the plaintiffs").

## V.    CONCLUSION

For the reasons set forth in Defendants' opposition to Plaintiffs' motion for TRO, and as further detailed here, Defendants respectfully request that the Court deny Plaintiffs' request for a preliminary injunction.

DATED:  May 9, 2025                                Respectfully submitted,

                                                   PATRICK D. ROBBINS
                                                   Acting United States Attorney


                                                   *s/ Elizabeth D. Kurlan*
                                                   ELIZABETH D. KURLAN
                                                   Assistant United States Attorney

                                                   *Attorneys for Defendants*