Andre Y. Bates (SBN 178170) (aybates@dehengsv.com)
Steven A. Soloway (SBN 130774) (ssoloway@dehengsv.com)
Keliang (Clay) Zhu (SBN 305509) (czhu@dehengsv.com)
Yi Yao (SBN 292563) (yyao@dehengsv.com)
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-6702
F: 925-397-1976

Justin Sadowsky – Admitted *Pro Hac Vice*
**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**
4250 N Fairfax Drive #600
Arlington, VA 22203
T: 646-785-9154
E: justins@caldausa.org

*Attorneys for Plaintiffs*
*Zhuoer Chen, Mengcheng Yu,*
*Jiarong Ouyang and Gexi Guo*

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

#### OAKLAND DIVISION

| | |
|---|---|
| John Doe,<br><br>    Plaintiff,<br><br>    v.<br><br>Donald J. TRUMP, in his official capacity,<br>President of the United States of America, et al.<br><br>    Defendants. | Case No. 4:25-cv-03140-JSW<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Request for Declaratory and Injunctive Relief<br><br>Judge: Hon. Jeffrey White<br>Hearing Date: May 14, 2025<br>Hearing Time: 10:00 a.m. |

| | |
|---|---|
| Zhuoer Chen, et al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security, et al.<br><br>     Defendants. | Case No. 4:25-cv-03292-JSW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Request for Declaratory and Injunctive Relief<br><br>Judge: Hon. Jeffrey White<br>Hearing Date: May 14, 2025<br>Hearing Time: 10:00 a.m. |
| S.Y., et al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security, et al.<br><br>     Defendants. | Case No. 4:25-cv-03244-JSW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Request for Declaratory and Injunctive Relief<br><br>Judge: Hon. Jeffrey White<br>Hearing Date: May 14, 2025<br>Hearing Time: 9:00 a.m. |
| J.C., et al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>Kristi NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security, et al.<br><br>     Defendants. | Case No. 4:25-cv-03502-JSW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Request for Declaratory and Injunctive Relief<br><br>Judge: Hon. Jeffrey White<br>Hearing Date: May 14, 2025<br>Hearing Time: 10:00 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W.B.,

      Plaintiff,

      v.

Kristi NOEM, in her official capacity,
Secretary of the U.S. Department of Homeland
Security, et al.

      Defendants.

Case No. 4:25-cv-03407-JSW

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Request for Declaratory and Injunctive Relief

Judge: Hon. Jeffrey White
Hearing Date: May 14, 2025
Hearing Time: 10:00 a.m.

1

## TABLE OF CONTENTS

2

3   INTRODUCTION..........................................................................................................1

4   RELEVANT FACTUAL AND PROCEDURAL HISTORY.......................................1

5   I.   Defendants' new policy is unlawful in numerous respects and violates the APA's

6        notice-and-comment requirement. ...............................................................1

7   II.  The Watson and Young declarations parrot the new unlawful Policy and further

8        underscore the need for this Court to intervene. .........................................3

9   III. ICE has taken enforcement actions against noncitizens after their SEVIS records

10       were terminated, and the record here indicates that ICE informed numerous

11       Plaintiffs that they were removable under INA § 237(a)(1)(C) once their SEVIS

12       records were terminated. .............................................................................6

13  ARGUMENT ...............................................................................................................7

14  I.   Plaintiffs overwhelmingly establish that they merit a PI pursuant to the Ninth

15       Circuit's sliding scale approach. .................................................................7

16       A. Defendants do not meaningfully contest that they illegally terminated Plaintiffs'

17          SEVIS records. .......................................................................................8

18       B. The termination of a SEVIS record equates to a finding that a noncitizen is out of

19          status and prevents them from accessing the benefits tied to their F-1 nonimmigrant

20          status.......................................................................................................8

21       C. Defendants' new Policy violates the notice-and-comment requirement and

22          impermissibly allows DOS to dictate ICE's actions. ............................9

23       D. Absent a PI, Plaintiffs would suffer irreparable harm..........................11

24       E. The balance of equities tips sharply in Plaintiffs' favor.......................11

25  II.  Plaintiffs' claims are not moot..................................................................12

26  III. The current TROs and proposed PI are not overbroad and are instead narrowly

27       tailored to prevent Defendants from further harming Plaintiffs. ...............13

28  Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

i

**IV.  The Court should grant a nationwide injunction.** ....................................................... 14

**CONCLUSION.** ...................................................................................................................... 16

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

ii

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                               **Pages**

3

*All. for the Wild Rockies v. Cottrell,*

4

  632 F.3d 1127 (9th Cir. 2011) ......................................................................... 9

5

*Arizona Student Doe #1 v. Trump,*

6

  2025 WL 1192826 (D. Ariz. Apr. 24, 2025) ................................................ 13

7

*City & Cty. of S.F. v. Trump,*

8

  897 F.3d 1225 (9th Cir. 2018) ....................................................................... 17

9

*D.B. v. Trump,*

10

  2025 WL 1203232 (S.D. Ohio Apr. 23, 2025) ............................................. 13

11

*Doe v. Noem,*

12

  2025 WL 1134977 (E.D. Cal. Apr. 17, 2025) ............................................... 13

13

*Doe v. Noem,*

14

  2025 WL 1341711 (N.D. Ill. May 8, 2025) .................................... 9, 5, 6, 13

15

*Doe v. Noem,*

16

  No. 25-CV-2998 (KSH) (AME), 2025 WL 1348503 (D.N.J. May 8, 2025) ..................... 13, 9

17

*E. Bay Sanctuary Covenant v. Biden,*

18

  993 F.3d 640 (9th Cir. 2021) ......................................................................... 16

19

*FBI v. Fikre,*

20

  601 U.S. 234 (2024) ....................................................................................... 14

21

*Flagstaff Med. Ctr., Inc. v. Sullivan,*

22

  962 F.2d 879 (9th Cir. 1992) ......................................................................... 11

23

*Gao v. Noem,*

24

  No. 1:25-CV-419, 2025 WL 1318417 (W.D. Mich. May 7, 2025) .................... 9, 13

25

*Gill v. Whitford,*

26

  585 U.S. 48 (2018) ......................................................................................... 16

27

*Immigrant Legal Res. Ctr. v. Wolf,*

28

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

491 F. Supp. 3d 520 (N.D. Cal. 2020) ........................................................................... 17

*Isserdasani v. Noem*,

2025 WL 1330188 (W.D. Wis. May 7, 2025) ..................................................... 5, 9, 13

*Liu v. Noem*,

2025 WL 1233892 (D.N.H. Apr. 29, 2025) ................................................................. 13

*Mada-Luna v. Fitzpatrick*,

813 F.2d 1006 (9th Cir. 1987) ............................................................................. 11, 12

*Madsen v. Women's Health Ctr., Inc.*,

512 U.S. 753 (1994) ..................................................................................................... 14

*Medina Tovar v. Zuchowski*,

982 F.3d 631 (9th Cir. 2020) ....................................................................................... 11

*Nat'l TPS All. v. Noem*,

2025 WL 957677 (N.D. Cal. Mar. 31, 2025) .............................................................. 16

*Ortega Gonzalez v. Noem*,

No. 6:25-CV-00622-MC, 2025 WL 1355272 (D. Or. May 9, 2025) ................... 9, 10, 13

*Reno-Sparks Indian Colony v. U.S. E.P.A.*,

336 F.3d 899 (9th Cir. 2003) ....................................................................................... 11

*San Diego Air Sports Ctr., Inc. v. F.A.A.*,

887 F.2d 966 (9th Cir. 1989) ....................................................................................... 11

*Viyas v. Noem*,

No. CV 3:25-0261, 2025 WL 1351537 (S.D.W. Va. May 8, 2025) ...................... 9, 13

*Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7 (2008) ........................................................................................................... 8


**Statutes**

5 U.S.C. §706(2)(D) ........................................................................................................ 12

5 U.S.C. § 706(2)(A) ...................................................................................................... 10

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

iv

8 U.S.C. § 1227(a)(1)(C) ................................................................................................ 14

8 U.S.C. § 1227(a)(2) ...................................................................................................... 14

8 U.S.C. § 1227(a)(3) ...................................................................................................... 15

8 U.S.C. § 1227(a)(4) ...................................................................................................... 15

8 U.S.C. § 1227(a)(5) ...................................................................................................... 15

8 U.S.C. § 1227(a)(6) ...................................................................................................... 15

**Regulations**

8 C.F.R. § 214.1(d) ................................................................................... 3, 4, 5, 10, 11, 12

8 C.F.R. § 214.1(e) .......................................................................................................... 15

8 C.F.R. § 214.1(e)-(g) .................................................................................... 3, 5, 11, 12

8 C.F.R. § 214.1(g) .................................................................................................. 4, 15

8 C.F.R. § 214.2(f)(10)(ii)(E) .......................................................................................... 7

**Other Authorities**

9 FAM 402.5 ................................................................................................................. 10

9 FAM 403.11 ................................................................................................................ 15

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

v

**INTRODUCTION**

The reactivation of Plaintiffs' SEVIS status does not address all of the harm inflicted upon Plaintiffs. Instead, ICE's new Policy, released via a broadcast message on April 26, 2025, only confirms that Defendants will extrajudicially terminate SEVIS records on a whim without affording Plaintiffs any notice or opportunity to respond. This Court must therefore convert the TROs to a preliminary injunction (PI) that protects not only the Plaintiffs in these related matters but all similarly situated noncitizens throughout the country.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

**I.    Defendants' new policy is unlawful in numerous respects and violates the APA's notice-and-comment requirement.**

On April 26, 2025, and subsequent to the issuance in the TROs in all Plaintiffs' cases, Defendants notified the Court that ICE had "issued a new policy concerning the termination of records in [SEVIS]." Dkt. 51, 51-1. The Policy, in the form of a broadcast message, provides a non-exhaustive list of reasons for termination of SEVIS records, which goes well beyond the clearly defined bases for termination in the regulations, and further indicates that SEVP, the platform through which ICE controls SEVIS accounts, can terminate SEVIS records for 'normal' reasons. Dkt. 51-1 ("Additionally, SEVP can terminate records for a variety of reasons, including, but not limited to the following reasons."). The term 'normal' is not defined. *Id.* Conspicuously absent from the Policy is any discussion of whether SEVIS records may be terminated, without notice to a student, where there has been an uncharged arrest, dismissed criminal proceedings, or a minor criminal conviction that is not a "crime of violence." *Id.* As meticulously set forth in prior briefing, ICE may only terminate a SEVIS record for the few enumerated reasons, specified in controlling regulations. *See* 8 C.F.R. § 214.1(d); *see also* 8 C.F.R. § 214.1(e)-(g).

ICE's new Policy notably, and "effective immediately," adds "immediate" visa revocation as a basis for termination of a SEVIS record. *Id.*[1] This addition is significant for at least three

---

[1] Defendants distinguish between prudential visa revocation, which takes effect when a student leaves the United States, and immediate visa revocation, which they assert provides a basis for SEVIS termination. Dkt. 62 at n.3-4. The policy discusses only immediate visa revocation as a

reasons. First, the revocation of a visa by the U.S. Department of State (DOS) is not one of the enumerated grounds listed in controlling regulations which permit ICE to terminate a SEVIS record. *See* 8 C.F.R. § 214.1(d) (providing bases for SEVIS termination, including failure to maintain status); C.F.R. § 214.1(g) (stating that noncitizens convicted of a crime of violence where the term of imprisonment is one year or more have failed to maintain their status). Second, many students and Plaintiffs in these related cases whose SEVIS records were terminated also learned that their visas had been revoked. *See, e.g.*, Dkt. 39-1 (Second Sinodis Declaration) at Exs. G-H. For students whose visas have been revoked during this concerted operation by ICE and DOS, the Policy gives ICE grounds to seek to terminate SEVIS records when the TRO expires in these cases or at the unfettered discretion of ICE or DOS, even if their visa was revoked because of their SEVIS termination.[2] Third, the Policy nakedly attempts to insulate ICE and DOS from review of future actions, whether they are initiated at the expiration of the TROs or later, by expressly claiming to not be a "a rule or final action," though it clearly is both. *See* Dkt 52-1/22.[3]

---

basis for SEVIS termination, but notably provides no information as to whether students will be notified that their visa revocation is immediate or prudential, nor any assurance that a student would receive notification that their visa has been revoked before being arrested and/or placed into removal proceedings. *See also* Declaration of Johnny Sinodis dated May 12, 2025 (Third Sinodis Decl.), at Ex. D (Example of Immediate Visa Revocation Correspondence Between DOS and ICE).

[2] Without access to DOS and SEVIS records, it is not possible to know which event occurred first in each particular case. However, the email exchange between ICE and DOS suggests that, in most cases, visa revocations occurred first. Third Sinodis Decl. at Ex. D (Example of Immediate Visa Revocation Correspondence Between DOS and ICE). In some cases, the student no longer had a valid visa because their visa had expired or they never had a visa in the first place (because they changed status in the United States), and so DOS could not revoke a visa. Dkt. 52-1 at Exhibit A. In other cases, the SEVIS record terminations did, in fact, occur prior to the visa revocation, contrary to what Defendants continue to claim. *S.Y., et al. v. Noem, et al.*, 5:25-cv-03244-JSW, Dkt 1-1 Exhibits C, H, and P; *J.C., et al. v. Noem, et al.*, 5:25-cv-03502-JSW, Dkt. 1-1 Exhibits E, I, L, BB, FF; *Chen, et al. v. Noem, et al.*, 3:25-cv-03292, Dkt. 7-8; *see also Doe v. Noem*, 2:25-cv-01103-DAD-AC (E.D.C.A. Apr. 17, 2025), Dkt. 13 (Order Granting Plaintiff's Motions to Proceed Under Pseudonym, for a Protective Order and for Temporary Restraining Order).

[3] Further, by asserting that a visa revocation provides grounds to terminate a SEVIS record, Defendants appear to be attempting insulating ICE's actions from further judicial review. Though this attempt is clearly unsuccessful, Plaintiffs are considering whether it provides a reason to file an Amended Complaint to include DOS as a Defendant.

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

The Policy also seeks to codify Defendants' unlawful actions in an effort to bolster their litigation position and their power to chase students out of the United States without notice or lawful basis. In sum, the new Policy lacks proper notice and comment, violates existing law, and falls short of the Constitutional requirements of due process.

Defendants further fail to explain why SEVIS records are being terminated if termination has no bearing on the registrants rights or lawful status. In reality, a SEVIS record has a direct and unavoidable impact on a noncitizen's ability to study, work, and remain in the United States and to maintain their F-1 nonimmigrant status. Dkt. 39-1 at Ex. B. And Defendants' assertion that termination of SEVIS does not result in loss of F-1 status, Dkt. 62-1 at 8, is not true. It is contradicted by ICE's own guidance, as well as the record in this case and similar cases across the country.[4]

As this Court and others have found, SEVIS termination does more than 'flag' a record for investigation. SEVIS termination prevents noncitizens from maintaining lawful status and from accessing all benefits of F-1 nonimmigrant status. *See Doe v. Trump,* No. 25 C 4188, 2025 U.S. Dist. LEXIS 88038, at *19 (N.D. Ill. May 8, 2025) ("SEVIS is not simply a clerical database operating independently of F-1 status") (citation omitted); *see also Isserdasani v. Noem*, No. 25-CV-283-WMC, 2025 WL 1330188, at *7 (W.D. Wis. May 7, 2025) ("[D]efendants do not persuasively demonstrate that when SEVP changed plaintiff's SEVIS record to 'terminated' this action had no relation whatsoever to his F-1 student status.").

## II.    The Watson and Young declarations parrot the new unlawful Policy and further underscore the need for this Court to intervene.

Defendants heavily rely on two additional declarations from Andre Watson and Michelle Young to suggest the dispute is now moot and to argue that Plaintiffs cannot carry their burden

---

[4] *See* U.S. Department of Homeland Security, Study in the States (Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (consequences of SEVIS termination); *Gong v. Noem*, 2:25-cv-02115-CSB-EIL, Dkt. 15 (C.D.Ill. May 7, 2025) (detailing consequences of termination of SEVIS records, including ending all benefits of F-1 status).

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

1    to establish irreparable harm. Dkts. 62-1, 62-2; *see* Dkt. 62 at 7. But the declarations merely mimic

2    Defendants' new Policy. *Cf.* 8 C.F.R. § 214.1(d), (e)-(g).

3        The vague Watson declaration lacks critical details. Dkt. 62-1. It does not explain the

4    process by which ICE and DOS decided to terminate SEVIS records *en masse*. *Id.* It merely states

5    that "ICE reviewed and terminated numerous SEVIS records due to information provided by

6    [DOS] and criminal databases," but provides no evidence of individual review of any SEVIS

7    record prior to termination. As at least one court has found that termination was systematic and

8    slipshod:

9        Watson's explanation of the case-by-case review was that in two to three weeks, his
10       team of ten to twenty federal employees ran 1.3 million names through the NCIC
         system…[and] that after his team finished this review, they sent the names to the
11       State Department who in turn advised his team whether the F-1 students had valid
         visas and requested terminating students' SEVIS records. None of the produced
12       emails suggest that DHS attempted to engage in even a minimally meaningful
         individual review of each F-1 student to determine whether they were convicted of
13       a crime…before DHS terminated their SEVIS records…these emails demonstrate
         a shockingly hasty timeline wherein the SEVP division chief decided only fifteen
14       minutes after receiving a list of F-1 students' names to 'terminate everyone in
         SEVIS.'
15

16   *See Doe v. Trump*, No. 25 C 4188, 2025 U.S. Dist. LEXIS 88038, at *13-14 (N.D. Ill. May 8,

17   2025); *see also* Dkt. 52-1 at Exh. A.

18       Worse still, the Watson declaration states that, as of the date of the declaration, "ICE has

19   no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely

20   on the NCIC record that led to its initial termination." Dkt. 62-1 at ¶ 6. This claim does not offer

21   any meaningful assurance that ICE will not seek to re-terminate Plaintiffs' SEVIS records on

22   some other pretextual basis and/or grounds not specified by regulation or statute as soon as the

23   TROs expire in these cases. And if DOS (alone or in collaboration with ICE) decides to terminate

24   Plaintiffs' visas—as it has already with many of them—then the new Policy purports not to give

25

26

27

28   Case No. 4:25-cv-03292-JSW

     REPLY ISO MOTION FOR PI

                                            4

ICE any discretion not to terminate Plaintiffs' SEVIS records.[5] Further, ICE's current plans are limited to only the "NCIC record that led to its initial termination." Yet, Defendants have not provided Plaintiffs with any information as to what NCIC record led to the SEVIS terminations in any particular case. So Watson's statement does not prevent ICE from having DOS terminate Plaintiffs' SEVIS records for the same reason, or for coming up with an equally arbitrary reason for re-terminating Plaintiffs' SEVIS records. Indeed, Watson's declaration does not even preclude ICE from reverting to its initial Policy.

As well, the Watson declaration fails to remedy the negative consequence of SEVIS record terminations for those who were on OPT and STEM OPT, as they can only engage in employment for a limited period of time and cannot be unemployed for more than ninety or one-hundred-fifty days, respectively. 8 C.F.R. § 214.2(f)(10)(ii)(E). Although Watson states that, for those Plaintiffs who were on OPT, "the record has been reset to the end date set forth in the alien's SEVIS records before its termination," Dkt. 62-1 at ¶ 8, simply resetting the original end date does not account for the days that Plaintiffs were unable to work. Plaintiffs who are on OPT continue to be deprived of the full period in which they are supposed to be able to work in the United States, and they have also been burdened with forced days of unemployment that could harm their ability to maintain lawful status in the future.

The Young declaration is much of the same. For example, Young asserts:

USCIS does not equate SEVIS record termination with termination of an alien's F-1 nonimmigrant status. Additionally, USCIS does not equate SEVIS record termination with adjudication of an immigration benefit. …
If while adjudicating an immigration benefit request, USCIS finds that an F-1 nonimmigrant's SEVIS record was terminated and then reactivated by ICE, USCIS would continue processing the benefit request according to all applicable laws, regulations, policies, and procedures. The SEVIS record termination and reactivation would not, *per se*, have a negative impact on the benefit request's adjudication.

---

[5] In fact, in at least once instance since Defendants' re-activation of SEVIS records, DOS has revoked a noncitizen's visa and sent the same threatening email to that noncitizen as has been cited in Plaintiffs' prior briefing. *See* Third Sinodis Decl. at Ex. H.

Case No. 4:25-cv-03292-JSW
REPLY ISO MOTION FOR PI

5

*Id*. Here, Young fails to explain how USCIS would treat either a terminated SEVIS record or a reactivated SEVIS record. Her statement only indicates that the existence of a reactivated record will not *per se* cause a denial or other negative impact. Left unanswered are two of the biggest questions that courts throughout the country have asked: Will a SEVIS record termination result in the denial of an application to extend or change status by USCIS? Is it possible to maintain F-1 nonimmigrant status with a terminated SEVIS record? Furthermore, the Young declaration does not disavow prior notices issued by USCIS which explicitly equate a noncitizen's terminated SEVIS record to a failure to maintain F-1 status. Dkt. 39-1, Exhibit A; Third Sinodis Decl. at Ex. F (USCIS decision finding failure to maintain status because SEVIS was terminated).

III.    **ICE has taken enforcement actions against noncitizens after their SEVIS records were terminated, and the record here indicates that ICE informed numerous Plaintiffs that they were removable under INA § 237(a)(1)(C) once their SEVIS records were terminated.**

Contrary to Defendants' assertions, students have been arrested and placed into removal proceedings when their SEVIS records were terminated. One student in Arizona was placed into proceedings within twenty-four hours after their SEVIS record was terminated. Third Sinodis Decl. at Exs. A-C (documents showing ICE has arrested individuals when their SEVIS records were terminated); Dkt 39-1, Exhibit G. Although it is not clear in every case whether the SEVIS termination or visa revocation occurred first—in large part because Defendants have provided zero notice of visa revocations to many students—there is now explicit coordination between DOS and ICE to revoke visas, terminate SEVIS records, and then arrest students. The new Policy suggests that ICE will continue terminating the SEVIS records of students whose visas are revoked by DOS, and that ICE will then initiate removal proceedings against them. Dkt. 51-1. Students will continue to receive no notice of whether their visa revocation was prudential or immediate, such that they are suddenly subject to arrest and removal. Internal communications between ICE and DOS demonstrate that the decision not to provide notice is a feature of their coordinated policy. *See* Third Sinodis Decl. at Ex. D (Armstrong Letter).

Furthermore, Defendants still gloss over the fact that numerous Plaintiffs in this matter

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

6

were informed that they were subject to removal from the United States pursuant to INA § 237(a)(1)(C) for failing to maintain their F-1 status once their SEVIS records were terminated. *See, e.g.,* Dkt. 1; Dkt. 39-1 at Ex. M; Third Sinodis Decl. at Exs. A-C. The evidence is in the record for the Court, Defendants, and the world to see. How Defendants can continue to claim that the termination of SEVIS records does not expose Plaintiffs to arrest and removal from the United States strains credulity.

## ARGUMENT

I.    **Plaintiffs overwhelmingly establish that they merit a PI pursuant to the Ninth Circuit's sliding scale approach.**

As explained in their prior briefing, Plaintiffs are entitled to a PI, whether this Court uses the four-factor test of *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), or the "sliding scale" approach of *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Indeed, Defendants do not defend their old policy at all in their opposition, merely opting to announce a new, equally lawless Policy. Presumably in recognition of their shaky legal footing, Defendants meekly argue in their Supplemental Opposition that Plaintiffs cannot establish irreparable harm and do not contest that Plaintiffs have established the other *Winter* factors. Dkt. 62 at 7-8.

As explained already in prior briefing, this is wrong. And District Courts have agreed, finding that the new Policy continues to threaten irreparable harm. *See, e.g.*, *Ortega Gonzalez v. Noem*, No. 6:25-CV-00622-MC, 2025 WL 1355272 (D. Or. May 9, 2025) (finding that "in the broader context of Defendants' unceasing attempts to remove noncitizens from the country," even under the "new policy," students "continue to be at risk of Defendants arbitrarily terminating their student status without notice, subjecting them to irreparable harm."); *B K v. Noem*, No. 1:25-cv-00419-JMB-PJG (W.D. Mich. May 7, 2025) (finding likelihood of irreparable harm in part because "[t]he changes wrought by Defendants appear to squarely fall within the category of "compliance" that is ad hoc, discretionary, and/or easily reversible"); *Isserdasani*, No. 25-CV-283-WMC, 2025 WL 1330188, (W.D. Wis. May 7, 2025); *Viyas v. Noem*, No. CV 3:25-0261,

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

2025 WL 1351537 (S.D.W. Va. May 8, 2025); *Doe v. Noem*, No. 25-CV-2998 (KSH) (AME), 2025 WL 1348503 (D.N.J. May 8, 2025); *Gao v. Noem*, No. 1:25-CV-419, 2025 WL 1318417 (W.D. Mich. May 7, 2025), *Doe v. Noem*, No. 25 C 4188, 2025 WL 1341711, at *1 (N.D. Ill. May 8, 2025).

Even if the Court were to conclude that the likelihood of irreparable harm facing Plaintiffs is more limited in light of Defendants' new Policy, the Court should still grant PI relief because Plaintiffs are likely to succeed on the merits of their claims (or have at least raised serious questions going to the merits) and the balance of hardships tips sharply in their favor. *All. for the Wild Rockies*, 632 F.3d at 1131; *see also* Dkt. 45 at 2, Order Extending TRO ("The Court finds Plaintiffs have shown at least serious questions exist on their APA claims. The Court also concludes the Plaintiffs show the likelihood of irreparable harm from the terminations and that the balance of hardships tips sharply in their favor."). Defendants do not address these factors in their Supplemental Opposition, effectively conceding the point.

## A. Defendants do not meaningfully contest that they illegally terminated Plaintiffs' SEVIS records.

"While Defendants may have walked back the SEVIS terminations because of litigation around the country, they have not repudiated the prior decisions." *Ortega Gonzalez*, No. 6:25-CV-00622-MC, 2025 WL 1355272, at *5. Under the new Policy, Plaintiffs are still "at risk of Defendants arbitrarily terminating their student status without notice, subjecting them to [further] irreparable harm." *Id*.; *see also id*. ("The termination of Plaintiffs' SEVIS status presents as so arbitrary and capricious that the Court finds it impossible to trust that, absent an injunction, Defendants will not terminate Plaintiffs' student status yet again.").

## B. The termination of a SEVIS record equates to a finding that a noncitizen is out of status and prevents them from accessing the benefits tied to their F-1 nonimmigrant status.

Notwithstanding the Watson declaration, the reason provided for Plaintiffs' SEVIS records terminations were "OTHERWISE FAILING TO MAINTAIN STATUS – Individual Identified in criminal records check and/or has had their VISA revoked." Dkt. 39-1 (Second

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

8

Sinodis Declaration) at Ex. M. The Court should find as other courts have—that there is "no other way to interpret this than as a termination of Plaintiffs' F-1 student status." *Ortega Gonzalez*, No. 6:25-CV-00622-MC, 2025 WL 1355272, at n.7; *see also* Third Sinodis Decl. at Exs. A-C (numerous DHS documents evidencing that SEVIS termination equates to failure to maintain status; 9 FAM 402.5-4(b) (stating, "the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility.").[6] Plaintiffs are thus likely to show that the termination of their SEVIS records were not in compliance with 8 C.F.R. § 214.1(d) and were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### C. Defendants' new Policy violates the notice-and-comment requirement and impermissibly allows DOS to dictate ICE's actions.

Under the APA, an agency must engage in notice-and-comment rulemaking when it promulgates a new "substantive" rule. *Reno-Sparks Indian Colony v. U.S. E.P.A.*, 336 F.3d 899, 909 (9th Cir. 2003). Substantive rules are "those which effect a change in existing law or policy" or "impos[e] general, extra-statutory obligations pursuant to authority properly delegated by the legislature." *Id.* (internal quotation marks omitted). Substantive rules "are of general, rather than situational, application." *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 886 (9th Cir. 1992).

"Interpretive rules, on the other hand, merely clarify or explain existing law or regulations...[and] instruct as to what an agency thinks a statute or regulation means." *Reno-Sparks*, 336 F.3d at 909 (internal quotation marks omitted). "Because they generally clarify the application of a law in a specific situation, they are used more for discretionary fine-tuning than for general law making." *Sullivan*, 962 F.2d at 886. Courts construe the interpretive rule exception to notice-and-comment requirements narrowly. *Id.* Finally, "[a] time-honored principle of administrative law is that the label an agency puts on its actions is not necessarily conclusive." *San*

---

[6] Available at https://fam.state.gov/fam/09FAM/09FAM040205.html. DHS's public facing website also still continues to advice that SEVIS termination has dire consequences. https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last accessed May 12, 2025).

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

*Diego Air Sports Ctr., Inc. v. F.A.A.*, 887 F.2d 966, 970 (9th Cir. 1989) (internal quotation marks omitted).

Defendants' Policy creates countless new bases for the termination of a SEVIS record that do not appear in the INA or its implementing regulations. Dkt. 51-1 at 1 (providing non-exhaustive list of reasons for SEVIS record termination). By its terms, one of those bases requires ICE to succumb to the will of DOS and terminate the SEVIS record of a noncitizen, irrespective of the individual factors of the noncitizen's particular case, whenever a visa is revoked "with immediate effect," even though the revocation of a visa is not a ground upon which lawfully promulgated regulations permit ICE to terminate SEVIS. *Id*. at 2; *Cf*. 8 C.F.R. § 214.1(d), (e)-(g). At bottom, the Policy's directives violate both the INA's current regulations and the APA's rulemaking procedure. *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987); *Medina Tovar v. Zuchowski*, 982 F.3d 631, 635 (9th Cir. 2020) ("an agency may not add a new requirement when Congress has specified the criteria for a particular immigration benefit") (citations omitted).

Defendants' new Policy constitutes a substantive rule that failed to adhere to notice-and-comment procedures. 5 U.S.C. §706(2)(D). The Policy's directives are not merely interpreting binding regulations. They instead change existing law and policy. The Policy provides ICE with unfettered discretion to terminate a noncitizen's SEVIS record, Dkt. 51, despite existing regulations which cabin ICE's authority to do so, 8 C.F.R. § 214.1(d), (e)-(g). The Policy also permits DOS to dictate ICE's actions, stating that, where DOS revokes a visa with immediate effect, "SEVP may terminate the nonimmigrant's SEVIS record" and "ICE should take steps to initiate removal proceedings." Dkt. 51; *Cf. Mada-Luna*, 813 F.3d at 1014 (directives narrowly limiting discretion or which establish binding grounds for denial "effectively replace[] agency discretion with a new binding rule or substantive law" and are unlawful, especially when they do not adhere to rulemaking procedures). And the Policy does not provide any provisions for notice to the noncitizen or an opportunity to respond, or explain how a noncitizen would ever know that DOS's visa revocation is immediate or prudential.

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

1

**D.  Absent a PI, Plaintiffs would suffer irreparable harm.**

2

As explained above, Defendants have not established they are not likely to not resume

3

their plan to intimidate and coerce students to depart the United States using means not

4

permissible under any existing law or regulation. Defendants' refusal to disavow their prior

5

actions or recognize the consequences of their actions, the issuance of a new 'Policy' that

6

specifically expands enumerated grounds for termination of SEVIS records while offering no

7

constraint on possible unspecified bases for termination, and their series of unpredictable and

8

arbitrary actions in related immigration cases around the country, further suggest that Defendants

9

are not likely to cease in their efforts and instead will use any means at their disposal, including

10

unlawful ones, to achieve their end of driving international students out of the United States.

11

Numerous district courts have already held that, because Defendants have failed to show

12

that they will not resume the fundamental conduct challenged in this action, all the harms

13

considered at the TRO stage should be considered here, as they are likely to recur. *See, e.g.*, *Liu*

14

*v. Noem*, No. 25-CV-133-SE, 2025 WL 1233892, at *11 (D.N.H. Apr. 29, 2025) (collecting

15

irreparable harms still present in wake of new policy, including threats of removal, interruption

16

of education, which cannot be addressed through money damages, and threat to career trajectory);

17

*Isserdasani*, No. 25-CV-283-WMC, 2025 WL 1330188, (W.D. Wis. May 7, 2025) (finding the

18

"loss of some Plaintiffs' ability to complete their degrees, coupled with their and other Plaintiffs'

19

allegations of loss of present and future employment opportunities and potential removal, place

20

their claims within the realm of irreparable harm with no adequate remedy at law"); *Ortega*

21

*Gonzalez*, No. 6:25-CV-00622-MC, 2025 WL 1355272; *B K*, No. 1:25-cv-00419-JMB-PJG

22

(W.D. Mich. May 7, 2025);  *Viyas*, No. CV 3:25-0261, 2025 WL 1351537 (S.D.W. Va. May 8,

23

2025); *Doe*, No. 25-CV-2998 (KSH) (AME), 2025 WL 1348503 (D.N.J. May 8, 2025); *Gao*, No.

24

1:25-CV-419, 2025 WL 1318417 (W.D. Mich. May 7, 2025), *Doe*, No. 25 C 4188, 2025 WL

25

1341711, at *1 (N.D. Ill. May 8, 2025). This Court should hold the same.

26

**E.  The balance of equities tips sharply in Plaintiffs' favor.**

27

As explained in prior briefing, the balance of equities lay in favor of PI. *See also D.B. v.*

28

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

11

*Trump*, 2025 WL 1203232, at *3 (S.D. Ohio Apr. 23, 2025) ("On Defendants' side of the scale, there is literally nothing. The public has no interest in permitting federal officials to act outside the law. So the argument that a TRO would impede the Government's sovereign prerogative (made and rejected elsewhere) falls flat here, too."); *Arizona Student Doe #1 v. Trump*, 2025 WL 1192826, at *8 (D. Ariz. Apr. 24, 2025) (rejecting "sovereign prerogative" argument); *Doe v. Noem*, 2025 WL 1134977, at *8 (E.D. Cal. Apr. 17, 2025) (same). Defendants have not identified any harm that they might suffer as a result of injunctive relief in this case. An injunction would "not interfere with Defendants' ability to pursue lawful immigration enforcement actions." *Ortega Gonzalez*, No. 6:25-CV-00622-MC, 2025 WL 1355272, at *6. And the public interest weighs in favor of allowing highly accomplished international students to continue their studies, research, and employment in the United States.

## II.   Plaintiffs' claims are not moot.

Plaintiffs' supplemental brief explained in detail why this case is not moot. Defendants do not directly contend otherwise, although they do suggest the claims at issue are "stale and obsolete." Dkt. 62 at 7. Of course, even if true, absent Defendants meeting their burden under *Fikre*, this would be irrelevant to mootness. But it is not true. As both the supplemental brief and this reply explain, the new Policy *requires* ICE to revoke SEVIS status whenever DOS effectively orders them to. The various promises Defendants make not to revoke SEVIS records on the same grounds they did are promises that, under their own Policy, they have no control over. Yet outsourcing their unlawful activity to DOS does not cure it of its illegality. It certainly does not satisfy Defendants' "formidable burden" of proving that the unlawful revocation of Plaintiffs' SEVIS records "cannot reasonably be expected to recur." *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

Meanwhile, as explained in the supplemental brief and above, the harms caused by Defendants unlawful terminations still have not been fully redressed. Nor is there any evidence in the record that ICE has attempted to undo harms caused by its unlawful acts, such as requesting that DOS restore the visas that DOS revoked due to ICE's unlawful acts. Making such a request, at minimum, is "no more burdensome to [ICE] than necessary to provide complete relief" to the

Plaintiffs. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

**III.    The current TROs and proposed PI are not overbroad and are instead narrowly tailored to prevent Defendants from further harming Plaintiffs.**

The current TROs and proposed PI are not overbroad in the scope of protection they provide Plaintiffs here, because they do nothing more than protect Plaintiffs from Defendants' unlawful actions. The proposed PI still permits Defendants to take lawful actions consistent with statutes and regulations to enforce existing immigration laws. Defendants are not prohibited from initiating removal proceedings against anyone who is amenable to the grounds of removal which are not implicated or relevant to the actions challenged here. For example, Defendants could initiate removal proceedings if a Plaintiff were to: sustain a criminal conviction listed in the criminal grounds of removability in the INA, 8 U.S.C. § 1227(a)(2); violate the terms of their nonimmigrant visa, 8 U.S.C. § 1227(a)(1)(C), which under existing regulations includes sustaining a conviction for a crime of violence when a sentence of more than one year imprisonment may be imposed, 8 C.F.R. § 214.1(g); engage in unauthorized employment, 8 C.F.R. § 214.1(e); or engage in a whole host of other conduct, including failing to register or falsification of documents, 8 U.S.C. § 1227(a)(3), violating security and related grounds, 8 U.S.C. § 1227(a)(4), becoming a public charge, 8 U.S.C. § 1227(a)(5), or unlawfully voting, 8 U.S.C. § 1227(a)(6). None of those existent provisions are challenged or implicated in this litigation, and Defendants could, if appropriate, take enforcement actions accordingly.

Defendants' referral to "immunization," Dkt. 62 at 9, is perhaps a concern that if, during the pendency of this litigation, one of these grounds might become existent and a particular Plaintiff might turn out to be considered, in Defendants' view, a potential threat to community safety, then Defendants would be precluded from detaining that individual upon initiation of removal proceedings. Given the arbitrary manner in which Defendants have enforced immigration laws, backtracked from such enforcement, issued policies, retracted policies, and perhaps drafted further policies that are hidden from public view,[7] it is appropriate to be suspicious of such

---

[7] As potentially relevant here, on April 29, 2025, the Foreign Affairs Manual was updated to include new information regarding visa revocations, but some of that information is not available

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

13

determinations and to thus enjoin Defendants from taking the extreme action of detaining Plaintiffs here for the duration of this litigation – especially in light of the arbitrary, retaliatory, and punitive manner that Defendants have utilized immigration detention for students, community leaders, and others. Moreover, should such a hypothetical situation legitimately come to pass, Defendants can always seek modification of the Court's order, as to that individual, from the Court with appropriate objective explanation.

On the other hand, Defendants may be concerned that the Court's order would prevent them from enforcing a newly drafted policy relating to the termination of valid nonimmigrant status that is not currently existent in the relevant statute enacted by Congress or regulations that have been promulgated through notice and comment procedures. If so, that is exactly the kind of legal violation challenged in this litigation, and such injunction should not be eliminated based on Defendants' hypothetical "immunization" which the Court could, if necessary, easily otherwise address.

## IV.   The Court should grant a nationwide injunction.

Defendants barely deign to explain why a nationwide injunction is not appropriate here, briefly alluding to three arguments, none of which work.

First, Defendants claim that a nationwide injunction is not appropriate because Plaintiffs have not shown irreparable harm. But this is simply repeating the arguments about an injunction in general, which have already been addressed here and in Plaintiffs' prior briefs on this motion.

Second, Defendants allude to the fact that (some) other plaintiffs in other cases have responded to Defendants' change of policy by dismissing their cases. This is not evidence that all individuals subject to Defendants' Policy are equally affected by it in the same way as Plaintiffs are here, and there is no evidence as to *why* those other plaintiffs dismissed their cases. Perhaps they dismissed their case because of limited resources, or because Defendants made additional explicit or implicit promises not addressed by the Policy. Individuals (like Plaintiffs) who are now

---

to the public. *See* 9 FAM 403.11, 403.11-5, 403.11-5(B)-(C). Available at https://fam.state.gov/fam/09FAM/09FAM040311.html.

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

out of status may have different strategies for restoring that status, and perhaps not continuing to upset a mercurial government who may grant discretionary relief was a factor in their decision. Or maybe those plaintiffs had counsel with different resources. Or maybe the plaintiffs in those cases were foolish. Who knows? The reasoning is not in evidence in this case, and the Court should not consider Defendants' speculation an appropriate substitution for record evidence.

Finally, Defendants, citing *Gill v. Whitford*, 585 U.S. 48, 73 (2018), suggest that a nationwide injunction is not appropriate precisely because it is not limited to plaintiffs. *Gill*, of course, was a case about standing, not about the proper scope of an injunction. It did nothing to change any of the caselaw provided by Plaintiffs in their prior briefing on why a nationwide injunction is appropriate given the harms in this case. Nor did it change the fact that the appropriate remedy in APA challenges to an unlawful policy is to simply set aside the policy. *See E. Bay Sanctuary Covenant v. Biden,* 993 F.3d 640, 680-81 (9th Cir. 2021); *Nat'l TPS All. v. Noem,* No. 25-CV- 01766-EMC, 2025 WL 957677, at \*20, \*45 (N.D. Cal. Mar. 31, 2025); *City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018); *Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520, 529-30 (N.D. Cal. 2020).

The stakes of this case are stark. Defendants have, elsewhere in this country, terminated SEVIS records and then revoked visas, at times without notice, and then, with no warning, simply whisked away students for no reason, detaining them under terrifying conditions or deporting them outright. And, indeed, as explained without hyperbole in prior briefing, Defendants have reserved and continue to reserve the right to deport Plaintiffs and others in their situation to countries where they have no connection, such as El Salvador or Libya.[8] *See also* Third Sinodis Decl. at Ex. H. The only way to ensure that Plaintiffs do not get re-ensnarled in what is effectively the same policy, next time to more disastrous results, is to set aside and enjoin that Policy nationwide.

---

[8] *See* Priscilla Alvarez and Kylie Atwood, *Trump administration weighs sending migrants to Libya and Rwanda, sources say*, CNN (May 1, 2025), *available at* https://www.cnn.com/2025/04/30/politics/migrants-libya-rwanda-trump.

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

**CONCLUSION.**

The Court should grant Plaintiffs' motion for a PI and or issue an order setting aside the unlawful agency action and policy on a nationwide basis, or otherwise enjoin Defendants' SEVIS policies nationwide as requested in the manner set forth in Plaintiffs' TRO Motions.

Dated: May 12, 2025

Respectfully submitted,

/s/ Johnny Sinodis
Johnny Sinodis
Marc Van Der Hout
Zachary Nightingale

Attorneys for Plaintiff

Kristina David
CA Bar No. 346347
David Strashnoy Law, PC
1901 Avenue of the Stars, Suite 200
Los Angeles, CA 90067
818-646-7350
kristina@strashnoylaw.com
Attorneys for Plaintiffs in cases 25-cv-03323-JSW & 25-cv-03383(JSW) (Related to 25-cv-3140)

Justin Sadowsky (pro hac vice)
DC Bar No. 977642
Chinese American Legal Defense
Alliance
4250 N Fairfax Drive #600
Arlington, VA 22203
646-785-9154
justins@caldausa.org

Andre Y. Bates (SBN 178170)
(aybates@dehengsv.com)
Steven A. Soloway (SBN 130774)
(ssoloway@dehengsv.com)
Keliang (Clay) Zhu (SBN 305509)
(czhu@dehengsv.com)
Yi Yao (SBN 292563)
(yyao@dehengsv.com)

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEHENG LAW OFFICES PC
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-6702
F: 925-397-1976
Attorneys for Plaintiffs
Zhuoer Chen, Mengcheng Yu,
Jiarong Ouyang, and Gexi Guo

Ben Loveman
SBN 249970
Reeves Immigration Law Group
425 California Street, Suite 1250
San Francisco, CA 94104
415-568-3777
bloveman@reevesimmigration.com
Attorney for W.B., Case No. 4:25-cv-03407-JSW

Case No. 4:25-cv-03292-JSW

REPLY ISO MOTION FOR PI

17