Justin Sadowsky – Admitted *Pro Hac Vice*
**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**
4250 N Fairfax Drive #600
Arlington, VA 22203
T: 646-785-9154
E: justins@caldausa.org

Keliang (Clay) Zhu
Andre Bates;
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive #208
Pleasanton, CA 94588
T: 925-399-6702
E: czhu@dehengsv.com

*Attorneys for Plaintiffs*
*Zhuoer Chen, Mengcheng Yu,*
*Jiarong Ouyang, Jing Tao, Yifeng Wu,*
*And Wanrong Li*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHUOER CHEN, AN INDIVIDUAL; MENGCHENG YU, AN INDIVIDUAL; JIARONG OUYANG, AN INDIVIDUAL; JING TAO, AN INDIVIDUAL; YIFENG WU, AN INDIVIDUAL; AND WANRONG LI, AN INDIVIDUAL; <br><br> Plaintiffs <br><br> vs. <br><br> KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; AND MARCO RUBIO, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE, <br><br> Defendants | Case No.: 3:25-cv-03292-SI <br><br> **MOTION TO DISMISS OPPOSITION** |

The Secretary of State's Motion to Dismiss the new claims in the Amended Complaint are, almost word for word repetitions of the arguments made State previously in its Opposition to Plaintiffs' Motion for an Amended Preliminary Injunction (Dkt. 72). But as Plaintiffs previously explained in that Motion for a Preliminary Injunction, the mass cancellations of visas orchestrated by Department of State officials and ICE officials that are at issue in this case went beyond the limited grant of authority 8 U.S.C. § 1201. All Section 1201 does is grant the Secretary of State and the consular official who issued a visa the power to cancel a visa (singular) for an individual who has not yet traveled to the United States.

Just like before, State's Motion to Dismiss lists a number of arguments why this Court should reject that argument, but most of them it does without substantial explanation. Those arguments that are explained are mostly non-responsive to the arguments made previously by the Plaintiffs' Motion for an Amended Preliminary Injunction. Meanwhile, the arguments that are responsive to Plaintiffs' prior arguments do not pan out.

## ARGUMENT

I.  **Section 1201(i) does not apply to mass cancellations ordered by subordinate State officials.**

8 U.S.C. § 1201(i) states that "[a]fter the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." This contrasts with 8 U.S.C. § 1182(f), which permits the President, only upon the finding that "the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States," may

"suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restricts he may deem to be appropriate."

So while the INA gives the Secretary of State or the consular officer who issued a visa the right to revoke that visa, it does not give the power to suspend that visa to other parties or permit the Secretary of State or consular official to delegate that power to others. It also does not give the Secretary of State or any consular official the ability to suspend classes of visas; that authority rests with the President (upon specific factual findings alone). It only allows the Secretary of State or the consular official to make individual determinations on specific visas.

As to immigration officials other than consular officials or the Secretary of State, this makes perfect sense. "Whether to grant a visa is am atter of the consular officer's discretion." *Gill v. Mayorkas*, No. C20-939 MJP, 2021 WL 3367246, at *7 (W.D. Wash. Aug. 3, 2021) (citing 8 U.S.C. § 1201(a)(1)). "Consular officials are also granted discretion to revoke visas." *Id.* (citing 8 U.S.C. § 1201(i)). But "immigration officers are assigned specific nondiscretionary roles regarding visas." *Id.* (citing, by example, 8 U.S.C. § 1201(e)).  In contrast, "[n]ot even the Secretary of State has the power to review a consular official's visa decision." *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997).

Likewise, the power to limit the Secretary of State and the consular officer who granted the visa to individual determinations also makes sense. The Secretary of State's or consular officer's cancellation of entire classes of visas would otherwise run contrary to the statutory and regulatory scheme for admission that runs through the INA.  Likewise, the limitation of judicial review would have significant constitutional concerns if it permitted the Secretary of State to exclude entire classes or groups of individuals, particularly those already present, *see* § X, below, outside the specific statutory and regulatory scheme for removability. *Knoetze v.*

*Dep't of State*, 634 F.2d 207, 210 (5th Cir. 1981) ("aliens within the country are constitutionally entitled to procedural due process") (citing *Schaughnessy v. U.S.*, 345 U.S. 206 (1953)); *see also of Kwong Hai Chew v. Colding,* 344 U.S. 590, 596 (1953). And it makes no sense to give the President limited power to revoke classes of visas, subject to ordinary judicial review, *see Washington v. Trump*, 847 F.3d 1151, 1163 (9th Cir. 2017), while giving lesser officials unlimited power, not subject to review except in individual removal proceedings.

As the *Patel* hearing transcript (*Doe* Dkt. 67 Ex. B) makes clear, these visa cancellations were not the result of individual decisions made by the Secretary of State or by any consular official. Rather, this was a single, unified policy made by ordinary State officials working with ICE officials to do mass cancellations. Such authority is limited to the President alone, if at all, and only based on the findings required by 8 U.S.C. § 1182(f).

State's only meaningful response to this is made implicitly rather than explicitly. First, State points to (but does not elaborate upon) 22 C.F.R. § 42.82(a), to suggest that State has given the power "to revoke an immigrant visa" to "any [State] Department official to whom the Secretary has delegated this authority to." Motion at 2 (quoting 22 C.F.R. § 42.82(a)) (bracketing State's). But even if State has purported to delegate the authority to lower-level non-consular officials, Congress never made that authority delegable in the first instance. And Congress, not the Secretary, sets the outer bounds of executive authority.

Moreover, State's argument ignores exactly what Plaintiffs are trying to "set aside" under the APA. 5 U.S.C. § 706(2). They are trying to set aside the broad policy by State officials that led to the visa cancellations, rather than the individual visa cancellations themselves, which simply must be undone as a remedy to make Plaintiffs whole. *See Pietersen v. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025) ("well settled that when plaintiffs pursue

forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them"); *see also Make The Rd. New York v. Wolf*, 962 F.3d 612, 630 (D.C. Cir. 2020) (distinguishing between challenges to individual "orders denying discretionary relief" and to broader challenges to "implementing" a "scheme") (emphasis removed); *see generally Bennett v. Spear,* 520 U.S. 154, 177 (1997).

## II. Section 1201(i) only applies to individuals who have not yet travelled to the U.S.

8 U.S.C. § 1201(i) similarly only applies to individuals who have yet to enter the country. A visa is an endorsement "placed in the traveler's passport, a travel document issued by the traveler's country of citizenship."[1] "Having a U.S. visa allows you to travel to a port of entry, airport or land border crossing, and request permission of the Department of Homeland Security (DHS), Customs and Border Protection (CBP) inspector to enter the United States."[2] A visa is not necessary in and of itself to remain in the country (though failing to comply with the terms of a visa, such as overstaying beyond the terms of your visa, may make your deportable, 8 U.S.C. § 1227(a)(1)(C)). Indeed, ICE's own FAQs make clear that "[y]ou can stay in the United States on an expired F-1 visa as long as you maintain your student status."[3]

The way State interprets Section 1201(i), then, does not make logical sense. According to State's interpretation, Section 1201 allows any State official to terminate entire classes of visas of people who have already used them.

---

[1] https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/frequently-asked-questions/what-is-us-visa.html/.
[2] *Id.*
[3] https://www.ice.gov/sevis/travel.

MOTION TO DISMISS OPPOSITION

But that does not comport with the language of Section 1201(i). Section 1201(i) is not about cancellation of a visa for those who have entered the country. Instead, Section 1201(i) expressly immunizes "transportation companies, and masters, and commanding officers, agents, owners, charterers, or consignees" who permit travel to the country on a visa unless they received due notice of such revocation prior to the alien's embarkation."

In that light, and given the meaning of a visa, State's authority is clear. It permits cancellation of an issued visa "at any time" ***prior to when the recipient travels to the United States***. Any other interpretation would have serious constitutional consequences, and one would expect the provision to clearly state that State has the power to render an-already-legally-admitted alien deportable. *See, e.g., Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1106 (9th Cir. 2001) ("courts have often read limitations into statutes that appeared to confer broad power on immigration officials in order to avoid constitutional problems"). It would also render certain situations entirely arbitrary. For instance, Section 1201(i) likely cannot go back so far in time to revoke visas which have already expired on their own terms. But why could the Secretary render deportable someone who has legally entered under Section 1201(i) for the length of the visa period, but no longer? No explanation seems rational.

Likewise, State's interpretation of Section 1201(i) would render superfluous other provisions. For instance, 8 U.S.C. § 1182(a)(3)(C), the provision which was used by State to purportedly cancel the green card of Mahmoud Khalil, *see Khalil v. Trump*, 2025 WL 1514713 (D.N.J. May 28, 2025), requires specific findings about foreign policy and does not purport to include any jurisdiction stripping. *See also* Donald Trump, Additional Measures to Combat Anti-semitism 90 FR 8847, § 3(e) (instructing DHS, DOE, and DOJ to require universities to "monitor and report" campus activism to determine whether activists may be deemed

inadmissible under 8 U.S.C. § 1182(a)(3)). The INA—for proper constitutional reasons—provides layers of procedural due process. *See, e.g.*, *Castillo–Villagra v. INS*, 972 F.2d 1017 (9th Cir. 1992); *Barraza Rivera v. INS*, 913 F.2d 1443, 1447 (9th Cir. 1990). But under State's theory, all of that can be washed away, as a State official simply needs to recite the magic phrase "1201(i)" to not only remove all pre-removal-proceedings process entirely but to render removal proceedings process effectively illusory. After all, the State would simply be relying on the unbridled discretion of its officials in any challenge.

Meanwhile, State's claim that it would be "legally impossible" for someone who enters this country on a 1201(i)-voided visa to be put into Section 1227 removable proceedings is false. All one needs (in that regard) to be placed in Section 1227 is to have been "admitted to the United States." 8 U.S.C. § 1227(a). "[T]he terms 'admitted' and 'admission' …. continue to denote procedural regularity for purposes of adjustment of status, rather than compliance with substantive legal requirements." *Matter of Quilantan*, 25 I. & N. Dec. 285, 290 (BIA 2010). So a person who is admitted, even with a voided visa or on a false passport, into the United States, is still admitted and subject to Section 1227. *See, e.g., Hassan v. Rosen,* No. 19-2918, 2021 WL 137355 (8th Cir. Jan. 15, 2021) (Hassan placed into Section 1227 removal proceedings for entering with a false passport). Indeed, Section 1227 is explicit about this: "Any alien who at the time of entry … was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." 8 U.S.C. § 1227(a)(1)(A).

Remember, the purpose of Section 1201(i) was for when State issued a valid visa—the purpose of a visa, again, being simply the admission into the country—and wants to revokes the visa prior to admission. In that situation, the visa will still be stamped as valid. Indeed, it is possible that the visaholder might not even know about the Section 1210(i) revocation at

the time they seek admission into the country. Nor, in the circumstances Congress was concerned about, would CBP. So CBP would mistakenly admit the visaholder into the country thinking that a valid visa existed when it did not (because of the Section 1201(i) revocation). And that would lead to Section 1227 proceedings. We know that because in *Kyong Ho Shin v. Holder*, a South Korean family unknowingly entered the country on invalid visas, leading to Section 1227 proceedings. 607 F.3d 1213, 1216 (9th Cir. 2010).

III. **At minimum, Section 1201's stripping of judicial review does not apply to the broader policy decisions seeking to be set aside in this case.**

As the D.C. Circuit explained in *Pietersen*, it is "well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them." 138 F.4th at 560; *see also Make The Rd. New York v. Wolf*, 962 F.3d 612, 630 (D.C. Cir. 2020) (distinguishing between challenges to individual "orders denying discretionary relief" and to broader challenges to "implementing" a "scheme") (emphasis removed); *Nakka v. USCIS*, 111 F.4th 995, 1002 (9th Cir. 2024) ("When interpreting similar jurisdiction-stripping provisions of the immigration statutory scheme, the Supreme Court has long distinguished between the 'direct review of individual denials' of applications and 'general collateral challenges to [unlawful] practices and policies.'") (Brackets original) (citing *McNary v. Haitian Refugee Center*, 498 U.S. 479, 492 (1991), and *Reno v. CSS*, 509 U.S. 43, 56 (1993)).

There is a "presumption" that final agency action is reviewable under the APA. *Sackett v. E.P.A.*, 566 U.S. 120, 129 (2012). Final agency action is not merely the specific last act that harms a challenger under the APA. Instead, any "final" action that is "fairly traceable" to the harm suffered gives may be challenged under the APA. *Bennett*, 520 U.S. at 177. And for an

action to be final, "two conditions must be satisfied." *Id.* "First, the action must mark the 'consummation' of the agency's decisionmaking process." *Id.* at 177-78 (citation omitted). "[S]econd, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178. A policy that has "direct and appreciable legal consequences" constitutes final agency action challengeable under the APA. *See generally Bennett,* 520 U.S. at 177. The challenge to the policy of using the NCIC to revoke visas, or, alternatively, the policy of revoking visas because ICE has unlawfully revoked SEVIS status, as this Court already found, qualifies.

State, for its part, points to *Bouarfa v. Mayorkas*, 604 U.S. 6, 15 (2024), which held that courts may not review a discretionary revocation of an approved petition for a visa by the Secretary of Homeland Security when the Secretary relies on 8 U.S.C. § 1155. But *Bouarfa* expressly was relying on the jurisdiction-stripping provision of 8 U.S.C. § 1155(a)(2)(B)(ii), which strips judicial review of "any … decision[s] or action[s] of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under" 8 U.S.C. § 1158(a) (that is, asylum). Notably, that provision does not apply to non-Secretary-level decisions, or to decisions or actions of the Secretary of State. And, in contrast to 8 U.S.C. § 1155(a)(2)(B)(ii), Section 1201(i) does not strip jurisdiction of all decisions of the Secretary of State, but merely the "revocation" made under Section 1201(i). And so while the "revocation" (if properly made by "the Secretary of State" or "the consular official") might be unreviewable, the broader policy decisions related to the mass revocations in this case are not.

Likewise, *Calcano-Martinez v. I.N.S.*, 232 F.3d 328, 340 (2d Cir. 2000), *aff'd*, 533 U.S. 348 (2001), involve a different jurisdiction-stripping provision, 8 U.S.C. § 1252(b)(9). Even then, the Second Circuit construed the application of the provision narrowly (so as to not

exclude habeas review) in order to avoid constitutional concerns, *id.* And the Supreme Court affirmed, precisely on that ground. 533 U.S. at 351. So too here.

### A. The revocations here are contrary to 22 C.F.R. § 41.122(e).

22 C.F.R. § 41.122(e) allows for a consular official to revoke a visa under Section 221(i) in 9 instances, none of which apply here:

(1) The alien obtains an immigrant visa or an adjustment of status to that of permanent resident;

(2) The alien is ordered excluded from the United States under INA 236, as in effect prior to April 1, 1997, or removed from the United States pursuant to INA 235;

(3) The alien is notified pursuant to INA 235 by an immigration officer at a port of entry that the alien appears to be inadmissible to the United States, and the alien requests and is granted permission to withdraw the application for admission;

(4) A final order of deportation or removal or a final order granting voluntary departure with an alternate order of deportation or removal is entered against the alien;

(5) The alien has been permitted by DHS to depart voluntarily from the United States;

(6) DHS has revoked a waiver of inadmissibility granted pursuant to INA 212(d)(3)(A) in relation to the visa that was issued to the alien;

(7) The visa is presented in connection with an application for admission to the United States by a person other than the alien to whom the visa was issued;

(8) The visa has been physically removed from the passport in which it was issued; or

(9) The visa has been issued in a combined Mexican or Canadian B–1/B–2 visa and border crossing identification card, and the immigration officer makes the determination specified in § 41.32(c) with respect to the alien's Mexican citizenship and/or residence or the determination specified in § 41.33(b) with respect to the alien's status as a permanent resident of Canada.

Because none of these reasons are satisfied, the cancellations are invalid. *Wong v. Dep't of State*, 789 F.2d 1380, 1385 (9th Cir. 1986).

In *Noh v. INS*, the Ninth Circuit found that challenges to Section 1201(i) visa revocations are not challengeable for failure to follow the requirements of 22 C.F.R. § 41.122. 248 F.3d 938, 941 (9th Cir. 2001). But in *Noh*, the Court found that the Deputy Assistant Secretary of Visa Services was acting as a delegate of the Secretary of State, not as a consular official. (The petitioner in *Noh,* in contrast to the plaintiffs here, did not challenge whether the Secretary of State's authority under Section 1201(i) was delegable). And to the extent that State is defending its revocations because they were ultimately made by consular officials, that defense is simply not available to them, at least at this stage (where the allegations in the complaint control).

### B.  The policy is without legal authority, is arbitrary and capricious, and is not supported by substantial evidence.

The policy of using the NCIC to revoke visas, or, alternatively, the policy of revoking visas because ICE has unlawfully revoked SEVIS status, is without legal authority for the reasons explained above. The policy simply is not permitted by Section 1201(i), and no other statutory provision permits it, either.

The policy is also arbitrary and capricious and unsupported by substantial evidence. The Government is likely to defend the policy on the basis that NCIC hits mean that the policy is designed to cancel visas and make deportable undesirable criminals. But, as the Plaintiffs in this case show, that government interest, if valid in the first instance, cannot be met by simply doing a basic NCIC hit and terminating the visas of whoever shows up. Plaintiffs in this case show why.

Look at Jing Tao. Ms. Tao has never been arrested or charged with any crime, much less convicted. Amended Complaint (Dkt. 64) at ¶ 47. Instead, Ms. Tao ended up on the

NCIC hit list because she called the police to protect her against her boyfriend during a (verbal) fight. *Id.* The police took her into protective custody as a precautionary measure. *Id.* But because that protective custody was listed on NCIC, the mass visa cancellation program led to Ms. Tao's visa being revoked. *Id.* ¶ 32.

The other Plaintiffs are no different. The only significant difference between Li's situation and Tao's was a neighbor called the police instead of Li herself. But like Tao, Li was never arrested or charged with any crime. *See* Li Decl. ¶ 12 (Dkt. 65 at p.34). Wu was arrested (but not convicted) of graffiti. Amend. Compl. ¶ 50. But Congress has specifically made convictions (not arrests) of certain crimes grounds for removal. 8 U.S.C. § 1227(a)(2). And graffiti is not one of those crimes.

Section 1201(i) was not designed to do an end-around of the limits of 8 U.S.C. § 1227(a)(2). State's attempt to do so is arbitrary and capricious. And even if it was not in the abstract, the sloppy nature in which State did so here renders its entire policy arbitrary and capricious as implemented. Moreover, the sloppy nature of connecting NCIC hits to criminal conduct renders those hits insufficient to show substantial evidence to support the policy. Dismissal is not appropriate.

## IV. Plaintiffs have standing.

State does not contest Plaintiffs' standing. Still, this Court has previously found that Plaintiffs are unable "to show immediate, non-speculative, and irreparable harm" from the visa cancellations at issue. Dkt. 98 at 4.[4] The Court did not simultaneously dismiss any part

---

[4] Plaintiffs respectfully disagree with the Court's ruling and are currently considering whether or not to notice an appeal.

of the Amended Complaint, suggesting that it was not making any finding that Plaintiffs lacked standing in their claims against the State Department.

In an abundance of caution, Plaintiffs wish to make clear that they do, in fact, have standing in this case. As previously alleged, Plaintiffs will have their visas revoked immediately upon leaving the country. Such revocations are, themselves, injury covered by Article III. *Ibrahim v. DHS*, 669 F.3d 983, 993 (9th Cir. 2012). This is particularly true here, where Plaintiffs are students, and will almost certainly be unable to return from any trip outside the country in time for their studies given the months-long processes for obtaining a new visa (assuming such a visa application is even granted).

In its prior decision, this Court suggested that to show imminent irreparable harm, Plaintiffs must show an "imminent need to or intention to" travel. Dkt. 98 at 3. Respectfully, at least as it relates to standing, this is the wrong standard.

Indeed, the government has argued—and the Ninth Circuit has rejected—an "immediate plans to travel" standard for standing when that travel would cause the government to harm a plaintiff. *Ibrahim,* 669 F.3d at 992. Instead, the fact that the government-imposed harm would occur upon travel "imposes real limitations" on an individual's inability to travel. *Id.* Intead, the question is whether such travel would likely occur if the plaintiff was "permitted to do so" without government-imposed consequences. *Id.* If the facts establish that such travel is likely, as opposed to "hypothetical" or a "some day intention[]," *id.* at 994 (quotation marks omitted), Article III standing exists. *See also Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (rejecting the need for specific travel plans when the facts "suggest[] that [plaintiffs] will travel internationally within the next year or two"). Similarly, the district court did not require specific and imminent travel plans in *Heidy v. U.S.*

*Customs Service*, 681 F. Supp. 1445, 1448 (C.D. Cal. 1988). Rather, descriptions of the reasons why plaintiffs want to travel if they were permitted to do so without injury is sufficient to confer standing. *Id.* at 1448 n.9.

The Ninth Circuit has imposed a similar test for travel under the ADA. The test there is also not whether specific, imminent plans of travel exist. *Chapman v. Pier 1 Imports*, 631 F.3d 939, 949-50 (9th Cir. 2011). Rather, the question is whether there is a "deterrent effect" that has prevented such imminent travel. *Id.* An "intent to" travel or when the potential injury from travel "deter[s]" someone from travel are sufficient for Article III standing. *Id.* at 950. So, for instance, it is sufficient for a plaintiff to plausibly allege that he wants to perform the travel at issue and would do so if it weren't for the resultant ADA injury. *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1138 (9th 2002); *compare with Gastelum v. Kohl's Inc.*, 2024 WL 1020480, at *11 (E.D. Cal. Mar. 8, 2024) ("frequency of travel" sufficient in lieu of "concrete travel plans"), *report and recommendation adopted*, 2024 WL 1304607 (Mar. 26, 2024).

Here, all of the Plaintiffs are Chinese F-1 visaholders who continue to have permanent domiciles in China. Tao alleges that her family remains in China, that she has not seen them now in over two years, and she would see them again. Amended Complaint (Dkt. 64) at ¶ 48. Wu likewise cannot see his family, nor has he been able to return for temporary jobs that he has specifically applied for during the course of his studies in China. *Id.* at ¶ 51. And Li frequently returns to China to visit her family—she last returned around New Years, only a few months before the visa revocation at issue in this case. *Id.* at ¶ 57. She also has an elderly grandmother who she would like to see, and would if it weren't for State revoking her visa as a consequence if she did. *Id.*

# CONCLUSION

The Court should deny the Motion to Dismiss.

If the allegations in the Complaint are insufficient to establish standing (or any other infirmary that this Court finds in the Amended Complaint that can be fixed with more specific factual allegations), Plaintiffs respectfully request an opportunity to replead.

DATE: October 14, 2025

*Justin Sadowsky*
Respectfully submitted,

Justin Sadowsky
(VA Bar 73382) (*pro hac vice*)
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
4250 N. Fairfax Drive #600
Arlington, VA 22203
646-785-9154 (no fax number)
justins@caldausa.org

/s/ Keliang (Clay) Zhu
Keliang (Clay) Zhu (CA Bar No 178170)
Andre Y. Bates* (CA Bar No 305509)
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588
925-399-6702 (no fax number)
czhu@dehengsv.com
**Attorneys for Plaintiffs**