CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
WILLIAM SKEWES-COX (DCBN 1780431)
Special Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: 415-436-7200
 Facsimile: 415-436-6748
 pamela.johann @usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZHUOER CHEN, *et al.*, | Case No. 25-cv-3292-JSW |
| Plaintiffs, | **STATEMENT OF RECENT DECISION** |
| v. | |
| KRISTI NOEM,in her official capacity as Secretary of the U.S. Department of Homeland Security, *et al.*, | The Honorable Jeffrey S. White |
| Defendants. | |

Pursuant to Civil Local Rule 7-3(d)(2), Defendants respectfully submit this statement to inform the Court of a recent decision rendered after the parties' briefing that may be relevant to this Court's consideration:

On February 28, 2026, the district court for the Western District of Virginia issued a memorandum opinion in *John Doe v. Kristi Noem, et al.*, No. 3:25-cv-00023, Dkt. No. 65.

The decision is filed as an attachment to this Statement.

1   DATED: March 9, 2026                        Respectfully submitted,

2                                               CRAIG H. MISSAKIAN
                                                United States Attorney
3

4                                               _s/ Pamela T. Johann_____
                                                PAMELA T. JOHANN
5                                               Assistant United States Attorney

6                                               Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Attachment

Case 3:25-cv-00023-JSW-CH Document 165 Filed 03/09/26 Page 1 of 25
Case 4:25-cv-03292-JSW Document 21-5 Filed 03/09/26 Page 4 of 25
Pageid#: 685

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

February 28, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| John Doe[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00023 |
| | ) | |
| Kristi Noem, in her official capacity as | ) | |
| Secretary of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

John Doe[1] is a full-time international student currently enrolled in a graduate program at the University of Virginia. He has filed a complaint for declaratory and injunctive relief against Kristi Noem, in her official capacity as Secretary of Homeland Security; the Department of Homeland Security ("DHS"); Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), and Marco Rubio, in his official capacity as Secretary of State. Doe alleges that Defendants unlawfully revoked his F-1 visa and unlawfully terminated his records in the Student and Exchange Visitor Information System ("SEVIS"), ending his F-1 nonimmigrant student status. Defendants move to dismiss Doe's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

---

[1] On April 17, 2025, the court granted Doe's motion for leave to proceed under a pseudonym in all public filings in this matter, as well as his motion to file certain exhibits under seal. (Dkt. 7.) Doe later filed sealed, unredacted versions of those exhibits that disclose his name, date of birth, and country of origin.

For the following reasons, the court will grant in part and deny in part Defendants' 12(b)(1) motion to dismiss and will grant Defendants' 12(b)(6) motion to dismiss.

## I.      Background

### A. Legal and Statutory Background

Under the Immigration and Nationality Act ("INA"), international students may obtain an F-1 visa to enter the United States and study at an approved academic institution.  8 U.S.C. § 1101(a)(15)(F)(i).  To enter the United States, students must present a Form I-20 issued by a school certified by DHS's Student and Exchange Visitor Program ("SEVP").  8 C.F.R. § 214.2(f)(1)(i).  Schools issue Form I-20s through SEVIS—a centralized database that DHS uses to monitor students with F-1 status.  *See id.* § 214.2(f)(1)(iii).  SEVP-certified schools must keep records for students with F-1 status and report status-affecting changes through SEVIS.  *Id.* § 214.3(g).  Student records in SEVIS can be accessed by designated school officials ("DSOs") at partnering schools.  *See id.*

Once granted F-1 status, a student may remain in the country for their "[d]uration of status"—meaning as long as they satisfy certain regulatory conditions governing F-1 status. *Id.* § 214.2(f)(5)(i).  The most important condition is that the student maintain a full course of study or obtain authorization for "practical training" after completing their studies.  *Id.*

Students may fail to maintain their F-1 status by engaging in other specified conduct: unauthorized employment, willfully failing to provide full and truthful information to DHS, and "[c]riminal activity."  *Id.* § 214.1(e)–(g).  Under the regulation, "criminal activity" refers to a conviction within the United States "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact

Case 3:25-cv-00282-JSW Document 65 Filed 03/09/26 Page 3 of 25
Case 4:25-cv-00282-JSW Document 125 Filed 03/09/26 Page 6 of 28
PageID #: 687

imposed)." *Id.* § 214.1(g).  Visa revocation alone does not constitute a failure to maintain status under governing regulations.  *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), https://perma.cc/ZM2S-R6Z6 ("Some circumstances require revocation of a nonimmigrant student's visa while the nonimmigrant is in the United States and in status.  Visa revocation is not, in itself, a cause for termination of the student's SEVIS record.").  "In other words, once a student is lawfully present in the United States, their F-1 status is not dependent on their F-1 visa." (Dkt. 32 at 4.).

Besides a student's failure to maintain status, DHS may terminate the student's status in three circumstances: (1) revocation of a waiver previously authorized under 8 U.S.C. § 1182(d)(3); (2) introduction of a private bill in Congress to confer lawful permanent residence; or (3) publication of a Federal Register notice identifying national security, diplomatic, or public safety grounds for termination.  8 C.F.R. § 214.1(d).  "DHS cannot otherwise unilaterally terminate nonimmigrant status." *Isserdasani v. Noem*, No. 25-cv-283, 2025 WL 1118626, at *2 (W.D. Wis. Apr. 15, 2025) (citing *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019)).  A student who fails to maintain F-1 status must immediately depart the United States.  *See* 8 C.F.R. § 214.2(f)(5)(iv).

## B. Factual History[2]

Doe is a citizen of a Latin American country.  (Am. Compl. ¶ 25 (Dkt. 34).)  Beginning in 2009, Doe has lawfully visited the United States on several occasions.  (*Id.* ¶ 26.)  He recently

---

[2] The following facts are taken from Doe's amended complaint.  (Am. Compl. (Dkt. 34).)  Additionally, where referenced, certain facts are taken from exhibits attached to Defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  (Dkt. 42.)  The court may consider facts outside the pleadings when defendants lodge a factual challenge to subject matter jurisdiction, as Defendants do here under Rule 12(b)(1).  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (a factual attack allows a district court "regard the pleadings as mere evidence" and "consider evidence outside the pleadings").  However, the court will not consider any evidence outside the pleadings when ruling on Defendants'

"applied for and received an F-1 visa to pursue" his graduate education. (*Id.*) Since the fall of

2024, he has been a full-time student in a graduate program at the University of Virginia. (*Id.*

¶¶ 25–26.)

On April 4, 2025, University of Virginia officials informed Doe that his status in SEVIS

had been changed to "TERMINATED." (*Id.* ¶ 29.) The "TERMINATION REASON"

listed in SEVIS read: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual

identified in criminal records check and/or has had their VISA revoked. SEVIS record has

been terminated." (*Id.*)

Six days later, Doe received an email from the U.S. Department of State's Bureau of

Consular Affairs Visa Office.[3] (*Id.* ¶ 30.) The email stated that Doe's F-1 visa had been

revoked. (*Id.*) The email stated:

> The Bureau of Consular Affairs Visa Office has alerted the Department of
> Homeland Security's Immigration and Customs Enforcement, which manages
> the Student Exchange Visitor Program and is responsible for removal
> proceedings. They may notify your designated school official about the
> revocation of your F-1 visa.
>
> Remaining in the United States without a lawful immigration status can result
> in fines, detention, and/or deportation. It may also make you ineligible for a
> future U.S. visa. Please note that deportation can take place at a time that does
> not allow the person being deported to secure possessions or conclude affairs
> in the United States. Persons being deported may be sent to countries other
> than their countries of origin.
>
> Given the gravity of this situation, individuals whose visa was revoked may wish
> to demonstrate their intent to depart the United States using the CBP Home
> App . . .

---

12(b)(6) motion to dismiss. For this reason, the court will not convert Defendants' 12(b)(6) motion to dismiss into a
motion for summary judgment as Doe requests. (Pl.'s Resp. at 8 (Dkt. 46).)
[3] The email was signed by the Consular Section of the U.S. Embassy in a Latin American country that was not Doe's
country of origin. (*See* Am. Compl. ¶ 30.)

(*Id.*)

On information and belief, Doe alleges that his visa "was revoked pursuant to the 'Student Criminal Alien Initiative' housed within DHS." (*Id.* ¶ 62.) DHS has stated that their action against Doe was a "prudential revocation[]," or a "possible revocation *if and when* the visa-holder departs from the country." (*Id.*) DHS has not initiated removal proceedings against Doe. (*Id.* ¶ 35.)

Doe's only criminal history was a charge for battery that occurred over ten years ago. (*Id.* ¶ 33.) As an undergraduate student, Doe was arrested on suspicion of violating a municipal battery ordinance after he was assaulted at a college bar. (*Id.*) The ordinance carried a maximum 180-day jail term. (*Id.*) Doe maintained that he acted in self-defense and pled not guilty, and the charge was expunged in 2024. (*Id.*) Doe has disclosed the 2015 incident in all interactions with immigration officials, and the government was aware of the incident when it issued his recent F-1 visa. (*Id.* ¶ 34.)

Doe's SEVIS termination has disrupted his schooling, hindered his ability to find a summer internship, and caused him acute stress and anxiety. (*Id.* ¶¶ 37–38.) He has not attended class in person and is fearful of seeing friends or going to the grocery store. (*Id.* ¶ 38.)

## C. Procedural History

On April 17, 2025, Doe filed a complaint for declaratory and injunctive relief against the Secretary of Homeland Security, the Department of Homeland Security, and the Acting Director of ICE, challenging the termination of his F-1 student status in SEVIS. (Dkt. 1.) That same day, he moved for a temporary restraining order. (Dkt. 5.) The court granted an *ex parte* TRO that evening that enjoined Defendants from terminating Doe's F-1 status,

ordering that the prior termination of his SEVIS record and F-1 status have no legal effect, and prohibiting defendants from arresting, detaining, or removing Doe from the court's jurisdiction or the United States as a result of the termination decision. (Dkt. 8.)

The court converted the TRO motion into a motion for preliminary injunction, (*id.* at 2), and held a preliminary injunction hearing on May 1, 2025, (Dkts. 24, 29). The court granted Doe's motion for a preliminary injunction two weeks later. (Dkt. 33.) The injunction prohibits defendants from terminating or reversing the reinstatement of Doe's SEVIS record without court approval and bars them from taking any action inconsistent with Doe maintaining lawful F-1 status during the pendency of the litigation. (*Id.*)

On April 26, 2025, while the court considered Doe's motion for a preliminary injunction, ICE issued a new policy governing the termination of SEVIS records (hereinafter "April Policy"). (Dkt. 22-1.) The April Policy identifies a non-exhaustive "variety of reasons" why SEVP can terminate SEVIS records, including "Evidence of a Failure to Comply with the Terms of Nonimmigrant Status Exists" and "U.S. Department of State Visa Revocation (Effective Immediately)." (*Id.* at 1.) The April Policy does not expressly address the effect of prudential visa revocations. (*Id.* at 1–2.) The policy also disavows that it is binding on the agency. (*Id.* at 2 ("This Broadcast Message is not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.").)

Case 3:25-cv-00923-JHY-CH Document 65 Filed 03/28/26 Page 10 of 28
Case 4:25-cv-00923-JHY-CH Document 20 Filed 03/09/26 Pageid 7 of 25
Pageid#: 691

On July 21, 2025, Doe filed an amended complaint, which alleged seven causes of action. (Am. Compl.) Counts 1 through 4 assert that Defendants acted unlawfully when they terminated his "SEVIS record and status." (*Id.* ¶ 49; *see id.* ¶¶ 41–56.) Count 1 alleges that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), by terminating his SEVIS record and status without any statutory or regulatory authority. (*Id.* ¶¶ 41–44.) Count 2 alleges that Defendants violated the Due Process Clause of the Fifth Amendment by terminating his SEVIS record and status based on improper grounds, without notice of the facts that supported the termination, and without providing him an opportunity to respond. (*Id.* ¶¶ 45–49.) Count 3 alleges that his SEVIS record and status termination should be set aside under the APA as "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), due to the due process violation alleged in Count 2. (*Id.* ¶¶ 50–52.) Count 4 alleges that the termination of his SEVIS record should be set aside under the APA as arbitrary and capricious because Defendants failed to articulate any factual basis for the decision. (*Id.* ¶¶ 53–56.)

Counts 5 and 6 challenge the revocation of Plaintiff's F-1 visa. (*Id.* ¶¶ 57–63.) Count 5 asserts that the revocation of his F-1 visa without notice, an opportunity to respond, or any other process violated his procedural due process rights under the Fifth Amendment. (*Id.* ¶¶ 57–59.) And Count 6 alleges that the visa revocation was arbitrary and capricious in violation of the APA. (*Id.* ¶¶ 60–63.) Finally, Count 7 asserts a due process "stigma-plus" claim, alleging that Defendants communicated false claims about Doe to university and consular officials, jeopardizing his education and causing the termination of his visa. (*Id.* ¶¶ 64–68.)

Case 3:25-cv-00923-JHY-HH Document 65 Filed 03/28/26 Page 18 of 25
Case 4:25-cv-00292-JSW CH Document 20 Filed 03/09/26 Page 11 of 28
Pageid#: 692

Doe's complaint asks the court to declare that the termination of his SEVIS status violated the Fifth Amendment and APA; declare that he remains in lawful status; vacate and set aside Defendants' termination of his SEVIS status; issue an injunction ordering Defendants to restore his SEVIS record and status; and order that Defendants reverse the revocation of his F-1 visa or take "all steps in their power to facilitate and effectuate the restoration of Doe's visa." (*Id.* at 17–18.)  Plaintiff also asks the court to award him costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b).  (*Id.* at 18.)

The court held a motion to dismiss hearing with the parties on February 4, 2026.  (Dkt. 56.)  Thereafter, at the court's direction, (Dkt. 57), the parties filed supplemental briefing, (Pl.'s Supp. Br. (Dkt. 59); Defs.' Supp. Br. (Dkt. 60); Dkts. 61, 63).  The parties' supplemental briefing examined whether Doe has a property interest in his F-1 status, and if he lost his F-1 status, whether he had been afforded adequate process under *Mathews v. Eldridge*, 424 U.S. 319 (1976).  (*Id.*)

## II.    Standard of Review

### A. 12(b)(1) Motion to Dismiss

A defendant can lodge either a facial or a factual challenge to subject matter jurisdiction. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620–21, 621 n.7 (4th Cir. 2018); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  A facial challenge asserts that a complaint fails to allege facts upon which to base subject matter jurisdiction, *see Hutton*, 892 F.3d at 621 n.7, in which case the court takes the factual allegations of the complaint as true, *see Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).  But a factual challenge argues "that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*,

No. 2:18-cv-00290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018). In such a challenge, a district court may "regard the pleadings as mere evidence" and "consider evidence outside the pleadings." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (noting that courts may "go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits").

Defendants mount both a facial and factual attack on subject-matter jurisdiction. (Defs.' Mem. in Supp. at 13–14 (Dkt. 43).)

### B. 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests surrounding the facts or the merits of a claim." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (internal quotation marks omitted) (quoting *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Case 3:25-cv-00223-JSW-CH Document 265 Filed 03/09/26 Page 1 of 25
Case 4:25-cv-00223-JSW Document 65 Filed 09/09/26 Page 13 of 25
Pageid#: 694

### III.    Analysis

### A.  Subject Matter Jurisdiction

In their Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, Defendants make three arguments.  First, Defendants claim that the dispute over the termination of Doe's SEVIS record is now moot.  (Defs.' Mem. in Supp. at 15–22.)  Second, Defendants contend that the court lacks jurisdiction over claims relating to Doe's visa, as the Immigration and Nationality Act strips courts of jurisdiction to review visa determinations.  (*Id.* at 22–24.)  Third, Defendants argue that Doe's visa revocation is committed to agency discretion by law.  (*Id.* at 24–25.)

The court addresses each argument in turn.

1. This controversy is not moot under the voluntary cessation exception.

Defendants argue that this controversy is now moot, as ICE has "retroactively restored Doe's SEVIS record and stated it will not re-terminate Doe's status based solely on the NCIC record that led to its initial termination."  (*Id.* at 15.)  For the following reasons, however, the court finds that this case presents a live controversy.

Article III of the U.S. Constitution "limits the federal judicial power to 'Cases' or 'Controversies.'"  *Lancaster v. Sec'y of Navy*, 109 F.4th 283, 288–89 (4th Cir. 2024).  "A case or controversy dissipates when it becomes moot," or "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* at 289 (quoting *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013)).  "For mootness to occur, events transpiring while the matter is pending must 'make[ ] it impossible for the court to grant any effectual relief to the plaintiff.'"  *Id.* (quoting *Williams*, 716 F.3d at 809).

- 10 -

Case 3:25-cv-00329-JSW-CH   Document 165   Filed 09/29/26   Page 14 of 25
Case 4:25-cv-00329-JSW   Document 65   Filed 09/29/26   Page 14 of 25
Pageid#: 695

But there is an exception to the mootness doctrine. "[A] civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will resume." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). This "voluntary cessation" exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (cleaned up). A defendant that voluntarily ceases challenged conduct "bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur" before the controversy can be considered moot. *Id.* (emphasis added) (quoting *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). This requirement "holds for governmental defendants no less than for private ones." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024).

Defendants say that it is "absolutely clear" the challenged conduct cannot be reasonably expected to recur for three reasons. (Defs.' Mem. in Supp. at 18–20.) First, Defendants point out that they have retroactively reactivated terminated SEVIS records, including Doe's. (*Id.* at 19.) Second, Defendants point to an April 26, 2025, policy that DHS promulgated after the initiation of this lawsuit, which states that ICE will not revoke SEVIS records except under specified conditions. (*Id.* at 19–20; *see* Dkt. 21-1.) Finally, Defendants point to a sworn declaration from Akil Baldwin, an ICE official, stating that consistent with the April Policy, "ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination." (Dkt. 43-3 ¶ 11; Defs.' Mem. in Supp. at 19.) But each of Defendants' reasons fails to make clear that the challenged conduct will not recur.

- 11 -

Case 3:25-cv-00239-JSW-CH Document 65 Filed 09/09/26 Page 13 of 25
Case 4:25-cv-00239-JSW CH Document 65 Filed 09/09/26 Page 13 of 25
Pageid#: 696

First, ICE reactivated Doe's SEVIS record after litigation commenced and this court issued an injunction. (*See* Dkt. 8; Dkt. 22.) This exhibits an "opportunism, on the part of the defendant, that typically supports" the application of the voluntary cessation doctrine. *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 188 (4th Cir. 2021); *see also Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 387 (4th Cir. 2011) ("'[W]hether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit' is relevant to the voluntary cessation analysis." (cleaned up) (quoting *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007)). In other words, Defendants' conduct is the very type that the voluntary cessation doctrine was created to address. *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 192 (4th Cir. 2018) (noting "the voluntary cessation exception prevents a defendant from 'engag[ing] in unlawful conduct, stop[ping] when sued to have the case declared moot, then pick[ing] up where he left off'" (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013))).

Second, the April Policy does not make absolutely clear that the challenged conduct cannot be reasonably expected to recur. In fact, the policy specifically disavows that it binds the Defendants at all. (Dkt. 22-1 at 2 (noting that it is not "itself a rule or a final action by SEVP" and "is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter").) Such an "ad hoc, discretionary and[] easily reversible" policy falls far short of the high bar needed to show that the controversy is moot. *Madan B. K. v. Noem*, No. 1:25-cv-00419, 2025 WL 1318417, at *9 (W.D. Mich. May 7, 2025).

Case 3:25-cv-00293-JSW  Document 65  Filed 02/09/26  Page 13 of 25
Case 4:25-cv-00293-HSG  Document 65  Filed 02/09/26  Page 16 of 28
Pageid#: 697

Finally, the Baldwin Declaration, on which the government relied heavily at the hearing, does not satisfy the voluntary cessation exception's heavy burden.  The declaration states that "*[c]onsistent with its new SEVIS policy*, ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination."  (Dkt. 43-3 ¶ 11 (emphasis added).)  But, as just discussed, that same April Policy affirms that it is not binding on the government.  Baldwin's "hedging and narrow language 'falls short of demonstrating that [Defendants] cannot reasonably be expected to do again in the future what [they are] alleged to have done in the past.'"  *Roe v. Noem*, No. CV 25-40-BU-DLC, 2026 WL 194636, at *6 (D. Mont. Jan. 26, 2026) (quoting *Fikre*, 601 U.S. at 242).

Defendants' cited caselaw is likewise unavailing.  For example, Defendants argue that the court cannot apply the voluntary cessation doctrine when there is only the *possibility* that DHS might revoke Doe's SEVIS record in the future, citing *Already LLC v. Nike, Inc.*  (Defs.' Mem. in Supp. at 20 (citing *Already LLC*, 568 U.S. at 96).)  But *Already LLC* says no such thing.  Instead, *Already LLC* stands for the uncontroversial proposition that *after* a court finds a controversy to be moot, a party can't obtain standing by alleging new, speculative harms that wouldn't support standing in the first place.  568 U.S. at 97 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  That holding does not apply to our circumstances, where Doe's previous injury confers standing and, as the court finds now, the controversy is not moot.

Relatedly, Defendants contend that Doe lacks standing to seek injunctive relief, as he did not "assert an injury that is the result of . . . actual or threatened enforcement."  (Defs.' Mem. in Supp. at 21 (cleaned up) (quoting *California v. Texas*, 593 U.S. 659, 670 (2021).)  But Doe did just that.  Doe's original complaint revolved around DHS's April 4, 2025, termination

Case 3:25-cv-00289-JWC Document 65 Filed 03/09/26 Page 14 of 25
Case 4:25-cv-00289-JSW Document 65 Filed 03/09/26 Page 14 of 25
Pageid#: 698

of his SEVIS record.  (Dkt. 1 ¶¶ 2, 29–30, 41–56.)  This is clearly "actual . . . enforcement," *California*, 593 U.S. at 670, and "[w]hen evaluating standing, [courts] must look to the facts at the time the complaint was filed," *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022).  Since Doe has established standing, the analysis shifts to that of mootness—which asks not whether the "likelihood of future enforcement is substantial," *California*, 593 U.S. at 672 (cleaned up), but whether it is "absolutely clear" that the challenged conduct "could not reasonably be expected to recur," *Eden, LLC v. Just.*, 36 F.4th 166, 171 (4th Cir. 2022) (quoting *Friends of the Earth*, 528 U.S. at 189).  In other words, Defendants mistakenly conflate the standards for standing and mootness.

Finally, Defendants repeat that they have already given Doe his requested relief—and that, thus, there is no remedy this court can provide.  (Defs.' Mem. in Supp. at 17–18.)  But this court can still grant injunctive relief despite Defendants' actions.  *See Feldman*, 419 F. App'x at 387 ("While we commend defendants for providing most of the relief that plaintiffs requested . . . defendants have not discharged their heavy burden of showing no reasonable expectation that they will repeat their alleged wrongs.").  "District courts clearly have the authority and should exercise the power to grant injunctive relief even after apparent discontinuance of unlawful practices."  *United States v. Gregory*, 871 F.2d 1239, 1246 (4th Cir. 1989).

Because mootness was the sole basis for Defendants' motion to dismiss Counts 1 and 4, Defendants' 12(b)(1) motion to dismiss will be denied as to these counts.

Case 3:25-cv-00232-JSW-CH Document 165 Filed 09/09/26 Page 15 of 25
Case 4:25-cv-00232-JSW Document 65 Filed 03/09/26 Page 18 of 28
Pageid#: 699

2. <u>The Immigration and Nationality Act strips this court of jurisdiction to hear claims regarding Doe's visa revocation.</u>

Next, Defendants seek to dismiss Doe's claims challenging his visa revocation. (Defs.' Mem. in Supp. at 22–25; *see* Am. Compl. ¶¶ 57–63; *id.* at 18.) Defendants argue that the Immigration and Nationality Act strips courts of jurisdiction from reviewing visa revocations. (Defs.' Mem. in Supp. at 22–23); *see* 8 U.S.C. § 1201(i). Because the court agrees, it will grant Defendants' 12(b)(1) motion to dismiss Counts 5 and 6.[4]

The Immigration and Nationality Act states:

> After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa . . . . There shall be no means of judicial review (including review pursuant to section 2241 of title 28 or any other habeas corpus provision, and sections 1361 and 1651 of such title) of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.

8 U.S.C. § 1201(i).

The statute plainly reveals Congress's intent to strip courts of jurisdiction to review consular officers' visa revocation decisions. *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 101 (D.D.C. 2020) ("Congress has also expressly foreclosed judicial review of visa revocations." (citing 8 U.S.C. § 1201(i))). For this reason, the court has no subject matter jurisdiction to review Doe's visa revocation.

---

[4] As an initial matter, Defendants claim that Doe waived Count 6 by failing to respond to Defendants' argument under § 701(a)(2). (Defs.' Reply at 9 (Dkt. 47)); *Evans v. City of Lynchburg*, 766 F. Supp. 3d 614, 618 (W.D. Va. 2025) ("Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims."). While the court agrees that Doe could have more explicitly directed his analysis towards the APA claim, Doe's arguments above—that DHS, not State, revoked his visa; that prudential visas are not covered by the statute; and that the statute does not address mass visa revocations—did direct themselves to Defendants' challenges to Count 6. (Pl.'s Resp. at 5 ("Defendants next turn to Counts 5, 6, and 7 of the amended complaint . . . .").) The court thus finds that Doe did not waive this claim.

- 15 -

Case 3:25-cv-00239-JSW   Document 65   Filed 09/09/26   Page 19 of 28
Case 4:25-cv-00239-JSW-CH   Document 65   Filed 09/09/26   Page 16 of 25
Pageid#: 700

Doe makes several arguments to avoid this conclusion, but each is unavailing.  First, Doe alleges that his visa was revoked not by consular officials or the State Department, but "pursuant to the 'Student Criminal Alien Initiative' housed within DHS." (Am. Compl. ¶ 62.) In other words, Doe alleges that § 1201(i) does not strip this court of jurisdiction, because his visa was not revoked pursuant to this statute.  (Pl.'s Resp. at 5–6 (Dkt. 46).)  There are several problems with this argument.  The first is that Doe makes this allegation "on information and belief," which the court need not afford the presumption of truth at the motion to dismiss stage.  (Am. Compl. ¶ 62); *cf. Jefferson v. Sch. Bd. of City of Norfolk*, No. 2:10-cv-00316, 2010 WL 11527350, at *6 (E.D. Va. Nov. 18, 2010), *aff'd*, *Jefferson v. Sch. Bd. of City of Norfolk*, 452 F. App'x 356 (4th Cir. 2011) ("[A]llegations based solely 'upon information and belief' are insufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."). Moreover, Doe fails to provide any additional factual details as to how DHS allegedly revoked Doe's visa.

Second, Doe contends that while "immediate" visa revocations are non-reviewable under § 1201(i), "prudential" revocations are not.  (Pl.'s Resp. at 6.)  Doe candidly acknowledges that the "precise contours" of what constitutes a prudential revocation is unclear and that "[a]dmittedly, this is an unclear area of law." (*Id.*)  Without more, the court has no basis to find that prudential visa revocations fall outside § 1201(i)'s jurisdiction strip. Nor can the court find support for Doe's interpretation in the statutory text.

Finally, Doe argues that § 1201(i) does not strip this court of jurisdiction to review visa revocations that occur "*en masse.*"  (Pl.'s Resp. at 7.)  "The more natural reading of the statute," Doe contends, "is that it applies to ordinary visa cancellation decisions that are made on an

Case 3:25-cv-00239-JSW-CH Document 65 Filed 09/09/26 Page 17 of 25
Case 4:25-cv-00239-JSW CH Document 65 Filed 09/09/26 Page 20 of 25
Pageid#: 701

individual and discretionary basis by a consular official." (*Id.*) This is especially so, Doe argues, because the statute provides that "[a]fter the issuance of *a visa*," a "consular officer or the Secretary of State may at any time, in his discretion, revoke" said visa, and that "*such* revocation shall be communicated to the Attorney General." 8 U.S.C. § 1201(i) (emphasis added).

This is implausible. There is no reason to conclude that Congress meant to excise "*en masse*" visa determinations from § 1201(i)'s jurisdiction strip simply because the statute referred to visas in the singular. Congress included one exception to its jurisdiction strip in § 1201(i), and if it wanted to create another exception for mass revocations, it knew how to do so. *Id.* ("There shall be no means of judicial review . . . except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title."). In the analogous context of consular non-reviewability, courts have rejected that mass consular visa denials somehow confer federal courts jurisdiction they would otherwise lack. *Rohani v. Rubio*, No. 2:24-cv-00389, 2025 WL 1503950, at *7 (W.D. Wash. May 27, 2025) ("Plaintiffs contend that they are not challenging individual visa decisions, but instead are challenging the process they claim Defendants used, i.e., issuing blanket denials without conducting a case-by-case review. . . . However, numerous courts have rejected such process challenges, and this Court joins them.") And further, even if the court credited this theory, Doe did not allege facts showing that he failed to receive an individualized visa determination, despite DHS's mass revocation.

For these reasons, the court will dismiss Counts 5 and 6 with prejudice.[5]

---

[5] Because Doe asserts that Count 7 is not a challenge to his visa revocation under 8 U.S.C. § 1201(i), (Pl.'s Resp. at 7), the court will not dismiss this claim for lack of subject matter jurisdiction.

Case 3:25-cv-00282-JSW-CH Document 65 Filed 09/08/26 Page 18 of 25
Case 4:25-cv-00282-JSW Document 25 Filed 03/09/26 Page 21 of 28
Pageid#: 702

**B. Failure to State a Claim**

In their 12(b)(6) motion to dismiss, Defendants seek to dismiss several of Doe's claims alleging that Defendants violated the Fifth Amendment Due Process Clause. (Defs.' Mem. in Supp. at 25–33; *see* Am. Compl. ¶¶ 45–52, 57–59.) Specifically, Defendants contend that Doe did not allege a property interest in his F-1 visa, SEVIS registration, or public education. (Defs.' Mem. in Supp. at 25–31.)

"To adequately allege a Fifth Amendment procedural due process claim," a plaintiff "must allege that she (1) lost 'something that fits into one of the three protected categories: life, liberty, or property,' and (2) did not 'receive the minimum measure of procedural protection warranted under the circumstances.'" *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022). A liberty or property interest is "created" and "defined by existing rules or understandings that stem from an independent source such as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Paul v. Davis*, 424 U.S. 693, 709 (1976)).

A law can create a property interest if it creates an "entitlement to the benefit" and "act[s] to limit meaningfully the discretion of the decision-makers." *Smith v. Ashcroft*, 295 F.3d 425, 429–30 (4th Cir. 2002) (cleaned up). A benefit is not a property interest "if government officials may grant or deny it in their discretion." *Town of Castle Rock*, 545 U.S. at 756. Regulations can create property or liberty interests. *See, e.g., Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1347 (7th Cir. 1995); *Miller v. Henman*, 804 F.2d 421, 426 (7th Cir. 1986) (noting that regulations can "create legally enforceable entitlements" after being "promulgated under the Administrative Procedure Act or published in the Code of Federal Regulations").

- 18 -

Case 3:25-cv-00329-JSW CH Document 65 Filed 09/09/26 Page 22 of 25
Case 4:25-cv-00329-JSW Document 65 Filed 09/09/26 Page 21 of 28
Pageid#: 703

1. <u>The termination of Doe's F-1 status or SEVIS record did not violate procedural
   due process.</u>

In their motion to dismiss, Defendants argue that Doe lacks a property interest in his
SEVIS record. (Defs.' Mem. in Supp. at 25–29.) Plaintiff replies that "the complex set of
legal and regulatory restrictions governing SEVIS registration and visa revocation give rise to
cognizable property interests." (Pl.'s Resp. at 12.) At the court's direction, (Dkt. 57), the
parties filed supplemental briefing on whether Doe has a protected property interest in his F-
1 status, (Pl.'s Supp. Br.; Defs.' Supp. Br.; Dkts. 61, 63). Because the court finds that Doe has
no property interest in his SEVIS record or F-1 status, the court will grant Defendants' motion
to dismiss Counts 2 and 3.

   i. *Doe's first amended complaint alleged a deprivation of his F-1 status in violation of
      procedural due process.*

As a threshold matter, Defendants contend that Doe's amended complaint raised
procedural due process claims only for his SEVIS record—and not his F-1 status. Thus,
Defendants assert that any consideration of Doe's F-1 status in the context of Counts 2 and
3 would "create causes of action Doe has not made." (Defs.' Supp. Br. at 1–2.)

Defendants are right that Doe's amended complaint could have been more precise.
But the amended complaint alleges a loss of his F-1 status in plain enough terms. (Am. Compl.
¶ 3 ("The termination of a SEVIS record effectively ended his F-1 student status."); *id.* ¶ 8
("Plaintiff brings this action . . . to challenge ICE's illegal termination of his SEVIS record and
his lawful status within the United States."); *id.* ¶ 49 ("Defendants terminated Plaintiff's SEVIS
record and status based on improper grounds without prior notice [or] . . . opportunity to

Case 3:25-cv-00323-JSW-CH Document 65 Filed 03/09/26 Page 23 of 28
Case 4:25-cv-00323-JSW Document 65 Filed 03/09/26 Page 23 of 28
PageID#: 704

respond.").)  Read together, these allegations put Defendants on notice that Doe was lodging a procedural due process claim for loss of his F-1 status.

Moreover, Doe's challenge to his SEVIS record termination is, at bottom, a challenge to the loss of his F-1 status.  Courts—including this one—have repeatedly adopted that view.  (Dkt. 32 at 21–22) (collecting cases).  So, at one point, did DHS.  *Jie Fang*, 935 F.3d at 177 (describing a letter from DHS stating "[s]ince your SEVIS record has been Terminated you no longer have valid F-1 nonimmigrant status").  And Doe alleges as much—which itself is sufficient at the motion to dismiss stage.  (Am. Compl. ¶ 3 ("The termination of a SEVIS record effectively ended his F-1 student status.").)

### ii.    *Counts 2 and 3 must be dismissed, as Doe has no property interest in his F-1 status.*

When determining whether a constitutionally protected interest exists, the touchstone is government discretion—or lack thereof.  "[I]f the government may refuse to provide the benefit at will, without any constraints on its reasons, then the benefit is not a protected property interest, and no process is due."  *Southside Tr. v. Town of Fuquay-Varina*, 69 F. App'x 136, 138 (4th Cir. 2003).  Conversely, a statute may create a property interest if it requires decisionmakers to award relevant benefits once an applicant meets "particularized eligibility criteria."  *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II,* 91 F.3d 630, 635–36 (4th Cir. 1996); *see also Becker v. Bordelon*, No. 3:11-cv-00627, 2012 WL 6522742, at *5 (N.D. Tex. Dec. 10, 2012), *aff'd*, 536 F. App'x 453 (5th Cir. 2013) ("Property interests are created and defined largely by . . . the extent to which the entitlement is couched in mandatory terms.").

One way to determine whether Doe has a protected property interest in his F-1 status, then, is to ask: does governing law *require* that Doe receive such benefits upon meeting specified criteria (that is, after receiving an F-1 visa)?

It does not appear so. The court cannot identify "language of an unmistakably mandatory character" in the INA's implementing regulations that requires the government grant F-1 status to nonimmigrant F-1 visa holders. *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (cleaned up). The regulations signal the opposite. For example, when an F-1 visa holder loses F-1 status, the regulations provide only that USCIS "may consider reinstating" that status—even if the student met the prerequisites to gain F-1 status in the first place. 8 C.F.R. § 214.2(f)(16)(i). Such a discretionary provision is difficult to reconcile with the notion that the regulations create a mandatory entitlement to F-1 status.

Doe points to several regulatory provisions that he contends show otherwise, but each one governs what happens after a student has already received F-1 status—not whether the government must grant it as an initial matter. (Pl.'s Supp. Br. at 2–3 (citing 8 C.F.R. §§ 214.2(f)(5)(i), (7)(i), (6)(iii)).) In other words, while these provisions may limit the government's discretion to *revoke* F-1 status—a question the court does not reach here—the regulations do not unmistakably require that the government *confer* them any benefits in the first place.[6] This is sufficient to find that Doe lacks a protected property interest in his F-1 status.[7]

---

[6] Doe also notes that, in several places, the regulations contemplate "automatic extension" of F-1 status. (Pl.'s Supp. Br. at 2.) But these provisions allow students with a pending H-1B change-of-status petition to have their F-1 status "automatically extend *until April 1*" of the year their H-1B status is being requested. § 214.2(f)(5)(vi)(A) (emphasis added). In other words, this is a narrow context; these provisions do not contemplate indefinite continuance of F-1 status.

[7] Because the court determines that Doe had no property interest in his F-1 status or SEVIS record, the court need not reach whether Doe was afforded adequate process under *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Case 3:25-cv-00329-JSW-CH Document 165 Filed 09/09/26 Page 22 of 25
Case 4:25-cv-00329-JSW Document 165 Filed 09/09/26 Page 23 of 25
Pageid#: 706

For these reasons, the court will dismiss Counts 2 and 3 without prejudice.[8]

2.  <u>Doe has not alleged facts showing he has a property interest in his public education.</u>

Next, Defendants claim that Doe has not adequately alleged that he has a property interest in his education.  (Am. Compl. ¶ 48.)

To repeat, a property interest is "created" and "defined by existing rules or understandings that stem from an independent source such as state law."  *Town of Castle Rock*, 545 U.S. at 756 (quoting *Paul*, 424 U.S. at 709).  But "it is undisputed that the Commonwealth of Virginia has not created a property interest in a continued public university education."  *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:21-cv-00378, 2024 WL 1417977, at *9 (W.D. Va. Apr. 2, 2024).  Instead, students in the Fourth Circuit allege a property interest in their public education only if they "identify [a] policy or custom on the part of [their public university] that substantially limits [the school's] ability to suspend, expel, or dismiss students."  *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:21-CV-00378, 2023 WL 2188737, at *8 (W.D. Va. Feb. 23, 2023).

But Doe does not allege in his amended complaint that the University of Virginia has a policy or custom "that substantially limits its ability to suspend, expel, or dismiss students."  *Doe*, 2023 WL 2188737, at *8.  For this reason, the court will dismiss the portions of Count 2 relating to Doe's alleged interest in his continued education.  While this conclusion is perhaps

---

[8] Counts 2 and 3 of Doe's amended complaint allege a property interest in Doe's "SEVIS record."  (*Id.* ¶¶ 45–52.)  However, the court's analysis above for Counts 2 and 3 focused on Doe's F-1 status.  This is because the court viewed termination of Doe's SEVIS record as synonymous with termination of his F-1 status.  But to the extent Doe separately alleges a property interest in his SEVIS record alone, divorced from its effects on his F-1 status, Doe has offered no argument that he has such an interest.  Nor is it clear that a SEVIS record in such a clerical context is a "benefit" protected by procedural due process.  *See Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-cv-00189, 2018 WL 5018487, at *5 (W.D. Va. Oct. 16, 2018) (holding that, to the extent that modifying a SEVIS record reflects only "a clerical duty," it "does not . . . engender due process protections").

Case 3:25-cv-00293-JSW-CH Document 125 Filed 03/09/26 Page 23 of 25
Case 4:25-cv-00293-JSW Document 125 Filed 03/09/26 Page 26 of 28
Pageid#: 707

frustratingly formalistic, such pleadings are a prerequisite to finding a property interest in one's continued education.

    3.  Doe has not stated a due process "stigma-plus" claim.

Doe also alleges a due process "stigma-plus" violation occurred when DHS made false communications to consular and University of Virginia officials. (Am. Compl. ¶¶ 64–68.) Because Doe's allegations do not meet the Fourth Circuit's standard for alleging a due process stigma-plus claim, the court will grant Defendants' motion to dismiss Count 7.

"The Supreme Court has acknowledged a constitutional liberty interest in one's reputation." *Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) (citing *Kerry v. Din*, 576 U.S. 86, 91–92 (2015) (plurality opinion)). "But recognizing the potentially boundless nature of this right," the Court has issued "doctrinal limits" to "narrow" this area. *Id.* To allege a due process stigma-plus violation, plaintiffs must (1) "show a statement 'stigmatizing his good name' and damaging his standing in the community"; (2) show "some type of dissemination or publication of the statement"; and (3) point to "some other government action that 'alter[s] or extinguishe[s] one of his legal rights.'" *Id.* (quoting *Paul*, 424 U.S. at 706–711).

Doe argues that Defendants' actions satisfy all three conditions. First, Doe alleges that DHS made a stigmatizing statement that Doe had "a previously unknown criminal record" and "lost his legal status in this country." (Am. Compl. ¶ 65.) Doe alleges that these statements were "disseminat[ed] or "publi[shed]," *Elhady*, 993 F.3d at 225, as DHS communicated them to "UVA officials" and consular officials. (Pl.'s Resp. at 9; Am. Compl. ¶ 66.) And Doe alleges that these statements "were directly connected to a change in Doe's

Case 3:25-cv-00292-JSW Document 65 Filed 03/09/26 Page 24 of 25
Case 4:25-cv-00292-JSW Document 65 Filed 03/09/26 Page 27 of 28
Pageid#: 708

legal status, insofar as it has jeopardized his public education and resulted in the termination of his visa." (Am. Compl. ¶ 67.)

But there are several problems with these arguments. Start with Doe's allegations that DHS disseminated a stigmatizing statement to consular officials abroad. The Fourth Circuit has held that government communications with "other federal agencies and components . . . is not 'public disclosure' for purposes of a stigma-plus claim." *Elhady*, 993 F.3d at 225. This means that any communication from DHS to consular officials—no matter if it contained a stigmatizing statement or altered one of Doe's legal rights—cannot serve as the basis for a stigma-plus claim.

Doe's claim that DHS's communications with "UVA officials" give rise to a stigma-plus claim also suffers from problems. First, given that the University officials in question were seemingly DSOs with specialized access to SEVIS records, 8 C.F.R. § 214.3(g), it is unclear that this communication would constitute "publication." But even assuming so, Doe has not pleaded that DHS's statements "damag[ed] his standing in the community" at the University of Virginia. *Elhady*, 993 F.3d at 225. Doe's amended complaint implies the opposite, stating that, even after DHS's communication, he is "highly valued by the University of Virginia, which desires for him to continue to be enrolled in school." (Am. Compl. ¶ 36.) To be sure, DHS's *act* of terminating Doe's SEVIS status threatened his enrollment at the University of Virginia. But Doe has not alleged that any defamatory nature of DHS's *communication* stigmatized him in the eyes of the University. And that is what a due process stigma-plus claim—which centers on a plaintiff's liberty interest in their *reputation*—requires. *See Elhady*, 993 F.3d at 225.

Case 3:25-cv-00280-JHV-JCH Document 65 Filed 03/09/26 Page 25 of 25
Case 4:25-cv-00292-JSW Document 65 Filed 03/09/26 Page 28 of 28
Pageid#: 709

Because DHS's communications fail to either constitute "publication" (with regard to consular officials) or "damag[e]" to Doe's "standing in the community" (with regard to University officials), *id.*—and because Doe does not allege that DHS communicated with any other entities besides these two—Doe has failed to plead a due process stigma-plus claim.

## IV.   Conclusion

For the foregoing reasons, the court will grant in part and deny in part Defendants' 12(b)(1) motion to dismiss. Counts 5 and 6 will be dismissed with prejudice. The motion will be denied as to Counts 1 and 4. The court will grant Defendants' 12(b)(6) motion to dismiss. Counts 2, 3, and 7 will be dismissed without prejudice.

The court will grant Doe leave to file an amended complaint within 14 days of the date of the court's forthcoming Order, limited to the claims dismissed without prejudice. The pending motion for leave to file a second amended complaint, (Dkt. 62), will be denied as moot.

An appropriate Order will issue.

**ENTERED** this <u>28th</u> day of February, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE