Steven A. Soloway (SBN 130774) (ssoloway@dehengsv.com)
Keliang (Clay) Zhu (SBN 305509) (czhu@dehengsv.com)
Yi Yao (SBN 292563) (yyao@dehengsv.com)
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-6702
F: 925-397-1976

Justin Sadowsky – Admitted *Pro Hac Vice*
**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**
4250 N Fairfax Drive #600
Arlington, VA 22203
T: 646-785-9154
E: justins@caldausa.org

*Attorneys for Plaintiffs*
*Zhuoer Chen, Mengcheng Yu,*
*Jiarong Ouyang, Jing Tao, Yifeng Wu, and Wanrong Li*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ZHUOER CHEN, an individual; MENGCHENG YU, an individual; JIARONG OUYANG, an individual; JING TAO, an individual, YIFENG WU, an individual, and WANRONG LI, an individual;

Plaintiffs,

vs.

Markwayne Mullin, in her official capacity as Secretary of the U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; and MARCO RUBIO, in his official capacity as Secretary of State;

Defendants.

Case No. 4:25-cv-03292

**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I. INTRODUCTION

1. In early April 2025, the U.S. Department of Homeland Security ("DHS"), through U.S. Immigration and Customs Enforcement ("ICE"), working with the Department of State ("State"), initiated a sweeping and unprecedented wave of Student and Exchange Visitor Information System ("SEVIS") terminations against hundreds if not thousands of international students with F-1 visas across the country.[1] Along with that wave of terminations, DHS revoked—both prior to and after the SEVIS terminations—the F-1 visas of most, if not all, of those individuals whose SEVIS status was terminated.

2. SEVIS is a web-based system used by DHS to track and monitor information about nonimmigrant students and exchange visitors in the United States. Termination of their SEVIS records results in irreparable harm and causes a nationwide impact, as the affected students are required to leave the country immediately. They have to abruptly suspend their studies (one of the Plaintiffs is a month away from graduation), end housing arrangements or leases, lose employment authorization, face virtually insurmountable bars when re-entering the U.S. if they depart, and if they have any dependents, their dependents' status is also terminated.

3. Without notice, explanation, or any form of due process, ICE terminated the student status of individuals who have done nothing more than maintaining academic

---

[1] *See* Vimal Patel, Miriam Jordan, and Halina Bennet, *Nearly 300 Students Have Had Visas Revoked and Could Face Deportation*, N.Y. TIMES, Apr. 7, 2025, https://www.nytimes.com/2025/04/07/us/student-visas-revoked-trump-administration.html; Ely Brown, Erica Morris, and T. Michelle Murphy, *Harvard, UCLA, Stanford among schools across US reporting student visa revocations*, ABC NEWS, Apr. 7, 2025, https://abcnews.go.com/US/harvard-ucla-stanford-schools-us-reporting-student-visa/story?id=120549032; Annie Ma, *Colleges around the US say some international students' visas are being revoked*, ASSOCIATED PRESS, Apr. 7, 2025, https://apnews.com/article/f1-visa-international-college-student-trump-9d4d900d328a0c205503c1178e70f1d5; Jessica Priest, *15 Texas A&M international students might have quietly lost their ability to stay in the U.S.*, THE TEXAS TRIBUNE, Apr. 8, 2025, https://www.texastribune.org/2025/04/08/texas-am-international-students/; Kelly Meyerhofer and Sophie Carson, *Over 2 dozen international students at University of Wisconsin System schools see visas revoked*, MILWAUKEE JOURNAL SENTINEL, Apr. 9, 2025, https://www.jsonline.com/story/news/education/2025/04/09/student-visas-revoked-for-at-least-27-university-of-wisconsin-students/83008191007/.

standing and complying with their visa requirements. Some of the affected students were arrested but never charged or convicted of any offense; others received only minor traffic citations years ago. Many have no record whatsoever. These terminations have occurred without any consistent rationale or legal justification and are entirely arbitrary, violating the most basic principles of fairness and due process.

4. Plaintiffs' loss of F-1 visas were likewise unlawful. Because of these F-1 visa revocations, Plaintiffs who leave the country are not permitted to return.

5. Plaintiffs Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, Jing Tao, Yifeng Wu, and Wanrong Li are highly accomplished international students who have lawfully pursued advanced degrees in the United States under F-1 student status. In April 2025, ICE abruptly and unlawfully terminated the SEVIS records of Plaintiffs and numerous others across the country, despite their full compliance with immigration regulations, clean academic records, and, where applicable, the formal dismissal of any prior legal issues. These terminations were issued without notice, hearing, or legal justification, in violation of the Administrative Procedure Act ("APA"), the Fifth Amendment and the Equal Protection Clause of the U.S. Constitution, and longstanding agency policy.

6. While, at the time of the filing of this amended Complaint, there is a preliminary injunction issued against ICE which has guaranteed the restoration of Plaintiffs' SEVIS records, that injunction has yet to be made permanent. Moreover, while Plaintiff Yu's visa remains valid, and Plaintiffs Ouyang and Chen's visas naturally expired,[2] State purported to revoke the F-1 visas of Plaintiffs Tao, Wu, and Li in April 2025, either immediately before, or because of, ICE's unlawful revocation of SEVIS status. Later guidance and representations made to this Court suggest that, instead of revoking the F-1 visas, State instead declared that the visas would be revoked effective upon those Plaintiffs leaving the United States.

[2] It is not unlawful for a student on an F-1 visa to remain in the country with a visa that expired naturally, so long as one maintains their SEVIS status.

7. When ICE restored all Plaintiffs' SEVIS statuses as a result of this litigation, State did not restore the visas, nor did they rescind their declaration that State would revoke the visas upon departure from the United States, of Plaintiffs Tao, Wu, and Li.

8. This lawsuit seeks declaratory and injunctive relief to halt this unlawful pattern of SEVIS record terminations, restore Plaintiffs' legal status and those visas which were revoked or will be revoked as part of the unlawful scheme, and prevent further irreparable harm to their educational trajectories, professional futures, and immigration standing. Plaintiffs challenge ICE's and State's actions under the APA for being arbitrary, capricious, and contrary to law, and assert that the lack of due process also violates their constitutional rights under the Fifth Amendment and the Equal Protection Clause. At issue in this case is whether DHS and ICE may unilaterally strip students of lawful status through SEVIS, and State may do a wholesale stripping of student visas, without legal authority, in defiance of regulatory limits set forth in 8 C.F.R. § 214.1(d), and without affording any procedural safeguards.

## II. <u>JURISDICTION AND VENUE</u>

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346(b), and the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. Venue lies in this District under 28 U.S.C. § 1391(e), as Plaintiff Zhuoer Chen resides in and the actions complained of occurred in this District.

## III. <u>PARTIES</u>

10. Plaintiff Zhuoer Chen is a student of the Master of Architecture program at the University of California, Berkeley, and she will graduate next month. She came to the U.S. from China in 2017 to study civil engineering at USC and continued her education through graduate studies in architecture. Her work focuses on reconciling urban design with wildlife habitat preservation. She currently resides in Oakland, California.

11. Plaintiff Mengcheng Yu is a master's student in the Educational Technology and Applied Learning Sciences program at Carnegie Mellon University ("CMU"), and currently resides in Pittsburgh, Pennsylvania. She is a native of China who has lived in the

U.S. since age 16, graduating from Bard College and New York University before enrolling at CMU. She is set to graduate in August 2025. Her studies focus on the intersection of learning science and interaction design, and she hopes to build a future in education and technology.

12. Plaintiff Jiarong Ouyang is a Chinese national. He is a doctoral candidate in Statistics at the University of Cincinnati, and lawfully resides in Cincinnati, Ohio, having maintained F-1 student status through his full-time enrollment and academic excellence. Mr. Ouyang seeks to join this action to challenge the unlawful termination of his SEVIS record by the Department of Homeland Security, which has jeopardized his education, his ability to support his family, and his future professional opportunities in the United States.

13. Plaintiff Jing Tao is a Chinese national who is pursuing a doctorate in Political Science at the University of Texas at Dallas and lawfully resides in Texas. Since starting the program in the Fall of 2023, she has maintained full-time enrollment with a GPA substantially over 3.5. Like the plaintiffs listed in the original Complaint, her SEVIS record was unlawfully terminated in April 2025. Within days of that termination, Ms. Tao further received word that her F-1 visa was revoked. Ms. Tao filed a declaration in this case in support of the TRO and preliminary injunction. Ms. Tao seeks to join this action to obtain restoration of her visa, and to prevent ICE and State from re-inflicting its unlawful actions against her.

14. Yifeng Wu is a Chinese national who is pursuing a Bachelor of Science at New York University, pursuing his major in social work. He recently finished his freshman year and has maintained a GPA of around 3.5 during that time. Like the plaintiffs listed in the original Complaint, his SEVIS record was unlawfully terminated in April 2025. Within days of that termination, Mr. Wu further received word that his F-1 visa was revoked. Mr. Wu filed a declaration in this case in support of the TRO and preliminary injunction. Mr. Wu seeks to join this action to obtain restoration of his visa, and to prevent ICE and State from re-inflicting its unlawful actions against him.

15. Wanrong (Fiona) Li is a Chinese national who recently graduated from the University of Southern California with a Master of Science in Analytics. She currently works

for the company WeWork based on the Optional Practical Training (OPT) program. Like the plaintiffs listed in the original Complaint, her SEVIS record was unlawfully terminated in April 2025. On April 6th, two days prior to learning of her SEVIS termination, she received a notice from the Department of State that her F-1 visa was revoked and that she must leave the United States immediately. Ms. Li seeks to join this action to obtain restoration of her visa, and to prevent ICE and State from re-inflicting its unlawful actions against her.

16. Defendant Markwayne Mullen is the Secretary of the Department of Homeland Security and has authority over ICE and the Student and Exchange Visitor Program ("SEVP"). He is sued in her official capacity.

17. Defendant Todd Lyons is the Acting Director of ICE, responsible for SEVP. He is sued in his official capacity.

18. Defendant Marco Rubio is the Secretary of State, responsible for issuing visas. State was the entity that revoked the visas (or declared that the visas will be revoked effective upon departure) of Plaintiffs Tao, Wu, and Li. He is sued in his official capacity.

## IV. LEGAL FRAMEWORK

19. Under 8 U.S.C. § 1101(a)(15)(F)(i), noncitizens may enter and remain in the United States in F-1 student status to pursue full-time study. The SEVIS system, managed by DHS and ICE through SEVP, is used to track these students.

20. F-1 student status is distinct from the F-1 visa. A visa governs entry to the United States; SEVIS status governs presence and eligibility to study while in the U.S. Once admitted in F-1 status, students are allowed to remain in the country as long as they maintain compliance with 8 C.F.R. § 214.2(f), including full-time enrollment, authorized employment, and proper academic standing.

21. DHS regulations provide only limited grounds under 8 C.F.R. § 214.1(d) for agency-initiated termination of status: (1) revocation of a waiver under INA § 212(d)(3) or (4); (2) the introduction of a private bill in Congress to confer lawful permanent residence; or (3) publication in the Federal Register of a finding that the termination is based on national security, diplomatic, or public safety reasons.

22. ICE's own guidance (Policy Guidance 1004-04) clearly states that visa revocation alone does not justify SEVIS termination. If a visa is revoked after entry, a student may continue their program of study and must simply obtain a new visa prior to re-entry after travel.

23. Although 8 U.S.C. § 1201(i) gives a consular official or the Secretary of State discretion to revoke a visa, and removes district court judicial review from such revocation, the plain language of that provision renders it applicable only to visas that were revoked prior to an alien's entry into the country. Plaintiffs Tao, Wu, and Li were already present in the United States when their visas were revoked. Likewise, Section 1201(i) only applies to individual determinations made by the Secretary or the consular official who issued the visas in the first instance. The revocations of Plaintiffs' visas were done wholesale by other officials, and without satisfying the procedural requirements of Section 1201(i). There is no other valid authority for State's revocations of Plaintiffs' visas in this case.

24. 8 U.S.C. § 1201(i) still requires the consular official or the Secretary of State not to revoke a visa arbitrarily or capriciously, or, at a minimum, with a good-faith bona fide reason for the revocation. Revoking a visa based on ICE's unlawful revocation of SEVIS status is arbitrary, capricious, and without a good faith bona fide reason.

25. Plaintiffs bring this action under the APA and the Declaratory Judgment Act to challenge ICE's illegal termination of their SEVIS records.

## V. FACTUAL ALLEGATIONS

26. Noncitizens may enter the United States on an F-1 student visa to pursue full-time study at DHS-approved academic institutions. Once admitted, they are granted F-1 student status, which allows them to remain in the U.S. for the duration of their program, provided they comply with federal regulations under 8 C.F.R. § 214.2(f), including maintaining a full course of study and avoiding unauthorized employment.

27. The SEVP administers the F-1 program through SEVIS, a centralized electronic system that tracks F-1 students. Schools must be SEVP-certified and assign

Designated School Officials ("DSOs") who oversee compliance and report status changes in SEVIS.

28. F-1 students may engage in limited employment through Curricular Practical Training or Optional Practical Training ("OPT"), both governed by regulation. Upon completing their studies and training, students have a grace period to depart or transfer.

29. F-1 status may be lost in two ways: (1) by failing to comply with student visa conditions (e.g., unauthorized employment), or (2) by agency-initiated termination. The latter is governed strictly by 8 C.F.R. § 214.1(d), which limits such terminations to specific cases involving national security or Congressional action. DHS policy affirms that visa revocation alone does not justify SEVIS termination. Students may continue their studies after visa revocation and need only obtain a new visa before traveling abroad and returning.

30. Students who fall out of status may apply for reinstatement under 8 C.F.R. §214.2(f)(16), subject to strict conditions. However, SEVIS terminations carry immediate consequences and are not reviewable by immigration judges, making lawful SEVIS management critical to safeguarding students' rights and status. Once a SEVIS record is terminated, the student is deemed to be out of status and must depart the United States immediately. Failure to do so triggers the accrual of "unlawful presence" under immigration law, which can result in multi-year bars to reentry and severely affect the student's ability to lawfully return to the United States in the future. Because these consequences are immediate and irrevocable, and because SEVIS terminations are not subject to review by an immigration judge, lawful and consistent administration of SEVIS is essential to preserving due process and students' legal rights.

31. In early April 2025, ICE, working with State, began a sweeping and unexplained pattern of terminating the SEVIS records of international students without notice, justification, or individualized process. These terminations have affected hundreds if not thousands of students nationwide, regardless of whether they had any adverse immigration or criminal history. University officials were similarly left in the dark, reporting a surge in unexpected SEVIS terminations without any prior warning from DHS or ICE. The scope and

speed of this operation have created widespread panic among students, many of whom remain in the United States unaware that their legal status has been silently stripped from them. Immediately after the SEVIS terminations, State revoked most, if not all, still-valid visas of those whose SEVIS status was terminated. Plaintiffs and similarly situated individuals who had their visas revoked received notices from the State Department or their University that stated that their visas had been revoked (in the past tense) and warned that remaining in the United States could lead to fines, detention, and/or deportation, among other consequences. Those revocations were later clarified in this and other litigation, inconsistent with those emails, to be effective upon the individual's departure from the United States.

32. As Plaintiffs later learned in the course of this litigation, the mass SEVIS status terminations and subsequent visa revocations were a result of a policy of doing mass searches for student visas holders on the National Crime Information Center database, and targeting for SEVIS status and subsequent visa revocation of all individuals who turned up as a positive hit, regardless of the reasoning. That policy was jointly implemented by ICE and State.

33. The plaintiffs in this case—Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, Jing Tao, Yifeng Wu, and Wanrong Li—are all law-abiding students who have never been convicted of any crime, let alone one implicating public safety or national security. They have complied with the terms of their student visas, maintained academic standing, and contributed to their schools and communities. Some have had previous contact with law enforcement, resulting in no, dismissed, or expunged charges, while others have no record whatsoever. There is no legal or factual basis for treating these students as threats to public safety or grounds for removal. ICE's policy of mass visa terminations that led to the termination of their SEVIS records, as well as the mass visa terminations themselves. are not only unlawful—it is unsupported by evidence, process, or reason. Likewise, State's decision to jointly implement a mass SEVIS status and visa termination policy with ICE is unlawful and unsupported by evidence, process, or reason.

34. Plaintiff Zhuoer Chen will complete her Master of Architecture at UC Berkeley in May 2025. Her academic work centers on sustainable urban development, focusing on the

current living conditions of urban wildlife and exploring design-based strategies for their improvement within the field of architecture. Since May 2024, she has interned at Livelarge Home Inc., where she conducted planning research, drew up site plans, and supervised installations of accessory dwelling units.

35. Despite this, on or about April 8th, 2025, Ms. Chen received notice that her SEVIS record was terminated by DHS, with no prior warning or opportunity to contest the decision. She was not charged with a crime, and the only known incident in her record is an arrest for an alleged physical altercation with her friend that resulted in no charges. No explanation or basis for the termination has been provided.

36. Ms. Chen adopted two cats from a shelter in Los Angeles in 2017, and they have been with her ever since. They are like family to her. One of them has a medical condition that requires constant care.

37. Plaintiff Mengcheng Yu is pursuing a Master of Science in Educational Technology and Applied Learning Science at Carnegie Mellon University ("CMU"). She has maintained a continuous legal presence since first arriving in the U.S. as a high school student in 2010. In 2015, she unknowingly enrolled in the University of Northern New Jersey ("UNNJ"), which turned out to be a federal sting operation, but cooperated with federal agents and later completed a degree at New York University. She is a class member under the UNNJ settlement agreement, which bars the government from using her enrollment in UNNJ as grounds for denial of immigration benefits. She has no criminal record, not even an arrest.

38. After years of hard work, Ms. Yu was admitted to CMU in 2024 and is expected to graduate in August 2025. Her SEVIS record was abruptly terminated in April 2025 without any stated legal basis. This termination has jeopardized her studies and future work prospects. ICE has provided no individualized notice or opportunity for review.

39. Unlike the other Plaintiffs with valid visas, Ms. Yu has had no communication indicating that her visa has been revoked. Upon information and belief, and in light of the Watson Declaration filed in this case, the reason Ms. Yu's visa was not revoked was that ICE

and/or State misread the NCIC hit and had presumed that Yu did not have a valid visa to revoke.

40. Plaintiff Mr. Jiarong Ouyang came to the United States in 2012 and earned both a Bachelor of Science in Computing Statistics (2016) and a Master of Science in Applied Statistics (2018) from the University of California, Riverside. He is currently a Ph.D. candidate in Statistics at the University of Cincinnati, where he holds a GPA of 3.94 and is expected to graduate in April 2026. His research focuses on Bayesian methods in variable selection, with significant contributions to collaborative clinical research. His research has already produced one co-authored journal article, with a second paper currently under peer review. In recognition of his academic promise and contributions to the field, he was honored in 2024 with the Comer-Reynolds Memorial Award by the Cincinnati Chapter of the American Statistical Association. However, both of his ongoing research projects have been suspended due to the termination of his SEVIS status.

41. Since May 2022, Mr. Ouyang has worked as a Graduate Assistant Intern at Cincinnati Children's Hospital Medical Center. In this role, he collaborates with physicians to conduct exploratory data analysis and apply advanced statistical models to pediatric health research.

42. In January 2019, Mr. Ouyang was arrested for an alleged domestic dispute incident but was never convicted of a crime. The charges were formally dismissed. As a result of the arrest, his visa was revoked, although he remained in lawful status. In the wake of the dismissal, he successfully changed his status from F-1 to F-2 and later returned to F-1 status with U.S. Citizenship and Immigration Services' ("USCIS") approval.

43. Despite his consistent compliance with immigration and academic regulations, Mr. Ouyang's SEVIS record was abruptly terminated in April 2025. According to the University of Cincinnati's international office, the termination was based on the previously dismissed arrest. Mr. Ouyang received no prior notice, hearing, or opportunity to contest the decision.

44. Mr. Ouyang must remain in the U.S. to complete his degree, care for his wife and young sons, and pursue professional opportunities in academia or the pharmaceutical industry. The SEVIS termination has put all of this in jeopardy, despite his lawful conduct and substantial academic and professional contributions.

45. Plaintiff Jing Tao began her studies as a doctoral student in the Political Science program at the University of Texas at Dallas School of Economic, Political, and Policy Sciences in the Fall of 2023. She is expected to graduate in 2028.

46. Since starting the program in Fall 2023, Tao has maintained continuous full-time enrollment and strong academic standing, with a current GPA of 3.8. She received straight A's in Spring and Summer 2024 and has actively contributed to the department's academic community. Since starting her program, she has already had a paper accepted for presentation at the Midwestern Political Science Association conference. It is currently in the process of publication.

47. Ms. Tao has never been charged with a crime. Her only contact with law enforcement was in August 2024, when she became frightened of her boyfriend during a verbal altercation and called the police herself. While the police took Ms. Tao into custody at the time as a precautionary measure, no charges were ever filed against her.

48. Had Ms. Tao's SEVIS status not been restored, she would have been unable to continue her studies, lost her funding for her doctoral program, and been left with no sources of income. And because her visa has not been revoked (regardless of effective date), she is unable to go abroad to present her research at conferences in other countries, and has been unable to return home to visit her parents, whom she has not seen in over two years.

49. Plaintiff Yifeng Wu began his undergraduate studies in social work at NYU in the Fall of 2024. After maintaining a GPA of around 3.5 in his Freshman year, he learned on April 8th that his SEVIS status was terminated. On April 10th, he received word from State that his F-1 visa was cancelled. Although his SEVIS status was restored on April 29th, his visa has not been restored.

50. Mr. Wu has never been convicted of any crime, much less a crime of violence. He has one arrest due to unlawful graffiti, but the charges were dropped.

51. Because of his revoked visa (regardless of effective date), Mr. Wu cannot go back to Nanjing for an internship he had successfully applied for over the summer. He also cannot see his family for the duration of his studies.

52. Ms. Wanrong Li graduated from the University of Southern California this past spring with a Master of Science in Analytics. Her final GPA was 3.8. She now works for ByteDance. Her role in e-commerce strategy focuses on developing and optimizing strategies for TikTok's global e-commerce business.

53. On April 6, she received an email from the U.S. Embassy in Tokyo telling her that her visa had been revoked under 8 U.S.C. § 1201(i). She was told that this visa revocation was communicated to ICE, which "manages the Student Exchange Visitor Program and is responsible for removal proceedings. The email warned that remaining in the U.S. "can result in fines, detention, and/or deportation."

54. Two days later, on April 8, she received notice from USC that her SEVIS status had been terminated. This email also warned her about remaining in the U.S.

55. Despite these actions (and because of this lawsuit), Ms. Li was able to graduate shortly thereafter. She now works for ByteDance under SEVIS's Optional Practical Training (OPT) program.

56. Ms. Li is approved for an H-1B visa to start in October. But until that visa is issued, she is currently in the United States with a visa that has been purported to have been revoked under 8 U.S.C. § 1201(i). She cannot visit her family in China, which she hasn't seen in about eight months. Her grandmother is elderly, and she greatly desires to spend time with her while she can.

57. Even once her H1-B visa is granted in October, Ms. Li is reasonably concerned that absent this Court retroactively setting aside her visa cancellation, she will be deemed to have unlawfully remained in the United States, which would likely result in her being denied admission back into the country when she goes to visit her family.

## VI. SUBSEQUENT EVENTS

58. In late April 2025, after the original Complaint was issued and a TRO granted in favor of the named Plaintiffs (only), ICE began restoring the SEVIS status of those affected by the April 2025 database sweep.

59. ICE also issued a new policy designed to accomplish the same goals as the unlawful policy by alternative means. Under the new policy, and without any legal authority, ICE would remove the SEVIS status of any individual who had their visa revoked under 8 U.S.C. § 1201(i).

60. The State Department has since issued guidance, and the Government has made representations in this and other cases that those visas that have been revoked are not yet actually revoked. Rather, they have been revoked effective upon the individual departing the United States. None of the Plaintiffs Tao, Wu, or Li has departed the United States since their visas have been revoked.

61. Of course, most Plaintiffs (including Plaintiffs Tao, Wu, or Li), who had their SEVIS statuses revoked under the original sweep and had valid, unexpired visas, had those visas revoked under 8 U.S.C. § 1201(i). Likewise, State has not disclaimed the ability to retroactively revoke even expired visas of the remaining Plaintiffs and similarly situated individuals. As a result, the new policy would simply reenact the old policy, but attempt to use the jurisdiction stripping provisions of 8 U.S.C. § 1201(i) and the theory of consular non-reviewability to avoid judicial review.

62. ICE has no statutory or regulatory authority permitting it to revoke SEVIS status for the mere reason that State has revoked a student's visa under 8 U.S.C. § 1201(i).

63. This Court issued a nationwide injunction prohibiting Defendants Mullin and Lyons, as well as Acting Field Director Xavier Becerra, as well as their officers, agents, servants, employees, attorneys, and all others "in active concert or participation with them" from arresting incarcerating, imposing any adverse legal effects caused by the termination of ESEVIS records, reversing the reinstatement of SEVIS records for reasons not stated in 8

C.F.F. § 214.2(f)(5)(i), for the original Plaintiffs as well as any similarly situated individuals (including the new Plaintiffs).

64. Rubio has not restored any visas revoked because of the unlawful sweeps in this case.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Administrative Procedure Act – Arbitrary and Capricious Agency Action)**

**(By all Plaintiffs against Defendants Mullin and Lyons)**

65. Plaintiffs reallege and hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

66. Defendants' termination of Plaintiffs' SEVIS records constitutes final agency action reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

67. The terminations were arbitrary, capricious, and otherwise not in accordance with law. Specifically, Defendants failed to provide individualized notice, failed to consider relevant facts, and based their actions on impermissible grounds, including visa revocation, which is not a lawful basis for SEVIS termination under 8 C.F.R. § 214.1(d).

68. Defendants' actions lack any rational connection between the facts and the decision to terminate Plaintiffs' SEVIS records. The terminations were issued without individualized review, factual findings, or explanation—hallmarks of arbitrary and capricious agency action. Plaintiffs were not provided with any opportunity to respond, clarify their records, or correct misinformation. In some cases, SEVIS records were terminated despite students having clean records or arrests that resulted in dismissals and full expungement. DHS regulations do not permit such blanket terminations based on speculative or irrelevant factors.

69. Furthermore, Defendants have acted inconsistently with long-standing agency guidance, including ICE Policy Guidance 1004-04, which confirms that visa revocation alone does not justify SEVIS termination. By failing to apply their own rules and precedents, and by acting without reasoned explanation or evidentiary support, Defendants have violated the APA's requirement that agency action be reasoned, consistent, and grounded in law.

Plaintiffs are entitled to relief under 5 U.S.C. § 706(2)(A), which requires this Court to set aside unlawful and arbitrary agency action.

## SECOND CLAIM FOR RELIEF

**(Administrative Procedure Act – Contrary to Constitutional Right)**

**(By all Plaintiffs against Defendants Mullin and Lyons)**

70. Plaintiffs reallege and hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

71. By terminating Plaintiffs' SEVIS status without due process—without providing notice, explanation, or a meaningful opportunity to respond—Defendants violated Plaintiffs' constitutional rights.

72. Such action is unlawful under 5 U.S.C. § 706(2)(B).

73. The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of life, liberty, or property without due process of law. Plaintiffs' lawful F-1 student status, once granted, constitutes both a liberty and property interest protected under the Constitution. It allows them to reside legally in the United States, engage in full-time education, and in some cases, work under authorized training programs. The abrupt termination of that status—without any notice or opportunity to be heard—violated the procedural safeguards to which Plaintiffs are entitled.

74. Defendants' failure to provide even the most basic procedural protections before stripping Plaintiffs of their lawful presence in the United States renders their actions contrary to constitutional right and in violation of 5 U.S.C. § 706(2)(B). Plaintiffs were given no opportunity to contest or clarify the basis for termination, were not served with a statement of reasons, and received no meaningful review. Agency actions that deprive individuals of constitutionally protected interests without affording due process are not only unlawful—they are void.

**<u>THIRD CLAIM FOR RELIEF III</u>**

**(Fifth Amendment – Procedural Due Process Violation)**

**(By all Plaintiffs against Defendants Mullin and Lyons)**

75. Plaintiffs reallege and hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

76. Plaintiffs have a constitutionally protected interest in their F-1 student status and SEVIS records. Defendants' failure to provide any process prior to the deprivation of this interest—no notice, no hearing, no opportunity to rebut—violated the Due Process Clause of the Fifth Amendment.

77. The Supreme Court has long held that due process requires, at a minimum, notice and an opportunity to be heard before the government may deprive a person of a significant liberty or property interest. Plaintiffs' lawful F-1 student status is such an interest: it governs their ability to reside in the United States, pursue academic goals, maintain employment authorization, and avoid accrual of unlawful presence. The sudden termination of their SEVIS records, without any prior warning or individualized assessment, deprived them of that interest without affording even the most basic procedural protection.

78. Defendants have provided no procedures—formal or informal—by which Plaintiffs could challenge or appeal their SEVIS terminations. Plaintiffs were not told why they were targeted, what evidence formed the basis of the termination, or how they might respond. For many, the first notice of any issue came not from ICE or DHS, but from their universities after the termination had already taken place. Such actions violate not only the letter of due process law, but its core purpose: to guard against arbitrary government action and ensure fairness in decisions that affect a person's fundamental rights.

**<u>FOURTH CLAIM FOR ELIEF</u>**

**(Violation of the Equal Protection Clause of the Fifth Amendment)**

**(By all Plaintiffs against Defendants Mullin and Lyons)**

79. Plaintiffs reallege and hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

80. The Fifth Amendment to the United States Constitution prohibits the federal government from denying individuals equal protection under the law. Although the Fifth Amendment does not contain an equal protection clause in name, the Supreme Court has held that its Due Process Clause incorporates the same protections against the federal government as the Fourteenth Amendment provides against the states.

81. Defendants, acting under the color of federal law, have unlawfully discriminated against Plaintiffs based on alienage, national origin, and/or race by arbitrarily terminating the SEVIS records and lawful status of F-1 international students, most of whom are from China. This pattern of targeting disproportionately affects students of Chinese nationality, despite the absence of any individualized security threat, criminal conviction, or regulatory noncompliance.

82. The terminations appear to have been issued as part of a blanket enforcement action, conducted without legal process, individualized review, or stated rationale. Many students had no adverse record whatsoever; others had only minor incidents, such as dismissed arrests or traffic violations, none of which legally justify termination under DHS's own regulations. Yet ICE has treated them all alike, revoking their status while allowing similarly situated students of other national origins to remain unaffected.

83. Defendants' actions constitute intentional or at a minimum disparate-impact discrimination based on alienage and national origin in violation of Plaintiffs' equal protection rights under the Fifth Amendment. These terminations, and the policy or practice underlying them, are not narrowly tailored to serve any compelling governmental interest, and they operate in a manner that is overbroad, unsupported by evidence, and discriminatory in effect.

84. As a direct result of Defendants' discriminatory conduct, Plaintiffs have suffered the loss of their lawful immigration status, risk of removal, forfeiture of educational and career opportunities, reputational harm, emotional distress, and other irreparable injuries.

## FIFTH CLAIM FOR RELIEF

**Violation of the Administrative Procedures Act**

**(By Plaintiffs Tao, Wu, and Li against Defendant Rubio)**

85. Plaintiffs reallege and hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

86. Defendant Rubio's policy of mass visa terminations, regardless of whether those terminations have been effectuated or only become effective upon the Plaintiffs' departures from the United States, constitutes final agency action reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

87. The visa termination policy is beyond statutory authority and otherwise not in accordance with law. Specifically, (1) 8 U.S.C. § 1201(i) only permits the Department of State to terminate visas of those who have not yet entered the country, (2) 8 U.S.C. § 1201(i) only permits either Mr. Rubio himself or the Consular Officer who issued the visa to revoke the visa, and only upon communication of the revocation to the Attorney General, and (3) 8 U.S.C. § 1201(i) only applies to individual revocation decisions, rather than the challenged policy of revoking any visas of individuals who turned up as hits in database searches of the National Crime Information Center.

88. The termination policy is arbitrary and capricious, and lacks a bona fide good faith reason supporting the policy;, to the extent it is based on illegal revocations of SEVIS status itself, the policy is itself unlawful. At a minimum, since the revocations are not yet effective, Rubio's policy of future terminations of Plaintiffs' visas based on revocations of SEVIS status that were unlawful, reversed, and void ab initio is arbitrary, capricious, and lacks a bona fide good faith reason.

89. As a direct result of Rubio's unlawful conduct, Plaintiffs have suffered the loss of their visa (or cannot leave the country without losing their visa), are at risk of arrest and deportation, may not leave and re-enter the country, and suffer other irreparable injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1. Declaring that the termination of SEVIS status for Plaintiffs and all similarly situated F-1 visa holders—who have not been convicted of any criminal offense, have maintained academic standing, and are otherwise in compliance with the terms of their visa—was unlawful, and that their SEVIS records, F-1 status, and visas shall be restored immediately;

2. Preliminarily and permanently enjoining Defendants Mullin and Lyons from further SEVIS terminations without lawful process;

3. Issuing a preliminary and permanent injunction requiring Defendant Rubio to withdraw the effective-in-the-future revocation of the F-1 visas for Plaintiffs Tao, Wu, and Li, and all similarly situated F-1 visa holders—whose visa revocations were part of mass SEVIS terminations in April 2025 and who have not been convicted of any criminal offense, have maintained academic standing, and are otherwise in compliance with the terms of their visa—and prohibiting Defendant Rubio from further revocations of those visas beyond the statutory authority of 8 U.S.C. § 1201(i). To the extent any visa revocations are deemed already occurred by the Court (either based on its interpretation of Rubio's actions or because an individual has departed the United States, the Court should order Defendant Rubio to restore any already-revoked visas.

4. Awarding costs and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(b);

5. Granting such other and further relief as the Court deems just and proper.

Dated: April 10, 2026

Respectfully submitted,
**DEHENG LAW OFFICES PC**

/s/ *Keliang (Clay) Zhu*
Keliang (Clay) Zhu
*Attorneys for Plaintiffs*
*Zhuoer Chen, Mengcheng Yu, Jiarong Ouyang, Jing Tao, Yifeng Wu, and Wanrong*