Justin Sadowsky – Admitted *Pro Hac Vice*
**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**
4250 N Fairfax Drive #600
Arlington, VA 22203
T: 646-785-9154
E: justins@caldausa.org

Keliang (Clay) Zhu
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive #208
Pleasanton, CA 94588
T: 925-399-6702
E: czhu@dehengsv.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZHUOER CHEN, AN INDIVIDUAL; MENGCHENG YU, AN INDIVIDUAL; JIARONG OUYANG, AN INDIVIDUAL; JING TAO, AN INDIVIDUAL; YIFENG WU, AN INDIVIDUAL; AND WANRONG LI, AN INDIVIDUAL;<br><br>Plaintiffs<br><br>vs.<br><br>MARKWAYNE MULLIN, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; AND MARCO RUBIO, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE,<br><br>Defendants | Case No.: 3:25-cv-03292-SI<br><br>**MOTION TO DISMISS OPPOSITION** |

The mass cancellations of visas orchestrated by Department of State officials and ICE officials that are at issue in this case went beyond the limited grant of authority 8 U.S.C. § 1201. All Section 1201 does is grant the Secretary of State and the consular official who issued a visa the power to cancel a visa (singular). The mass cancellations of visas orchestrated by Department of State officials and ICE officials that are at issue in this case went beyond the limited grant of authority 8 U.S.C. § 1201, as well as all other authority granted by the Department of State and ICE officials. Meanwhile, State's and ICE's haphazard policy that is the subject of this case was arbitrary and capricious, as this Court has already ruled.

This Court previously dismissed Plaintiffs' claims against State because Plaintiffs' Complaint did not make clear that Plaintiffs were challenging State's visa revocation policy it promulgated in the spring of 2025, as opposed to the individual revocations of their visas. Plaintiffs have now revised their Complaint to make this clear. State's continued reliance on Section 1201(i) to avoid accountability no longer has any merit. And its arguments that its actions were reasonable and legally justified are belied by the limits of legal authority and the chaotic methodology (or lack thereof) it used in its policy, which resulted in visas being revoked because the visaholder was the potential victim of domestic violence, or been charged with nonviolent crimes when those charges were dropped.

## ARGUMENT

### I. Section 1201(i) does not prohibit challenges to State's visa revocation policy.

Most of the Government's arguments—*see* Motion to Dismiss (Dkt. 131) at §§ A, B(1), and (B2)—are based on its incorrect interpretation of Section 1201(i) as barring challenges to the Department of State's visa revocation policy at issue in this case. *See also* Order on Motion

to Dismiss (Dkt. 126) at 5 ("The Court accepts the allegations that a policy exists as true, but Visa Plaintiffs allege that the final agency action at issue is the termination of visas, not the policy"); *id.* at 6 (allowing amendment so that Plaintiffs can make clear that they are challenging the policy).

**A. Section 1201(i) does not apply to challenges to broader visa policies.**

Section 1201(i) does not bar a challenge to State's new visa revocation policy. Section 1201(i) only applies to individual decisions made on individual visas by consular officials. *See Pietersen v. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025) ("well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them"); *see also Make The Rd. New York v. Wolf*, 962 F.3d 612, 630 (D.C. Cir. 2020) (distinguishing between challenges to individual "orders denying discretionary relief" and to broader challenges to "implementing" a "scheme") (emphasis removed); *see generally Bennett v. Spear,* 520 U.S. 154, 177 (1997).

As the *Patel* hearing transcript (*Doe* Dkt. 67 Ex. B) makes clear, Plaintiffs' visa cancellations were not the result of individual decisions. Rather, there was a single, unified policy made by ordinary State officials working with ICE officials to do mass cancellations.

So, as the District of Massachusetts explained in denying a Motion to Dismiss to the same State policy, Section 1201(i) does not apply to bar challenges to State's visa revocation policy. *Presidents' Alliance on Higher Education and Immigration v. Noem*, --- F.Supp.3d ----, 2026 WL 788185 (Mar. 20, 2026). "Section 1201(i) refers to 'the issuance of ***a visa***,' authorizes the revocation of '***such visa***,' and then bars 'judicial review ... of ***a revocation*** under this subsection.' 8 U.S.C. § 1201(i)." *Id.* at *13 (emphasis *PAHEI*). Like in *McNary v. Haitian Refugee Center*,

498 U.S. 479 (1991), and *Reno v. Catholic Social Services*, 509 U.S. 43, 54 (1993), statutory judicial bars apply "only to review of denials of individual ... applications," *Catholic SS*, *id*. at 56 (quoting *HRC*, 498 U.S. at 494), "and not to 'general collateral challenges to ... practices and policies used by the agency' in reaching the individual decisions." *PAHEI*, 2026 WL 788185 at *12 (ellipses original) (quoting *Catholic SS*, 498 U.S. at 492). Such a distinction is consistent with the "strong presumption that agency action is subject to judicial review." *PAHEI*, *id.* (cleaned up); *see also Jajati v. CBP,* 102 F.4th 1011, 1016 (9th Cir. 2024) ("strong presumption").

*PAHEI* is in full accord with Ninth Circuit law. *See Nakka v. USCIS*, 111 F.4th 995, 1002 (9th Cir. 2024) ("When interpreting similar jurisdiction-stripping provisions of the immigration statutory scheme, the Supreme Court has long distinguished between the 'direct review of individual denials' of applications and 'general collateral challenges to [unlawful] practices and policies.'") (Brackets original) (citing *HRC*, 498 U.S. at 492 and *Catholic SS*, 509 U.S. at 56). This Court should follow it and deny State's Motion to Dismiss.

Most of State's cases supporting its interpretation of Section 1201(i) rely on challenges to individual visa revocations, rather than visa revocations policies. *Aldabbagh v. Sec'y of State*, 2021 WL 6298664, at *2 (M.D. Fla. Oct. 5, 2021); *Tarlinsky v. Pompeo*, 2019 WL 2231908, at *5 (D. Conn. May 23, 2019) (after addressing and denying on the merits plaintiff's challenge to certain State visa revocations policies). Others relate to whether Section 1201(i) prohibits mass cancellations of visas, which is a separate question of whether it procedurally prohibits challenges to visa policies resulting in mass cancellations. *Doe v. Noem*, 2026 WL 562452, at *8 (W.D. Va. Feb. 28, 2026). Still others involve the entirely separate issue of the decision of

consular officials denying visas to noncitizens abroad. *Rohani v. Rubio*, 2025 WL 1503950, at *6 (W.D. Wash. May 27, 2025). And some appear to have nothing to do with Section 1201(i) at all. *E.g., Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 101 (D.D.C. 2020); *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 565 (D.C. Cir. 2023). In citing some of these non-Section-1201(i) cases, State conflates situations where a jurisdictional exclusion is interpreted broadly to exclude collateral attacks, with the situation here, where Section 1201(i) should be construed narrowly not to exclude such attacks.

Finally, to the extent State claims that Section 1201(i) applies because there was no singular policy of visa revocation, *see* Motion at § B(2) (p. 13), that argument ignores the fundamental principal that the allegations of a policy in the Complaint control. Once State provides a record, it can argue that the alleged challengeable policy does not exist. *See also* § III (Third), *below*. Meanwhile, State's argument that there is some evidence that the policy was not executed in a uniform fashion establishes that the policy does not exist is not logically true. After all, part of Plaintiffs' allegations is that State's visa revocation policy was promulgated arbitrary and haphazardly. *See* § III (Second), *below*. It would hardly be surprising if it was also executed in a haphazard and inconsistent fashion. But that does not mean that the policy does not exist.

### B. Section 1201(i) does not apply to the decisions of the State employees who promulgated and implemented the visa revocation policy.

8 U.S.C. § 1201(i) states that "[a]fter the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." This contrasts with 8 U.S.C. § 1182(f), which permits the President, only upon the finding that "the entry of any aliens or of any class of aliens

into the United States would be detrimental to the interests of the United States," may "suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restricts he may deem to be appropriate."

As the *Patel* hearing transcript (*Doe* Dkt. 67 Ex. B) makes clear, these visa cancellations were not made by the Secretary of State or by any consular official. Rather, they were made by ordinary State officials working with ICE officials. Such authority is limited to the President alone, if at all, and only based on the findings required by 8 U.S.C. § 1182(f).

While the INA gives the Secretary of State or the consular officer who issued a visa the right to revoke that visa, it does not give the power to suspend that visa to other parties or permit the Secretary of State or consular official to delegate that power to others. It also does not give the Secretary of State or any consular official the ability to suspend classes of visas; that authority rests with the President (upon specific factual findings alone). It only allows the Secretary of State or the consular official to make individual determinations on specific visas.

As to immigration officials other than consular officials or the Secretary of State, this makes perfect sense. "Whether to grant a visa is am atter of the consular officer's discretion." *Gill v. Mayorkas*, No. C20-939 MJP, 2021 WL 3367246, at *7 (W.D. Wash. Aug. 3, 2021) (citing 8 U.S.C. § 1201(a)(1)). "Consular officials are also granted discretion to revoke visas." *Id.* (citing 8 U.S.C. § 1201(i)). But "immigration officers are assigned specific nondiscretionary roles regarding visas." *Id.* (citing, by example, 8 U.S.C. § 1201(e)). In contrast, "[n]ot even the Secretary of State has the power to review a consular official's visa decision." *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997).

Likewise, the power to limit the Secretary of State and the consular officer who granted the visa to individual determinations also makes sense. The Secretary of State's or consular

officer's cancellation of entire classes of visas would otherwise run contrary to the statutory and regulatory scheme for admission that runs through the INA. Likewise, the limitation of judicial review would have significant constitutional concerns if it permitted the Secretary of State to exclude entire classes or groups of individuals, already present in the United States, outside the specific statutory and regulatory scheme for removability. *Knoetze v. Dep't of State*, 634 F.2d 207, 210 (5th Cir. 1981) ("aliens within the country are constitutionally entitled to procedural due process") (citing *Schaughnessy v. U.S.*, 345 U.S. 206 (1953)); *see also of Kwong Hai Chew v. Colding,* 344 U.S. 590, 596 (1953). And it makes no sense to give the President limited power to revoke classes of visas, subject to ordinary judicial review, *see Washington v. Trump*, 847 F.3d 1151, 1163 (9th Cir. 2017), while giving lesser officials unlimited power, not subject to review except in individual removal proceedings.

**II. Plaintiffs' description of the policy satisfies Rule 8.**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim." State suggests (Motion at § C) that Plaintiffs have not "clearly identified" the policy that led to the mass visa revocations in the Spring of 2025, Plaintiffs' Motion should be dismissed. Specifically, State argues that Plaintiffs have not explained why some small amount of SEVIS revocations did not lead to visa revocations, and that the Complaint is not clear whether the revocations occurred simultaneously with SEVIS revocation, or only after SEVIS revocation. Separately, State argues that Plaintiffs describe the "prudential visa revocations" issued by state in the alternative as visa revocations that have happened in the past and visa revocations that will only happen in the future, when Plaintiffs leave the country.

But all Rule 8 requires is sufficient information to put State on notice what policy it is

challenging. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). And that, the Complaint does just fine. The idea that State does not know which policy of mass visa revocations relating to the already-enjoined ICE SEVIS revocations does not pass the straight face test. After all, it separately argues that its policy was reasonable. Motion at § B(3). So it knows what the policy is. And, indeed, State does not even explicitly argue any such confusion.

Meanwhile, the fact that the details of the mass revocation policy remain not completely known to Plaintiffs is because State did not make these policy decisions publicly, such as through notice and comment. While ICE has already revealed details that it worked hand-in-hand with State, *see* Complaint (Dkt. 127) at ¶ 32; *see also Doe* Dkt. 67 Ex. B, only State and ICE know whether this was a single step or two-step process. And even if Plaintiffs were aware of these details, these are minor consistencies that not only are fully within the knowledge and control of State, but are irrelevant to this case—shown by the fact that these inconsistencies appear only at the end of State's motion and are not substantively relied on anywhere else, including in State's arguments that its actions were reasonable.

Finally, the fact that Plaintiffs argue in the alternative that the "prudential revocations" (that is, visa revocations that will become automatically valid once the visaholder leaves the United States) are either revocations that occurred in the past and or are revocations that will occur in the future is not some factual inconsistency in Plaintiffs' Complaint. It instead simply responds to the sort of legal fiction that "prudential revocations" are in the first place. The phrase "prudential revocation" does not appear anywhere in the United States Code or the Code of Federal Revocations. From counsel's own Westlaw search, the phrase only appears twice in any federal case—both involving this policy at issue. *Doe v. Noem*, 2026 WL 562452,

at *8 (W.D. Va. Feb. 28, 2026); *Ahmed v. Noem*, 2025 WL 2299447, at *9 (D.D.C. Aug. 8, 2025). And so, by the necessity of this lawless action, Plaintiffs had to argue in the alternative to either restore the visas (to the extent they have already been revoked) or to prohibit them from being revoked (to the extent they have not) based on the policy. But there is nothing "illegitimate" about "arguing in the alternative." *Pacheco v. Costco Wholesale Corp.*, 2022 WL 16639282, at *4 (C.D. Cal. Nov. 2, 2022) (cleaned up).

## III. The visa cancellation policy violates the Administrative Procedures Act.

Under the Administrative Procedures Act, an agency's action will be set aside if it is arbitrary and capricious, an abuse of discretion or is unsupported by substantial evidence. 5 U.S.C. §§ 706(2)(A), (E). Likewise, the APA requires an agency's action set aside if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or not performed with "procedure required by law." 5 U.S.C. §§ 706(2)(C), (D).

### A. The visa cancellation policy is arbitrary and capricious and not supported by substantial evidence.

State argues that its visa revocation policy is not arbitrary or capricious and that it is supported by substantial evidence. This argument fails for three reasons.

***First***, and foremost, the revocation of the visas were part and parcel of the SEVIS revocation policy that not only this Court, but others as well, have ruled arbitrary and capricious. *See* Dkt. 53 at 16; *see also Doe v. Noem*, 781 F. Supp. 3d 1055, 1067 (E.D. Cal. 2025); *see also, e.g., Doe #1 v. Trump,* 785 F. Supp. 3d 575, 586 (D. Ariz. 2025); *Doe v. Noem*, 778 F. Supp. 3d 1151, 1162 (W.D. Wash. 2025). As this Court explained regarding ICE's own role in this policy, "the only individualized assessment made was whether an individual identified who

had a positive result in the NCIC database was an individual listed within the SEVIS database." Dkt. 53 at 16. As a result, "Plaintiffs are likely to prevail on their claim that the decision to terminate their SEVIS records was arbitrary and capricious because the decision was not based on a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfr. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1989), and citing *Doe v. Noem*, 2025 WL 1397007, *1 (W.D. Wash. May 14, 2025)). Meanwhile, State's policy (as properly alleged in the Second Amended Complaint) was one of "mass SEVIS status terminations and subsequent visa revocations" performed as "a result of a policy of doing mass searches for student visas holders on the National Crime Information Center database, and targeting for SEVIS status and subsequent visa revocation of all individuals who turned up as a positive hit, regardless of the reasoning." Dkt. 127 at ¶ 32. That "policy was jointly implemented by ICE and State." *Id.* Since State's policy was made on the same basis and for the same reasons as the arbitrary and capricious SEVIS revocation policy by ICE (since it is part of the same policy), it, too, is equally arbitrary and capricious.

***Second***, State's policy of using the NCIC to revoke visas (or, alternatively, to use ICE's revocation of SEVIS status based on the NCIC hits as a grounds for revoking visas) is arbitrary and capricious even under first principles, for much the same reason ICE's part of the policy was. Presumably, the policy is designed to cancel visas and make deportable undesirable criminals. But, as the Plaintiffs in this case show, it is arbitrary and capricious to assume someone is a criminal from their appearance on a list of people with NCIC hits. Plaintiffs in this case show why.

Look at Jing Tao. Ms. Tao has never been arrested or charged with any crime, much less convicted. Second Amended Complaint (Dkt. 64) 127 ¶ 47. Instead, Ms. Tao ended up

on the NCIC hit list because she called the police to protect her against her boyfriend during a (verbal) fight. *Id.* The police took her into protective custody as a precautionary measure. *Id.* But because that protective custody was listed on NCIC, the mass visa cancellation program led to Ms. Tao's visa being revoked. *Id.* ¶ 32.

The other Plaintiffs are no different. The only significant difference between Li's situation and Tao's was a neighbor called the police instead of Li herself. But like Tao, Li was never arrested or charged with any crime. *See* Li Decl. ¶ 12 (Dkt. 65 at p.34). Wu was arrested (but not convicted) of graffiti. Second Amend. Compl. ¶ 50. But Congress has specifically made convictions (not arrests) of certain crimes grounds for removal. 8 U.S.C. § 1227(a)(2). And graffiti is not one of those crimes.

***Third***, and finally, to the extent that State believes it can justify its action based on the administrative record, that record has not yet been filed with the Court. *See, e.g., Washington v. DHS,* 598 F. Supp. 3d 1051, 1066 (E.D. Wash. 2020) (denying Motion to Dismiss and noting that "this Court may significantly revise its analysis of the States' APA claims if and when the Court is faced with the merits … with a fully developed record"). Any defense based on what the agency record might yield remains premature.

**B. The visa cancellation policy is contrary to legal authority.**

As explained above, Section 1201(i) does not apply to authorize the visa revocation policy at issue. Nor does State point to any other statutory authorization. 22 C.F.R. § 41.122(e), which relies on other statutory authority besides Section 1201(i), for instance, allows for a consular official to revoke a visa under Section 221(i) in 9 instances. But none of those apply here:

> (1) The alien obtains an immigrant visa or an adjustment of status to that of permanent resident;
>
> (2) The alien is ordered excluded from the United States under INA 236, as in effect prior to April 1, 1997, or removed from the United States pursuant to INA 235;
>
> (3) The alien is notified pursuant to INA 235 by an immigration officer at a port of entry that the alien appears to be inadmissible to the United States, and the alien requests and is granted permission to withdraw the application for admission;
>
> (4) A final order of deportation or removal or a final order granting voluntary departure with an alternate order of deportation or removal is entered against the alien;
>
> (5) The alien has been permitted by DHS to depart voluntarily from the United States;
>
> (6) DHS has revoked a waiver of inadmissibility granted pursuant to INA 212(d)(3)(A) in relation to the visa that was issued to the alien;
>
> (7) The visa is presented in connection with an application for admission to the United States by a person other than the alien to whom the visa was issued;
>
> (8) The visa has been physically removed from the passport in which it was issued; or
>
> (9) The visa has been issued in a combined Mexican or Canadian B–1/B–2 visa and border crossing identification card, and the immigration officer makes the determination specified in § 41.32(c) with respect to the alien's Mexican citizenship and/or residence or the determination specified in § 41.33(b) with respect to the alien's status as a permanent resident of Canada.

*Id.* Because State has not pointed to any valid exercise of statutory authority that permits the visa cancellation policy, that policy is invalid and contrary to legal authority. *See Wong v. Dep't of State*, 789 F.2d 1380, 1385 (9th Cir. 1986).[1] It should therefore be set aside under 5 U.S.C.

---

[1] In *Noh v. INS*, the Ninth Circuit found that challenges to individual Section 1201(i) visa revocations are not challengeable for failure to follow the requirements of 22 C.F.R. § 41.122.

§§ 706(2)(C), (D).

If State wants to revise its own regulations to permit its policy, of course, it is free to try. In doing so, of course, it will be subject to the transparency and due process required by the APA, as well as appropriate judicial review.

## CONCLUSION

The Court should deny the Motion to Dismiss. Plaintiffs respectfully request a decision as quickly as reasonably possible.[2]

---

248 F.3d 938, 941 (9th Cir. 2001). But, as explained in Section I, above, and unlike *Noh*, this case is not a challenge to an individual visa revocation properly made under Section 1201(i).

[2] Plaintiffs brought these claims in July 2025. Dkt 64. They are now into their second summer where they cannot go home or visit family during school breaks, and, given the inability return to campus without a visa, will not be able to do so until any stay pending appeal of any preliminary injunction is decided. When this Court granted the prior Motion to Dismiss with leave to amend (Dkt. 126), Plaintiffs amended the next day (Dkt. 127). When State asked for an extension to respond, Plaintiffs consented (Dkt. 128). But Plaintiffs were not aware at the time that would lead to a July 24 hearing date, given the Court's calendar and State's counsel's pre-scheduled vacation June 10-14. Plaintiffs are willing to have an expedited hearing or to waive the hearing entirely.

DATE: May 18, 2026

*/s/ Justin Sadowsky*

Respectfully submitted,

Justin Sadowsky
(VA Bar 73382) (*pro hac vice*)
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
4250 N. Fairfax Drive #600
Arlington, VA 22203
646-785-9154 (no fax number)
justins@caldausa.org

/s/ Keliang (Clay) Zhu
Keliang (Clay) Zhu (CA Bar No 178170)
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588
925-399-6702 (no fax number)
czhu@dehengsv.com
**Attorneys for Plaintiffs**