CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
WILLIAM SKEWES-COX (DCBN 1780431)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: 415-436-7200
    Facsimile: 415-436-6748
    pamela.johann @usdoj.gov

Attorneys for Defendant
DEPARTMENT OF STATE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZHUOER CHEN, *et al.*, | Case No. 25-cv-3292-JSW |
| Plaintiffs, | **DEFENDANT DEPARTMENT OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIFTH CLAIM FOR RELIEF IN THE SECOND AMENDED COMPLAINT** |
| v. | |
| MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security, *et al.*, | Date:     July 24, 2026 <br> Time:     9:00 a.m. <br> Location:   Zoom Videoconference |
| Defendants. | The Honorable Jeffrey S. White |

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
No. 25-cv-3292-JSW

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................ii

I.    INTRODUCTION ..............................................................................................................1

II.   ARGUMENT .....................................................................................................................1

      A.    Plaintiffs' Fifth Claim For Relief Is Barred By Section 1201(i). ........................1

            1.    Despite Their Attempt To Plead Around § 1201(i)'s Jurisdictional Bar, Plaintiffs' Claim Remains In Essence A Challenge To Visa Revocations Decisions, For Which There Is "No Means Of Judicial Review." ....................................................................................................1

            2.    The Revocation Decisions Were Properly Made By Authorized Officials Under Section 1201(i). ...............................................................6

                  (i)    There Has Been No "Suspension of Entry" of a Class of Aliens Under § 1182(f). ................................................................6

                  (ii)   The Visa Revocations Decisions Were Made By Authorized State Department Officials. ..........................................................10

      B.    Plaintiffs Fail To Dispute DOS's Argument That Visa Revocation Decisions Are Committed To DOS's Discretion By Law And Are Therefore Unreviewable Under Section 701(a)(2) of the APA. ..........................................10

      C.    Plaintiffs' Allegations Are Irreconcilable With A Purported "Mass Visa Termination Policy," And Plaintiffs Have Failed Plausibly To Allege The Policy Under Review. .......................................................................................13

III.  CONCLUSION................................................................................................................14

**TABLE OF AUTHORITIES**

**Cases**

*Block v. Community Nutrition Institute*, 467 U.S. 340 (1984)........................................................ 6

*Chun v. Powell*, 223 F. Supp. 2d 204 (D.D.C. 2002) ................................................................. 4

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ................................... 11

*DCH Reg'l Med. Ctr.* v. *Azar*, 925 F.3d 503 (D.C. Cir. 2019)................................................... 6

*Doe v. Noem*, No. 25-cv-00023, 2026 WL 562452 (W.D. Va. Feb. 28, 2026) ..................... 8, 9

*Drake v. FAA*, 291 F.3d 59 (D.C. Cir. 2002)............................................................................ 11

*Guerrero-Laspirlla v. Barr*, 140 S. Ct. 1062 .......................................................................... 9, 10

*Heckler v. Ringer*, 466 U.S. 602 (1984) .................................................................................... 3

*Joorabi v. Pompeo*, 464 F. Supp. 3d 93 (D.D.C. 2020)............................................................. 2

*Mansur v. Albright*, 130 F. Supp. 2d 59 (D.D.C. 2001) ........................................................... 11

*Matushkina v. Nielsen*, 877 F.3d 289 (7th Cir. 2017)............................................................... 4

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) .................................................... 3

*OC Modeling*, 2020 WL 7263278 ............................................................................................ 4

*Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634 (D.C. Cir. 2020) ..................................... 12

*Pietersen v. Department of State*, 138 F.4th 552 (D.C. Cir. 2025)............................................ 2

*Presidents' Alliance on Higher Educ. & Immigr. v. Noem*,
    No. 25-cv-11109, 2026 WL 788185 (D. Mass. Mar. 20, 2026) ........................................... 5

*Rohani v. Rubio*, No. 24-cv-00389, 2025 WL 1503950 (W.D. Wash. May 27, 2025) ..................... 2, 4, 5

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) .............................................. 14

**Statutes**

5 U.S.C. § 701(a)(1)..................................................................................................................... 6

8 U.S.C. § 1182(f)......................................................................................................................... 6

8 U.S.C. § 1201(i) ................................................................................................................. 1, 7, 8

22 U.S.C. § 2651a(a)(4)................................................................................................................ 10

**Regulations**

8 C.F.R. § 1.2 ................................................................................................................. 12

22 C.F.R. § 41.122(a) .............................................................................................. 11, 12

22 C.F.R. § 41.122(e) ...................................................................................................... 12

**Other Authorities**

78 Fed. Reg. 67436 .......................................................................................................... 10

## I.   INTRODUCTION

This Court dismissed the fifth claim in the Visa Plaintiffs' prior complaint, finding that judicial review was precluded by 8 U.S.C. § 1201(i).  Plaintiffs changed a few words in their new pleading but essentially now bring the same complaint, seeking the precise relief that was refused in the previous version: the reinstatement of their visas.  Plaintiffs do not, in their Opposition, deny that these superficial changes leave intact the essence of their previous complaint or contest that they are seeking the same relief.  Congress enacted a jurisdictional bar as broad as possible, specifying that there shall be "no means" of judicial review of visa revocation decisions.  This Court is not required to take Plaintiffs' word that they are not challenging the unreviewable visa revocations, and indeed Plaintiffs here are barely even trying to hide that fact.  To allow this case to proceed would be to allow Plaintiffs to sneak past this jurisdictional bar, which was enacted to prevent the precise relief that they are seeking, and provide them with a means of judicial review of those decisions in derogation of Congress's clear intent.  Plaintiffs' claim is not a "forward-looking" policy challenge but remains a direct attack on past individual visa revocations that Congress has placed beyond judicial review.  In addition, the purported agency action that Plaintiffs are asking this Court to review is an exercise of discretion that is committed to agency discretion by law and therefore unreviewable under the APA.  The Court should grant the Department of State's motion and dismiss the Visa Plaintiffs' fifth claim with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs' Fifth Claim For Relief Is Barred By Section 1201(i).

#### 1.   Despite Their Attempt To Plead Around § 1201(i)'s Jurisdictional Bar, Plaintiffs' Claim Remains In Essence A Challenge To Visa Revocations Decisions, For Which There Is "No Means Of Judicial Review."

Plaintiffs' primary defense of their Second Amended Complaint ("SAC") is that § 1201(i) does not apply to "challenges to broader visa policies."  Dkt. No. 132 at 3.[1]  The problem here, however, is that Plaintiffs' fifth claim is *not* a forward-looking, collateral challenge to a broader visa policy but rather a thinly disguised challenge to the Visa Plaintiffs' prior visa revocations.  The Court need look no further than the Prayer for Relief, which is unchanged from the previous version of the Complaint that

---

[1] Citations are to the ECF-generated page numbers appearing in the banner at the top of each page.

the Court found deficient, to understand that Plaintiffs have brought this action—as they candidly admit in the pleading itself—"to obtain restoration of [their] visa[s]."  Dkt. No. 127 ¶¶ 13–15.  Plaintiffs do not deny this or defend the scant changes to their complaint as fundamentally changing its focus. Plaintiffs do not seek to enjoin or vacate any Department of State ("DOS") policy.  They do not ask the Court to declare the alleged "visa policy" unlawful.  They do not limit their requested relief to future application of the alleged policy.  They ask only that the Court restore their revoked visas "immediately." *Id.* at 20.  The Court does not have jurisdiction to provide this relief, even if the so-called "visa policy" is found to exist and is enjoined, because it would necessarily require the Court to review each individual visa revocation to determine how and why the decisions were made, in direct contravention of § 1201(i)'s mandate that "there shall be no means of judicial review" of the discretionary decision to revoke a visa.  *See Rohani v. Rubio*, No. 24-cv-00389, 2025 WL 1503950, at *8 (W.D. Wash. May 27, 2025) ("The Court cannot assess whether Defendants caused Plaintiffs' alleged injuries (by applying the alleged blanket policy to the Visa Applicants) without first assessing why those visa decisions were made").  This identical requested relief, focused on the past revocation decisions, belies any suggestion that the gravamen of the complaint has changed in any substantive way, and cannot be reconciled with the suggestion that it is the policy, rather than the termination decisions, that is now at issue.  Congress spoke out in the strongest terms that "it does not want courts reviewing agencies' visa determinations," *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 101 (D.D.C. 2020), and this clear directive would be rendered meaningless if a plaintiff could achieve precisely that by rejiggering a few phrases in his complaint.

The cases cited by Plaintiffs in support of their "forward-looking policy challenge" exception to § 1201(i)'s jurisdictional bar reinforces the conclusion that Plaintiffs' claims here fall outside the Court's jurisdiction.  In each of these cases, the policy challenge was truly collateral to the prior adverse decision, and the parties did not seek to circumvent the jurisdictional bar by challenging the substance of a prior adverse decision through the guise of a procedural objection.  In *Pietersen v. Department of State*, 138 F.4th 552 (D.C. Cir. 2025), for example, the D.C. Circuit concluded that the doctrine of consular nonreviewability did not foreclose an APA challenge of State Department policy that they claimed led to their visa denials, but only after the plaintiffs dropped their challenges to the *prior* visa

denials, which they conceded were "unreviewable under the consular nonreviewability doctrine" notwithstanding the claimed unlawful policy, and focused their appeal instead on "the improper *future* application of the" challenged policy. 138 F.4th at 555 (emphasis added). This forward-looking challenge can be contrasted with *Rohani v. Rubio*, No. 24-cv-00389, 2025 WL 1503950 (W.D. Wash. May 27, 2025), which also arose in the consular nonreviewability context, but in which the plaintiffs did not disavow their backward-looking quest to revisit their visa decisions while nominally challenging the agency policy underlying that decision. The court held that the policy challenge was actually a collateral attack on their visa denials and therefore unreviewable under the consular nonreviewability doctrine. The allegations here—and the fact that Plaintiffs continue to challenge their prior visa decisions—bring this case squarely within the *Rohani* framework and distinguish it from the forward-looking challenge presented in *Pietersen*.

Similarly, the Court in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 495 (1991), permitted judicial review of the INS's policies in administering the "Special Agricultural Worker" (SAW) amnesty program because the plaintiffs were not seeking to challenge the prior denials of their SAW applications or asking the court to reverse those decisions, but instead attacked how the program was implemented. *McNary*, 498 U.S. at 495. Distinguishing *Heckler v. Ringer*, 466 U.S. 602 (1984), the *McNary* Court noted that the individual plaintiffs in *McNary* "do not seek a substantive declaration that they are entitled to SAW status. Nor would the fact that they prevail on the merits of their purportedly procedural objections have the effect of establishing their entitlement to SAW status." *McNary*, 498 U.S. at 495. In the Court's earlier *Heckler* decision, the plaintiffs sought review of a Medicare policy refusing reimbursement for surgery without exhausting claim processing procedures. Examining the relief sought by the plaintiffs, the *Heckler* Court concluded that despite the purported policy challenge, the plaintiffs' claim was "at bottom" a claim for Medicare benefits because the plaintiffs were asking for a declaration that the plaintiff's expenses were reimbursable under Medicare. *Heckler*, 466 U.S. at 614. The improper process claims, the Court found, were "'inextricably intertwined' with respondents' claims for benefits." *Id.*

*Heckler* teaches that a court must look to the essential substance of the claim, as revealed by the requested relief, to determine whether a purported policy challenge is, "at bottom," an effort by the

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
No. 25-cv-3292-JSW                                    3

plaintiff to achieve a different result. A party cannot circumvent a jurisdictional bar by challenging an underlying policy when the requested relief goes to the substance of a decision that cannot be reviewed. Yet that is exactly what Plaintiffs are seeking to do here. They are asking the Court to withdraw the revocations and revalidate their visas. *See* Dkt. No. 127 at 20. The requested relief makes clear that this is a *Heckler* scenario, not a *McNary* case.

Defendants cited a line of cases in their Opening Brief, including *Rohani*, in which courts have rejected similar attempts by plaintiffs to avoid jurisdictional bars by recasting their challenges to visa or other determinations as policy challenges. *See* Dkt. No. 131 at 12–14; *Rohani*, 2025 WL 1503950, at *7 (citing cases). Plaintiffs offer no substantive response to these cases and do not meaningfully distinguish them. *See* Dkt. No. 132 at 5. That *Rohani* applied the doctrine of consular nonreviewability—a non-jurisdictional rule of preclusion that is subject to certain narrow exceptions—rather than § 1201(i) is a distinction without a difference. If anything, the preclusive effect of § 1201(i)'s statutory mandate is broader than its judicially created counterpart. Courts "have vigilantly guarded against plaintiffs' creative attempts to plead around the doctrine of consular nonreviewability." *OC Modeling*, 2020 WL 7263278, at *2 (citing *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002)). The plaintiffs in *Rohani* similarly claimed that they were not challenging individual visa decisions but were instead challenging the policy of "issuing blanket denials without conducting a case-by-case review." *Rohani*, 2025 WL 1503950, at *7. But the *Rohani* court looked to the relief requested— "an order requiring Defendants to reconsider Plaintiffs' visa applications"—to conclude that the essence of the complaint was a nonreviewable challenge to a visa determination. The court reasoned that it could not "assess whether Defendants caused Plaintiffs' alleged injuries (by applying the alleged blanket policy to the Visa Applicants) without first assessing why those visa decisions were made." *Id.* In addition, the court continued, "the Visa Applicants' injuries are not redressable unless the Court were to require Defendants to revisit their decisions denying the visa applications." The court concluded: "These realities highlight that while Plaintiffs may say they are challenging Defendants' process, they are also challenging their visa denials, bringing their claims within the scope of the consular nonreviewability doctrine."[2]

_____

[2] While this Court noted in its order granting Defendant's first motion to dismiss that it "accepts

The Visa Plaintiffs' claims here are indistinguishable from those held to be unreviewable in *Rohani*, and they are barred by § 1201(i) for the same reason. These cases contrast sharply with the claim against DOS in *Presidents' Alliance on Higher Educ. & Immigr. v. Noem*, No. 25-cv-11109, 2026 WL 788185 (D. Mass. Mar. 20, 2026) ("*Presidents' Alliance*"). Unlike this case and *Rohani*, *Presidents' Alliance* presents a "pure" policy challenge. The plaintiffs in *Presidents' Alliance* are not individuals whose visas were revoked but rather are "membership organizations representing colleges and universities across the nation and in Massachusetts," *id.* at *1, and they did "not contest the revocation of any individual visa." *Id.* at *13. By contrast, the Visa Plaintiffs here seek only to have their individual visas restored and do not ask the Court to enjoin any alleged "visa revocation" policy. Unlike the claims in the *Presidents' Alliance*, this case, like *Rohani*, cannot be considered a collateral challenge; the Visa Plaintiffs' hastily added "policy" claims are inextricably intertwined with their request that their previously revoked visas be reinstated. As in *Rohani*, "'Plaintiffs' claims cannot be divorced from a substantive challenge to the Executive's discretionary decisions' regarding the" revocation of visas, and they are therefore unreviewable. *Rohani*, 2025 WL 1503950, at *8.

As explained in their Opening Brief, the rule articulated in *Rohani* is consistent with the general principle that "judicial review is not permitted when a procedure is challenged solely in order to reverse an individual decision that [the court] otherwise cannot review." *See* Dkt. No. 131 at 14. In attempting to distinguish the non-1201(i) cases, Plaintiff argues, without supporting citation or explanation, that the jurisdiction exclusion in those cases is "interpreted broadly to exclude collateral attacks," while "Section 1201(i) should be construed narrowly not to exclude such attacks." Dkt. No. 132 at 5. But Plaintiffs offer no explanation for why § 1201(i) should be construed narrowly, no support for the assertion that the other jurisdictional bars are broader, and no reasoned basis to conclude that the general principle announced in case after case to prevent plaintiffs from making an end-run around statutes precluding judicial review is somehow inapplicable in this case.

To the contrary, the language of § 1201(i) is emphatic and clear: "There shall be no means of

---

the allegations that a policy exists as true," Dkt. No. 126 at 5, it is "not required to take a plaintiff's word that she is not challenging the visa" decision. *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017) (cited in *Rohani*, 2025 WL 1503950, at *8.

judicial review" of a visa revocation. To allow review of Plaintiffs' visa revocations through the subterfuge of a policy challenge would be "a means of judicial review" in violation of this directive. The legislative history of the Intelligence Reform and Terrorism Prevention Act of 2004 confirms Congress's intent to remove all visa revocations from judicial oversight. These clear articulations of intent are sufficient to overcome any presumption in favor of judicial review that might otherwise exist. The APA's general presumption of reviewability must give way to a specific statutory command to the contrary. *See* 5 U.S.C. § 701(a)(1). *See Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (1984) ("The presumption favoring judicial review is just that—a presumption" that "may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent."); 5 U.S.C. §§ 701(a)(1) (APA does not permit judicial review is another statute precludes review). And in any event, even if, as Plaintiffs suggest, some statutory jurisdictional bars exclude "collateral attacks" and others do not, the problem with Plaintiffs' case is that it does not present a true collateral attack; their "policy challenge" is inextricably intertwined with their request to reinstate their visas. To allow judicial review in these cases would create an exception that would "eviscerate the statutory bar" altogether. *DCH Reg'l Med. Ctr.* v. *Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019). Congress sought to prevent courts from engaging in any type of second-guessing of these visa revocation decisions. However labeled or framed, Plaintiffs' claims are unreviewable.

**2.    The Revocation Decisions Were Properly Made By Authorized Officials Under Section 1201(i).**

Plaintiffs' only other argument to avoid the preclusive bar of § 1201(i) is that this provision is somehow inapplicable because the visa cancellations were "made by ordinary State officials working with ICE officials" rather than by the Secretary of State or a consular officer. *See* Dkt. No. 132 at 5-7. This argument is both factually inaccurate and legally irrelevant.

**(i)    There Has Been No "Suspension of Entry" of a Class of Aliens Under § 1182(f).**

Plaintiffs' argument is premised on an assumption that Plaintiffs' visa revocations constituted a "suspension of entry" under 8 U.S.C. § 1182(f), which can only be ordered by the President and is subject to judicial review. Dkt. No. 132 at 5-6. But Plaintiffs' attempt to shoehorn DOS's action into

the framework of § 1182(f) ignores both the significant differences between these two statutory authorities and the operative facts regarding the revocations here. DOS acted pursuant to Section 1201(i), not Section 1182(f), in revoking the three Plaintiffs' visas, and these revocations are subject to § 1201(i)'s categorical bar on judicial review rather than the standard of review for actions under § 1182(f).

First, § 1182(f) and § 1201(i) are two entirely different statutes, authorizing two wholly distinct actions. Section 1182(f) has nothing to do with the revocation of visas; that provision confers on the President limited authority to suspend the entry of all aliens or classes of aliens upon a determination that their entry would be detrimental to the interests of the United States and addresses the forward-looking act of suspending the future entry of individuals. By contrast, Section 1201(i) authorizes the Secretary of State or a consular officer, in their discretion, to revoke a previously issued visa at any time and concerns the backward-looking revocation of already-issued documentation. Visas cannot be revoked under Section 1182(f), which contains no language authorizing any such revocation. Congress vested that discretionary authority exclusively in the Secretary of State or a consular officer under § 1201(g).

Second, DOS's actions did not constitute "suspension of entry." Even as alleged by Plaintiffs, there has been no "suspension of entry" for them individually, much less for a class of aliens of which they are members. Nor have they been ordered removed from the country.[3] While their visas have been prudentially revoked, such that they may remain in the country but if they choose to leave they may not reenter on those specific visas, nothing prevents Plaintiffs from applying for new visas, and they do not allege anywhere in the Second Amended Complaint that the alleged "visa policy" bars consular officers from issuing a new visa. And any such suggestion is directly contradicted by the facts; the visa revocations explicitly allows for subsequent visa applications, which will be individually considered at that time. *See, e.g.*, Dkt. No. 65 at 37 (visa revocation notice for Jing Tao: "If you intend to travel to the

---

[3] And indeed, if the Visa Plaintiffs were subject to removal by reason of the visa revocations, they would fall within the one exception to § 1201(i), which allows for review of a visa revocation in a removal proceeding where the revocation is the sole ground for removal. 8 U.S.C. § 1201(i). The "significant constitutional concerns" that Plaintiffs assert would be raised by that hypothetical situation, *see* Dkt. No. 132 at 7, have thus been specifically addressed by the statute itself.

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
No. 25-cv-3292-JSW                                    7

United States in the future, you must apply for another U.S. visa and a determination on your eligibility for a visa will be made at that time').

Rather, Plaintiffs' visas were revoked under § 1201(i). Plaintiffs admit this in their complaint, and cannot now argue that their visas were not revoked under that authority. *See* Dkt. No. 127 ¶ 61 ("Of course, most Plaintiffs (including Plaintiffs Tao, Wu, or Li), who had their SEVIS statuses revoked under the original sweep and had valid, unexpired visas, had those visas revoked under 8 U.S.C. § 1201(i)"). The individual letters of revocation that the Visa Plaintiffs received from their respective embassies or consulates also confirm this. *See*, *e.g.*, Dkt. No. 65 at 37 ("your F-1 visa . . . has been revoked under Section 221(i) of the United States Immigration and Nationality Act [8 U.S.C. § 1201(i)]"); *id.* at 41 (Declaration of Wanrong Li: "On April 6, I received an email from the U.S. Embassy in Tokyo telling me that my visa had been revoked under 8 U.S.C. § 1201(i)"). These facts, as conceded by Plaintiffs, are all that is needed to trigger the preclusive bar of § 1201(i). That the President's authority to suspend the entry of certain classes of noncitizens is subject to APA review, therefore, has no bearing on Congress's decision to preclude all judicial review of DOS's visa revocation decisions under § 1201(i).

Third, even if these differences between visa revocations and suspension of entry could be ignored, Plaintiffs' suggestion in their Opposition that DOS's actions constituted the "cancellation of [an] entire class of visa[s]," Dkt. No. 132 at 7, which somehow takes them outside the scope of § 1201(i), is contrary to both the facts and the law. There is no allegation in the Second Amended Complaint that DOS cancelled an entire class of visas. Indeed, Plaintiffs' allegations indicate the opposite: the unexpired visa of one of the Plaintiffs was not revoked, although she had a positive NCIC hit and her SEVIS record was terminated. Dkt. No. 127 ¶ 39. While DOS made multiple revocations within a short timeframe, nothing in Section 1201(i) limits the Secretary's discretion to take multiple individual revocation actions contemporaneously, and Plaintiffs cite no authority suggesting otherwise. The statute permits revocation "at any time" after issuance, without any numerical restriction. Whether DOS revoked three visas or three hundred, each revocation remains an individual exercise of discretion within the scope of Section 1201(i). Like the plaintiffs in *Doe v. Noem*, the Visa Plaintiffs here "did not allege facts showing that [they] failed to receive an individualized visa determination," despite any

claimed visa revocation policy. *Doe v. Noem*, No. 25-cv-00023, 2026 WL 562452, at *8 (W.D. Va. Feb. 28, 2026). To the contrary, they acknowledge that they received individual visa revocation notices, on different days, at different times, from different consular agents. *See* Dkt. No. 127 ¶¶ 48, 49, 53; Dkt. No. 65, Ex. D. And in any event, in circumstances similar to those presented here, the court in *Doe* rejected the plaintiff's argument that § 1201(i) did not apply to a uniform revocation decision. *Id.*

While Plaintiffs claim in their Opposition that the "*Patel* hearing transcript" indicates that "Plaintiffs' visa cancellations were not the result of individual decisions," that transcript reveals no such facts. At the *Patel* hearing, the court questioned Andre Watson, an Immigration and Customs Enforcement ("ICE") official, about ICE's Student Criminal Alien Initiative. Watson informed the court that ICE sent names of students to the State Department in batches, but he disclaimed any knowledge about how the revocations decisions were made:

THE COURT: And then you sent [the names] off to State?

MR. WATSON: Yes, ma'am.

THE COURT: And then what happened?

MR. WATSON: State conducted their own analysis.

THE COURT: Do you know what State did?

MR. WATSON: No, ma'am.

*Doe v. Noem*, No. 25-cv-3140, ECF No. 67 at 54 ("*Patel* transcript"). Watson further informed the court that DOS then sent the names back to ICE over the course of three weeks, that "there were some who had revocations" of their visas, but that he did not know why the visas had been revoked. *Id.* at 55. No representative of DOS appeared at the *Patel* hearing. No information was provided regarding how DOS made the revocation decisions. Nothing in this transcript suggests that the visas were cancelled as a class or that the revocations were not made individually under § 1201(i), even if they were made under the umbrella of a common policy.

Finally, Plaintiffs argue that "it makes no sense" to provide for judicial review of a President's decision to deny entry to a class of aliens but to give "lesser officials" unlimited power to revoke visas. But this is a policy decision that Congress has made by including the express preclusion clause in § 1201(i), and it is not for the Court to second guess that determination. Where there is "clear and

convincing evidence of congressional intent to preclude judicial review," any policy arguments in favor of reviewability must give way. *See Guerrero-Laspirlla v. Barr*, 140 S. Ct. 1062, 1069 (2020 (cleaned up). By including the express preclusion clause—"There shall be no means of judicial review"—in Section 1201(i), Congress provided clear and convincing evidence that Congress wanted to preclude judicial review. Whether it makes sense to Plaintiffs or not, Congress has ordained that visa revocations under Section 1201(i) are discretionary and final.

### (ii)    The Visa Revocations Decisions Were Made By Authorized State Department Officials.

Again citing the *Patel* transcript, Plaintiffs also appear to be arguing that the revocation decisions were not made by a State Department Official authorized under § 1201(i). Dkt. No. 132 at 6. But again the *Patel* transcript makes no such representations. Watson explained that ICE interacted with John Armstrong, the senior official for the Bureau of Consular Affairs, and his delegates, *Patel* Transcript at 13, he provided no information about what happened after ICE sent the names to DOS or who made the decisions. *Id.* And in any event, the Secretary of State is authorized to "delegate authority to perform any of the functions of the Secretary or the Department to officers and employees under the direction and supervision of the Secretary." 22 U.S.C. § 2651a(a)(4). Agencies routinely act through sub-delegated authority, and such delegation is both lawful and necessary for the functioning of DOS. The Secretary of State's general delegation provision applies to all functions vested in the Secretary by statute, including the authority to revoke visas "at any time, in [the Secretary's] discretion" under Section 1201(i). Pursuant to this authority, the Secretary issued Delegation of Authority ("DA") No. 367, re-delegating the authority to revoke visas to the Assistant Secretary for Consular Affairs and, in turn, to subordinate officials within the Bureau of Consular Affairs. *See* Section 3 of DA 367; 78 Fed. Reg. 67436. Those officials act under the Secretary's direction and supervision as required by 22 U.S.C. § 2651a(a)(4). Accordingly, any suggestion that revocations carried out by authorized DOS consular officials were improper lacks merit.

### B.    Plaintiffs Fail To Dispute DOS's Argument That Visa Revocation Decisions Are Committed To DOS's Discretion By Law And Are Therefore Unreviewable Under Section 701(a)(2) of the APA.

In their Opening Brief, Respondents argue that Plaintiffs' claim is not cognizable under the APA

both because § 1201(i) precludes review, Dkt. No. 131 at 15, and because visa revocation decisions—and any alleged "policy" pursuant to which those decisions are made—are committed to DOS's discretion by law. *Id.* at 15-18. Plaintiffs do not address this argument, much less articulate any judicial standard for reviewing these discretionary decisions. As discussed in their Opening Brief, DOS has complete discretion to revoke visas under § 1201(i), which provides discretion as to the time and reason for revocation, imposes no threshold requirements for the exercise of that discretion, and provides no standard against which a judge can review that exercise of discretion. As such, visa revocation decisions are unreviewable under § 701(a)(2) of the APA. This discretion extends to the so-called "policy" under which Plaintiffs allege the visa revocations were made; DOS may establish generally applicable criteria to guide its exercise of discretion, and the policy that Plaintiffs have identified is an exercise of that discretion. Where, as here, a statute conferring discretion is "drawn in 'such broad terms that in a given case there is no law to apply,'" *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)), the discretionary bar of § 701(a)(2) precludes review. The "administrative record" underlying the agency action has no bearing on this issue of reviewability; Defendant is neither arguing that the administrative record justifies its actions nor suggesting that reference to the administrative record is needed to conclude that the agency action is unreviewable because it is committed to agency discretion by law.

Instead of directly addressing this argument or pointing the Court to a judicially manageable standard for review, Plaintiffs argue that the visa revocation policy violates the APA because it is "arbitrary and capricious" and "contrary to legal authority." Dkt. No. 132 at 9-13. But Plaintiffs' argument misses the point: Defendant is not, on this motion to dismiss, arguing the merits of an APA challenge.[4] It is arguing as a threshold matter that this Court *cannot* review the agency action under the APA because these decisions are committed to agency discretion. Plaintiffs' arguments do not suggest otherwise. While they attack the decisions themselves as arbitrary and capricious and contrary to law,

---

[4] Plaintiffs appear to misconstrue DOS's APA unreviewability argument by contending that "State argues that its revocation policy is not arbitrary or capricious and that it is supported by substantial evidence." Dkt. No. 132 at 9. DOS does not make this argument in its motion to dismiss, although if the case continues it will defend the APA claim on the merits at the appropriate time. Rather, DOS argues that any purported policy under which individual visa revocations were made would be a reasonable exercise of discretion and therefore unreviewable under the APA.

they do not point to any standard by which the Court can evaluate DOS's exercise of discretion. Nor can they, because there is no "statute or regulation" that limits the exercise of discretion under § 1201(i). *See Mansur v. Albright*, 130 F. Supp. 2d 59, 61 (D.D.C. 2001); 22 C.F.R. § 41.122(a). And Plaintiffs fail to point out any "formal or informal policy" statements that could also provide a judicially manageable standard. *See Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020). To the extent that Plaintiffs are suggesting that the Court can apply the same standard that it used to find a likelihood of success on the merits regarding ICE's SEVIS terminations, *see* Dkt. No. 132 at 9-10, that separate statutory framework provides no judicial guidance here because unlike visa revocation decisions, which are governed by the unfettered grant of discretion in § 1201(i), there is no analogous grant of discretion here, and in fact the Court found that ICE's discretion to terminate SEVIS records was specifically limited by regulation. *See* Dkt. No. 53 at 15-16. That regulation has no applicability here. Plaintiff's suggestion that it is arbitrary and capricious to revoke visas based merely on NCIC hits, a less severe crime, or an arrest that does not result in conviction, *id.* at 10-11, similarly ignores the fact that Congress imposed *no* boundaries on the Secretary's discretion to revoke visas. Certainly Congress has not limited the Secretary to revoking visas only where the visa holder has committed a removeable offense.

Finally, Plaintiffs cite to 22 C.F.R. § 41.122(e) to suggest that the visa cancellation policy allegedly issued by DOS is contrary to legal authority, but this argument is contradicted by the cited authority. Plaintiffs' argument ignores the fact that this subsection of the regulation relates to *immigration officers* employed by the Department of Homeland Security, not *consular officers* employed by DOS. Section 41.122(e) is titled "Revocation of visa by immigration officer" and states clearly that "[a]n *immigration officer* is authorized to revoke a valid visa by physically canceling it in accordance with the procedure described in paragraph (d) of this section if" one of nine enumerated conditions has occurred. 22 C.F.R. § 41.122(e) (emphasis added); 8 C.F.R. § 1.2 ("immigration officer" defined). By contrast, revocation by a consular officer is addressed in subsection (a) of the same regulation, titled "Grounds for revocation by consular officer," and states that "[a] consular officer, the Secretary, or a Department official to whom the Secretary has delegated this authority is authorized to revoke a nonimmigrant visa *at any time, in his or her discretion*." 22 C.F.R. § 41.122(a) (emphasis

added).  None of the nine conditions quoted at length in Plaintiff's Opposition, *see* Dkt. No. 132 at 12, therefore, apply to revocations by consular officers or limit in anyway the discretion of consular officers to revoke a visa "at any time, in his or her discretion."   Plaintiffs are left with no statutes or regulations against which the discretionary decisions of consular officers under § 1201(i) can be evaluated or reviewed.

Relying on their misunderstanding of § 41.122(e), Plaintiffs invite DOS "to revise its own regulations to permit its policy."  Dkt. No. 132 at 13.  But the applicable regulations (and the authorizing statute) already do that.  These provisions confer upon DOS an unlimited, unreviewable grant of discretion.  The visa revocations and the alleged visa revocation policy, therefore, are agency actions that are committed to agency discretion by law, and unreviewable under the APA.

**C.      Plaintiffs' Allegations Are Irreconcilable With A Purported "Mass Visa Termination Policy," And Plaintiffs Have Failed Plausibly To Allege The Policy Under Review.**

Plaintiffs' defense of the sufficiency of their allegations regarding the final agency action, *see* Dkt. No. 132 at 7–9, demonstrates two points.  First, although they describe the purported policy as a "mass revocation policy," they concede that they do not know the details of the policy, what actually prompted any of the visa revocations, or how the decisions were made.  While it is true that DOS is aware of the actions that it took after the 6,500 names were referred from ICE, it does not and cannot know without clearer allegations what "policy" Plaintiffs are actually challenging.  Are Plaintiffs contesting a claimed "policy" of re-evaluating visa determinations of the individuals referred to DOS from ICE?  Are they challenging a purported policy of terminating all visa holders with an NCIC hit?  Are they disputing, as their arbitrary and capricious argument suggests, the "policy" of terminating individual visas based on NCIC hits where the individuals were not convicted of serious crimes?  Or is there some other purported policy that they are asking this Court to review?  Each of these theories may be subject to different defenses and legal arguments.  Plaintiffs' Second Amended Complaint is not deficient because they plead different theories in the alternative; their pleading fails to state a claim because they do not allege, under any theory, what the "mass revocation policy" they *they claim to be unlawful* actually was.

Second, Plaintiffs do not deny that their conclusory allegations of a "mass termination policy"

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

are belied by other allegations and by the revocation notices referenced in the complaint, which demonstrate that individualized determinations regarding visas were made and that not all students with NCIC hits and valid visas (including one of the four Plaintiffs in this case) received visa revocations. While the Court is generally required to accept the allegations of the complaint as true for purposes of a motion to dismiss under Rule 12(b)(6), conclusory allegations that are unsupported or contradicted by documents referred to in the complaint are not entitled to a presumption of truth. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). Whatever the "mass revocation policy" may be, therefore, it cannot plausibly refer to a purported practice of automatically revoking en masse all visas of students with NCIC hits, without individualized review and the exercise of discretion, because Plaintiffs have not alleged facts consistent with that allegation.

Plaintiffs' fifth claim for relief should not proceed because review is precluded by § 1201(i) and because the agency action is an exercise of discretion that it unreviewable under the APA. But if it does, Plaintiffs should be required to identify the policy that they claim to be unlawful so that DOS can understand and appropriately defend against the claim.

**III.    CONCLUSION**

For the foregoing reasons, the Court should grant Defendant DOS's motion and dismiss Plaintiffs' fifth claim for relief from their Second Amended Complaint with prejudice.

DATED: June 1, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Pamela T. Johann*
PAMELA T. JOHANN
Assistant United States Attorney

Attorneys for Defendant
DEPARTMENT OF STATE