UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHUOER CHEN, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, et al.,<br><br>    Defendants. | Case No. 25-cv-03292-JSW<br><br>**ORDER DENYING MOTION TO DISMISS FIFTH CLAIM FOR RELIEF IN SECOND AMENDED COMPLAINT AND SETTING STATUS CONFERENCE**<br><br>Re: Dkt. No. 131 |

United States District Court
Northern District of California

This matter comes before the Court upon consideration of the motion to dismiss filed by Marco Rubio, in his official capacity as Secretary of the United States Department of State ("the State Department"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for July 24, 2026, and DENIES the State Department's motion.

**BACKGROUND**

Plaintiffs Jing Tao ("Tao"), Yifing Wu ("Wu"), and Wanrong Li ("Li") (collectively "Visa Plaintiffs") were admitted to the United States on F-1 nonimmigrant visas for duration of status.[1] Tao and Wu are enrolled in graduate and undergraduate programs, respectively. Li is engaged in Optional Practical Training. (Second Amended Complaint ("SAC"), ¶¶ 13-15.) In April 2025, the Visa Plaintiffs – and thousands of other F-1 visa holders – had their SEVIS records terminated as

---

[1] The Court discussed the statutory and regulatory background of the F-1 visa program and the Student and Exchange Visitor Information System ("SEVIS"), which is used to monitor an F-1 visa holder's status, in *Doe v. Trump*, 784 F. Supp. 3d 1297, 1303-05 (N.D. Cal. 2025). The Court will not repeat that background in this Order.

part of the Student Criminal Alien Initiative ("SCAI" or the "Initiative"). *Id.* at 1305. Pursuant to the Initiative, the Department of Homeland Security ("DHS") instructed Immigrations and Customs Enforcement ("ICE") "to take the population of nonimmigrant students studying in the United States and run them through the National Crime Information Center's ('NCIC') database." *Id.* at 1305-06 (cleaned up). Visa Plaintiffs names were in the NCIC database and their SEVIS records were terminated. (SAC ¶¶ 47, 49, 53-54.)

Visa Plaintiffs also received notices stating that additional information became available after their visas were issued and stated their visas were revoked pursuant to Immigration and Nationality Act ("INA") section 221(i), 8 U.S.C. section 1201(i), (hereinafter "Section 221(i)"). (*See, e.g.,* Dkt. No. 65, Renewed Motion for Preliminary Injunction, Ex. D; Dkt. No. 92, Renewed Motion for Preliminary Injunction, Corrected Ex. E.)

Section 221(i) provides in relevant part that:

> [a]fter the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State *may at any time, in his discretion*, revoke such visa or other documentation. … *There shall be no means of judicial review* (including review pursuant to section 2241 of Title 28 or any other habeas corpus provision, and sections 1361 and 1651 of such title) *of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.*[2]

8 U.S.C. § 1201(i) (emphasis added); *see also* 22 C.F.R. § 41.122(a) ("Grounds for revocation by consular officers. A consular officer, the Secretary, or a Department official to whom the Secretary has delegated this authority is authorized to revoke a nonimmigrant visa at any time, in his or her discretion.").

On July 29, 2025, Visa Plaintiffs filed a First Amended Complaint ("FAC"), asserting a claim against the State Department under the Administrative Procedure Act ("APA"), 5 U.S.C. sections 701, *et seq.* In that claim, Visa Plaintiffs alleged the "termination of Plaintiffs' visas, regardless of whether those terminations have been effectuated or only become effective upon the

---

[2] Section 1227(a)(1)(B) provides that an alien "who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa … has been revoked under section 1201(i) of this title" shall be removed.

United States District Court
Northern District of California

Plaintiffs' departures from the United States, constitutes final agency action reviewable under" the APA. (FAC ¶ 86.) The State Department moved to dismiss for lack of jurisdiction and for failure to state a claim. The Court granted that motion because it determined that, as drafted, the claim was barred by the terms of Section 221(i), but it granted Visa Plaintiffs leave to amend.

Visa Plaintiffs now the State Department's "policy of mass visa terminations … constitutes final agency action reviewable under the" APA. (SAC ¶ 86.) As they did in the First Amended Complaint, Visa Plaintiffs ask the Court to issue injunctive relief requiring the State Department

> to withdraw the effective-in-the-future revocation of the F-1 visas for Plaintiffs Tao, Wu, and Li, and all similarly situated F-1 visa holders -- whose visa revocations were part of mass SEVIS terminations in April 2025 and who have not been convicted of any criminal offense, have maintained academic standing, and are otherwise in compliance with the terms of their visa -- and prohibiting [Secretary] Rubio from further revocations of those visas beyond the statutory authority of 8 U.S.C. § 1201(i). To the extent any visa revocations are deemed already occurred by the Court either based on its interpretation of [Secretary] Rubio's actions or because an individual has departed the United States, the Court should order [Secretary] Rubio to restore any already-revoked visas.

(SAC, Prayer for Relief, ¶ 3.)

The Court will address additional facts in the analysis.

## ANALYSIS

### A.    Applicable Legal Standards.

Under Federal Rule of Civil Procedure 12(b)(6), a court must accept a plaintiff's allegations and reasonable inferences therefrom as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation to provide the grounds of their "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] … Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* (citations omitted).

"A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to state a claim, a court should generally grant them leave to amend. *See, e.g., Reddy v. Litton*

United States District Court
Northern District of California

*Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). However, if a plaintiff previously amended and failed to correct deficiencies, a court's "discretion to deny leave to amend is particularly broad[.]" *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

## B.    The Court Denies the State Department's Motion.

The APA permits the Court to "hold unlawful and set aside agency action, findings and conclusions found to be - arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA "embodies the basic presumption of judicial review to one suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (cleaned up).

If a statute precludes judicial review, there is no claim under the APA. 5 U.S.C. § 701(a)(1). The State Department renews its argument that Section 221(i) precludes judicial review of Visa Plaintiffs' claim. In general, when the Supreme Court has interpreted jurisdiction stripping provisions in the Immigration and Nationality Act, it "has long distinguished between the 'direct review of individual denials of' applications and 'general collateral challenges to [unlawful] practices and policies.'" *Nakka v. U.S.C.I.S.*, 111 F.4th 995, 1002 (9th Cir. 2024) (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)). Visa Plaintiffs argue their claim falls within the latter category.

Two recent cases have considered whether Section 221(i) precludes judicial review in cases arising involving visa revocations and the SCAI: *Presidents' Alliance on Higher Education and Immigration v. Noem*, 824 F. Supp. 3d 168 (D. Mass. 2026) ("*PAHEI*") and *Doe v. Noem*, No. 25-cv-00023, 2026 WL 562452 (W.D. Va. Feb. 28, 2026). In *Doe*, the plaintiff alleged his visa was revoked because he appeared in the NCIC database, and the State Department argued the court did not have jurisdiction to review the claim under Section 221(i). *Doe*, 2026 WL 562452, at *7. The plaintiff argued Section 221(i) did not apply to visa revocations "that occur *en masse*," but the court rejected that argument. *Id.*, at *8. It determined "[t]here is no reason to conclude

4

United States District Court
Northern District of California

that Congress meant to excise '*en masse*' visa determinations from § 1201(i)'s jurisdiction strip simply because the statute referred to visas in the singular." *Id.* The court also reasoned that Section 221(i) contained only one exception and concluded that if Congress "wanted to create another exception for mass revocations, it knew how to do so." *Id.*

In *PAHEI*, the plaintiffs – membership organizations representing colleges and universities – acknowledged that Section 221(i) might bar a claim by a plaintiff seeking to review an individual revocation. 884 F. Supp. 3d at 193. They argued Section 221(i) did not apply because they challenged the policy of revoking visas based on an NCIC hit without individualized inquiries. The court agreed, relying on *McNary*, *supra*, and *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993) ("*CSS*"). *Id.* Each of those cases also confronted statues precluding judicial review, and in each case the Supreme Court held the jurisdictional bar applied only to denials of individual decisions. *Id.* (citing *CSS*, 509 U.S. at 55-56 and *McNary*, 498 U.S. at 492, 494). "Critical to these holdings was the [Supreme] Court's reasoning that each statute's reference to a determination describes a single act rather than a group of decisions or a practice or procedure employed in making decisions." *Id.* at 194 (cleaned up).

Section 221(i)'s exception for judicial review also refers to a single act: a removal proceeding where the removal is based on a revocation under Section 221(i). Relying on that language, the *PAHEI* court concluded the reasoning of *McNary* and *CSS* applied. *Id.* The court also concluded it could "plausibly infer the existence of such a policy from the allegation that [the State Department] revoked the F-1 visas of many students based on their inclusion on the list of NCIC hits generated by ICE even though some of those students had no more than a speeding ticket." *Id.* at 195 (concluding plaintiffs alleged a final agency action). Because the plaintiffs did "not contest the revocation of any individual visa [but] a group of decisions to revoke visas pursuant to a broad policy of doing so based on NCIC hits," the court allowed the APA claim to proceed. *Id.*

The State Department argues Visa Plaintiffs fail to sufficiently allege the nature of the policy. Visa Plaintiffs describe the SCAI and the actions that were taken as part of that initiative. The allegations here are analogous to the allegations in *PAHEI*, and this Court can "plausibly infer

the existence" of a policy from those allegations. *PAHEI*, 824 F. Supp. 3d at 195. A closer question is whether Visa Plaintiffs are bringing a challenge to the revocation of their visas in the *guise* of a policy challenge.

In *Rohani v. Rubio*, the plaintiffs were a group of individuals and their relatives who were denied admission to the United States based on a prior association with a designated terrorist organization, the Islamic Revolutionary Guard Corps ("IRGC"). No. 24-cv-00389, 2025 WL 1503950, at *3 (W.D. Wash. May 27, 2025). The plaintiffs alleged the defendants implemented "an unlawful policy of blanket denials" to IRGC conscripts but also alleged they were "seeking review of their visa decisions." *Id.* at *8. The court reasoned that fact prevented it from assessing causation "without first assessing why those visa decisions were made" and prevented it from redressing the plaintiffs' injuries "unless [it] were to require Defendants to revisit their decisions denying the visa applications." *Id.* Summarizing its analysis, the court held that "while Plaintiffs may say they are challenging Defendants' process, they are also challenging their visa denials, bringing their claims within the scope of the consular nonreviewability doctrine." *Id.*

In *Emami v. Nielsen*, the plaintiffs' claims arose out of a waiver provision contained in Presidential Proclamation 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Safety Threats." 365 F. Supp. 3d 1009, 1018 (N.D. Cal. 2019). The plaintiffs alleged the defendants denied all waiver requests despite agency guidance indicating when a waiver might be appropriate. The defendants argued the claims were barred under the doctrine of consular nonreviewability. *Id.* at 1013-17. The court found the plaintiffs' complaint was "rather loosely worded" but denied the motion after plaintiffs "clarified and narrowed the scope of their claims" to make clear they were not challenging individual consular decisions. *Id.* at 1018. The court determined those representations were

> consistent with a fair reading of the complaint, which leaves no
> doubt that plaintiffs are challenging systemic practices with respect
> to the waiver program, and not individualized determinations for
> any specific person. The gravamen of the complaint is that the
> government has flouted its own guidelines and statements about
> case-by-case determinations of waiver applications in favor of a
> policy of blanket denials. … Those issues do not require review of
> an individual consular officer's decision. Consequently, dismissal
> for lack of a justiciable controversy is denied.

*Id.* at 1019; *see also id.* at 1021 (concluding plaintiffs' allegations were sufficient to state an APA claim based on the *Accardi* doctrine).

Visa Plaintiffs did not amend their Prayer for Relief, which does stray "into unreviewable areas." *Emami*, 365 F. Supp. 3d at 1018. However, Visa Plaintiffs specifically amended to make clear that the final agency action they challenged is a policy. (Opp. Br. at 2:11-15.) That amendment is consistent with their allegations in paragraphs 32 and 33. Finally, in their opposition Visa Plaintiffs represent "this case is not a challenge to an individual visa revocation." (*Id.* at 12-13 fn.1 (distinguishing *Noh v. INS*, 248 F.3d 938 (9th Cir. 2001).) The Court will hold Visa Plaintiffs to their representation.

There also is no claim under the APA "where agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Section 221(i) grants a consular officer or the Secretary of State discretion to revoke a visa. However, because the Court concludes Visa Plaintiffs are challenging a policy, this provision of Section 221(i) also does not bar their claim. In its opposition the State Department argues the alleged policy is reasonable, but that is an argument for a later stage of the litigation.

### CONCLUSION

For the foregoing reasons, the Court DENIES the State Department's motion to dismiss, and it shall answer by July 28, 2026. The parties shall appear for a status conference on August 14, 2026, at 9:00 a.m. and shall file a joint status report by August 7, 2026.

**IT IS SO ORDERED**.

Dated: July 14, 2026

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

7